**BIENERT, MILLER & KATZMAN, PLC**
Thomas H. Bienert, Jr., SBN 135311
James Riddet, SBN 39826
Whitney Z. Bernstein, SBN 304917
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Email: tbienert@bmkattorneys.com
       jriddet@bmkattorneys.com
       wbernstein@bmkattorneys.com

*Attorneys for Defendant*
*Mohammed Abdul Qayyum*

Additional counsel on next page

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, MARK MANOOGIAN, MOHAMMED ABDUL QAYYUM, and PETR PACAS,<br><br>Defendants. | Case No. 18-cr-04683-GPC<br>Hon. Gonzalo P. Curiel<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION:**<br><br>**(1) TO DISMISS THE CAN-SPAM ACT COUNTS (6 THROUGH 10) OF THE INDICTMENT AS VOID FOR VAGUENESS;**<br>**(2) IN THE ALTERNATIVE, TO DISMISS COUNTS 6 THROUGH 10 FOR FAILURE TO STATE AN OFFENSE;**<br>**(3) TO DISMISS THE CONSPIRACY COUNT**<br><br>Hearing Date: April 19, 2019<br>Hearing Time: 1:00 p.m.<br>Department: Courtroom 2D |

**LAW OFFICE OF DAVID W. WIECHERT**
David W. Wiechert, SBN 94607
Jessica C. Munk, SBN 238832
William J. Migler, SBN 318518
27136 Paseo Espada, Suite B, 1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822
Email: dwiechert@aol.com
         jessica@davidwiechertlaw.com
         william@davidwiechertlaw.com

*Attorneys for Defendant Jacob Bychak*

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
Randy K. Jones, SBN 141711
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1510
Email: rkjones@mintz.com

*Attorney for Defendant Mark Manoogian*

**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG RHOW P.C.**
Gary Lincenberg, SBN 123058
Naeun Rim, SBN 263558
1875 Century Park East, Floor 23
Los Angeles, CA 90067
Telephone: (310) 201-2100
Email: gsl@birdmarella.com
         nrim@birdmarella.com

*Attorneys for Defendant Petr Pacas*

Case No. 18-cr-04683-GPC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD .........................................................................................2

    A. Dismissal of Counts Based on Vagueness ............................................... 2

    B. Dismissal of Counts For Failure to State An Offense ............................. 4

III. THE CAN-SPAM ACT COUNTS OF THE INDICTMENT (6 THROUGH 10) SHOULD BE DISMISSED ON VAGUENESS GROUNDS .......................................................................................................... 5

    A. Subsection (a)(5) Is Facially Vague ......................................................... 5

    B. Subsection (a)(5) Is Vague As Applied to Defendants ........................... 7

IV. ALTERNATIVELY, SUBSECTION (a)(5) SHOULD BE NARROWLY CONSTRUED, WHICH REQUIRES DISMISSAL OF COUNTS 6 THROUGH 10 FOR FAILURE TO STATE AN OFFENSE .............................................................................................................. 9

