ROBERT S. BREWER JR.
United States Attorney
MELANIE K. PIERSON
ROBERT CIAFFA
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar Nos. 112520/179432/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0420
Email: Sabrina.Feve@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>MOHAMMED ABDUL QAYYUM (3),<br>PETR PACAS (4)<br><br>            Defendants. | Case No. 18cr4683-GPC<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR INFORMANT DISCOVERY** |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Robert S. Brewer Jr. and Assistant U.S. Attorneys Melanie K. Pierson, Robert Ciaffa, and Sabrina L. Fève, and hereby files its Response in Opposition to Defendants' Motion for Informant Discovery.  This Response is based on the files and records of the case.

DATED: March 29, 2019            Respectfully submitted,

                                 ROBERT S. BREWER JR.
                                 United States Attorney

                                 /s/*Sabrina L. Fève*
                                 Assistant United States Attorney

I.

STATEMENT OF THE CASE

On October 31, 2018, a federal grand jury in the Southern District of California returned a ten-count indictment charging defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas with Conspiracy, in violation of Title 18, United States Code, Section 371; four counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343; five counts of Electronic Mail Fraud, in violation of Title 18, United States Code, Section 1037(a)(5); and Criminal Forfeiture. The charges related to the defendants' fraudulent acquisition of Internet Protocol (IP) addresses and the use of the purloined IP addresses to send spam.

Between November 1, 2018 and March 28, 2019, the government produced six rounds of discovery. Each round included a detailed index of the documents produced. The discovery totals over 56 gigabytes and more than one million pages. This index includes descriptions of all the FBI reports produced in discovery.

On November 20, 2018, the defense filed a discovery motion that included a request for the "names and addresses of all informants or cooperating witnesses." ECF No. 36 at 8:5-6. The government filed an opposition to the request, ECF No. 47 at 13-14, and the parties argued the issue before the Court on January 25, 2019. During that hearing, the defense sought and obtained leave to file additional briefing on the issue, which they then filed on March 15, 2019. ECF Nos. 52, 71.

II

STATEMENT OF FACTS

A.   Overview of the Charged Conduct

The defendants work for Company A, a San Diego firm engaged in the business of digital advertising. Among other titles, defendant Bychak has held the position of Business Operations Manager, defendant Manoogian represented himself to be a Business Development Manager, defendant Qayyum was the Technical Operations Manager, and defendant Pacas worked as Director of Operations.[1]

To transmit its digital advertising, Company A required numerous Internet Protocol (IP) addresses to send its commercial emails. Company A constantly needed to acquire large groups, or blocks, of IP addresses (hereafter, "netblocks") because spam filters routinely block the IP addresses they used to transmit their email advertising. Bychak and Pacas, on behalf of Company A, acquired a number of cut-rate netblocks from Daniel Dye (charged elsewhere) that were hijacked from their authorized users. To use these netblocks to send commercial emails, the defendants provided a fraudulent Letter of Authorization, or Letter of Agency (LOA) – supposedly from the authorized user – to the hosting companies and internet service providers (ISPs), indicating that the netblock's registered user authorized the mailer to use the netblock. Manoogian and Mohammed (with the knowledge and agreement of their co-conspirators) knowingly created and used false LOAs, represented to be from the authorized users, and sent them to the ISPs to allow Company A

---

[1] Pacas moved to a related company, Company B, for several years and then back to Company A after Company A acquired Company B.

3

to use the hijacked netblocks to send commercial email, which earned Company A substantial profits during the period of the conspiracy.

B. <u>Relevant Factual Background</u>

In 2013, the FBI's Baltimore field office initiated an investigation into allegations that Company A's predecessor-in-interest was using hijacked netblocks to send spam. In 2014, the FBI transferred the investigation to its San Diego field office. Prior to transferring the case, Baltimore FBI agents collected information from a confidential human source (CHS) who worked for a non-profit organization dedicated to mitigating spam. The CHS was not a party or percipient witness to the charges the government ultimately filed against the defendants and the government does not intend to call the CHS or the Baltimore case agent as witnesses. The FBI has not paid the CHS or provided any other material benefits or promises to the CHS in exchange for information. The CHS is a private citizen and not a government informant.

Based in part on the tip provided by the CHS, the FBI collected open source evidence from entities like the American Registry of Internet Numbers (ARIN), which registers and allocates netblocks to users in Canada, the United States, and the Caribbean. It also interviewed witnesses, including the owner of a hosting company called Hostwinds and individuals whose names, businesses, and netblocks were used in LOAs sent by the defendants to Hostwinds and other hosting companies.

