ROBERT S. BREWER, JR.
United States Attorney
SABRINA FEVE
MELANIE PIERSON
ROBERT CIAFFA
Assistant U.S. Attorneys
California Bar Nos. 226590, 112520, 179432
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7748
Email: robert.ciaffa@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACOB BYCHAK, ET AL., <br><br> Defendants. | Case No. 18-CR-4683-GPC <br><br> **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS 6-10 AND COUNT 1** <br><br> Date: April 19, 2019 <br> Time: 1:00 p.m. |

The United States of America, by and through its counsel, Robert S. Brewer, Jr., United States Attorney, and Sabrina Feve, Melanie Pierson and Robert Ciaffa, Assistant United States Attorneys, files this Response in Opposition to Defendants' Motion to Dismiss Counts 6-10 and Count 1 [*Dkt*. #69].

## I.
## THE INDICTMENT

All defendants are charged in each count of a ten-count indictment and in several allegations of criminal forfeiture, as follows:

Count 1: Conspiracy to commit offenses against the United States, specifically, wire fraud (18 U.S.C. § 1343) and electronic mail fraud (18 U.S.C. § 1037(a)(5) and (b)(2)(C)), in violation of 18 U.S.C. § 371;

Counts 2 – 5: Wire fraud, in violation of 18 U.S.C. § 1343;

Counts 6 – 10: Electronic mail fraud, in violation of 18 U.S.C. § 1037(a)(5) and (b)(2)(C), and 18 U.S.C. § 2; and

Criminal Forfeiture: Proceeds of and property involved in the conspiracy, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1) and 1037(c), and 28 U.S.C. § 2461(c); proceeds of the wire fraud, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c); and proceeds of the electronic mail fraud, pursuant to 18 U.S.C. § 1037(c).

According to the indictment, the charges stem from the defendants' fraudulent acquisition and use of Internet Protocol (IP) addresses, which were registered to someone else, to send commercial email. *See Indictment,* Count 1, "Manner and Means."

## II.

## DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

Defendants claim that this Court must dismiss Counts 6 through 10 of the indictment charging electronic mail fraud because: 1) Section 1037(a)(5) is unconstitutionally vague, both on its face and as applied to them; and 2) Counts 6 through 10 fail to state an offense. They also claim that this Court must dismiss Count 1 of the indictment, which alleges a conspiracy to commit electronic mail fraud and wire fraud. These allegations are meritless, and should be rejected.

A.  This Motion is Premature and Should Be Denied Without Prejudice

In cases that do not implicate First Amendment freedoms, federal courts should "not consider whether a statute is unconstitutional on its face," but rather, should consider only "whether the statute is impermissibly vague *in the circumstances of this case*.'" *United States v. Rodriguez,* 360 F.3d 949, 953 (9th Cir. 2004) (emphasis in original), citing *United States v. Purdy,* 264 F.3d 809, 811 (9th Cir. 2004); *United States v. Ocegueda*, 564 F.2d 1363, 1365 (9th Cir. 1977) ("It is now established, however, that in cases not involving

First Amendment claims a court may only consider a vagueness challenge on the facts of the case before it."), citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

The question of whether Section 1037 regulates speech protected under the First Amendment is unclear, and the defendants correctly note that the Ninth Circuit has affirmatively chosen not to decide it. *United States v. Kilbride*, 584 F.3d 1240, 1258 (9th Cir. 2009) ("We need not determine whether § 1037 regulates protected speech, thereby permitting defendants' facial vagueness challenge, as in any case Defendants' challenge would be unsuccessful."). A reasonable argument may be made, however, that Section 1037 does not regulate protected speech, but rather, fraudulent conduct as alleged in this case. *See United States v. Simpson*, 741 F.3d 539, 550-51 (5th Cir. 2014) (sending commercial email with intent to deceive or mislead recipients or ISPs as to origin of message, in violation of 1037(a)(2), not protected by First Amendment). Thus, defendants' facial vagueness challenge can be denied without prejudice.

