| | |
|---|---|
| Gary S. Lincenberg - SBN 123058<br>glincenberg@birdmarella.com<br>Naeun Rim - SBN 263558<br>nrim@birdmarella.com<br>BIRD, MARELLA, BOXER,<br>WOLPERT, NESSIM, DROOKS,<br>LINCENBERG & RHOW, P.C.<br>1875 Century Park East, 23rd Floor<br>Los Angeles, California 90067-2561<br>Telephone: (310) 201-2100<br>Facsimile: (310) 201-2110<br><br>*Attorneys for Defendant Petr Pacas*<br><br>David W. Wiechert - SBN 94607<br>dwiechert@aol.com<br>Jessica C. Munk - SBN 238832<br>jessica@davidwiechertlaw.com<br>William J. Migler - SBN 318518<br>william@davidwiechertlaw.com<br>LAW OFFICE OF DAVID W. WIECHERT<br>27136 Paseo Espada, Suite B1123<br>San Juan Capistrano, California 92675<br>Telephone: (949) 361-2822<br><br>*Attorneys for Defendant Jacob Bychak* | Randy K. Jones - SBN 141711<br>rkjones@mintz.com<br>MINTZ, LEVIN, COHN, FERRIS,<br>GLOVSKY AND POPEO, P.C.<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, California 92130<br>Telephone: (858) 314-1510<br><br>*Attorney for Defendant Mark Manoogian*<br><br>Whitney Z. Bernstein - SBN 304917<br>wbernstein@bmkattorneys.com<br>Thomas H. Bienert, Jr. - SBN 135311<br>tbienert@bmkattorneys.com<br>James Riddet - SBN 39826<br>jriddet@bmkattorneys.com<br>BIENERT, MILLER & KATZMAN, PLC<br>903 Calle Amanecer, Suite 350<br>San Clemente, California 92673<br>Telephone: (949) 369-3700<br><br>*Attorneys for Defendant Mohammed Abdul Qayyum* |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JACOB BYCHAK, MARK MANOOGIAN, MOHAMMED ABDUL QAYYUM, AND PETR PACAS,<br><br>　　　　Defendants. | CASE NO. 3:18-cr-04683-GPC<br><br>**REPLY FOR MOTION TO DISMISS NO. 1**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION:**<br><br>**(1) TO DISMISS THE INDICTMENT BASED ON THE GOVERNMENT MISADVISING THE GRAND JURY ON THE LAW; (2) IN THE ALTERNATIVE, FOR DISCLOSURE OF GRAND JURY MATTERS**<br><br>Hearing Date: April 19, 2019<br>Hearing Time: 1:00 p.m.<br>Assigned to Hon. Gonzalo P. Curiel |

## **TABLE OF CONTENTS**

| | | Page |
|---|---|---:|
| I. | INTRODUCTION | 3 |
| II. | DEFENDANTS HAVE PRESENTED CIRCUMSTANTIAL EVIDENCE THAT THE GRAND JURY WAS MISADVISED | 4 |
| | A. The Government Uses the Pejorative "Spam" and Refers to "Victims of Spam" | 5 |
| | B. The Government Compares Sending Commercial Email to Other Illegal Activity and Aligns Itself with Spamhaus | 6 |
| | C. The Government Suggests That Using DBAs to Register Multiple Domain Names Is Illegal | 7 |
| | D. The Combination of Improper Advice to a Grand Jury and Erroneous or Prejudicial Testimony Is a Basis for Dismissal of the Indictment | 8 |
| III. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Brito*,
   907 F.2d 392 (2nd Cir. 1990) ............................................................................... 8

*United States v. Hogan*,
   712 F.2d 757 (2nd Cir. 1983) ............................................................................... 8

*United States v. Navarro*,
   608 F.3d 529 (9th Cir. 2010) ............................................................................... 7

*United States v. Peralta*,
   763 F. Supp 14 (S.D.N.Y. 1993) ..................................................................... 4, 8

**Statutes**

CAN-SPAM Act ............................................................................................. 3, 4, 5, 7

# I. INTRODUCTION

The Government's Opposition is remarkable for the issues it fails to address. The Government sidesteps the following:

- whether or not it instructed the grand jury on the law at all;
- the extent to which, before the grand jury, it used the pejorative "spam," referred to "victims" of spam, or compared sending spam to other illegal activity;
- the extent to which it has aligned itself with Spamhaus' goal to eradicate all spam (contrary to the CAN-SPAM Act [the "Act"]); and
- whether it told the grand jury that use of DBAs to register multiple domain names violates the Act.

