1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BIENERT, MILLER & KATZMAN, PLC**
Thomas H. Bienert, Jr., SBN 135311
James Riddet, SBN 39826
Whitney Z. Bernstein, SBN 304917
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Email: jriddet@bmkattorneys.com
        tbienert@bmkattorneys.com
        wbernstein@bmkattorneys.com

*Attorneys for Defendant*
*Mohammed Abdul Qayyum*

Additional counsel on next page

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, MARK MANOOGIAN, MOHAMMED ABDUL QAYYUM, and PETR PACAS,<br><br>Defendants. | Case No. 18-CR-04683-GPC<br>Hon. Gonzalo P. Curiel<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION:**<br><br>**(1) TO DISMISS THE CAN-SPAM ACT COUNTS (6 THROUGH 10) OF THE INDICTMENT AS VOID FOR VAGUENESS;**<br>**(2) IN THE ALTERNATIVE, TO DISMISS COUNTS 6 THROUGH 10 FOR FAILURE TO STATE AN OFFENSE;**<br>**(3) TO DISMISS THE CONSPIRACY COUNT (1)**<br><br>Hearing Date:  April 19, 2019<br>Hearing Time:  1:00 p.m.<br>Department:  Courtroom 2D |

1

**LAW OFFICE OF DAVID W. WIECHERT**
David W. Wiechert, SBN 94607

2

Jessica C. Munk, SBN 238832
William J. Migler, SBN 318518

3

27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675

4

Telephone: (949) 361-2822
Email: dwiechert@aol.com

5

jessica@davidwiechertlaw.com
william@davidwiechertlaw.com

6

*Attorneys for Defendant Jacob Bychak*

7

8

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.**

9

Randy K. Jones, SBN 141711
3580 Carmel Mountain Road, Suite 300

10

San Diego, CA 92130
Telephone: (858) 314-1510

11

Email: rkjones@mintz.com

12

*Attorney for Defendant Mark Manoogian*

13

14

**BIRD MARELLA BOXER WOLPERT NESSIM
DROOKS LINCENBERG RHOW P.C.**

15

Gary Lincenberg, SBN 123058
Naeun Rim, SBN 263558

16

1875 Century Park East, Floor 23
Los Angeles, CA 90067

17

Telephone: (310) 201-2100
Email: gsl@birdmarella.com

18

nrim@birdmarella.com

19

*Attorneys for Defendant Petr Pacas*

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS (Dkt. 69)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    THE MOTION IS NOT PREMATURE ............................................................ 3

III.   THE GOVERNMENT'S ARGUMENT THAT SUBSECTION (a)(5)
       IS NOT UNCONSTITUTIONALLY VAGUE IS UNPERSUASIVE ........... 5

       A.    SUBSECTION (a)(5) IS VAGUE ON ITS FACE ................................. 5

             1.    In the Absence of Authority, the Government Provides Its
                   Own Inconsistent Interpretations of Subsection (a)(5) ............... 5

             2.    The Government Fails In Its Attempt to Explain That the
                   Term "Registrant" Is Clear and Unequivocal ............................. 7

                   a.    The Government's Analogies Are Not Relevant to
                         "Inactive" Pre-ARIN IP Addresses ................................. 7

                   b.    Pre-ARIN IP Addresses Are Not "Registered"
                         Unless There Is An Executed Legacy RSA ....................... 8

             3.    The Government Fails In Its Attempt to Explain That the
                   Requisite False Representation Is Not Open to
                   Interpretation ............................................................................... 10

       B.    SUBSECTION (a)(5) IS VAGUE AS APPLIED TO
             DEFENDANTS ...................................................................................... 11

IV.    THE GOVERNMENT'S BROAD CONSTRUCTION OF
       SUBSECTION (a)(5) SHOULD BE REJECTED ......................................... 12

V.     THE CONSPIRACY COUNT MUST BE DISMISSED ............................... 14

VI.    CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Acosta v. Huppenthal,* No. 10-623-TUC-AWT, 2013 WL 871892
    (D. Ariz. Mar 8, 2013).........................................................................................2

*Arce v. Douglas,*
    793 F.3d 968 (9th Cir. 2015).........................................................................2

*People v. Materne,*
    72 F.3d 103 (9th Cir. 1995).........................................................................13

*United States v. Castillo-Pena,*
    647 F.3d 318 (4th Cir. 2012)...................................................................11, 12

*United States v. Du Bo,*
    186 F.3d 1177 (9th Cir. 1999).....................................................................14

*United States v. Kilbride,*
    584 F.3d 1240 (9th Cir. 2009)..................................................................3, 6

