# EXHIBIT A

**NATIONAL SCIENCE FOUNDATION**
4201 Wilson Boulevard
ARLINGTON, VIRGINIA 22230

August 30, 2012



**OFFICE OF THE
GENERAL COUNSEL**

▬▬▬▬▬▬▬
▬▬▬▬▬▬
▬▬▬▬▬▬▬
▬▬▬▬▬

My apologies for the delay in responding to your letter, dated July 2, 2012. Because you raised several significant issues involving a matter in which the National Science Foundation ("NSF") was integrally involved, I wanted to be certain that my answer was consistent with the underlying facts of NSF's stewardship of the Internet Protocols and registrations at the time of our Cooperative Agreement with Network Solutions, Inc. ("NSI") and that I wouldn't be simply relying upon my own recollection.

You request guidance concerning your company's rights in and to a block of Internet Protocol version 4 ("IPv4") numbers, given to your company by Network solutions, Inc. on or about ▬▬▬▬▬▬. According to your letter, this IPv4 Number Block is ▬▬▬▬▬/16), representing 65,536 contiguous numbers from ▬▬▬▬▬ to ▬▬▬▬▬▬. You further maintain that your company, ▬▬▬▬▬▬▬▬▬▬▬▬ has asserted continuous custody and control over this Number Block from the time it was given to you until the present time. Finally, you state that you have read recent conflicting news articles concerning your ownership rights in this Number Block and the assertion of purported authority over it by the American Registry for Internet Numbers, Ltd. ("ARIN"). In short, you have asked NSF two questions: "Is this IPv4 Number Block ▬▬▬▬▬▬" and "[C]an a newly-formed organization, such as ARIN, come along years later and attempt to control or take this Number Block from us?"

As the General Counsel of a U.S. government agency, it would be inappropriate for me to provide you – a private party – with specific legal advice regarding your rights. Because your questions, however, are also relevant to *different* Number Blocks that similarly may be within the custody and control of various Federal agencies, including NSF, I believe that answering your questions will be relevant to any rights that the U.S. government may wish to assert in the future with respect to other Number Blocks distributed to or held by federal agencies. Nevertheless, I strongly recommend that you seek your own competent legal counsel to further advise you.

By way of background, NSF issued a Project Solicitation on March 19, 1992, inviting "proposals for one or more NIS [Network Information Services] Manager organizations to: extend and coordinate directory and database services and information services for the NSFNET [National Science Foundation Network]; and provide registration services for non-military internet networks now performed by the Defense Information Systems Agency Network Information Center (the DISA NIC). It is anticipated that this solicitation will result in one or more five-year cooperative agreements between NSF and the organization(s) chosen as the NIS Manager(s)."

Telephone (703) 292-8060      FAX (703) 292-9041

This Project Solicitation was issued pursuant to the National Science Foundation Act of 1950, as amended (42 U.S.C. Sections 1861 et seq.), and in accordance with the applicable provisions of the Federal Grant and Cooperative Agreement Act of 1977 (31 U.S.C. Sections 6301 et seq.). NSF also incorporated Special Conditions and NSF's Grant General Conditions and Cooperative Agreement General Conditions, as part of the cooperative agreement to be entered into between NSF and the successful awardee.

In contrast to a procurement contact subject to the Federal Acquisition Regulations, which the U.S. Government uses to obtain goods or services, a cooperative agreement is used whenever "the principal purpose of the relationship is *to transfer a thing of value to* the ... recipient to carry out a public purpose ...." See 31 U.S.C. Section 6305 (emphasis added). Further, NSF's Policy Manual at that time provided that grantees retain principal legal rights to intellectual property developed under NSF grants, and our award conditions similarly provided that "[e]xcept as otherwise specified in the award or by this paragraph, the awardee may own or permit others to own copyright in all subject writings." These provisions confirm that any and all intellectual property arising from an awardee's operation of the registration business under the Cooperative Agreement belonged to the awardee.

Effective January 1, 1993, the NSF awarded Cooperative Agreement No. NCR-92-18742 to Network Solutions, Inc. ("NSI"), a minority-owned business, and NSI immediately began performing its Internet registration functions for non-military domain name registrations and network numbers. More specific to your inquiry, NSI's responsibility over Internet Protocol ("IP") number assignments, Autonomous system number assignment, and IN-ADDR.ARPA tasks continued until NSI was relieved of and discharged from those responsibilities, under Amendment No. 7 to the cooperative Agreement, effective December 1, 1997. From January 1, 1993, to December 1, 1997, NSI was authorized by NSF to distribute IPv4 Number Blocks.

Your IPv4 Number Block, along with any attendant rights, appears to have been given to you by NSI during the five-year, eleven-month period of NSI's performance of IP number assignments under its Cooperative Agreement with the NSF. In other words, NSF transferred "a thing of value" to the awardee under the NSF-NSI Cooperative Agreement, and that awardee in turn gave it to you. This distribution, as with all other distributions by NSI, was pursuant to and consistent with the authority granted by NSF under the Cooperative Agreement.

As to your second question, NSF cannot offer an opinion as to what an outside organization such as ARIN may or may not be able to do with respect to future actions unrelated to or outside NSF's previously authorized transactions. What NSF can unequivocally state, however, is that we know of no provision under the Cooperative Agreement which would have authorized the awardee (NSI) to unilaterally reclaim IPv4 number blocks, once distributed. We know of no instance where such action had been taken under the NSF Cooperative Agreement. Indeed, as stated above, NSI (whether or not it exists today) ceased performing those IP number assignment functions in late 1997, and has no further authority. We understand that, beginning in December, 1997, a newly-incorporated entity in Virginia, known as ARIN, began distributing IP number blocks from that date forward. The NSF has never had a cooperative agreement, or any other agreement, with ARIN or any other similarly situated entity. In short, NSF does not believe that ARIN, or for that matter any other organization, could retroactively affect property and rights distributed to you (or any other recipient) by awardee NSI under its Cooperative Agreement with the National Science Foundation.

I hope this explanation helps clarify NSF's view of the authority in place and rights that arose from the NSF-NSI Cooperative Agreement. Because of the direct involvement of the Office of General Counsel with one of the Foundation's landmark cooperative agreements, I appreciate why you sought our views.

NSF, of course, is also fully aware of the complex origins and history of the Internet domain name registrations and numbers distributions, and we have closely followed the evolution of and difficult legal issues associated with the Internet's growth over the years.

If you have any further questions regarding the views expressed in this letter, please do not hesitate to contact my Office.

Sincerely,

*Lawrence Rudolph*

Lawrence Rudolph
General Counsel

3