UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　**Plaintiff,**<br>**v.**<br><br>**JACOB BYCHAK, ET AL.,**<br>　　　　　　**Defendant.** | )<br>)<br>)　Case No. 18-CR-4683-GPC<br>)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF JOHN CURRAN

1. I, John Curran, am currently the Chief Executive Officer of the American Registry for Internet Numbers, Ltd. ("ARIN"). I have personal knowledge of the following facts.

2. I have served as ARIN's CEO since 2009. Prior to that, I was the founding Chairman of ARIN and elected chair of ARIN's Board of Trustees. I am still an ARIN Trustee today.

3. I have read the Motion to Dismiss filed by the defendants in this case and believe that it is based upon significant misunderstandings of the allocation and registration of Internet Protocol (IP) addresses in the United States and the role and responsibilities of ARIN.

**ARIN Background**

4. In December 1997, the U.S. Government's National Science Foundation ("NSF") established ARIN as a nonprofit, member-based organization to support the operation and growth of the Internet. *See* Press Release, National Science Foundation, Internet Moves Toward Privatization (June 24, 1997), https://www.nsf.gov/news/news_summ.jsp?cntn_id=102819. The NSF stated at the time that, "Internet Protocol number assignments will soon be handled by a non-profit organization. The NSF has approved a plan from Network Solutions, Inc. (NSI) which establishes the American Registry for Internet Numbers (ARIN). Under the plan, ARIN would

1

assume full responsibility for Internet Protocol (IP) number assignments and related administrative tasks previously handled by NSI. . . ." *Id.* The NSF stated further that, "The establishment of ARIN is important for the continued growth and the global stability of the Internet . . . ." *Id.* As a result of this stipulation of the United States Government at ARIN's inception, ARIN provides registry services for all Internet number blocks within the ARIN service region, including registry services for those allocations and assignments made prior to ARIN's formation in 1997.

5. The NSF stated further that "[t]he creation of ARIN will not change any current policies or procedures for obtaining Internet numbers. Creation of ARIN will give the users of IP numbers (mostly Internet service providers, corporations and other large institutions) a voice in the policies by which they are managed and allocated within the North American region." *Id.* In this manner, the NSF affirmed that ARIN, as member-based organization, would provide a mechanism for development of policies by the community and would use the resulting policies for allocation and management of Internet number resources in the region.

**ARIN Policies and Procedures**

6. ARIN provides services related to the technical coordination and management of Internet number resources. ARIN's mission statement is as follows: "ARIN, a nonprofit member-based organization, supports the operation of the Internet through the management of Internet number resources throughout its service region; coordinates the development of policies by the community for the management of Internet Protocol number resources; and advances the Internet through informational outreach."

7. ARIN provides registry services that identify to the public the parties that have been assigned the rights to specific Internet number resources within its service region including Canada, the

United States, and several islands in the Caribbean Sea and North Atlantic Ocean. Internet number resources consist of Internet Protocol Addresses for two versions of Internet protocol, IPv4 and IPv6, as well as related autonomous system numbers ("ASNs"). These registry services consist of maintaining accurate entries of the single unique holder of rights for each Internet number resource in the service area, processing requests for the allocation and transfer of registry entries, and distributing registration information to the community at large. ARIN provides these services on behalf of the Internet community in accordance with the Internet number resource policies developed and changed from time to time by the Internet community it serves.

8. ARIN's registry service is authoritative regarding the Internet number resource rights holder of record for all Internet number resource registrations within its service area, including the United States, including those assignments made prior to its formation but now being administered by ARIN as result of NSF's transfer of "full responsibility for Internet Protocol (IP) number assignments and related administrative tasks previously handled by NSI." *Id.*

9. It is essential for the successful operation of the Internet that ARIN and the other Regional Internet Registries ("RIRs") to maintain accurate and up-to-date registry records around the world. Accurate and up-to-date records are crucial so that any entity (be it an ordinary consumer, a network engineer, or law enforcement or foreign counterintelligence services acting on behalf of the United States) can determine who is the authorized party holding the rights to any given block of IP addresses.

