Gary S. Lincenberg - SBN 123058
    glincenberg@birdmarella.com
Naeun Rim - SBN 263558
    nrim@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

*Attorneys for Petr Pacas*

David W. Wiechert - SBN 94607
    dwiechert@aol.com
Jessica C. Munk - SBN 238832
    jessica@wmgattorneys.com
William J. Migler - SBN 318518
    william@wmgattorneys.com
WIECHERT, MUNK & GOLDSTEIN,
PC
27136 Paseo Espada, Suite B1123
San Juan Capistrano, California 92675
Telephone: (949) 361-2822

*Attorneys for Iacob Bychak*

Randy K. Jones - SBN 141711
    rkjones@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, California 92130
Telephone: (858) 314-1510

*Attorney for Mark Manoogian*

Whitney Z. Bernstein - SBN 304917
    wbernstein@bmkattorneys.com
Thomas H. Bienert, Jr. - SBN 135311
    tbienert@bmkattorneys.com
James Riddet – SBN 39826
    jriddet@bmkattorneys.com
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700

*Attorneys for Mohammed Abdul Qayyum*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        vs.<br><br>JACOB BYCHAK, MARK MANOOGIAN,  MOHAMMED ABDUL QAYYUM, AND PETR PACAS,<br><br>        Defendants. | CASE NO. 3:18-cr-04683-GPC<br><br>**DEFENDANTS' NOTICE OF STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION TO DISMISS WIRE FRAUD COUNTS FOR VIOLATING THE FIFTH AMENDMENT DUE PROCESS AND SIXTH AMENDMENT FAIR NOTICE PROTECTIONS**<br><br>Date:  June 26, 2020<br>Time: 2:30 p.m.<br>Crtrm.:        2D<br><br>Assigned to Hon. Gonzalo P. Curiel |

Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas ("Defendants") hereby submit this Notice of Statement of Undisputed Facts ("SUF"), together with references to supporting evidence, in support of its concurrently filed Motion to Dismiss Wire Fraud Counts for Violating the Fifth Amendment Due Process and Sixth Amendment Fair Notice Protections.

| SUF | Undisputed Fact | Source |
|---|---|---|
| 1 | ARIN has stated that IP addresses are not property.[1] | Meet and Confer Email, Decl. Rim ¶ 2, Exh. A |
| 2 | I, John Curran, am currently the Chief Executive Officer of the American Registry for Internet Numbers, Ltd. ("ARIN"). I have personal knowledge of the following facts. | Declaration of John Curran, Dkt. 107-1 ¶ 14 ("Decl. Curran") ¶ 1 |
| 3 | I have served as ARIN's CEO since 2009. Prior to that, I was the founding Chairman of ARIN and elected chair of ARIN's Board of Trustees. I am still an ARIN Trustee today. | Decl. Curran ¶ 2 |
| 4 | In December 1997, the U.S. Government's National Science Foundation ("NSF") established ARIN as a nonprofit, member-based organization to support the operation and growth of the Internet. *See* Press Release, National Science Foundation, Internet Moves Toward Privatization (June 24, 1997), https://www.nsf.gov/news/news_summ.jsp?cntn_id=102819. The NSF stated at the time that, "Internet Protocol number assignments will soon be handled by a non-profit organization. The NSF has approved a plan from Network Solutions, Inc. (NSI) which establishes the American Registry for Internet Numbers (ARIN). Under the plan, ARIN would assume full responsibility for Internet Protocol (IP) number assignments and related administrative tasks previously handled by NSI. . . ." *Id.* The NSF stated further that, "The establishment of ARIN is important for the continued growth and the global stability of the Internet . . . ." *Id.* As a result of this stipulation of the United States Government at ARIN's inception, ARIN provides registry services for all Internet | Decl. Curran ¶ 4 |

---

[1]   The Government disputes that ARIN speaks for the Government or binds the Government, which is not a factual dispute.