V. THE CONSPIRACY COUNT MUST BE DISMISSED ............................... 10

VI. CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Huppenthal*,
  No. CV 10-623-TUC-AWT, 2013 WL 871892 (D. Ariz. Mar. 8, 2013) ................ 4
*Arce v. Douglas*,
  793 F.3d 968 (9th Cir. 2015) ....................................................................... 4
*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*,
  447 U.S. 557 (1980) ..................................................................................... 4
*Information Providers' Coalition For the Defense of the First Amendment v. FCC*,
  928 F.2d 866 (9th Cir. 1991) ....................................................................... 3
*Kolender v. Lawson*,
  461 U.S. 352 (1983) ..................................................................................... 3
*Panther v. Hames*,
  991 F.2d 576 (9th Cir. 1993) ....................................................................... 3
*People v. Materne*,
  72 F.3d 103 (9th Cir. 1995) ....................................................................... 10
*Rogers v. Tennessee*,
  532 U.S. 451 (2001) ................................................................................... 10
*Smith v. Goguen*,
  415 U.S. 566 (1974) ..................................................................................... 3
*Taylor v. United States*,
  495 U.S. 575 (1990) ................................................................................... 10
*Turf Center, Inc. v. United States*,
  325 F.2d 793 (9th Cir. 1963) ....................................................................... 3
*U.S. v. Purdy*,
  264 F.3d 809 (9th Cir. 2011) ....................................................................... 4
*United States v. Boren*,
  278 F.3d 911 (9th Cir. 2002) ....................................................................... 5
*United States v. Jae Gab Kim*,
  449 F.3d 933 (9th Cir. 2006) ....................................................................... 3
*United States v. Jensen*,
  93 F.3d 667 (9th Cir. 1996) ......................................................................... 5
*United States v. Jones,*
  542 F.2d 661 (6th Cir. 1976) ....................................................................... 5
*United States v. Kilbride*,
  584 F.3d 1240 (9th Cir. 2009) ............................................................. 3, 4, 5
*United States v. LeCoe*,
  936 F.2d 398 (9th Cir. 1991) ..................................................................... 10

*United States v. Millis*,
   621 F.3d 914 (9th Cir. 2010) ................................................................................. 10
*United States v. Pickard*,
   100 F. Supp. 3d 981 (E.D. Cal. 2015) ..................................................................... 5
*United States v. Pulliam*,
   No. CR 14-12-M-DWM-1, 2014 WL 3615776 (D. Mont. July 21, 2014) ............. 5
*United States v. Reese*,
   92 U.S. 214 (1876) ................................................................................................... 3
*United States v. Romm*,
   455 F.3d 990 (9th Cir. 2006) ................................................................................. 10
*United States v. Shortt Accountancy Corp.*,
   785 F.2d 1448 (9th Cir. 1986) ................................................................................. 5
*United States v. Twombly*,
   475 F. Supp. 2d 1019 (S.D. Cal. 2007) ................................................................... 2
*United States v. W.R. Grace*,
   504 F.3d 745 (9th Cir. 2007) ................................................................................... 5
*United States v. Williams*,
   553 U.S. 285 (2008) ............................................................................................ 3, 4
*United States v. Wright*,
   No. 2:14-cr-357-APG-VCF, 2015 WL 9958034 (D. Nev. Dec. 24, 2015) ............. 4
*United States v. Zhi Yong Guo*,
   634 F.3d 1119 (9th Cir. 2011) ................................................................................. 3

**Statutes**

18 U.S.C. § 1037(a)(5) ................................................................................... *passim*

**Rules**

Federal Rule of Criminal Procedure 12(b) ............................................................ 2, 5

**Regulations**

16 C.F.R. § 316.2 ......................................................................................................... 5

**Other Authorities**

Robert H. Jackson, *The Federal Prosecutor*,
   31 J. Crim. L. & Criminology 3 (1940) ................................................................... 4
Sen. No. 877, 108th Cong., 1st Sess., § 104 (2003), 149 Cong. Rec. S13176-03, at
   *S13178,
   (daily ed. Oct. 23, 2003) 2003 WL 22415941 ...................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Indictment (Counts 6 through 10) alleges violations of subsection (a)(5) of the CAN-SPAM Act, which makes it a crime to "falsely represent[] oneself to be the registrant or the legitimate successor in interest to the registrant of 5 or more Internet Protocol addresses, and intentionally initiate[] the transmission of multiple commercial electronic mail messages from such addresses." 18 U.S.C. § 1037(a)(5). Because the Act seeks to regulate a form of speech—email advertising—and speech is entitled to First Amendment protection, subsection (a)(5) is subject to a facial vagueness challenge. Although there does not appear to be any case law interpreting subsection (a)(5), one thing is clear—the Act and its implementing regulations leave undefined the terms "**registrant**" and "**legitimate successor in interest to the registrant**" used in subsection (a)(5). Not only are these key terms undefined in the Act, but they lack a commonly understood meaning sufficient to enable citizens to know how to avoid violating subsection (a)(5). Furthermore, the Act does not provide any parameters regarding the requisite representation; e.g., can it be made to anyone in any context or must it be made to the registrar regarding registration? Thus, subsection (a)(5) is unconstitutionally vague on its face.