In December 2014, after collecting evidence of IP hijacking from witnesses and open source records, the FBI sought and obtained a search warrant for defendant Manoogian's Company A email account. (ADCONION-

4

DISC04-SW-00003).[2]  In May 2015, the FBI sought and obtained a second search warrant for Manoogian's Company A email account. (ADCONION-DISC04-SW-00027).[3] In September 2016, however, the government subpoenaed these Company A emails, as well as additional Company A records, directly from Company A.  At trial, the government intends to use and introduce the subpoenaed Company A records, which should be self-authenticating business records under Federal Rule of Evidence 902(11), and does not intend to use duplicate emails obtained via search warrant.

While the FBI was investigating this case, Company A's parent company sued the CHS's employer for defamation and libel in England.[4] The U.S. government is not a party to, and has no interest in, that litigation.

### III

### POINTS AND AUTHORITIES

The Government maintains a limited privilege to withhold the identity of informants who furnish information to law enforcement. See Roviaro v. United States, 353 U.S. 53, 59 (1957).  The Government recognizes that, where the disclosure of an informant's identity, or the contents of the informant's communication, is "relevant and helpful to

---

[2] To facilitate the Court's review of the parties' briefing, which include references to the Bates stamp numbers of documents produced in discovery, the government will submit the referenced documents under seal.

[3]  This second warrant also sought records for other email accounts, however, those accounts were deleted prior to service of the warrant and the FBI was therefore unable to search those other accounts.

[4]  See http://www.5rb.com/wp-content/uploads/2015/02/Ames-v-Spamhaus.pdf and https://www.spamhaus.org/organization/statement/014/case-dismissed-ames-mcgee-v-the-spamhaus-project (last accessed March 27, 2019).

the defense," or is "essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. A defendant who seeks disclosure of the informant's identity has the burden of showing that disclosure is justified based on the balance between the public interest in protecting the confidential source of information, and the defendant's right to prepare a defense. Id.; see also United States v. Johnson, 886 F.2d 1120, 1122 (9th Cir. 1989) (burden is on the defense to show that there is a relationship between the expected testimony of the informant and the defense to be raised at trial).

The Ninth Circuit has held that, "[t]o obtain disclosure, a defendant must show a need for the information, and in so doing, must show more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' to his defense, or that will be 'essential to a fair trial.'" United States v. Henderson, 241 F.3d 638, 645 (9th Cir. 2000); see also United States v. Rowland, 464 F.3d 899, 909 (9th Cir. 2006) (defendant must articulate specific reason to disbelieve informant's testimony; "fishing expedition" based on "a mere suspicion" was insufficient).

An in camera hearing is the "favored procedure" to allow the Court to determine whether an informant should be disclosed. See United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993). To obtain such a hearing, the defendant must make a "minimal threshold showing" that the informant's identity would be "relevant to at least one defense." Id.

On one hand, informants who are percipient witnesses to crimes generally must be revealed as they can provide eyewitness testimony. See Roviaro, 353 U.S. at 63-64 (informant was a participant in the crime and

the "only witness" to the defendant's possession and transportation of the drugs, and thus "highly relevant"). Even if not an eyewitness, however, disclosure may be appropriate where the identity of the informant might lead to a firsthand source or circumstantial evidence. See United States v. Amador-Galvan, 9 F.3d 1414, 1417 (9th Cir. 1993).

On the other hand, informants who are "mere tipsters" generally need not be revealed. See United States v. Gil, 58 F.3d 1414, 1421 (9th Cir. 1995)(informant was a "mere tipster" whose role was "relatively minor" and "had no information that could form the basis of either exculpatory or inculpatory information."); see also Robinson v. Soto, 2015 U.S. Dist. LEXIS 175949 *13 (C.D. Cal. 2015) (informant had no personal knowledge about any material fact relating to the crimes and merely provided an investigatory lead by repeating "gossip on the street"); Voight v. Gipson, 2014 U.S. Dist. LEXIS 61534 *63-*65 (C.D. Cal. 2014) (informant was not a witness to any crimes and "merely pointed the officers in the right direction").

Similarly, if the informant does not know the defendant, nor anyone with whom the defendant had contact, disclosure is generally not necessary. See United States v. Williams, 898 F.2d 1400, 1402 (9th Cir. 1990) (disclosure not required because "informant was not personally acquainted with Williams or anyone whom Williams had contact"); United States v. Kelly, 449 F.2d 329, 330 (9th Cir. 1971) (informant's identity was properly withheld because informant neither witnessed the crime nor transacted business with the defendant).