With respect to defendants' challenge to the statute as applied to their conduct, this too is premature. In order to determine whether a statute is unconstitutionally vague in a particular case, "it must be clear what the defendant did." *United States v. Ford*, 2016 WL 4443171 at *14 (D. Ore. 2016). In other words, this motion must wait "until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in." *Id*., citing *United States v. Reed*, 114 F.3d 1067 (10th Cir. 1997) (error to rule on vagueness motion before trial), and *United States v. Reyes*, 2007 WL 831808 at n.1 (N.D. Cal. 2007) (vagueness challenge must await presentation of evidence at trial; "Without reference to any proof of what Defendants' conduct actually was, however, it is impossible to determine whether the statute provided sufficient notice that it prohibited the scheme of conduct in which they actually engaged."). Thus, defendants' vagueness challenge to the statute as applied to them should also be denied without prejudice.

If, however, this Court finds that defendants' motion is not premature, it should be denied on the merits as explained below.

B. <u>The Statute Involved: 18 U.S.C. § 1037 – Electronic Mail Fraud</u>

Counts 6 through 10 allege violations of Title 18, United States Code, Section 1037(a)(5). That statute provides as follows:

> Whoever, in or affecting interstate or foreign commerce, knowingly… falsely represents oneself to be the registrant or the legitimate successor in interest the registrant of 5 or more Internet Protocol addresses, and intentionally initiates the transmission of multiple commercial electronic mail messages from such addresses, or conspires to do so…

is guilty of a felony. Pursuant to Section 1037(b)(2)(C), the punishment for the offense is imprisonment for not more than 3 years and/or a fine under Title 18, if, as alleged in this case, the volume of electronic mail messages transmitted in furtherance of the offense exceeded 2,500 during any 24-hour period, 25,000 during any 30-day period or 250,000 during any one-year period.

C. <u>Legislative History</u>

Section 1037 was enacted as part of the "Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003" (CAN-SPAM Act), Pub.L. No. 108-187, Dec. 16, 2003, 117 Stat. 2699. Its civil penalties were codified at 15 U.S.C. §§ 7701 et seq., and its criminal penalties were codified at 18 U.S.C. § 1037. The Act "does not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047–48 (9th Cir. 2009).

In enacting this law, Congress made several findings about commercial electronic mail, including the following:

> (3) The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both.
> . . .
> (6) The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail . . .

and

> (7) Many senders of unsolicited commercial electronic mail purposefully disguise the source of such mail.

4

*15 U.S.C. § 7701(a), "Findings."* On the basis of those and other findings, Congress determined:

> **(1)** There is a substantial government interest in regulation of commercial electronic mail on a nationwide basis;
>
> **(2)** Senders of commercial electronic mail should not mislead recipients as to the source or content of such mail; and
>
> **(3)** Recipients of commercial electronic mail have a right to decline to receive additional commercial electronic mail from the same source.

*15 U.S.C. § 7701(b), "Congressional Determination of Public Policy."*

Congress also recognized the particular problem posed by senders of spam who disguise or falsify header, domain, and registration information to avoid being identified:

> Compounding these problems is the fact that nearly all spam being sent today is considered untraceable back to its original source without extensive and costly investigation. Although many ISPs try to locate spammers in order to shut down their operations, spammers can rather easily disguise their whereabouts, quickly move to other ISPs, or set up websites at new domains in order to avoid being caught.

*S. REP. 108-102 at \*4, 2004 U.S.C.C.A.N. 2348, 2351*.

With this backdrop, it is clear that Congress intended to prohibit the sending of commercial email under false and fraudulent pretenses, where the senders of such email deliberately hide or falsify their identities. The statute in this case, section 1037(a)(5), seeks to do just that, by prohibiting spammers from "hijacking" IP addresses belonging to someone else in order to disguise their true identities and make it appear that the email is not coming from them.

D. <u>Legal Standards to Be Applied</u>

In seeking to have an act of Congress declared unconstitutionally vague, defendants face an uphill battle. Indeed, the Supreme Court, in rejecting a void-for-vagueness argument, held that there is a "strong presumptive validity that attaches to an Act of Congress," and "we have consistently sought an interpretation which supports the constitutionality of legislation." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). The Ninth Circuit, citing *National Dairy Products*, agrees. *United States*

5

*v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999) ("The presumption is that a statute is constitutional.").