Instead, the Government focuses elsewhere. First, on arguing how hard it is to meet the legal standards for dismissal based on grand jury error and disclosure of grand jury matters. Second, on downplaying the significance of Defendants' evidence.

Regarding the applicable legal standards, the Government does not address or even acknowledge any of the cases Defendants cited where indictments **were** dismissed or grand jury matters **were** disclosed based on the specific type of conduct of concern here—false or misleading statements of the law. *See* Opening Mem. at 7:20-8:23, 9:13-22, Dkt. 70. As for the evidence, the Government argues that Defendants are engaging in "mere speculation." Opp. at 5:2, Dkt. 76. But on the contrary, Defendants have presented evidence in the record strongly suggesting that the Government misadvised the grand jury on the law. *See* Opening Mem. at 10:17-12:5.

Although the Government tries to pick away at each piece of Defendants' evidence in isolation, when all of the evidence is viewed in its totality and placed in proper perspective, Defendants have demonstrated the "particularized need" to warrant disclosure of grand jury matters. *See* Opening Mem. at 8:24-9:25. Thus, the Court has a sufficient basis to exercise its discretion to order disclosure of the

3 Case No. 3:18-cr-04683-GPC
REPLY FOR MOTION TO DISMISS NO.1

grand jury transcripts[1] in which the Government (or possibly witnesses) commented on the Act, spam, or the use of DBAs. And if the transcripts confirm that the Government did misadvise the grand jury, then Defendants have met the standard for dismissal by showing the grand jury's decision was "substantially influenced" by error or "grave doubt" that the grand jury's decision to indict was "free from the substantial influence" of error. *See* Opening Mem. at 7:7-23.

## II. DEFENDANTS HAVE PRESENTED CIRCUMSTANTIAL EVIDENCE THAT THE GRAND JURY WAS MISADVISED

As a threshold matter, the Government's refusal to acknowledge whether or not it instructed the grand jury on the law is telling. To confuse the issue, the Government stresses that it was not required to instruct the grand jury. Opp. at 5:10-12. But Defendants are not arguing that the Government improperly **failed** to instruct the grand jury—Defendants are arguing that there is compelling evidence raising the reasonable inference that the Government affirmatively instructed or explained the law to the grand jury in an erroneous or misleading way. If the Government did not explain the law to the grand jury at all, then the Government should come out and say so. But given that the Act concerns highly technical matters that the average citizen would not be familiar with, it is inconceivable that the Government did not explain the law to the grand jury.

Thus, the question remains: How did the Government instruct or otherwise present legal commentary to the grand jury? The circumstantial evidence Defendants have presented strongly suggests that the Government did so in a

---

[1] The Government mischaracterizes Defendants' request for disclosure of the grand jury transcripts as a request for "disclosure of the transcripts of the legal instruction provided to the grand jury." (Opp. at 15.) Defendants' request encompasses the entire record of the grand jury proceedings, which the Court must consider as a whole to evaluate prejudice to Defendants caused by any misleading instruction or testimony. *See United States v. Peralta*, 763 F. Supp 14 (S.D.N.Y. 1993).

manner that misled the grand jury.[2]

### A. The Government Uses the Pejorative "Spam" and Refers to "Victims of Spam"

The Government cannot seriously dispute that it used the term "spam" before grand jury. Indeed, it uses the term in the Indictment. *See* ¶¶ 2.c. & 8. Although the Government tries to downplay the effect of this pejorative, referring to the type of "commercial electronic mail" regulated by and defined under the Act as "spam" is the equivalent of labelling an undocumented refugee an "illegal" alien, a sex worker a "hooker," or a defendant a "criminal" during trial. It is designed to plant in the grand jury's mind the impression that commercial email is a negative, bad, and/or illegal thing.

Reinforcing that conclusion is the Government's blithe reference to "victims" of spam before this Court:

> Just to provide a record for the Court, in this case, **the allegations are that these individuals** as well – in the course of their employment for Company A, **sent unsolicited, commercial e-mail to people who had not consented, registered to or agreed to be the recipients of this e-mail**, which is commonly call [sic] **"spam."** So, **under these allegations, the people who received the unsolicited e-mails were victims.**

Declaration of Naeun Rim ("Rim Decl."), Exh. A, at p. 15:13-19, Dkt. 70-2 (emphasis added). Significantly, the Government does not confirm or deny whether it referred to recipients of spam as "victims" before the grand jury. The Government deliberately avoids the issue by asserting that whether recipients of spam are victims "is left for another day." Opp. at 9:26-27. The Government also complains that Defendants are taking the Government's words out of context. Opp.