*United States v. Millis,*
    621 F.3d 914 (9th Cir. 2010).......................................................................13

*United States v. National Dairy Products Corp.*
    372 U.S. 29 (1963)......................................................................................7

*United States v. Reed,*
    114 F.3d 1067 (10th Cir. 1997)...............................................................4, 12

*United States v. Reyes,* No. CR 06-00556 2007, WL 831808
    (N.D. Cal. Mar 16, 2007)..............................................................................4

*United States v. Simpson,*
    741 F.3d 539 (5th Cir. 2014).........................................................................3

*United States v. Williams,*
    533 U.S. 285 (2008)......................................................................................1

*United States v. Wright,* No. 2:14-cr-357-AOG-VCF, 2015 WL 9958034
    (D. Nev. Dec 4, 2014)...................................................................................4

**Statutes**

18 U.S.C. § 992(g)...............................................................................................4
18 U.S.C. § 1037(a)(5)..................................................................................*passim*
18 U.S.C. § 1037(a)(2)..........................................................................................3

**Other Authorities**

Sen. No. 887, 108th Cong., 1st Sess., 104 (2003), 149 Cong. Rec. S13176-03, at
    *S13178. (daily ed. Oct. 23, 2003) 2003 WL 22415941...............................13

1

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    The Government cites no case law construing subsection (a)(5) of the criminal

4    provisions of CAN-SPAM Act because there is none.  Although the Government

5    extensively cites the Act's general legislative history, none of it specifically pertains

6    to subsection (a)(5).  The only legislative history pertaining to subsection (a)(5) is that

7    it previously read "represents the right to use" IP addresses, which was changed by

8    Congress to require "represents oneself to be the registrant."  This legislative history

9    shows Congress intended to narrow criminal liability.  While the Act deals with

10   technical subject matter unfamiliar to the average citizen, key terms such as

11   "registrant" and "legitimate successor in interest to the registrant" are not defined in

12   the Act or its implementing regulations or in the legislative history.  In addition,

13   subsection (a)(5) fails to provide meaningful guidance regarding the false

14   representation required to trigger criminal liability.

15   Instead of relying on relevant authority, the Government substitutes what **it**

16   thinks subsection (a)(5) **should** mean for the lack of guidance provided by the courts

17   and Congress.  Indeed, the Government seems to be making up on the fly what

18   subsection (a)(5) means, creating more confusion rather than clarifying the issues.

19   But citizens should not have to second-guess how an aggressive prosecutor will seek

20   to use an untested statute.  A statute is unconstitutionally vague on its face if it "fails

21   to provide a person of ordinary intelligence fair notice of what is prohibited, or is so

22   standardless that it authorizes or encourages seriously discriminatory enforcement."[1]

23   Subsection (a)(5) is precisely that type of statutory provision.

24   The Government fares no better under an as-applied vagueness challenge.  The

25   critical threshold issue is whether Defendants were on notice that the IP addresses

26   identified in the Indictment as "inactive" had "registrants," such that using them could

27

28

[1] *United States v. Williams*, 553 U.S. 285, 304 (2008).

1   lead to criminal liability under subsection (a)(5).  While the Government repeatedly
2   says the National Science Foundation ("NSF") was responsible for IP number
3   allocation and registration before ARIN – the very evidence it presented to this Court
4   shows the NSF was responsible for IP address "assignment" – not "registration."
5   Although IP addresses that were old and "inactive" by 2011-2013 may have been
6   initially "assigned" decades ago, that does not mean those addresses were "registered"
7   with the American Registry for Internet Numbers ("ARIN") the organization
8   responsible, since 1997, for allocation and registration of IP addresses.   ARIN
9   required newly allocated IP addresses to be registered through execution of
10   Registration Services Agreements ("RSAs"), but only encouraged voluntary
11   registration of old IP addresses through execution of legacy RSAs.  Thus, to be able
12   to decipher whether or not an old, effectively abandoned pre-ARIN IP address could
13   have a "registrant" would have required Defendants to be a combination of digital
14   detectives and Internet historian-archaeologists.   This is too much to ask of
15   Defendants to enable them to avoid criminal liability.  In addition, the Government
16   concedes that Defendants never expressly represented that they were "registrants."
17   But subsection (a)(5) requires that one "represent oneself to be the registrant."  When,
18   as here, "a particular application of an otherwise-permissible statute stretches the
19   breadth of the statute further than could be reasonably anticipated," an as-applied
20   vagueness challenge is "viable."[2]

21       Finally, as an alternative to declaring subsection (a)(5) void as to Defendants,
22   this Court can, as a matter of first impression, narrowly construe subsection (a)(5).
23   The construction Defendants propose would correct subsection (a)(5)'s inherent
24   vagueness by requiring IP addresses to be registered with ARIN and requiring an
25   express representation of "registrant" status.  This warrants dismissal of the CAN-

---

27   [2] *Acosta v. Huppenthal*, No. CV 10-623-TUC-AWT, 2013 WL 871892, at *12 (D.
    Ariz. Mar. 8, 2013), *aff'd in part, rev'd in part on other grounds, and remanded by*
28   *Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015).