10. Accurate and up-to-date records are also crucial to help assure that only a single network uses each IP address, and that two networks do not unintentionally attempt to use the same IP address simultaneously. Unique IP addresses are necessary because the Internet sends data to its

destination as identified by IP address, and a conflict in use of any IP addresses generally results in either no Internet service or unreliable Internet service.

11. Since its inception, ARIN has utilized a process handed down from the U.S. Government agencies and contractors who previously performed the tasks before ARIN was created. Organizations may request IP address assignments, and once approved they are issued registration rights to a specific block of Internet number resources.  In order for an organization to obtain the registration rights to Internet number resources from ARIN, it must (1) submit a request, (2) provide required documentation demonstrating "need" for the requested resources in accordance with community-developed ARIN policies, and (3) enter into a registration services agreement ("ARIN RSA").  Resources issued under authority of the Defense Advanced Research Projects Agency ("DARPA"), NSF, or their respective contractors before ARIN was created are called "legacy" IP address space and/or Autonomous System Numbers, and were included in the registry database that was transferred to ARIN at its formation.   All legacy registrations are included in the registration database and continued to be maintained at no charge, although some parties have entered into standard Legacy Registration Services Agreement ("LRSA") with ARIN and thus are subject to terms of that agreement.  ARIN's policies apply to all number resources enumerated in the registry regardless of whether or not they are subject to a formal agreement.

12. Currently, ARIN has on file more than 23,000 signed RSAs and LRSAs with organizations. Among these organizations are major Internet service providers, wireless phone companies, private and public universities, state and U.S. Federal government agencies, Canadian provincial and federal government agencies, private financial institutions, insurance companies, and other large and small companies that require access to the Internet.

**ARIN's Role and Policies are Supported by the U.S. Government**

13. The Court's careful review of ARIN's role is justified by the unusual context of the Internet's unique international private and public sector structure. The Internet's self-governing private-sector coordinating bodies, including ARIN, were created over a multi-decade period through actions and oversight of multiple agencies of the U.S. Government, including the Department of Defense, the National Science Foundation, and the Department of Commerce's National Telecommunications and Information Administration ("NTIA"). The authority provided entities like ARIN reflects the need for a delicate balance: it permits private-sector coordination with government involvement limited to oversight, at no cost to U.S. taxpayers, to continue a function previously performed by the U.S. Government directly, or through its paid contractors. Indeed, even the U.S. Government's agencies follow and are bound by ARIN's policies when the agencies apply for and obtain rights to Internet number resources and services from ARIN.

14. The U.S. Federal Communications Commission ("FCC") has described its view that Internet Protocol numbers are not owned: "RIRs manage IP numbers as a public resource. When a registry allocates a number to an entity, it is giving that entity the ability to use that number*; no property right is conferred to the recipient*. IP numbers are allocated on a needs-basis pursuant to RIR policies; recipients pay fees which support the operation of the registries." Robert Cannon, Potential Impacts on Communications from IPv4 Exhaustion & IPv6 Transition, FCC Staff Working Paper 3, (Dec. 2010), *available at* https://apps.fcc.gov/edocs_public/attachmatch/DOC-303870A1.pdf (footnote omitted and emphasis added).

15. On December 3, 2012, Lawrence Strickling, Administrator of the Department of Commerce's NTIA—the U.S. Government agency with jurisdiction over ARIN—formally clarified the U.S. Government's IP numbering principles with respect to ARIN:

    - We continue to believe that the proper model for the development of Internet technical standards and policies, including those related to IP numbers, is the multistakeholder model.
    - The five Regional Internet Registries (RIRs), via their multistakeholder processes, are responsible for developing policies for the use of IP numbers within their respective specific geographic regions.
    - The American Registry for Internet Numbers (ARIN) is the RIR for Canada, many Caribbean and North Atlantic islands, and the United States.  ***The USG participates in the development of and is supportive of the policies, processes, and procedures agreed upon by the Internet technical community through ARIN.***
    - Consistent with the policies developed through the current multistakeholder model, the USG believes that all IP numbers are allocated for use on a needs basis and should be returned to the numbering pool when no longer needed.
    *Id.*    (https://www.ntia.doc.gov/blog/2012/united-states-government-s-internet-protocol-numbering-principles).