| SUF | Undisputed Fact | Source |
|---|---|---|
| | number blocks within the ARIN service region, including registry services for those allocations and assignments made prior to ARIN's formation in 1997. | |
| 5 | The NSF stated further that "[t]he creation of ARIN will not change any current policies or procedures for obtaining Internet numbers. Creation of ARIN will give the users of IP numbers (mostly Internet service providers, corporations and other large institutions) a voice in the policies by which they are managed and allocated within the North American region." *Id.* In this manner, the NSF affirmed that ARIN, as member-based organization, would provide a mechanism for development of policies by the community and would use the resulting policies for allocation and management of Internet number resources in the region. | Decl. Curran ¶ 5 |
| 6 | ARIN provides services related to the technical coordination and management of Internet number resources. ARIN's mission statement is as follows: "ARIN, a nonprofit member-based organization, supports the operation of the Internet through the management of Internet number resources throughout its service region; coordinates the development of policies by the community for the management of Internet Protocol number resources; and advances the Internet through informational outreach." | Decl. Curran ¶ 6 |
| 7 | ARIN provides registry services that identify to the public the parties that have been assigned the rights to specific Internet number resources within its service region including Canada, the United States, and several islands in the Caribbean Sea and North Atlantic Ocean. Internet number resources consist of Internet Protocol Addresses for two versions of Internet protocol, IPv4 and IPv6, as well as related autonomous system numbers ("ASNs"). These registry services consist of maintaining accurate entries of the single unique holder of rights for each Internet number resource in the service area, processing requests for the allocation and transfer of registry entries, and distributing registration information to the community at large. ARIN provides these services on behalf of the Internet community in accordance with the Internet number resource policies developed and changed from time to time by the Internet community it serves. | Decl. Curran ¶ 7 |
| 8 | ARIN's registry service is authoritative regarding the Internet number resource rights holder of record for all Internet number resource registrations within its service area, including the United States, including those | Decl. Curran ¶ 8 |

| SUF | Undisputed Fact | Source |
|---|---|---|
| | assignments made prior to its formation but now being administered by ARIN as result of NSF's transfer of "full responsibility for Internet Protocol (IP) number assignments and related administrative tasks previously handled by NSI." *Id.* | |
| 9 | Currently, ARIN has on file more than 23,000 signed RSAs and LRSAs with organizations. Among these organizations are major Internet service providers, wireless phone companies, private and public universities, state and U.S. Federal government agencies, Canadian provincial and federal government agencies, private financial institutions, insurance companies, and other large and small companies that require access to the Internet. | Decl. Curran ¶ 12 |
| 10 | The Court's careful review of ARIN's role is justified by the unusual context of the Internet's unique international private and public sector structure. The Internet's self-governing private- sector coordinating bodies, including ARIN, were created over a multi-decade period through actions and oversight of multiple agencies of the U.S. Government, including the Department of Defense, the National Science Foundation, and the Department of Commerce's National Telecommunications and Information Administration ("NTIA"). The authority provided entities like ARIN reflects the need for a delicate balance: it permits private-sector coordination with government involvement limited to oversight, at no cost to U.S. taxpayers, to continue a function previously performed by the U.S. Government directly, or through its paid contractors. Indeed, even the U.S. Government's agencies follow and are bound by ARIN's policies when the agencies apply for and obtain rights to Internet number resources and services from ARIN. | Decl. Curran ¶ 13 |
| 11 | The importance of hierarchical address management to proper operation of the Internet is reflected in the U.S. Government NTIA Statement of Internet Domain Name ("DNS") Management Policy: "Allocate Internet Number Resources—This function . . . includes the responsibility to delegate[] IP address blocks to regional registries for routine allocation, typically through downstream providers, to Internet end-users within the regions served by those registries." The Internet Assigned Numbers Authority (IANA) Functions, 76 Fed. Reg. 34,658, 34,665 (June 14, 2011). The importance of hierarchical address management stems from the need to "route" packets whose destination addresses refer to IP address blocks on the global Internet. While a given IP address block may | Decl. Curran ¶ 17 |