Moreover, the Government is applying subsection (a)(5) in a manner that could not have been reasonably anticipated. Subsection (a)(5) requires there to have been a "registrant" of the IP addresses—thus the addresses must have been registered. The American Registry of Internet Numbers ("ARIN") is, and has been since 1997, the only organization responsible for registration of IP addresses in the United States. The Government does not allege that the IP addresses were registered with ARIN, but only that the IP addresses were "inactive." Indictment ¶¶2.b. & 5. In fact, during the time the IP addresses were allegedly acquired and used by Defendants, there is no evidence that they were registered with ARIN. The concept of hijacking old and abandoned IP addresses that were not registered is incomprehensible. Thus, it is not

reasonable for Defendants to have anticipated that making alleged false representations about "inactive" addresses not registered with ARIN would expose them to subsection (a)(5) liability. The statutory language simply did not put Defendants on notice that their alleged conduct violated the CAN-SPAM Act.

In the alternative, the Indictment fails to allege an offense under subsection (a)(5) of the CAN-SPAM Act. Legislative intent, ambiguities in subsection (a)(5), and the rule of lenity warrant a narrow construction. The term "registrant," with respect to a United States IP address, should logically mean the registrant of an IP address registered with ARIN. And false representations should be limited to explicit representations that one is either the ARIN registrant or acquired the IP address from the ARIN registrant made for purposes relating to registration. The Indictment fails to allege an offense because the Government does not allege any material facts supporting the conclusion that the IP addresses were registered and does not allege any false representations regarding registration.

Finally, Count 1, conspiracy, falls with the CAN-SPAM Act Counts because, notwithstanding a reference to wire fraud, the allegations identifying the "objects" of the conspiracy reflect that the Government is alleging a conspiracy to violate the Act. Moreover, the allegations do not support the type of representations regarding registration necessary to trigger liability under the Act.

## II. **LEGAL STANDARD**

Federal Rule of Criminal Procedure 12(b) allows consideration at the pretrial stage of "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue." Fed. R. Crim. P. 12(b). Here, Defendants are challenging the Indictment on two grounds that can be adjudicated prior to trial: (1) void for vagueness with respect to subsection (a)(5) of the CAN-SPAM Act (Counts 6 through 10); and (2) failure to state an offense (Counts 1 and 6 through 10).

### A. **Dismissal of Counts Based on Vagueness.**

"Overly vague penal statutes violate due process." *United States v. Twombly*,

475 F. Supp. 2d 1019, 1022 (S.D. Cal. 2007).  "A criminal statute is void for vagueness if it is 'not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement.'"  *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1121 (9th Cir. 2011) (quoting *United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006)).  In other words, "[a] statute is unconstitutionally vague on its face if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'"  *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).[1]

"The statute will meet the requirement of 'certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'"  *Panther v. Hames,* 991 F.2d 576, 578 (9th Cir. 1993) (quoting *Turf Center, Inc. v. United States*, 325 F.2d 793, 795 (9th Cir. 1963)).  "For statutes like § 1037 involving criminal sanctions 'the requirement for clarity is enhanced.'"  *Kilbride*, 584 F.3d at 1257 (quoting *Information Providers' Coalition For the Defense of the First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir. 1991)).  The importance of clarity is especially keen with respect to subsection (a)(5) of the CAN-SPAM Act, since there does not appear to be any case law interpreting it.