When striking the proper balance, the Court should examine the following three factors: (1) the degree of the informant's involvement

in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; (3) the Government's interest in nondisclosure. See Gil, 58 F.3d at 1421 (citing United States v. Gonzalo Beltran, 915 F.2d 487, 489 (9th Cir. 1990)). For the reasons discussed below, consideration of these three factors weighs against disclosure.

     A.    The CHS Was Not Involved In Defendants' Criminal Activity

The CHS neither knew nor conspired with the defendants to commit the wire fraud charged in Counts 2-5 of the Indictment, or to hijack the five netblocks charged in Counts 6-10 of the Indictment. In July 2013, the CHS identified five netblocks and provided open source records from ARIN, as well as correspondence from a hijacking victim, to the FBI. (ADCONION-DISC02-REPORTS-00982 to -00996). (The government charged two of those netblocks as Counts 7 and 8, but did not charge the others.) In October 2013, the CHS provided Baltimore FBI with LOAs submitted to Hostwinds and a second hosting company, CoreXchange, which appeared to be fraudulent. (ADCONION-DISC02-REPORTS-01000). (The government did not charge either LOA in the Indictment.) In June 2014, the CHS met with the San Diego FBI. During that meeting, the CHS covered the materials previously provided to Baltimore agents and also disclosed two additional sources of information – an anonymous email correspondent whom the CHS suspected worked for Company A ("ANON-1") and a very large and well-known tech company that had investigated Company A's spamming activities. (ADCONION-DISC02-REPORTS-01011).

The government has produced the materials obtained from the CHS and, to facilitate the defense's review, has produced a discrete set of

the materials provided to the FBI on June 2, 2014 so it will be clear what the CHS provided. The government has also identified for the defense the CHS's employer, the suspected name of ANON-1, and an FBI report describing an interviews with the individual suspected of being ANON-1 (who did not, in fact, work for Company A). The CHS's actions and the records s/he provided are consistent with those of a tipster who, in line with the CHS's employer's mission, seeks to detect and deter unsolicited commercial email, or spam. These materials also squash any suspicion that the CHS was involved in, let alone conspired with, the defendants to commit the crimes charged in the Indictment. Because the CHS had zero involvement in the charged criminal activity, this first factor weighs against disclosure.

### B. The CHS Will Not Testify

The second factor to consider is the relationship between the defendant's asserted defense and the likely testimony of the informant. The government does not intend to call the CHS as a witness. Because the CHS will not testify, there is no relationship to consider between his/her testimony and defendants' asserted defense of good faith (see ECF No. 71-1 at 6:23). Defendants nonetheless argue that they need the CHS's name and address because: 1) it is "critical for Defendants to question the CHS on statements made by" Hostwinds' owner (id. at 6:16-17); 2) defendants need the CHS to identify ANON-1 in case ANON-1 knows anything relevant to a good faith defense (id. at 6:18-23); and 3) defendants need to question the CHS about the case agent's credibility, the CHS's credibility, and the validity of the search warrants (id. at

6:28-7:2). These three claims do not weight in favor of disclosure for the following reasons:

First, the Ninth Circuit has repeatedly held that "a defendant must show a need for the information, and in so doing, must show more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' to his defense." Henderson, 241 F.3d at 645. Defendants have provided no evidence that the CHS could discredit Hostwinds' owner or implicate him in a crime and, given their emphatic insistence on their own innocence, it would be logically inconsistent for them to claim Hostwinds knowingly conspired with them to hijack netblocks. The defense already has reports documenting communications made directly between the FBI and Hostwinds' owner, as well as reports memorializing the CHS's description of his/her communications with Hostwinds' owner. Despite possessing this actual evidence, they can only speculate that the CHS might know something that might be used to impeach Hostwinds' owner. This speculation falls short of the showing needed to compel disclosure.

Defendants' second argument regarding ANON-1 is similarly flimsy. In June 2014, the CHS met with FBI agents in San Diego. (ADCONION-DISC02-REPORTS-01011). During that meeting, the CHS reported receiving unsolicited anonymous emails from ANON-1, whom the CHS suspected (incorrectly) worked for Company A. The CHS suspected a particular individual had sent the anonymous emails, whom the CHS identified during the meeting by name. The FBI included that name in the report that the government produced to the defense at ADCONION-DISC02-REPORTS-01016. Defendants therefore do not need to ask the CHS who s/he suspects sent

10

the anonymous emails because they already know. If defendants believe ANON-1 has relevant information, they can seek to speak to him/her directly.