The Ninth Circuit has looked at Section 1037 before, and has articulated the well-established legal standards for analyzing a void-for-vagueness claim. In rejecting a challenge to different subsections of Section 1037, the Ninth Circuit held that a statute is unconstitutionally vague on its face "if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *United States v. Kilbride,* 584 F.3d at 1257, quoting *United States v. Williams*, 553 U.S. 285 (2008). A statute is unconstitutionally vague as applied "if it failed to put a defendant on notice that his conduct was criminal." *Id.*, citing *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001).

In other words, "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. National Dairy Products Corp.*, 372 U.S. at 32-33. A statute will "meet the requirement of 'certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993), citing *Turf Center, Inc. v. United States,* 325 F.2d 793, 795 (9th Cir. 1963).

E.    Section 1037(a)(5) is Not Vague on Its Face

The defendants claim that the terms "*registrant*," "*legitimate successor in interest*," and "*falsely represent*" are unconstitutionally vague. They cite no caselaw in which similar language has been examined, and simply hypothesize various scenarios which, in their opinion, "leave[] so many questions unanswered." *Def Mot.* at p. 7. This is exactly what the Supreme Court said not to do. *United States v. National Dairy Products Corp.*, 372 U.S. at 32 ("The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases").

Although the three terms complained of are not defined in the statute, they do have an "ordinary, contemporary common meaning." *United States v. Kilbride*, 584 F.3d at

6

1257, citing *United States v. W.R. Grace*, 504 F.3d 745, 755 (9th Cir. 2007). Particularly in the context of the crimes charged in the indictment and the terms' common meaning, there is nothing vague about what is prohibited.

The term "*registrant*" is defined as "one that registers or is registered." *Merriam-Webster,* https://www.merriam-webster.com (Mar. 21, 2019). In turn, to "register" means "to make or secure official entry of in a register;" and a "register" is "a written record containing regular entries of items or details," or "a book or system of public records." *Id.*

The term "*successor in interest*" is defined as "a successor to another's interest in property," and "especially : a successor in ownership of a business that is carried on and controlled substantially as it was before the transfer." The term "*legitimate*" is defined as "being exactly as purposed **:** neither spurious nor false," and "accordant with law or with established legal forms and requirements." *Id.*

The term "*represent*" is defined as **"**to act the part or role of." The term "*falsely*" means "intentionally untrue," "adjusted or made so as to deceive," and "intended or intending to mislead." *Id.*

Thus, taken together, the crime of falsely representing oneself to be the registrant of an IP address (or legitimate successor in interest to the registrant), can be understood to mean only one thing: intentionally and deceptively impersonating the registrant of an IP address, or the person to whom the registrant legitimately transferred it. That is exactly what the defendants did in this case.

The terms complained of here are much more precise than those upheld by the Ninth Circuit in *Kilbride, supra*. There, the defendants were charged with materially falsifying header information and domain registration information, in violation of subsections 1037(a)(3) and (a)(4). The statute provided that "materially falsified" means that "it is altered or concealed in a manner that would impair the ability of a recipient of the message, . . . to identify, locate, or respond to a person who initiated the electronic mail message . . ." 18 U.S.C. § 1037(d)(2). The Ninth Circuit held that the terms challenged by the defendants, "material falsification," "altered or concealed," and "impair," were not

7

unconstitutionally vague and had a "clear meaning not open to wholly subjective interpretation." *United States v. Kilbride*, 584 F.3d at 1258. *See also United States v. Twombly*, 475 F.Supp.2d 1019, 1021-23 (S.D. Cal. 2007) (same).

Here, by contrast, the terms "*registrant*," "*legitimate successor in interest*," and "*falsely represent oneself to be the registrant*" are hardly vague. They are not descriptive terms subject to reasonable differences of opinion, questions of degree, or evaluation based on "the eye of the beholder." Rather, these terms are quite specific, and leave no doubt as to their meaning.