---
[2] Even more questions are raised by the Government's opposition to Defendants' motion to dismiss the Act counts as void for vagueness. *See* Dkt. 75, at 5:16-21 & 7:16-20. As Defendants pointed out in their concurrently filed reply in support of the void for vagueness motion, the Government has inconsistently interpreted subsection (a)(5) of the Act.

5 Case No. 3:18-cr-04683-GPC
REPLY FOR MOTION TO DISMISS NO.1

at 8:13-16. But the Government's choice of words is a reflection of the Government's view of this case. And if the Government was willing to use this terminology before this Court, it is reasonable to infer that the Government was willing to use it before the grand jury as well.[3]

### B. The Government Compares Sending Commercial Email to Other Illegal Activity and Aligns Itself with Spamhaus

The Government now proclaims: "It has never been the Government's position that sending unsolicited commercial email, in and of itself, is a criminal act." Opp. at 9:11-12. Yet that is precisely the position the Government took in open court when it compared sending commercial email to a "boiler-room scheme." *See* Rim Decl., Exh. A, at p. 16:12-22. And the Government cannot deny that it has closely aligned itself with Spamhaus, a foreign organization that seeks to eradicate all unsolicited commercial email regardless of whether it is legal in the United States. *See* Opening Mem. at 6:22-26 n.2, 20:21-21:28 & n.9. In fact, a Spamhaus representative was the confidential informant who has fed information to the Government since 2013, triggering a nearly six-year long ongoing investigation. *See* Dkt. 71-1, at 9:4-10:6. The Government tries to minimize this alignment as having merely "communicated with representatives" of Spamhaus. Opp. at 8:4-7. But not only was this more than mere communication, the Government's statement reflects that it was dealing with more than one representative of Spamhaus. It is reasonable to infer that Spamhaus' rigid, anti-spam ideology has influenced the Government's presentation of this case to the grand jury.

---

[3] Moreover, it would be highly probative to know how the Government described to the grand jury the nature of Company A's "spam." Did the Government accurately portray the emails in this case as sent on behalf of legitimate advertisers such as banks and insurance companies? Or did the Government erroneously imply that Company A sent unwanted emails from scammers, fraudsters, or pornographers?

### C. The Government Suggests That Using DBAs to Register Multiple Domain Names Is Illegal

Once again, the Government avoids the issue by refusing to state whether it told the grand jury that using DBAs to register multiple domain names violates the Act. The Government justifies its refusal by arguing that such conduct is only relevant to the wire fraud counts in the Indictment because the subsection of the Act that would arguably be violated by such conduct was not charged. Opp. at 11:3-13:5 & 13:26-27 n.4. The Government actually argues that "[i]t is manifestly unfair to consider dismissing an indictment because the Government failed to properly instruct the jury on a charge not found within the four corners of the indictment." Opp. at 13:2-5. We can only presume from this statement, coupled with the Government's express refusal to respond to Defendants' extensive legal argument demonstrating that the use of DBAs to register multiple domain names does not violate the Act (Opening Mem. at 12:21-18:13), that Defendants' position is correct and that the Government conveyed incorrect legal instructions to the grand jury.

If the Government erroneously told the grand jury that one law was violated by the Defendants, the grand jury's decision to indict the Defendants for violation of other laws was either "substantially influenced" by that error, or there is grave doubt that the decision to indict was free from the substantial influence" of that error. This, coupled with the other evidence in the record, would satisfy the standard for dismissal under *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010). And if there is any doubt that the standard for dismissal has been satisfied based on the extant record, then Defendants have at least shown the "particularized need" required for disclosure of grand jury materials to enable the Court to rule on dismissal. *See* Opening Mem. at 8:26-9:25.