1    SPAM Act counts for failure to state an offense.  And once those counts are dismissed,

2    the conspiracy count falls, since the "objects" of the conspiracy are to violate the Act.

3    **II.     THE MOTION IS NOT PREMATURE**

4         To avoid a facial vagueness challenge, the Government first tries to cast this

5    case as one not implicating First Amendment freedoms.  Opp. at 2:23-3:2.  Further,

6    the Government argues that an as-applied challenge cannot be made until after **all**

7    evidence is presented in a **full** trial on the merits.  Opp. at 3:14-27.  The Government

8    is wrong on both counts.

9         First, the Government argues Section 1037 cannot be subject to a facial

10   vagueness challenge because "whether Section 1037 regulates speech protected under

11   the First Amendment is unclear."[3] Opp. at 3:3-4. The only case the Government cites

12   to support its argument that the Court should deny Defendants' facial challenge to

13   subsection (a)(5) is *United States v. Simpson*, 741 F.3d 539, 550-51 (5th Cir. 2014).

14   However, *Simpson* dealt with subsection (a)(2) of the CAN-SPAM Act, a different

15   subsection than the one charged.  *Simpson* furthers Defendants' argument of First

16   Amendment protection.  In *Simpson*, the Fifth Circuit recognized that "commercial

17   speech receives First Amendment protection if the commercial speech is not false,

18   deceptive or misleading."  741 F.3d at 550.  The Fifth Circuit held that subsection

19   (a)(2) was not subject to First Amendment protection because subsection (a)(2) "is

20   expressly limited to 'commercial' electronic mail that is sent 'with the intent to

21   deceive or mislead recipients….'" *Id.* at 551 (quoting 18 U.S.C. § 1037(a)(2)).  In

22   contrast, subsection (a)(5) does not require there to be anything false, deceptive or

23   misleading about the content or transmission of the commercial emails.  The falsity

24   element does not concern commercial speech whatsoever, which *Simpson* recognized

25

26

27   [3] The Government recognizes that the Ninth Circuit declined to rule on a facial
     challenge involving subsections (a)(3) and (a)(4) in *United States v. Kilbride*, 584

28   F.3d 1240, 1258 (9th Cir. 2009). Opp. at 3:4-8.

1    receives First Amendment protection.   Thus, First Amendment protection accorded

2    to commercial speech makes a facial vagueness challenge appropriate at this time.

3         Next, the Governments argues that Defendants' as-applied vagueness challenge

4    is also premature until evidence has been introduced at trial.   The Government ignores

5    the in-circuit district court case cited by Defendants that did rule on an as-applied

6    challenge pre-trial (*see* Opening Mem. at 4:18-20)[4] and instead relies on *United States*

7    *v. Reed*, 114 F.3d 1067 (10th Cir. 1997) and *United States v. Reyes*, No. CR 06-00556,

8    2007 WL 831808 (N.D. Cal. Mar. 16, 2007) to argue the Court cannot entertain an

9    as-applied challenge prior to trial.   Opp. at 3:17-25.   The Government's argument is

10   misplaced – both of those vagueness challenges dealt with heavily disputed, fact-

11   intensive analyses that were dependent on how the evidence emerged at trial.   In *Reed*,

12   the Tenth Circuit held that defendant's vagueness challenge as to whether he was a

13   drug "user" within the meaning of 18 U.S.C. § 922(g) involved a "fact intensive

14   analysis" that could only be based on facts as they emerge at trial.   114 F.3d at 1070.

15   At the same time, the *Reed* court made clear that its decision might have been different

16   had the parties presented a set of undisputed facts relevant to the vagueness issue.   *Id.*

17   Similarly, in *Reyes*, defendants' vagueness challenge was based on disputed facts as

18   to whether defendants could have violated the honest services fraud statute.   2007 WL

19   831808, at *3-8.