**The Importance of Protecting Number Resource Holders' Exclusive Rights to Use IP Addresses**

16. ARIN's role in maintaining an accurate database of IP addresses is vital.  As detailed in a 2011 paper titled "Economics of IPv4 Transfer Market on IPv6 Deployment," by Andrew Dul, an expert on global IP number resource policy:  "The value and integrity of the RIR databases derives from the trust network operators have placed in these the RIRs to maintain an accurate accounting of how and where address blocks are allocated.  *If the accuracy of the primary records is undermined, the value of the database as a whole is diminished*."  Andrew Dul, Economic of IPv4 Transfer Market on IPv6 Deployment at 11 (Sept. 2011) (emphasis added).

17. The importance of hierarchical address management to proper operation of the Internet is reflected in the U.S. Government NTIA Statement of Internet Domain Name ("DNS") Management Policy:  "Allocate Internet Number Resources—This function . . . includes the responsibility to delegate[] IP address blocks to regional registries for routine allocation,

6

typically through downstream providers, to Internet end-users within the regions served by those registries." The Internet Assigned Numbers Authority (IANA) Functions, 76 Fed. Reg. 34,658, 34,665 (June 14, 2011). The importance of hierarchical address management stems from the need to "route" packets whose destination addresses refer to IP address blocks on the global Internet. While a given IP address block may be composed of thousands, or tens of thousands of contiguous IP addresses, hierarchical addressing allows all of those addresses to be routed via only a single entry in the Internet's global routing table. Thus, an Internet Service Provider can receive an IP address block from an RIR and can connect thousands of customers while adding only minimal routing table burden to the Internet's global Internet routing system. This efficiency is crucial because the routing system has limited capacity.

18. ARIN's community developed and adopted standards have effectively sought to prevent entities from hijacking rights to IP address space. Individuals or entities who appoint themselves to take possession of addresses registered to someone else undermine ARIN's efforts to ensure reliable and efficient operation of the Internet.

**IP Addresses Registered Before 1997 are Not "Unregistered" or "Abandoned"**

19. No organization or individual "owns" IP resources. Rather, organizations are assigned number resources and are issued a limited set of rights to entries of those resources in the Internet registry. These exclusive rights belong to specific organizations that were issued IP addresses by both the U.S. Government and its contractors **and** from ARIN, which assumed the responsibility of operating the Internet registry in 1997 at the direction of the U.S. Government. Thus, there is no such thing as an "unregistered IP address." The registry covers all IP address blocks, regardless of the timing of the issuance of the IP addresses.

20. The Defendants argue that "inactive IP addresses can be analogized to abandoned property available to anyone unless and until re-claimed by the owner."  Defs. Mot. to Dismiss at 8 (Mar. 15, 2019), ECF 69-1.  This is factually incorrect.

21. Interfering with the organizations that have the exclusive right to use the addresses without the knowledge and permission of the holder is theft.  Only one organization rightfully holds the exclusive right, and it cannot be allocated or transferred without ARIN's approval.

22. ARIN has searched its database to determine whether the Defendants appear as points of contact or in any way affiliated with the numbers in the attached subpoena issued to ARIN by the Government.  The Defendants do not appear anywhere in ARIN's database as affiliated with these numbers.

23. If the Court permits the Defendants' argument that it lawfully obtained "unregistered IP addresses" because they were "abandoned," it would put at risk law and policy-abiding members of the Internet community, whose rights to use IP addresses could also be hijacked.  Additionally, it would harm the Internet community, which relies on ARIN to maintain an accurate database of Internet numbers.  It would further harm law enforcement, which relies on ARIN to maintain an accurate database for law enforcement investigatory purposes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   __**10 July 2019**__  , at Chantilly, Virginia.

_____
JOHN CURRAN