| SUF | Undisputed Fact | Source |
|---|---|---|
|  | be composed of thousands, or tens of thousands of contiguous IP addresses, hierarchical addressing allows all of those addresses to be routed via only a single entry in the Internet's global routing table. Thus, an Internet Service Provider can receive an IP address block from an RIR and can connect thousands of customers while adding only minimal routing table burden to the Internet's global Internet routing system. This efficiency is crucial because the routing system has limited capacity. |  |
| 13 | My name is Marc A. Lindsey, I am over the age of 21 years and I have personal knowledge of the matters set forth herein, or have familiarized myself with the following matters from the Declaration of John Curran ("Curran's Declaration") in support of the Government's Response in Opposition to Defendants' Motion to Dismiss Counts 6-10 and Count 1 ("Government's Opposition"). | Declaration of Marc Lindsey, Dkt. 116-1 ("Decl. Linsey") ¶ 1 |
| 14 | I am president of Avenue4 LLC ("Avenue4"). I co-founded Avenue4 in 2014, and have served as its president from Avenue4's founding. Avenue4 is an IPv4 market advisor. Prior to founding Avenue4, I led the IPv4 practice at Levine, Blaszak, Block & Boothby, LLP ("LB3"). The IPv4 practice at LB3 began in 2008. LB3 is a technology law firm located in Washington, D.C. In my role at Avenue4 and LB3, I have advised numerous holders of legacy IPv4 address space (as defined in Paragraph 9 below) in connection with managing their registration records with ARIN, and participating in the IPv4 market. My clients have included both legacy address holders (including entities with legacy /8 blocks, which are the largest allocated blocks, consisting of 16,777,216 numbers) and non-legacy address holders. | Decl. Lindsey ¶ 2 |
| 15 | At the core of the Defendants' Motion To Dismiss and the Government's Opposition is the question of whether legacy address holders (entities given IP address space prior to ARIN's existence) are "registrants" under the CAN-SPAM Act where the legacy holder has taken no affirmative action or election to register with ARIN merely because ARIN retained the legacy address information in the number allocation and assignment listing database ARIN received from InterNIC, its predecessor, when ARIN was formed in 1997 to allocate IP number from the remaining IP number free pool. | Decl. Lindsey ¶ 4 |
| 16 | To obtain address space from IANA or InterNIC, the requesting organization needed only to issue a written request using a short form text template identifying the | Decl. Lindsey ¶ 7 |

| SUF | Undisputed Fact | Source |
|---|---|---|
| | organization. If the request was approved, these early recipients received a notice identifying the address space. The notice did not include, incorporate or reference any registration agreement, membership contract or other form of contract terms and conditions. These early recipients of IP address space were encouraged to follow then-current industry best practices and community standards for network operators on the internet, but there were no binding contractual registration agreements between allocating / assigning organization(s) and the early address recipients at the time their legacy address space was given to them. [See, e.g., Milton Mueller, *et al.*, *Dimensioning the Elephant: An Empirical Analyses of the IPv4 Number Market*, at 2 (2012), available at https://www.internetgovernance.org/wp-content/uploads/IPv4marketTPRC20122.pdf (last visited August 19, 2019); and Benjamin Shantz, *Determining Ownership and Control of IPv4 Addresses*, Washington University Law Journal (2017), Vol. 94, Issue 3, 742–744 (2017)]. | |
| 17 | As the internet continued to grow rapidly in the 1990s, various Internet governance stakeholders successfully advocated to geographically distribute the allocation/assignment and management of IP address space into Regional Internet Registries (RIRs). Over time, the central IP number allocation and assignment functions performed initially by IANA, then by InterNIC, were distributed to the RIRs in phases. [See *The Internet Registry System*, https://www.ripe.net/participate/internet-governance/internet-technical-community/the-rir- system (last visited August 15, 2019)]. As each RIR assumed responsibilities for IP address allocations and assignments, the portions of the database listings of IP address allocations and assignments made prior to the founding of the each RIR (which is considered "legacy address space") relevant to its region were handed to them by IANA and/or InterNIC with the understanding that, as the new stewards of IP address management, the RIRs would continue to maintain the listings of the legacy address space allocations and assignments. [See Milton Mueller, *Scarcity in IP addresses: IPv4 Address Transfer Markets and the Regional Internet Address Registries* (2008) (available at https://www.internetgovernance.org/wp-content/uploads/IPAddress_TransferMarkets.pdf) (last visited August 19, 2019) ("Scarcity in IP addresses") at 4-6]. | Decl. Lindsey ¶ 9 |
| 18 | Currently, there are five RIRs: (i) AFRINIC (established in 2005 to serve countries on the African continent); (ii) | Decl. Lindsey ¶ 10 |