---

[1] The second requirement—that the legislature "establish minimal guidelines to govern law enforcement," *Smith v. Goguen*, 415 U.S. 566, 574 (1974)—is arguably "the more important aspect of the vagueness doctrine." *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).  That is because "the greatest danger of abuse of prosecuting power" is the prosecutor's ability to "pick[] some person whom he dislikes or desires to embarrass, or select[] some group of unpopular persons and then look[] for an offense." Robert H. Jackson, *The Federal Prosecutor*, 31 J. Crim. L. & Criminology 3, 5 (1940).   The Fifth Amendment accordingly does not tolerate criminal laws that threaten to cast a "net large enough to catch all possible offenders" while leaving "it to the courts to step inside and say who could be rightfully detained." *United States v. Reese*, 92 U.S. 214, 221 (1876).

"'[O]rdinarily a [party] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others'"; however, the Supreme Court has "'relaxed that requirement in the First Amendment context.'" *Kilbride*, 584 F.3d at 1257 (quoting *Williams, supra*, 553 U.S. at 304). CAN-SPAM Act provisions are subject to a facial vagueness challenge because the Act regulates commercial speech, which is protected by the First Amendment, albeit accorded lesser protection than other constitutionally guaranteed expression. *See Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561-63 (1980).[2]

"A statute is unconstitutionally vague as applied if it failed to put a defendant on notice that **his** conduct was criminal." *Kilbride*, 584 F.3d at 1257 (citing *U.S. v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2011) (emphasis added)). "An as-applied vagueness claim is viable when a particular application of an otherwise-permissible statute stretches the breadth of the statute further than could be reasonably anticipated." *Acosta v. Huppenthal*, No. CV 10-623-TUC-AWT, 2013 WL 871892, at *12 (D. Ariz. Mar. 8, 2013) (citing *Kilbride*, 584 F.3d at 1257), *aff'd in part, rev'd in part on other grounds, and remanded by Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015). An as-applied challenge can be ruled on at the pre-trial stage. *See, e.g., United States v. Wright*, No. 2:14-cr-357-APG-VCF, 2015 WL 9958034 (D. Nev. Dec. 24, 2015), *report and recommendation adopted by* 2016 WL 438957.

### B. Dismissal of Counts for Failure to State an Offense.

The Ninth Circuit has stated the general proposition that "[o]n a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged" and that a court "'should not consider evidence not appearing on the face of

---

[2] In *Kilbride*, 584 F.3d at 1258, the Ninth Circuit expressly did not reach the issue of whether § 1037 regulates protected speech and thus is subject to a facial vagueness challenge.

the indictment.'" *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (quoting *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). However, the Ninth Circuit has also recognized that "'a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact.'" *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (quoting *United States v. Jones,* 542 F.2d 661, 664 (6th Cir. 1976)).

Consequently, courts in the Ninth Circuit have concluded, since *Boren*, that:

- "There is no prohibition against the consideration of extrinsic evidence for purposes of a Rule 12(b) motion to dismiss." *United States v. Pickard*, 100 F. Supp. 3d 981, 990 (E.D. Cal. 2015).

- "The District Court [is] not limited to the face of the indictment in ruling on the motion to dismiss." *Id.* (quoting *Jones, supra*, 542 F.2d at 664).

- Judicial notice can be taken of appropriate matters in ruling on a motion to dismiss an indictment. *See, e.g.*, *United States v. Pulliam*, No. CR 14-12-M-DWM-1, 2014 WL 3615776, at *1 (D. Mont. July 21, 2014) (granting motion for judicial notice).

### III. THE CAN-SPAM ACT COUNTS OF THE INDICTMENT (6 THROUGH 10) SHOULD BE DISMISSED ON VAGUENESS GROUNDS

#### A. Subsection (a)(5) is Facially Vague.

Subsection (a)(5) of the CAN-SPAM Act prohibits:

> falsely represent[ing] oneself to be the **registrant** or the **legitimate successor in interest** to the **registrant** of 5 or more Internet Protocol addresses, and intentionally initiat[ing] the transmission of multiple commercial electronic mail messages from such addresses.