With regard to defendants' third argument that they need the CHS's identity to question him/her about information relating to the case agent and search warrant, that argument fails because the search warrant results are moot. Company A ultimately provided far more voluminous results than the search warrants. In addition, the Ninth Circuit does not permit a "fishing expedition" based on "a mere suspicion." Rowland, 464 F.3d at 909. Multiple agents have worked on this case and the defense fails to identify which particular agent's credibility needs to be tested, why, and based on what evidence. Given the government's unambiguous representation that it intends to use the records obtained directly from Company A, rather than those seized via a warrant, the defendants' proffered reason for seeking the CHS's name and address fall short and their motion should be denied.

C. Government's Interest In Nondisclosure

The government has a strong interest in securing the privacy and security of informants. The complexity and sophistication of the technology involved in cases such as this one make uncovering and pursuing leads particularly challenging. The proliferation of high-tech crimes in the modern Internet era has only increased law enforcement's need for tech-savvy insiders to provide tips and leads. Cultivating such leads is harder in the current environment, however, when law enforcement and the tech community struggle to find common ground and establish trust. If members of the tech community who want

to provide tips to law enforcement have to fear being outed and potentially shamed, fewer people will come forward. If the tipsters also risk encountering expensive overseas litigation and vilification as "vigilantes" (ECF No. 71-1 at 16:7) for providing information to law enforcement, leads will only become scarcer. Deterring tipsters and informants ultimately hurts public safety.

In this case, the risks for the CHS are real. Company A has demonstrated its willingness to use the courts to try to silence the CHS's employer and defendants have used pointed language to denigrate a non-profit that scores of ISPs and other, unbiased institutions use and rely on. At the same time that defendants have taken pains to protect the identity and reputation of Company A, they chose to use the name of Hostwinds' owner repeatedly in their public briefing and insinuate (with **no** justification) that he had committed a crime ("…because the line between whether he was a victim or a co-conspirator is a blurry one," id. at 12:22-23). Based on this conduct, the CHS could justifiably fear retaliation from defendants and their employer if they were to learn of his/her identity.

An additional risk posed by revealing the CHS's identity is that his/her legitimate employment will suffer. The reports provided to the defense show that the CHS's work to disrupt spamming activities involve not just technical proficiency, but also outreach. Revealing the CHS's identity increases the risk of exposure for individuals who communicate with the CHS, which would handicap his/her effectiveness. Revealing the CHS would therefore make both him/her and other sources less likely to provide tips to non-profits and law enforcement in the future.

These risks to the CHS specifically and public safety more broadly are not justified in this case. Here, the CHS was not a percipient witness, had no dealings with the defendants, and was peripheral to the investigation. The CHS also will not testify. By providing information to the FBI about conduct s/he had noticed but not participated in, the CHS's activities fell squarely within the role of tipster and defendants' motion should be denied.[5]

### III

### CONCLUSION

The FBI investigated and corroborated leads identified by the CHS, while also developing its own independent sources. If defendants' argument that the CHS might have helpful information were sufficient to compel disclosure, defendants would be entitled to the name and address of any confidential source who provides information to the government. This argument, however, is unsupported by Ninth Circuit precedent. Their motion seeking to compel production of the CHS's name and address should therefore be denied.

DATED:    March 29, 2019           Respectfully submitted,

                                   ROBERT S. BREWER JR.
                                   United States Attorney

                                   *s/Sabrina L. Fève*
                                   SABRINA L. FEVE
                                   Assistant U.S. Attorney

---

[5] Defendants have made repeated public references to "a larger ongoing investigation into the commercial email practices of Company A." ECF No. 71-1 at 5:3-4. If information relating to the impact on this investigation of disclosing the CHS would assist the Court in deciding this motion, the Government will submit a sealed ex parte declaration for in camera review.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br>             Plaintiff,   ) <br> ) <br>        v.                ) <br> ) <br> ) <br> JACOB BYCHAK (1), ) <br> MARK MANOOGIAN (2), ) <br> MOHAMMED ABDUL QAYYUM (3), ) <br> PETR PACAS (4), ) <br> ) <br>             Defendants. ) <br> ) | Case No. 18-CR46836-GPC <br><br><br><br> CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Sabrina L. Fève, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the Government's Response in Opposition to Defendants' Motion for Informant Discovery on the opposing party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 29, 2019.

*s/Sabrina L. Fève*
SABRINA L. FEVE