Just as there is only one registrant for any vehicle (the person or company whose name appears in the DMV registry), and only one registrant for any piece of real estate (the person or company whose name appears in the County Recorder's registry), and only one registrant for any telephone number (the person or company whose name appears in the phone company's registry), there is only one registrant for any IP address – the person or company whose name appears in the IP registry. If the registrant sells or transfers the IP address, either alone or as part of a corporate sale or transfer of its assets, there is only one legitimate successor in interest -- the buyer who bought it, whose name will then be entered as the new registrant of that IP address. Finally, falsely representing yourself to be registrant, when you are not the registrant, is not a concept subject to any interpretation.

Defendants note that the statute does not specify the person to whom the false representation must be made, and that it is, therefore, unconstitutionally vague. This claim falls far short of a valid vagueness challenge, and should be rejected. *See e.g., United States v. Tandaric*, 152 F.2d 3 (7th Cir. 1945) (defendant convicted of falsely representing himself to be U.S. citizen in job application to private employer; statute not vague, even though no limitation placed upon circumstances under which and persons to whom the false representation made).

F. <u>Section 1037(a)(5) is Not Vague As Applied</u>

Defendants' argument concerning the application of the statute to their conduct reflects a misunderstanding of the facts of this case. Defendants' argument rests primarily

8

on their claim that the IP addresses they "hijacked" were not registered to anyone at all. *Mot*. at p. 7-8. This is incorrect.

A brief summary of the history of IP address allocation and registration is helpful to appreciate the fallacy of defendants' argument. "Each device connected to the global Internet needs a numeric identifier, an 'Internet Protocol' address," and each IP address must be unique, that is, "not used by any other device on the network." *Guidance from ARIN on Legal Aspects of the Transfer of Internet Protocol Numbers,* https://www.americanbar.org/publications/blt/2013/05/03_edelman.html (May 7, 2018). The concept of IP uniqueness "is the crux of the value and importance of IP addressing." *Id*. "If a network attempted to connect to the Internet using IP addresses already in use by another network, both networks would find their communications unreliable." *Id.*

IP uniqueness is "assured by the Internet Registry System," which was first established by the U.S. Government. *Id*. Prior to 1997, the National Science Foundation (NSF) was responsible for IP number allocation and registration. It performed these functions through its contractor, Network Solutions (NSI). The IP registry, at that time, was called the Network Information Center (also known as InterNIC). In 1997, the Government approved the transfer of its duties and responsibilities from NSF to the American Registry of Internet Numbers (ARIN). *Id*. ("ARIN carries out duties assigned to it . . . that had previously been performed by the government."). *See also Amendment 7 to Cooperative Agreement Between NSI and US Government,* Dec. 3, 1997, in which NSF acknowledged transfer of responsibility from Network Solutions to ARIN, copy attached.

Thus, ARIN inherited all the duties and responsibilities concerning the allocation and registration of IP addresses, including the Internet Registry, formerly performed by the U.S. government. The Internet Registry is now called "WhoIs," and contains the registration information for all IP addresses, regardless of when they were allocated or registered. It is publicly available on the Internet, free of charge, and contains information about every IP address, including the name and address of the registrant.

1    ARIN specifically recognizes IP addresses that were issued and registered by a
2    predecessor Internet Registry as "legacy number resources," and their registrants as
3    "legacy resource holders":

> A legacy number resource is an IPv4 address or Autonomous System Number that was originally issued to the current registrant by an Internet Registry (InterNIC or its predecessors) prior to the inception of ARIN on 22 December 1997. A legacy resource holder is any individual or organization that was directly issued legacy number resources.