7

Case No. 3:18-cr-04683-GPC
REPLY FOR MOTION TO DISMISS NO.1

### D. The Combination of Improper Advice to a Grand Jury and Erroneous or Prejudicial Testimony Is a Basis for Dismissal of the Indictment

It is not only erroneous advice from the Government which can improperly influence a grand jury, but misleading witness testimony as well. In considering whether dismissal is warranted, the Court must consider the entire record of the grand jury proceedings, including misleading witness testimony. *See United States v. Hogan*, 712 F.2d 757, 761-62 (2nd Cir. 1983) (holding indictment must be dismissed because of the use of "false and misleading" hearsay testimony). In *United States v. Peralta*, 763 F. Supp 14 (S.D.N.Y. 1993), a case cited in the Defendants' opening memorandum, the District Court held that the cumulative effect of misleading instructions to the grand jury and use of inaccurate hearsay testimony was a basis to dismiss the indictment. There, a case agent's grand jury testimony was described by the district judge as "comprised entirely of hearsay, derived from brief conversations on the day of the arrest with the arresting officer…." *Id.* at 15. The court included in its opinion a discussion on reliance on hearsay testimony in grand jury proceedings and noted that the Second Circuit in *United States v. Brito*, 907 F.2d 392 (2nd Cir. 1990) "reiterated its longstanding concern with the government's practice of using a 'case agent' before a grand jury in place of eyewitness testimony…." The court in *Brito* stated that this practice threatens the independence of the grand jury function. Consistent with *Brito*, the court in *Peralta* considered the record of the grand jury proceedings as a whole, including inaccurate witness testimony, to evaluate prejudice and dismiss the indictment: "We find that defendant was seriously prejudiced by the cumulative effect of the government's misleading statements of law and its use of inaccurate hearsay testimony." *Peralta*, 763 F. Supp. at 21.

Thus, in addition to any mischaracterizations of the law by the prosecutors themselves, the Court must also consider whether there was misleading testimony

from witnesses regarding the legality of unsolicited commercial emailing. In this case, given that the Government's investigation relied heavily on information from an informant who was an employee of Spamhaus,[4] an organization that favors the elimination of all unsolicited commercial email regardless of whether legal or not, the defense submits there is a strong likelihood that the grand jury was presented with evidence of the goals of Spamhaus or the perceived evil of unsolicited emails.

For these reasons, this Court must require that the Government provide the entire grand jury transcript not only to determine what instructions were given to the grand jury but also to determine if misleading or prejudicial evidence was presented.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion should be granted.

Respectfully submitted,

DATED: April 12, 2019

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: *s/ Naeun Rim*
Naeun Rim
Attorneys for Defendant Petr Pacas

---

[4] As discussed further in the motion for informant discovery, the FBI interviewed the Spamhaus informant by phone and in person on July 12, 2013, June 2, 2014, November 30, 2014, and exchanged numerous emails with him, including on July 15, 2013, July 31, 2013, October 17, 2014, and October 18, 2014.

| | | |
|---|---|---|
| DATED: April 12, 2019 | | David W. Wiechert<br>Jessica C. Munk<br>William J. Migler<br>Law Office of David W. Wiechert |
| | By: | _s/ Jessica C. Munk_<br>Jessica C. Munk<br>Attorneys for Defendant Jacob Bychak |
| DATED: April 12, 2019 | | Randy K. Jones<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. |
| | By: | _s/ Randy K. Jones_<br>Randy K. Jones<br>Attorney for Defendant Mark Manoogian |
| DATED: April 12, 2019 | | Whitney Z. Bernstein<br>Thomas H. Bienert, Jr.<br>James Riddet<br>Bienert, Miller & Katzman, PLC |
| | By: | _s/ Whitney Z. Bernstein_<br>Whitney Z. Bernstein<br>Attorneys for Defendant Mohammed Abdul Qayyum |

# CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from to affix their electronic signatures to this document.

Respectfully submitted,

DATED: April 12, 2019

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By: _____*s/ Naeun Rim*_____
Naeun Rim
Attorneys for Defendant Petr Pacas

# CERTIFICATE OF SERVICE

Counsel for Defendants certify that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Sabrina L. Feve

Assistant U.S. Attorney

sabrina.feve@usdoj.gov

Melanie K. Pierson

Assistance U.S. Attorney

melanie.pierson@usdoj.gov

Robert Ciaffa

Assistant U.S. Attorney

robert.ciaffa@usdoj.gov

Respectfully submitted,

DATED: April 12, 2019

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By: _____*s/ Naeun Rim*_____
Naeun Rim
Attorneys for Defendant Petr Pacas