20        Unlike *Reed* and *Reyes*, Defendants' as-applied challenge depends on a limited

21   set of facts that are largely undisputed and do not require a full trial on the merits to

22   adjudicate.   Defendants' challenge also depends on the definition of the undefined

23   terms "registrant" and "legitimate successor in interest to the registrant" which has

24   nothing to do with what Defendants did or did not do.   In many cases it may well be

25   necessary for a court to have the benefit of all of the evidence tested at trial.   But that

26   

27   [4] Citing *United States v. Wright*, No. 2:14-cr-357-AOG-VCF, 2015 WL 9958034

28   (D. Nev. Dec. 24, 2015), *report and recommendation adopted by* 2016 WL 438957.

is not the case here.  The vagueness issue here concerns a limited set of facts that are undisputed:

- The IP addresses were initially assigned prior to ARIN's existence.
- The IP addresses were not subject to legacy RSAs with ARIN during the relevant time period.
- Defendants did not expressly represent that they were "registrants."

Under the circumstances, waiting for trial makes no sense with respect to Defendants' vague as-applied challenge.  And it is not premature, in any event, to rule on whether the Government has failed to state an offense.

## III.   THE GOVERNMENT'S ARGUMENT THAT SUBSECTION (a)(5) IS NOT UNCONSTITUTIONALLY VAGUE IS UNPERSUASIVE

### A.   SUBSECTION (a)(5) IS VAGUE ON ITS FACE

#### 1.   In the Absence of Authority, the Government Provides Its Own Inconsistent Interpretations of Subsection (a)(5)

Subsection (a)(5) of the CAN-SPAM Act uses the following words to describe the required false representation: "falsely represent oneself to be the registrant."  The statute's use of the undefined word "registrant" is the basis for Defendants' vagueness arguments.  The Government, attempting to explain what conduct is prohibited, has raised even more uncertainty by presenting differing interpretations regarding the element of falsity.  In one interpretation, the Government appears to take the position that subsection (a)(5) requires a defendant not only to impersonate the "registrant," but to do so in commercial emails (i.e., spam) to trick recipients into thinking that the emails are being sent from the registrant, or at least to send commercial emails in a manner that disguises who they are really coming from.  *See* Opp. at 5:16-21, 11:4-6.[5]  But in the other interpretation, the Government asserts that the statute prohibits

---

[5] This interpretation actually seems to implicate subsection (a)(3) of the CAN-SPAM Act, which the Government strenuously argues is not charged and therefore is not relevant to the issues raised in Defendants' concurrently filed motion to dismiss based on the Government misadvising the grand jury on the law.  *See* Dkt. 76, at 12:14-13:2, and nn.3, 4.

impersonating the "registrant" to anyone under any circumstances.  Opp. at 7:16-20, 8:19-25.  In other words, the false representation does not have to be made in the emails themselves, but can be made in other documents, such as Letters of Authorization provided to hosting companies.  Opp. at 11:3-4.  If the Government is not even clear about what subsection (a)(5) prohibits, how can an average citizen have the "fair notice" required?

The Government criticizes Defendants because they have not cited any case law examining language "similar" to "registrant" and "legitimate successor in interest to the registrant."  Opp. at 6:20-22. But neither does the Government—which indicates that there may be none.  Somewhat disingenuously, the Government cites *United States v. Kilbride, supra*, for the proposition that the statutory terms Defendants contend are vague "do have an 'ordinary, contemporary common meaning.'"  Opp. at 6:27-7:1.  However, *Kilbride* was construing very different terms ("impair," "altered," "concealed") used in other subsections of the statute in the context of an as-applied challenge.  Thus, contrary to the Government's argument (Opp. at 7:21-8:3), whatever *Kilbride* concluded is irrelevant.  The Government's assertion that the words "registrant" and "legitimate successor in interest to the registrant" in subsection (a)(5) have an "ordinary, contemporary common meaning in this technical and evolving area of the law is flawed.  The Government resorts to general dictionary definitions that would result in the mere existence of data being "registered"—i.e., recorded by someone in a list somewhere—sufficient to create a "registrant" as that term is used in subsection (a)(5).  Such vagueness in the context of a criminal prosecution would be absurd.

The Government also misconstrues Defendants' argument regarding the term "falsely represent."  Defendants are not arguing that this term is vague in itself, but that subsection (a)(5) is vague regarding the context in which a false representation can trigger liability.  *See* Opening Mem. at 6:16-7:3.  The Government's argument that subsection (a)(5) prohibits an email sender from falsifying identity to "make it

1  appear that the email is not coming from them" (Opp. at 5:16-21), only highlights the

2  confusion, since subsection (a)(5) does not state that the false representation must be

3  made in this context.[6]

4  ## 2. The Government Fails In Its Attempt to Explain That the Term "Registrant" Is Clear and Unequivocal

5

6          The statute, implementing regulations, case law, and legislative history do not

7  explain where or with whom the "registrant" is supposed to have registered. The

8  Government attempts to fill this void by proclaiming that there is only one "registry"

9  and analogizes the unidentified registry that must be inferred to exist by subsection

10 (a)(5)'s reference to the "registrant" with the "DMV registry" or the "County

11 Recorder's registry." Opp. at 8:9-17. This is specious, particularly with respect to

12 pre-ARIN addresses.