| SUF | Undisputed Fact | Source |
|---|---|---|
| | APNIC (founded in 1993 to cover Asia Pacific and Oceania countries); (iii) ARIN (established in 1997 to take over from InterNIC in the United States, Canada, the Caribbean, and certain other outlying countries in the North Atlantic Ocean); (iv) RIPE NCC (opened in 1992 with Europe, the Middle East and parts of Central Asia as its service region); and (v) LACNIC (created in 2001 to cover Latin American and certain Caribbean countries). | |
| 19 | ARIN also relies on address holders to update ARIN with any changes to their listing information. This reliance is backed by a contractual obligation from ARIN registrants pursuant to Section 3(b) of the Current LRSA / RSA attached as Exhibit 1. However, this self-reporting approach is not effective with respect to legacy address holders that remain outside ARIN's contract and policy enforcement framework. | Decl. Lindsey ¶ 15 |
| 20 | Relying on references to a complex set of delegations, assumptions of responsibilities, and technical protocol and policy recommendations [see, e.g., Curran's Declaration, ¶ ¶ 4, 5, 8, 11, and 13], ARIN advocates for a framework that allows it to impose its current registry policies on legacy holders (and their legacy address space) who have not entered into registration agreements with ARIN. [See Curran's Declaration, ¶ 11 stating that "ARIN's policies apply to all number resources enumerated in the registry regardless of whether or not they are subject to a formal agreement."] | Decl. Lindsey ¶ 16 |
| 21 | Based on my experience, ARIN's position runs contrary to normal contract law in the United States, and conflicts with the intentions and understandings of most legacy address holders. It is even contrary to the understanding of the General Counsel of the National Science Foundation ("NSF"), which had stewardship authority over IP address space for the U.S. Government prior to the establishment of Regional Internet Registry system. In a letter dated August 30, 2012 to a legacy address holder clarifying the address holders rights and interests in its number block, Lawrence Rudolf, NSF General Counsel stated that "NSF does not believe that ARIN, or for that matter any other organization, could retroactively affect property and rights distributed to you (or any other recipient) . . . ." [https://via.hypothes.is/https://www.internetgovernance.org/wp-content/uploads/NSF_GC_Letter_RE_ARIN.pdf at 2 (last visited August 19, 2019)]. | Decl. Lindsey ¶ 17 |

| SUF | Undisputed Fact | Source |
|---|---|---|
| 22 | In an effort to bring legacy address holders into the hierarchical internet registry system, ARIN launched its legacy address registration services agreement program in late 2007 (the "LRSA Program"). The purpose of the LRSA Program was to incent legacy address holders to enter into LRSAs in order to bind them and their address space contractually to ARIN and its registry policies. A copy of the current LRSA (which is now merged into a single template with ARIN's regular registration services agreement) is attached hereto as Exhibit 1 (the "Current RSA/LRSA"). | Decl. Lindsey ¶ 19 |
| 23 | ARIN has successfully caused many legacy address holders to enter into the LRSA and subject their address space to ARIN's registry policies and control. [Curran's Declaration, ¶ 12]. However, not all legacy holders have done so. Many legacy address holders undergo a process of determining whether the burdens of bringing their legacy address space into the formal ARIN registry system are outweighed by the benefits. | Decl. Lindsey ¶ 20 |
| 24 | Legacy address holders who have not voluntarily entered into an LRSA or RSA with ARIN continue to use and route their legacy numbers over the public internet largely undisturbed and without controversy. ARIN itself recognizes that entry into an LRSA or RSA is not required for legacy holders to retain their rights to address space previously given to them. [See *Legacy Resource Services: Services Available to Legacy Resource Holders,* https://www.arin.net/resources/guide/legacy/services/ (last visited on August 19, 2019) ("ARIN Legacy Resource Services") (listing how ARIN maintains records of legacy address holders that have not entered into RSAs or LRSAs)]. | Decl. Lindsey ¶ 21 |
| 25 | Upon execution of the Current RSA/LRSA attached as Exhibit 1, ARIN "grants to Holder the following specified rights: (1) The *exclusive right to be the registrant* of the Included Number Resources within the ARIN database; (2) The right to use the Included Number Resources within the ARIN database; and (3) The right to transfer the registration of the Included Number Resources pursuant to the Policies." [Section 2(b) of the Current RSA/LRSA attached as Exhibit 1]. | Decl. Lindsey ¶ 23 |
| 26 | By entering into a RSA or LRSA, a legacy address holder, among other things, affirmatively and contractually agrees to: (i) conform to ARIN's terms , conditions, and the NR PM] [See Section 1(c) of the Current RSA/LRSA attached as Exhibit 1], (ii) waive any property rights it may have in | Decl. Lindsey ¶ 24 |