18 U.S.C. § 1037(a)(5) (emphasis added). The Act, however, does not define the terms "registrant" or "legitimate successor in interest." Neither do its implementing regulations. *See* 16 C.F.R. § 316.2. "'When Congress does not define a term in a statute, [courts] construe that term according to its ordinary, contemporary, common meaning.'" *Kilbride*, 584 F.3d at 1257 (quoting *United States v. W.R. Grace*, 504

F.3d 745, 755 (9th Cir. 2007)). Although a dictionary can be helpful in determining the "'ordinary, contemporary, common meaning,'" that is not true for the statutorily undefined terms "registrant" and "legitimate successor in interest." Registrant is defined as "one that registers or is registered." Merriam-Webster's Collegiate Dictionary, Eleventh Ed. (2003). The definition of registrant thus leaves open the question of registered where and with who? Legitimate has five definitions, including "conforming to recognized principles or accepted rules and standards." Merriam-Webster's Collegiate Dictionary, *supra*. The definition of legitimate thus leaves open the question of what principles or rules and standards? Successor in interest is not defined in general dictionaries. Black's Law Dictionary (10th ed. 2014) defines it as: "Someone who follows another in ownership or control of property. A successor in interest retains the same rights as the original owner, with no change in substance." Successor in interest could certainly mean ownership, but it is unclear whether the statutory term covers a lessee, assignee, or person with a right or authorization to use property.

Subsection (a)(5) is also vague regarding the required false representation. Must the defendant expressly represent that he or she is the registrant? Must the representation be made to the registrar or can it be made to anyone? Must the representation concern registration, e.g., made in the course of obtaining, updating, or transferring registration, or can it be made in any context? The statute simply does not provide clear guidance—to citizens or law enforcement—regarding what conduct is prohibited. For example, it is unclear whether subsection (a)(5) would be violated under the following scenario:

- The defendant falsely represents—to anyone for any reason—that he or she is a particular person, but does not claim to be the registrant or legitimate successor in interest to the registrant of any IP addresses.
- That particular person happens to be the registrant of 5 or more IP addresses.

- The defendant sends the statutorily required volume of commercial email messages from that particular person's IP addresses, with or without permission.

In sum, subsection (a)(5) leaves so many questions unanswered as to be unconstitutionally vague on its face.

### B.  Subsection (a)(5) is Vague as Applied to Defendants.

Subsection (a)(5)'s vagueness is only highlighted when applied to Defendants' conduct.  It is simply unreasonable to expect Defendants to have been on notice that subsection (a)(5) could encompass "inactive" IP addresses for which there is no evidence of the date of registration with ARIN.  *See* Indictment ¶2.a. & b.

ARIN is the non-profit organization established in December 1997 to manage and distribute IP addresses in its service region, which includes the United States.  *See https://www.arin.net/about_us/overview.html*.  ARIN is indisputably a registrar and to become a "registrant" requires an affirmative act to register—entering into a mandatory Registration Services Agreement ("RSA") for IP addresses allocated by ARIN and a non-mandatory "legacy" RSA for IP addresses allocated before ARIN was formed.  *See* https://www.arin.net/resources/agreements/index.html; https://www.arin.net/participate/policy/nrpm/.  Pre-ARIN addresses are often not registered because the holders do not want to abide by the restrictions in RSAs or pay fees to ARIN.

Significantly, the Government does not allege that any of the IP addresses at issue **were** registered with ARIN when allegedly purchased and used by the Defendants.  In fact, the allegation that the IP addresses were "inactive" effectively negates registration.  An "inactive" IP address would typically have been allocated before ARIN was formed, and thus not required to be registered with ARIN.  The discovery provided by the Government, including FBI 302 reports, confirms that the IP addresses were allocated prior to ARIN's formation and not subject to RSAs during the time period relevant to the Indictment.  Moreover, the failure to register a pre-

ARIN IP address by entering into a legacy RSA with ARIN would be a good indication that the IP address may have been abandoned. In this regard, inactive IP addresses can be analogized to abandoned property available to anyone unless and until re-claimed by the owner.[3]