*Https://www.arin.net/about/corporate/agreements/rsa_faq* (Mar. 19, 2019). Importantly, ARIN still refers to such persons or companies as "the current registrant." Thus, simply because an IP address was registered to a particular person or company in a predecessor Internet Registry such as InterNIC, does not mean that the IP address somehow lost its registrant when ARIN inherited the registry from the Government.[1]

ARIN keeps the registry for all IP addresses which contains, among other things, the name of the current registrant and date of registration. ARIN encourages registrants to provide a current point of contact, and specifically notes the danger of allowing such information to become stale:

> ARIN has increasingly found that registration records that haven't been updated have become the prime targets of hijackers and other potential criminals. One common approach is to find these dormant resource, organization and POC records, and then try to determine if their associated resources are being used by a viable organization. *If it appears that the resources aren't being used or that the registrant is no longer in business, the perpetrators then attempt to emulate the organization so they can take over the organization record and its related resources (including persuading ISPs to begin routing those resources).*

*Https://www.arin.net/reference/materials/accuracy* (Mar. 19, 2019) (emphasis supplied). That is exactly what happened in this case.

Each of the IP address blocks referenced in Counts 6 through 10 was registered to a specific organization or company, and the defendants' argument to the contrary flies in the

---

[1] Defendants' reference to Registration Services Agreements (RSAs) and Legacy Registration Services Agreements (LRSAs) is irrelevant to whether a person or company is the registrant of an IP address. ARIN offers those who registered their IP addresses in predecessor registries the opportunity to sign up for a plan allowing membership and other services provided by ARIN. They have nothing to do with ARIN's responsibility to keep and maintain the IP address registry it acquired in 1997.

face of their conduct.[2]  In order to hijack the IP address blocks, the defendants checked ARIN's Internet Registry and tailored their actions to fraudulently impersonate the listed registrant.  Specifically, the defendants created false Letters of Authorization, purportedly signed by the true registrant, authorizing the use of the IP addresses.  They also bought domain names matching those used by the true registrants in order to send and receive emails and make it appear that the true registrant was using the IP address.  In other words, the defendants very well understood that the IP address blocks were registered to someone else, and deliberately tailored their behavior accordingly.  If the defendants truly believed that the IP addresses were not registered to anyone, they would not have gone to such great lengths to falsely impersonate the registrants.

For all the above reasons, section 1037(a)(5) is not vague as applied to the defendants in this case.

### G. Counts 6-10 Properly State An Offense

Defendants claim that Counts 6 through 10 fail to state an offense, *not* because they do not track the statute, but because they do not allege what the defendants think the statute "should mean." *Mot*. at p. 9.  This claim is meritless.

"In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted).  "[T]he court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Id*.  "The indictment either states an offense or it doesn't.  There is no reason to conduct an evidentiary hearing." *Id*.

Defendants' claim rests on the same arguments made in their claim to dismiss for vagueness, that is, on the same misunderstanding of the Internet Registry system, the terms of the statute, and their conduct in this case.  For the same reasons set forth above, this Court should decline defendants' invitation to "read in" to the statute the various limitations

---

[2] The Government provided the defendants with the WhoIs registry showing the true registrant for each of the IP address blocks charged in this case.

11

they suggest. Counts 6 through 10 correctly track the statute, and defendants do not claim otherwise. This claim should be denied.

### H. The Conspiracy Count Should Not Be Dismissed

Defendants claim that this Court should dismiss the conspiracy charge alleged in Count 1. They claim that if the substantive counts charging a violation of Section 1037(a)(5) are void for vagueness, then a conspiracy to commit that crime must fail as well. *Mot*. at 10-11. Since Section 1037(a)(5) is *not* void for vagueness, for the reasons set forth above, defendants' argument must be rejected.

In addition, Count 1 alleges a conspiracy to violate two statutes, wire fraud and electronic mail fraud. In order to achieve their goal of dismissing the conspiracy count, and with no legal support, defendants gloss over the wire fraud and claim that the Government "is really alleging" only a conspiracy to commit electronic mail fraud. *Mot*. at p. 10. Regardless of what defendants think the Government "is really alleging," the allegations are contained in the indictment as written. This claim fails.

## III.
## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

DATED: March 29, 2019               Respectfully submitted,

                                    ROBERT S. BREWER, JR.
                                    United States Attorney

                                    /s/ Robert Ciaffa
                                    ROBERT CIAFFA
                                    Assistant United States Attorney