13 ### a. *The Government's Analogies Are Not Relevant to "Inactive" Pre-ARIN IP Addresses*

14          To illustrate the inaptness of the Government's DMV analogy, "inactive" pre-

15 ARIN IP addresses can be viewed as vintage "horseless carriages." They could not

16 have been registered with the DMV before the DMV was created. And even after the

17 DMV was created, should someone interested in acquiring a vintage vehicle be

18 expected to check with the DMV to find out whether a pre-DMV vehicle found

19 abandoned in an old barn was "registered" with the DMV? Is a potential buyer

20 supposed to assume that ownership records for abandoned pre-DMV horseless

21 carriages were automatically provided to the DMV?

22

23

24 ---

     [6] The Government also accuses Defendants of "hypothesiz[ing] various scenarios"
     under which it is unclear whether liability would be triggered, citing a Supreme Court

25   case that supposedly instructs not to do this. Opp. at 6:22-26, citing *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). The Supreme Court, in

26   reviewing a pre-trial vagueness challenge, noted the difficulty in drawing the line
     between a facial and as-applied challenge and acknowledged that it would not

27   "evaluate" the statute before it in the "abstract" (i.e., "with reference to hypothetical
     cases"). *Id.* at 32. If anything, this case shows that an as-applied challenge should be

28   made pre-trial.

1       Moreover, the Government exaggerates the significance of the "registry" in

2   relation to pre-ARIN IP addresses by stating that "there is only one registrant for any

3   IP address – the person or company whose name appears in the IP registry" and when

4   an IP address is sold or transferred, "there is only one legitimate successor in interest

5   – the buyer who bought it, whose name will then be entered as the new registrant of

6   that IP address." Opp. at 8:14-17.  While this might be true for IP addresses allocated

7   by ARIN, it certainly is not true for pre-ARIN addresses.  ARIN itself recognizes that

8   there is no requirement that the sale or transfer of pre-ARIN IP addresses—whether

9   they are used or just kept in inventory—be recorded with ARIN, which leads to a

10  "registry" that is unreliable and incomplete.  *See* Opening Mem. at 8 n. 4.[7]  This is

11  another flaw in the Government's DMV analogy because, unlike pre-ARIN IP

12  addresses, the law requires automobiles to be registered with the DMV before they

13  can operate on public roads.[8]

14                  **b.**  ***Pre-ARIN IP Addresses Are Not "Registered" Unless***
    ***There Is an Executed Legacy RSA***

15
16      In reality, ARIN has rights to or oversight of IP addresses in just two

    circumstances: (1) where it allocated the addresses, which results in mandatory
17
    registration through entering into an RSA; and (2) where assignees of pre-ARIN IP
18
    addresses choose to voluntarily enter into a legacy RSA (subsequent transfers would
19
    be subject to RSAs).  Although ARIN might advocate that it should have rights to and
20
    oversight of all pre-ARIN IP addresses and maintain the official "registry" of pre-
21

22  ───────────────────
    [7] ARIN requires that current information regarding IP addresses be provided "under
23  the terms and conditions" of ARIN's RSA.  *See*
    https://www.arin.net/reference/materials/accuracy/. Without an executed RSA, there
24  is no obligation for an assignee of a pre-ARIN IP address to notify ARIN of
    anything. This is demonstrated by the staleness of information ARIN had regarding
25  the IP addresses at issue reflected in the discovery from the Government.

26  [8] The Government's DMV analogy is the only one that actually concerns registration.
    Real estate is not "registered" with the County Recorder and telephone numbers are
27  not "registered" with the phone company. Among other flaws are that unlike WHOIS,
    the County Recorder is a government agency with reliable, historic public records of
28  legal transfers of real property. And you cannot buy and sell phone numbers.

1   ARIN addresses, that is a subject of controversy.

2      The Government attaches a document to its Opposition reflecting that, prior to

3   ARIN's existence, Network Solutions, Inc. ("NSI") had "responsibility for IP Number

4   **assignment**" under a cooperative agreement with the National Science Foundation

5   ("NSF") for almost six years).   Opp. at 9:16-21, attaching Amendment 7 to

6   Cooperative Agreement Between NSI and U.S. Government (Dkt. 75-1, p. 1 emphasis

7   added).   Although the Government asserts that NSF, through NSI, performed the

8   functions of IP address "allocation and registration" (Opp. at 9:13-15), their own

9   exhibit and the very "evidence" they rely on – Amendment 7 does not refer to

10  "registration."   Rather, it uses the term "assignment."  *See* Dkt. 75-1, p. 1.  Moreover,

11  Amendment 7 says nothing about ARIN's responsibility, if any, for pre-ARIN

12  addresses.