| SUF | Undisputed Fact | Source |
|---|---|---|
| | its address space [See Section 7 of the Current RSA/LRSA attached as Exhibit 1], (iii) follow ARIN's policies to obtain ARIN's consent prior to transferring control of its IP numbers (rather than the commercial terms of the arrangement between the source and recipient) [NRPM Sections 8.2, 8.3, 8.4 and 8.5], and (iv) grant ARIN the right to revoke the address space under certain circumstances. [See Section 13 of the Current RSA/LRSA attached as Exhibit 1]. | |
| 27 | Legacy address holders that have not entered into any RSA or LRSA with ARIN: (i) remain outside the RIR system, (ii) are not members of ARIN like all other regular address holders and legacy holders that have signed an LRSA, (iii) are denied important rights to update their ARIN Whois database records to reflect changes in control or use rights, (iv) have not taken any affirmative action to register their address space with ARIN, and (v) have not been granted by ARIN an exclusive right to an accurate entry in any  ARIN database.  And in some cases, the entity listed in the ARIN Whois database no longer exists, or no longer has effective control over the legacy IP address space to which it is associated. | Decl. Lindsey ¶ 27 |
| 28 | It is, therefore, reasonable to conclude that an entity listed as an early recipient of legacy address space in ARIN's Whois database should not qualify as a registrant merely because its name appears in the ARIN's Whois database unless and until (i) the entity has assented to be registered with ARIN by entering into an LRSA or RSA, and (ii) the accuracy of the listing has been validated. | Decl. Lindsey ¶ 28 |

Respectfully submitted,

DATED:  May 18, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:    _s/ Naeun Rim_
Naeun Rim
Attorneys for Petr Pacas

1   DATED:  May 18, 2020

David W. Wiechert
Jessica C. Munk
William J. Migler
Law Office of David W. Wiechert


By:       *s/ David W. Wiechert*
               David W. Wiechert
      Attorneys for Jacob Bychak

DATED:  May 18, 2020

Randy K. Jones
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.


By:       *s/ Randy K. Jones*
              Randy K. Jones
     Attorney for Mark Manoogian

DATED:  May 18, 2020

Whitney Z. Bernstein
Thomas H. Bienert, Jr.
James Riddet
Bienert, Miller & Katzman, PLC


By:       *s/ Whitney Z. Bernstein*
          Whitney Z. Bernstein
   Attorneys for Mohammed Abdul Qayyum

DEFENDANTS' NOTICE OF STATEMENT OF UNDISPUTED FACTS

1

2

## <u>CERTIFICATE OF AUTHORIZATION</u><br><u>TO SIGN ELECTRONIC SIGNATURE</u>

3       Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies

4  and Procedures of the United States District Court for the Southern District of

5  California, I certify that the content of this document is acceptable to counsel for the

6  Defendants and that I have obtained authorization from Randy K. Jones, David W.

7  Wiechert, and Whitney Z. Bernstein to affix their electronic signatures to this

8  document.

9                                                                          Respectfully submitted,

10  DATED:  May 18, 2020                          Gary S. Lincenberg
                                                                 Naeun Rim
11                                                               Bird, Marella, Boxer, Wolpert, Nessim,
                                                                 Drooks, Lincenberg & Rhow, P.C.
12

13

14

15                                                    By: _____*s/ Naeun Rim*_____
                                                                         Naeun Rim
16                                                        Attorneys for Petr Pacas

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF STATEMENT OF UNDISPUTED FACTS

## **CERTIFICATE OF SERVICE**

Counsel for Defendants certify that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Sabrina L. Feve

Assistant U.S. Attorney

sabrina.feve@usdoj.gov


Melanie K. Pierson

Assistance U.S. Attorney

melanie.pierson@usdoj.gov


Respectfully submitted,

DATED:  May 18, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By: _____*s/ Naeun Rim*_____
Naeun Rim
Attorneys for Petr Pacas