Because the CAN-SPAM Act was enacted in 2003—six years after ARIN became responsible for IP address registration—it is entirely reasonable to interpret the text of subsection (a)(5) as referring to a "registrant" of an IP address registered with ARIN. Thus, it would be reasonable to construe subsection (a)(5) as applying to IP addresses in the United States registered with ARIN. And a citizen could be reasonably confident that subsection (a)(5) did not apply so long as he or she was dealing with "inactive" IP addresses not registered with ARIN. That is what Defendants were allegedly dealing with. To the extent that the Government tries to argue that ARIN registration is not required because there was some recordkeeping associated with IP addresses allocated prior to ARIN's existence, that only proves how vague subsection (a)(5) is as applied to Defendants' conduct.[4] Moreover, a citizen could be reasonably confident that criminal liability under the Act would be avoided so long as he or she did not make false representations about being the registrant or about registration, such as falsely representing to ARIN that registration

---

[3] IP blocks become inactive, and have been essentially abandoned, as the individuals and organizations they were originally allocated to experienced mergers, acquisitions, bankruptcies, and closures, or migrated to new information technologies. In some cases, they were simply forgotten.

[4] ARIN collects data regarding IP addresses, including contact information for holders or purported holders of IP addresses allocated by ARIN subject to RSAs, pre-ARIN IP addresses subject to legacy RSAs, and IP addresses allocated before ARIN was formed that are not subject to legacy RSAs. *See* https://www.arin.net/reference/research/bulkwhois/ and https://www.arin.net/reference/research/bulkwhowas/. The mere fact that ARIN has data regarding an IP address does not mean that the address is registered with ARIN. Moreover, because ARIN does not verify the accuracy of historical information identifying who pre-ARIN addresses were initially allocated to or subsequently transferred to and there is no requirement for this information to be updated, it is not necessarily reliable or complete.

should be transferred from the current registrant to oneself, i.e., as the "legitimate successor in interest to the registrant." Defendants' alleged conduct does not resemble the type of technical false representation that would be expected to trigger subsection (a)(5) liability.

### IV. ALTERNATIVELY, SUBSECTION (a)(5) SHOULD BE NARROWLY CONSTRUED, WHICH REQUIRES DISMISSAL OF COUNTS 6 THROUGH 10 FOR FAILURE TO STATE AN OFFENSE

If the Court does not agree that subsection (a)(5) is void for vagueness, then the CAN-SPAM Act counts (6 through 10) should still be narrowly construed:

- the term "registrant" should mean a registrant of a United States IP address with ARIN;
- "falsely represents oneself to be the registrant or the legitimate successor in interest to the registrant" should mean an explicit false representation that one is either the registrant or acquired the IP address from the registrant; and
- the false representation should be about registration.

First, the legislative history of the CAN-SPAM Act reveals that Congress changed the statutory language of subsection (a)(5) in a way that warrants a narrow construction. The version of the Act passed in the Senate prohibited:

> falsely represent[ing] the **right to use** 5 or more Internet protocol addresses, and intentionally initiat[ing] the transmission of multiple commercial electronic mail messages from such addresses.

*See* Request for Judicial Notice Exh. 1 [Sen. No. 877, 108th Cong., 1st Sess., § 104 (2003), 149 Cong. Rec. S13176-03, at *S13178 (daily ed. Oct. 23, 2003) 2003 WL 22415941, at **5 (emphasis added)]. The phrase the "right to use" was replaced in the enacted statute with "oneself to be the registrant or the legitimate successor in interest to the registrant." Although legislative history does not discuss the reason for the change, the prior language is arguably more general and less technical than the enacted language. This change also indicates that Congress was focused on false representations specifically regarding registration—not general false representations.

Second, the rule of lenity requires a narrow construction:

(1) the rule "'requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government.'" *United States v. Millis*, 621 F.3d 914, 916-17 (9th Cir. 2010) (quoting *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006);

(2) the rule "applies where a criminal statute is vague enough to deem both the defendant's and the government's interpretations of it as reasonable." *People v. Materne*, 72 F.3d 103, 106 (9th Cir. 1995);

(3) Defendants are not advocating "an implausible interpretation of a statute, nor one at odds with the generally accepted contemporary meaning of a term." *Taylor v. United States.*, 495 U.S. 575, 596-98 (1990); and

(4) subsection (a)(5) "is truly ambiguous." *United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir. 1991).