13     In 2012, during the time period relevant to the Indictment, NSF's General

14  Counsel opined that NSI had "no further authority" as of December 1997 and that

15  ARIN had no "rights" with respect to IP addresses assigned by NSI.  *See* Exhibit A,

16  p. 2 attached to Declaration of Whitney Z. Bernstein filed concurrently herewith.[9]

17  NSF's General Counsel also acknowledged the "complex origins and history of the

18  Internet domain name registrations and numbers distributions" and recognized the

19  "difficult legal issues" associated with this area.  *Id.* at p. 3.

20     Since NSF's General Counsel opined that ARIN had no "rights" to pre-ARIN

21  IP addresses, it would be reasonable to conclude that ARIN is not the registrar of pre-

22  ARIN IP addresses, such addresses are not registered with ARIN, and thus there are

23  no registrants, unless a legacy RSA is voluntarily executed.  Whether or not some

24  historic information regarding such addresses came into ARIN's possession is

25

26

27  _____

28  [9] An article cited by the Government (Opp. at 9:6-8) refers to this letter.

1  irrelevant.[10]   Thus, accepting the Government's one "registry" premise leads to the

2  conclusion that once ARIN came into existence, pre-ARIN IP addresses not subject

3  to a legacy RSA are **unregistered**.  And although the Government refers to ARIN's

4  predecessor, the "Network Information Center" or "InterNIC" maintained by NSI, as

5  a "registry," that is not so clear, especially since ARIN's name clearly conveys that it

6  is a "registry" while InterNIC's does not.  The Government's prolific use of the terms

7  "registry," "registered," and "registrant" throughout its argument will not transform

8  an unregistered IP address into a registered address.  All of this convoluted history

9  just goes to show the inherent vagueness in subsection (a)(5)'s use of the term

10  "registrant" without any definition or explanation, and how the statute fails to provide

11  an average citizen the "fair notice" required to satisfy due process.

12      **3.   The Government Fails in Its Attempt to Explain That the Requisite False Representation Is Not Open to Interpretation**

13      Regarding the required false representation, the Government simply states,

14  without citation to authority: "[F]alsely representing yourself to be registrant, when

15  you are not the registrant, is not a concept subject to any interpretation." Opp. at 8:17-

16  18.   But it is.   As Defendants have pointed out, it is unclear whether the false

17  representation element of subsection (a)(5) would be satisfied where: (1) "[t]he

18  defendant falsely represents—to anyone for any reason—that he or she is a particular

19  person, but does not claim to be the registrant or legitimate successor in interest to the

20  registrant of any IP addresses"; and (2) "[t]hat particular person happens to be the

21  registrant of 5 or more IP addresses."  Opening Mem. at 6:22-28.  Courts have held

22  that a statement was "insufficient" to trigger liability where a false claim was not

23  stated explicitly, but could only be inferred.  *See United States v. Castillo-Pena*, 674

24

25

26  _____
[10] The Government claims as "[i]mportant" ARIN's reference to holders of legacy IP
27  addresses as "current registrants." Opp. at 10:4-8. However, ARIN uses this term in
    its discussion of legacy RSAs.
28

1   F.3d 318, 322-23 (4th Cir. 2012) (collecting cases).[11]  This distinction is relevant not

2   only to Defendants facial challenge, but as shown *infra*, to their as-applied challenge

3   as well.

4   **B.   SUBSECTION (a)(5) IS VAGUE AS APPLIED TO DEFENDANTS**

5   Even if the Court finds that subsection (a)(5) is not void on its face, it is void

6   as applied to Defendants' conduct.  Although the Government makes a number of

7   unsupported assertions of fact not alleged in the Indictment,[12] the Government's own

8   "evidence" shows that prior to ARIN's existence, IP addresses were "assigned" and

9   not "registered."  Furthermore, the Government does not dispute that the IP addresses

10  at issue were not subject to legacy RSAs with ARIN—the only IP address

11  "registry"—when Defendants allegedly acquired and began using them.  Based on the

12  argument in Part III.A. *supra*, and assuming that subsection (a)(5) reaches pre-ARIN

13  addresses not subject to legacy RSAs, then subsection (a)(5) failed to put Defendants

14  on notice that their conduct was criminal.  Given the lack of guidance in the statute,

15  it is reasonable to conclude that old, "inactive" pre-ARIN addresses were not

16  "registered" and thus did not have "registrants."

17  In addition, the Government describes the false representation as having

18  "created false Letters of Authorization ["LOAs"], purportedly signed by the true

19  registrant, authorizing the use of the IP addresses."  Opp. at 11:3-4; *see also*

20  Indictment ¶2.b.[13]  But the Government does not, and cannot, assert that Defendants

21

22  _____

[11] These cases hold that falsely representing oneself to have been born in the United States or falsely representing oneself to be qualified to vote without "overt reference to citizenship" is insufficient to constitute falsely representing United States citizenship.

[12] For example, the Government states that "defendants checked ARIN's Internet Registry" and "bought domain names ... in order to send and receive emails and make it appear that the true registrant was using the IP address." Opp. at 11:1-2, 4-6.

[13] In its Response and Opposition to Defendants' Motion for Bill of Particulars, the Government identified the LOAs as "the basis for the false statements and fraudulent submissions alleged in the Indictment." Dkt. 51 at 8:10-24.

expressly stated they were the "registrant." The Government cannot dispute that there was no claim to be the "registrant" in the LOAs, the LOAs did not refer to the registrant or even state that that the IP addresses were registered or make any representation about registration, and the LOAs were not signed using the title "registrant." Thus, there was no direct claim of having the status of a "registrant." At most, *arguendo*, there was impersonation of individuals who at some point were associated with the registrant (assuming arguendo that there was a registrant in the first place). This is a material distinction. When a statute requires a direct claim to be made of a particular status and that claim is not stated explicitly but could only be inferred from statements or conduct, it is insufficient. *See United States v. Castillo-Pena*, 674 F.3d 318, 322-23 (4th Cir. 2012). Subsection (a)(5) could be reasonably anticipated to reach a direct claim of "registrant" status. But if subsection (a)(5) reaches the false representations the Government relies on, then subsection (a)(5) failed to put Defendants on notice that their conduct was criminal and violates their Due Process rights.

## IV. THE GOVERNMENT'S BROAD CONSTRUCTION OF SUBSECTION (a)(5) SHOULD BE REJECTED

To avoid declaring subsection (a)(5) void as to Defendants, this Court can instead, as a matter of first impression, construe subsection (a)(5) in a way that "would avoid the vagueness problem." *See United States v. Reed, supra,* 114 F.3d at 1071. Defendants have proposed the following construction applicable to this case:

- "registrant" means, with respect to a United States IP address, a registrant of an IP address registered with ARIN; and

- "falsely represents oneself to be the registrant" means an explicit false representation that one is the registrant of a United States IP address registered with ARIN.

Such a construction would comport with the rule of lenity given the ambiguities in subsection (a)(5). *See* Opening Mem. at 10:1-13. Although the Government argues

Case No. 18-CR-04683-GPC

that what Defendants "think the statute 'should mean'" does not matter (Opp. at 11:14-16), the Government is asking this Court to adopt without question what the Government thinks the statute "should mean."   Defendants disagree with the Government's interpretation, but if both interpretations are "reasonable," the rule of lenity applies to warrant the narrower construction in the defendant's favor. *See People v. Materne*, 72 F.3d 103, 106 (9th Cir. 1995) (rule "applies where a criminal statute is vague enough to deem both the defendant's and the government's interpretations of it as reasonable"); *see also United States v. Millis*, 621 F.3d 914, 917 (9th Cir. 2010) (any ambiguity should be construed against the government).

The Government ignores legislative history specific to (a)(5) that warrants a narrow construction.[14]   The version of subsection (a)(5) passed in the Senate used the phrase "falsely represent[ing] **the right to use**" IP addresses.  Sen. No. 877, 108th Cong., 1st Sess., §104 (2003), 149 Cong. Rec. S13176-03, at *S13178 (daily ed. Oct. 23, 2003) 2003 WL 22415941, at *5 (emphasis added).[15]   This proposed language is much more general and less technical than "falsely represents oneself to be the registrant or the legitimate successor in interest to the registrant."  This change makes clear that Congress was focused on false representations specifically regarding status as a registrant.  It is also reasonable to conclude that when Congress used the term "registrant" in 2003, it was referring to ARIN registrants, since ARIN was the only "registry" for United States IP addresses when the CAN-SPAM Act was enacted in 2003.

ARIN has, since 1997, imposed a registration protocol requiring those wanting new IP addresses to affirmatively register by entering into an RSA and encouraging

---

[14] The Government only acknowledges general legislative history regarding why the CAN-SPAM Act was enacted, but not addressing subsection (a)(5) specifically. *See* Opp. at 4:13-5:15.

[15] Defendants cited this legislative history in their Opening Mem. at 9:16-23. Their Request for Judicial Notice is being filed concurrently with this Reply Memorandum.

Case No. 18-CR-04683-GPC

those with pre-ARIN IP addresses to voluntarily enter into a legacy RSA.  Anyone who does this would necessarily be a "registrant."  Prior to ARIN's formation, as reflected by the document attached to the Government's Opposition (Amendment 7), the NSI through NSF was responsible for the "assignment" of IP addresses.  If subsection (a)(5) was meant to encompass both ARIN-registered addresses and pre-ARIN "assignments," then it should have read: "falsely represent oneself to be the **assignee or registrant**."  However, that is not what subsection (a)(5) says, and meaning must be given to Congress' choice of words.

Next, the Government argues that this Court is "bound by the four corners of the indictment" in ruling on whether an offense has been stated.  Opp. at 11:17-22. The Government argues that because Counts 6 to 10 "correctly track the statute" the Indictment properly states an offense.  However, merely tracking the language of a statute is insufficient when the statute has an implied element.  *See United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (Ninth Circuit reversing district court's finding that indictment charging violation of the Hobbs Act did not need to specify the necessary mens rea because the statute did not include the proper mens rea for a Hobbs Act conviction).  Moreover, although the Indictment parrots the text of subsection (a)(5), it also alleges a material fact that reveals the Government has failed to state an offense: Defendants "created and sent letters stating that the letter bearer had been authorized by the registrant," i.e., the LOAs.  Indictment ¶2.b.  The Government may try to prove that Defendants falsely represented that they were persons who happened to be registrants, but that is not the same thing as an express representation that one is the registrant.  And it is a distinction with a material difference for a highly technical statute.

## V.   THE CONSPIRACY COUNT MUST BE DISMISSED

The Government's argument that the conspiracy count can survive even if the CAN-SPAM Act counts are dismissed ignores that the "objects" of the conspiracy reflect a conspiracy to violate the Act, regardless of the inclusion of wire fraud counts

1   in the Indictment.  If the Government failed to allege a violation of the Act, then the

2   conspiracy count fails.

3   **VI.**   **CONCLUSION**

4        For the foregoing reasons, Defendants' motion should be granted.

5

6   Dated:  April 12, 2019              Respectfully submitted:

7                                      **BIENERT, MILLER & KATZMAN, PLC**

8

9                                      By  _____
                                               *s/ Whitney Z. Bernstein*
10                                             Thomas H. Bienert, Jr.
11                                             James Riddet
                                               Whitney Z. Bernstein
12                                             Attorneys for Defendant
13                                             Mohammed Abdul Qayuum

14

15  Dated:  April 12, 2019

16                                     **LAW OFFICE OF DAVID W. WIECHERT**

17

18                                     By  _____
                                               *s/ Jessica C. Munk*
19                                             David W. Wiechert
20                                             Jessica C. Munk
                                               William J. Migler
21                                             Attorneys for Defendant
22                                             Jacob Bychak

23

24

25

26

27

28

1   Dated:  April 12, 2019

2   **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY**
    **AND POPEO, P.C.**

3

4

5   By   _____
                    *s/ Randy K. Jones*

6                   Randy K. Jones
                    Attorney for Defendant

7                   Mark Manoogian

8

9   Dated:  April 12, 2019

10  **BIRD MARELLA BOXER WOLPERT NESSIM**
    **DROOKS LINCENBERG RHOW P.C.**

11

12

13  By   _____
                    *s/ Naeun Rim*

14                  Gary Lincenberg
                    Naeun Rim

15                  Attorneys for Defendant
                    Petr Pacas

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## <u>CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE</u>

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Jessica C. Munk, Randy K. Jones, and Naeun Rim to affix their electronic signatures to this document.

Respectfully Submitted,

*/s/ Whitney Z. Bernstein*
**BIENERT, MILLER & KATZMAN, PLC**
Whitney Z. Bernstein
Email: wbernstein@bmkattorneys.com

# <u>CERTIFICATE OF SERVICE</u>

Counsel for Defendant Mohammed Abdul Qayyum certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

David W. Wiechert
Jessica C. Munk
William J. Migler
Attorneys for Jacob Bychak

Randy K. Jones
Attorney for Mark Manoogian

Gary Lincenberg
Naeun Rim
Attorney for Peter Pacas

Melanie Pierson
Robert Ciaffa
Sabrina Feve
Assistant U.S. Attorneys

Respectfully Submitted,

*/s/ Whitney Z. Bernstein*
**BIENERT, MILLER & KATZMAN, PLC**
Whitney Z. Bernstein
Email: wbernstein@bmkattorneys.com