Under the required narrow construction of subsection (a)(5), the Indictment fails to allege essential elements—facts showing that any of the IP addresses at issue were registered with ARIN, that Defendants expressly represented that they were the registrant or acquired the IP addresses from the registrant, or that any false representation was made about registration.[5]

## V. THE CONSPIRACY COUNT MUST BE DISMISSED

If the CAN-SPAM Act counts are dismissed, then conspiracy charge (Count 1) must also be dismissed. Although wire fraud is referred to in Count 1, the Government is really alleging a conspiracy to violate subsection (a)(5) of the Act, as reflected by the allegations identifying the "objects" of the conspiracy. *See* Indictment ¶2.a.–c. If subsection (a)(5) is void for vagueness, then a conspiracy to

---

[5] If the Court is inclined to construe subsection (a)(5) any more expansively, then that construction should be prospective only. *Cf. Rogers v. Tennessee*, 532 U.S. 451, 457-58 (2001) ("if a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, **the construction must not be given retroactive effect**") (emphasis added).

violate subsection (a)(5) necessarily fails. If the Government failed to allege elements of a subsection (a)(5) violation, then a conspiracy based on the same alleged conduct necessarily fails.

Moreover, the allegations do not support the type of representations regarding registration necessary to trigger liability under the Act. The Government alleges that Defendants told "Internet hosting companies" that they were "authorized by the registrants of the inactive IP addresses to use the IP addresses." Indictment ¶2.b. This is not the same as making the express representation specified in the Act—that one is the "registrant" or the "legitimate successor in interest to the registrant."

## VI.  CONCLUSION

For all of the foregoing reasons, Defendants' motion should be granted.

Dated:  March 15, 2019

Respectfully submitted:

**BIENERT, MILLER & KATZMAN, PLC**

By        */s/ Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
James Riddet
Whitney Z. Bernstein
Attorneys for Defendant
Mohammed Abdul Qayuum

Dated: March 15, 2019

**LAW OFFICE OF DAVID W. WIECHERT**

By  */s/ Jessica C. Munk*
David W. Wiechert
Jessica C. Munk
William J. Migler
Attorneys for Defendant
Jacob Bychak

Dated: March 15, 2019

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By  */s/ Randy K. Jones*
Randy K. Jones
Attorney for Defendant
Mark Manoogian

Dated: March 15, 2019

**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG RHOW P.C.**

By  */s/ Naeun Rim*
Gary Lincenberg
Naeun Rim
Attorneys for Defendant
Petr Pacas

12   Case No. 18-cr-04683-GPC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

## CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Jessica C. Munk, Randy K. Jones, and Naeun Rim to affix their electronic signatures to this document.

Respectfully submitted,

*/s/ Whitney Z. Bernstein*
**BIENERT, MILLER & KATZMAN, PLC**
Whitney Z. Bernstein
Email:  wbernstein@bmkattorneys.com

Case No. 18-cr-04683-GPC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# CERTIFICATE OF SERVICE

Counsel for Defendant Mohammed Abdul Qayyum certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

David W. Wiechert
Jessica C. Munk
William J. Migler
Attorneys for Jacob Bychak

Randy K. Jones
Attorney for Mark Manoogian

Gary Lincenberg
Naeun Rim
Attorneys for Petr Pacas

Melanie Pierson
Robert Ciaffa
Sabrina Feve
Assistant U.S. Attorneys

Respectfully submitted,

Dated: March 15, 2019      */s/ Whitney Z. Bernstein*
**BIENERT, MILLER & KATZMAN, PLC**
Whitney Z. Bernstein
Attorneys for Mohammed Abdul Qayyum
Email: wbernstein@bmkattorneys.com

Case No. 18-cr-04683-GPC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS