1 | Gary S. Lincenberg - SBN 123058
glincenberg@birdmarella.com
2 | Naeun Rim - SBN 263558
nrim@birdmarella.com
3 | BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
4 | 1875 Century Park East, 23rd Floor
5 | Los Angeles, California 90067-2561
Telephone: (310) 201-2100
6 | Facsimile: (310) 201-2110

7 | Attorneys for Petr Pacas

8 | David W. Wiechert - SBN 94607
dwiechert@aol.com
9 | Jessica C. Munk - SBN 238832
jessica@wmgattorneys.com
10 | William J. Migler - SBN 318518
william@wmgattorneys.com
11 | WIECHERT, MUNK & GOLDSTEIN, PC
12 | 27136 Paseo Espada, Suite B1123
San Juan Capistrano, California 92675
13 | Telephone: (949) 361-2822

14 | *Attorneys for Jacob Bychak*

Randy K. Jones - SBN 141711
rkjones@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, California 92130
Telephone: (858) 314-1510

*Attorney for Mark Manoogian*

Whitney Z. Bernstein - SBN 304917
wbernstein@bienertkatzman.com
Thomas H. Bienert, Jr. - SBN 135311
tbienert@bienertkatzman.com
James Riddet – SBN 39826
jriddet@bienertkatzman.com
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700

*Attorneys for Mohammed Abdul Qayyum*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB BYCHAK, MARK MANOOGIAN, MOHAMMED ABDUL QAYYUM, AND PETR PACAS,<br><br>Defendants. | CASE NO. 3:18-cr-04683-GPC<br><br>**DEFENDANTS' JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Hrg. Date: December 3, 2020<br>Hrg. Time: 1:00 p.m.<br><br>Assigned to Hon. Gonzalo P. Curiel, Courtroom 2D |

Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas submit this supplemental brief in response to the Court's request for further briefing at the October 1, 2020, status conference.

# TABLE OF CONTENTS

**Page**

I. To Construe the Wire Fraud Statute, the Court Must Determine Whether IP Netblocks Have "Long Been Recognized"—or Been "Traditionally Recognized"—As Property .................................................................................. 1

    A. The Traditional Recognition Rule Was Created By the Supreme Court .............. 1

    B. The Ninth Circuit Has Applied the Traditional Recognition Rule ...................... 7

    C. Whether An Intangible Interest Is "Something of Value" or "Exclusive" Is Not Dispositive—the Critical Question Is Whether It Has *Long Been Recognized* As Property ...................................................................................... 8

II. During 2010 to 2014, the Relevant Time Period, IP Netblocks Had Not Been "Traditionally Recognized" As Property .......................................................... 9

III. CONCLUSION ................................................................................................ 10

CERTIFICATE OF AUTHORIZATION TO SIGN ELELECTRONIC SIGNATURE ...................................................................................................... 12

CERTIFICATE OF SERVICE ................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Carpenter v. United States*,
　484 U.S. 19 (1987) .................................................................................................. 3, 5, 8

*Cleveland v. United States*,
　531 U.S. 12 (2000) .................................................................................................3, 4, 5, 9

*Dowling v. United States*,
　473 U.S. 207 (1985) .................................................................................................. 9

*Glob. NAPS, Inc. v. Verizon New England, Inc.*,
　No. CV 02-12489-RWZ, 2015 WL 12781223 (D. Mass. Mar. 10, 2015) ................ 10

*In re Borders Group, Inc.*,
　Case No. 11-10614, Dkt. 2367 (Bankr. S.D.N.Y. Dec. 20, 2011) ............................. 10

*In re Nortel Networks Inc.*,
　Case No. 09-10138-CCS, Dkt. 5315 (Bankr. D. Del. April 26, 2011) ....................... 9

*Kelly v. United States*,
　140 S. Ct. 1565 (2020) .............................................................................................. 5

*Kremen v. Cohen*,
　No. C 98-20718, 2006 WL 8443063 (N.D.Cal. Dec. 20, 2006) ........................... 9, 10

*McNally v. United States*,
　483 U.S. 350 (1987) ........................................................................................... 2, 4, 6

*Skilling v. United States*,
　561 U.S. 358 (2010) .................................................................................................. 6

*United States v. Ali*,
　620 F.3d 1062 (9th Cir. 2010) ................................................................................ 7, 8

*United States v. Baldinger*,
　838 F.2d 176 (6th Cir. 1988) ..................................................................................... 6

*United States v. Bruchhausen*,
　977 F.2d 464 (9th Cir. 1992) ..................................................................................... 7

*United States v. Evans*,
　844 F.2d 36 (2d Cir. 1988) ........................................................................................ 6

*United States v. Hedaithy*,
   392 F.3d 580 (3d Cir. 2004) .................................................................................... 1, 5

*United States v. Henry*,
   29 F.3d 112 (3d Cir. 1994) ..................................................................................... 1, 5, 9

*United States v. Lanier*,
   520 U.S. 259 (1997) ................................................................................................ 6, 9

**Federal Statutes**

18 U.S.C. § 1341 ............................................................................................................ 1

18 U.S.C. § 1343 ............................................................................................................ 1

## I. To Construe the Wire Fraud Statute, the Court Must Determine Whether IP Netblocks Have "Long Been Recognized"—or Been "Traditionally Recognized"—As Property

At the October 1, 2020, status conference, the Court requested further briefing on "the extent that the Court is allowed to look at and, in fact, is required to look at the law relating to the subject interest that is being described as 'property,' whether or not the Court just does what the government is doing, which is determining whether it's something of value, or whether or not we follow this Third Circuit requirement that, in determining whether a particular interest is property for purposes of the fraud statutes, one looks to whether the law traditionally has recognized and enforced it as a property right." (10/1/20 Trans. 19:9-19.) The two Third Circuit cases referenced by the Court both held that only those interests that have been *traditionally recognized as property* can be the object of federal wire/mail fraud. *See United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004) ("the object of the alleged scheme or artifice to defraud must be a <u>traditionally recognized</u> property right") (emphasis added); *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994) ("to determine whether a particular interest is property for purposes of the fraud statutes, we look to whether the law <u>traditionally has recognized and enforced it</u> as a property right") (emphasis added). The Third Circuit's "traditional recognition" rule is a correct statement of the law. This conclusion is supported and mandated by Supreme Court and Ninth Circuit precedent.

### A. The Traditional Recognition Rule Was Created By the Supreme Court

The Third Circuit was not the architect of the "traditional recognition" rule. In both *Hedaithy* and *Henry*, the court was simply summarizing the approach the Supreme Court has taken when evaluating whether an intangible interest constitutes "property," as that term is used in 18 U.S.C. §§ 1341 and 1343. The Third Circuit expressly stated as much in *Hedaithy*: "This [traditional recognition] rule is embodied in a trilogy of Supreme Court cases that, each party agrees, governs the outcome of this appeal." 392 F.3d at 590 (citing *McNally v. United States*, 483 U.S. 350 (1987), *Carpenter v. United States*, 484 U.S. 19 (1987), and *Cleveland v. United States*, 531 U.S. 12 (2000)). *See also Henry*, 29 F.3d at 115 (citing *Carpenter* as source of

traditional recognition rule). The traditional recognition rule is rooted in each of the Supreme Court cases that have evaluated intangible interests in the context of federal fraud statutes—*McNally*, *Carpenter*, *Cleveland*, *Pasquantino*, and *Kelly*—and is mandated by the rule of lenity and the due process/notice requirements underpinning the vagueness doctrine.

In *McNally*, the Supreme Court definitively interpreted the mail fraud statute as being "limited in scope to the protection of property rights." 483 U.S. 350, 360. In so holding, the Court overturned a line of appellate cases that had held that mail fraud could encompass "schemes to defraud citizens of their intangible rights to honest and impartial government." *Id.* at 355. Because the right to honest services was not "property," it could not be the object of mail fraud. *See id.* at 356 ("The mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government").

*McNally* was significant, not only because it settled years of disagreement among the appellate courts regarding whether mail fraud was limited to property rights, but also because the Court rejected the notion that federal criminal fraud statutes should be broadly interpreted to encompass any dishonest scheme. The Court acknowledged that it was *possible* to read the mail fraud statute to be so broad—"it is arguable that . . . the money-or-property requirement of the latter phrase does not limit schemes to defraud to those aimed at causing deprivation of money or property." *Id.* at 358. But the Court ultimately concluded that such a reading of a *criminal statute* would be improper under the rule of lenity:

> The Court has often stated that when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language. . . . Rather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials, we read § 1341 as limited in scope to the protection of property rights."

*Id.* at 359-60 (citations omitted).

Since *McNally*, the Supreme Court has confronted the issue of whether certain intangible interests constitute "property" on at least four more occasions. In each of these cases, the Court continued to show the restraint it had exercised in *McNally* by recognizing only those intangible interests that had *long been recognized as property* as falling within the reach

of the criminal mail and wire fraud statutes. In *Carpenter*, the Court considered whether the confidential business information of a newspaper was "property." 484 U.S. at 25. The Court distinguished *McNally*, holding that, unlike the intangible right to honest services, the intangible right to "[c]onfidential business information has <u>long been recognized as property</u>." *Id.* at 26 (emphasis added). In support, the Court quoted a well-known legal treatise that stated, "Confidential information acquired or compiled by a corporation in the course and conduct of its business *is a species of property* to which the corporation has the exclusive right and benefit, and which a court of equity will protect through the injunctive process or other appropriate remedy." *See id.* (quoting 3 W. Fletcher, Cyclopedia of Law of Private Corporations § 857.1, p. 260 (rev. ed. 1986)) (emphasis added). The Court also cited a string of its own cases in which it had treated confidential business information, such as trade secrets and insider trading information, as property. *See id.* By basing its decision on how the law had *traditionally treated* confidential business information, the Court avoided any vagueness issues that might arise from construing it as "property"—because it had "long been recognized" as such. *See id.*

In contrast, vagueness concerns prompted the Court to reach the opposite conclusion with respect to licenses to operate video poker machines. *See Cleveland*, 531 U.S. at 25 (applying the rule of lenity). In *Cleveland*, the Court unanimously held that an operating license was not property in the hands of the state because, *inter alia*, the government's property arguments "stray[ed] from <u>traditional concepts of property</u>." *Id.* at 24 (emphasis added). Notably, the Court distinguished *Carpenter* because, unlike licenses, confidential business information had traditionally been treated as property *by prior legal authorities*: "<u>Citing decisions of this Court as well as a corporate law treatise</u>, we observed [in *Carpenter*] that '[c]onfidential business information <u>has long been recognized as property</u>.'" *Id.* at 19 (quoting *Carpenter*, 484 U.S. at 26) (emphasis added). Finding no such similar traditional treatment of licenses, the *Cleveland* Court rejected the Fifth Circuit's determination that a state's "right to choose the person to whom it issues video poker licenses" could constitute a property right: "[F]ar from composing an interest that 'has long been recognized as

property,' these intangible rights of allocation, exclusion, and control amount to no more and no less than Louisiana's sovereign power to regulate." *Id.* at 23 (citation omitted) (emphasis added). As was the case in *McNally*, the Court invoked the rule of lenity to justify its construction of the fraud statute, this time by expressly commenting on the vagueness of the word "property" and the serious criminal implications of interpreting it more broadly:

> [T]o the extent that the word "property" is ambiguous as placed in § 1341, we have instructed that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." This interpretive guide is especially appropriate in construing § 1341 because, as this case demonstrates, mail fraud is a predicate offense under RICO, 18 U.S.C. § 1961(1) (1994 ed., Supp. IV), and the money laundering statute, § 1956(c)(7)(A).

*Id.* at 25.

In *Pasquantino*, the Court held in a 5-4 decision that the intangible right to be paid money legally due constituted "money or property" under the wire fraud statute. *See* 544 U.S. at 355 ("Canada's right to uncollected excise taxes on the liquor petitioners imported into Canada is 'property' in its hand"). The Court observed, "The right to be paid money has long been thought to be a species of property." *Id.* at 356 (emphasis added). As it did with confidential business information in *Carpenter*, the Court then cited various legal authorities—this time, to several American and English treatises on the "common law of fraud"—as evidence that a legal entitlement to payment had traditionally been treated as property. *See id.* (citing 3 W. Blackstone, Commentaries on the Laws of England 153-155 (1768); 2 J. Kent, Commentaries on American Law; 1 J. Story, Equity Jurisprudence § 378 (I. Redfield 10th rev. ed. 1870); *Chesterfield v. Janssen,* 28 Eng. Rep. 82, 2 Ves. Sen. 125 (ch. 1750); and 1 S. Rapalje & R. Lawrence, A Dictionary of American and English Law 546 (1883)). Having again based its reasoning on proof that the intangible interest at issue had traditionally been recognized by the law as property, the majority sidestepped the due process and notice concerns that would otherwise necessitate application of the rule of lenity. *But see id.* at 383 (rule of lenity counseled against construing right to collect tax as "property") (Ginsburg, J., dissenting, joined by Breyer, Scalia, Souter, JJ.).

Finally, most recently in *Kelly*, the Court overturned wire fraud convictions where the

intangible interest alleged included a local government's right to "control" the use of its bridge lanes. *Kelly v. United States*, 140 S. Ct. 1565, 1572 (2020). The Court found *Cleveland* controlling on this question and held that this right was not "property" for the purposes of wire fraud. *Id.* ("The State's 'intangible rights of allocation, exclusion, and control'—its prerogatives over who should get a benefit and who should not—do 'not create a property interest.'") (quoting *Cleveland*).[1]

Thus, as shown *supra*, in the post-*McNally* Supreme Court cases regarding intangible interests and the federal fraud statutes, the Court's decision turned on whether the law had *long treated* the interest as property or *traditionally recognized* it as such. Critically, it is *not sufficient* that a smattering of recent cases might have found or suggested that the interest at issue was "property"—in *Cleveland*, for example, the First, Third, and Fifth Circuits had held that licenses were "property" in federal fraud cases, but the Court nonetheless overturned these rulings. *See* 531 U.S. at 18. The requirement is that the interest has been so consistently recognized, treated, and enforced as property for such a time so as to eradicate any doubt that it comports with traditional concepts of property. *See Carpenter*, 484 U.S. at 26 ("[c]onfidential business information has long been recognized as property") (emphasis added); *Cleveland*, 531 U.S. at 24 (among other things, construing license as property would "stray from traditional concepts of property") (emphasis added); *Pasquantino*, 544 U.S. at 356 ("The right to be paid money has long been thought to be a species of property"). This rule is binding on all courts. Although the Third Circuit later articulated the traditional recognition rule in concise statements of law, it was simply summarizing the approach that had already been taken by the Supreme Court, not inventing a rule unique to that circuit. *See Hedaithy*, 392 F.3d at 590; *United States v. Henry*, 29 F.3d at 115.

Indeed, the Third Circuit is not the only appellate court that has expressly interpreted

---

[1] The Court also found that the cost of paying employee time and labor *was* property under *Pasquantino*, but this issue was not in dispute. *Id.* at 1573 (noting "both defendants agree" the cost of employee services was an economic loss). The Court ultimately held that this interest was not the object of the defendants' fraud, merely an "incidental byproduct." *Id.* at 1574.

the Supreme Court's intangible-interest cases as requiring a review of how the law has traditionally treated the interest. The Sixth Circuit reached the same conclusion as far back as 1988, the year after *McNally* and *Carpenter* were decided. *See United States v. Baldinger*, 838 F.2d 176, 179 (6th Cir. 1988) ("From this, we are led to conclude that while the Supreme Court recognized both tangible and intangible property interests, they nonetheless clearly intended to exclude from the reach of the mail fraud statute claims which did not involve a direct intention to deprive another of a <u>recognized and traditional property right (tangible or intangible)</u> through the employment of fraud or other artifice and the use of the public mail") (emphasis added). That same year, the Second Circuit expressed a similar view by looking at differences between how the law treated "traditional real-property rights" versus the government's right to control the use of its weapons. *See United States v. Evans*, 844 F.2d 36, 41 (2d Cir. 1988) ("That the right at issue here has not been treated as a property right in other contexts, and that there are many basic differences between it and common-law property are relevant considerations in deciding whether the right is property under the federal fraud statutes").

The aforementioned cases demonstrate that the traditional recognition rule is ultimately a creature of the doctrine of lenity arising out of constitutional principles of fair notice and due process. *See McNally*, 483 U.S. at 359-60. The rule of lenity is based on the premise that the citizen is entitled to fair notice of what conduct may give rise to punishment. *United States v. Lanier*, 520 U.S. 259, 267 (1997). Lenity—which requires the court to adopt a narrowing construction—is what allows an otherwise ambiguous statute to stand, enables courts to "preserve the statute without transgressing constitutional limitations," and is necessary precisely where "reading the statute to proscribe a wider range of offensive conduct" could "raise the due process concerns underlying the vagueness doctrine." *See Skilling v. United States*, 561 U.S. 358, 408-09 (2010). When it comes to intangible interests and federal fraud statutes, the Supreme Court has signaled time and time again that the proper way to apply the rule of lenity and avoid constitutional transgressions is to require that the "object" of the fraud be a traditionally recognized property interest.

### B. The Ninth Circuit Has Applied the Traditional Recognition Rule

The traditional recognition rule is also the law in the Ninth Circuit. While the Ninth Circuit arguably has not made a concise, quotable statement of law endorsing the traditional recognition rule, it has applied it in at least two cases with which the Court is already familiar: *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992) and *United States v. Ali*, 620 F.3d 1062 (9th Cir. 2010).

In *Bruchhausen*, the court evaluated two intangible interests: (1) the United States government's potential interest in forfeiting technology sold in violation of certain statutes, and (2) the right of manufacturers to control the ultimate destination of their products, even after they were sold. *Id.* at 467. The court held that neither were "property" for purposes of the wire fraud statute. With respect to the government's potential forfeiture interest, the court found it was "too ethereal to fall within the protections" of the federal fraud statutes. *Id.* As for the manufacturers' right to control their products' destination, the court rejected the government's attempt to analogize that interest to the confidential business information in *Carpenter*: "*Carpenter* relied in part on the fact that '[c]onfidential business information <u>has long been recognized as property</u>.' There is no comparable understanding that a manufacturer has a property interest in the destination of its products." *Id.* at 468 (citation omitted) (emphasis added). The court noted that its "decision is colored by the rule of lenity," and that "in the absence of definite language, we must conclude that the manufacturers' interest cannot support a criminal prosecution." *Id.* Thus, while the court did not come out and say, "The object of the alleged scheme or artifice to defraud must be a traditionally recognized property right," it applied that approach, consistent with the decisions made by the Supreme Court and the Second, Third, and Sixth Circuits, *supra*. Importantly, the Ninth Circuit held that this defect meant the "***indictment was insufficient as a matter of law***," removing any doubt as to whether the property question can (and must) be resolved pretrial. *Id.* (emphasis added).

The Government continues to mischaracterize *Ali* (and *Pasquantino*) as rejecting the traditional recognition rule. In fact, the opposite is true. The intangible interest at issue in *Ali*

was Microsoft's right to be paid the full commercial price for its products. 620 F.3d at 1067. The defendants in that case argued that only "traditionally recognized forms of property" constitute property under the wire fraud statutes, and that Microsoft's right to payment was not a traditionally recognized form of property. *Id.* at 1068. The Ninth Circuit relied on *Pasquantino* to reject the notion that an entitlement to payment legally due was not a traditionally recognized property right. *Id.* The court was careful to note that Microsoft's Authorized Education Reseller ("AER") agreement expressly provided that an AER that sells software in violation of the agreement would be liable to Microsoft for "the difference between [Microsoft's] estimated retail price for AE product and . . . commercial versions of the same products." *Id.* at 1065. The court found this legally-owed right to full payment analogous to "Canada's right to uncollected excise taxes" in *Pasquantino*. *Id.* at 1067. Thus, the court could not accept the defendants' argument that "the right to be paid is not traditionally recognized as a form of property." *Id.* at 1068. Far from disavowing the traditional recognition rule, *Ali* actually *applied it* by finding *Pasquantino* controlling.

### C.   Whether An Intangible Interest Is "Something of Value" or "Exclusive" Is Not Dispositive—the Critical Question Is Whether It Has *Long Been Recognized* As Property

The Government has at various times argued that the right to use IP netblocks is "property" because it is "something of value" or carries with it a right of "exclusivity." Set aside the fact that these characteristics are not alleged in the Indictment and will be disputed at trial. Even assuming that these arguments are true, the Government has cited no case, and the defense can find none, that has held that value or exclusivity *alone*—absent traditional recognition as property—are sufficient to make something "property." It is true that, in the course of describing *how* an interest has been traditionally treated as property, courts have commented on the fact that the interest was "something of value" or "exclusive." *See, e.g.*, *Pasquantino*, 544 U.S. at 355 (right to payment is an "entitlement to collect money from petitioners, the possession of which is 'something of value'") (citation omitted); *Carpenter*, 484 U.S. 19, 26-27 ("exclusivity is an important aspect of confidential business information

and most private property for that matter"). But courts have also clearly held that these characteristics did *not* necessitate a finding that a particular interest was property. In *Cleveland*, for example, the Court noted that "even when tied to an expected stream of revenue, the State's right of control does not create a property interest." 531 U.S. at 23. The Court also expressly rejected the argument that "the intangible rights of allocation, exclusion, and control" were property, noting they had not "long been recognized." *Id.*

Thus, while value and exclusivity may be factors that some courts consider in determining whether an interest is property under common law, they are *not* dispositive when construing the word "property" in a criminal fraud statute. The only relevant inquiry under fair notice and constitutional due process requirements is whether the interest has *long been* treated as property. Accordingly, courts have found that intangible interests were not property, despite their valuable or exclusive nature. *See, e.g.*, *Dowling v. United States*, 473 U.S. 207, 216-17 (1985) (copyright not "property," even though copyright holders hold a "bundle of exclusive rights"); *Henry*, 29 F.3d at 115 (fair bidding process "was thus valuable to [the banks], but it is not a traditionally recognized, enforceable property right").

## II.  During 2010 to 2014, the Relevant Time Period, IP Netblocks Had Not Been "Traditionally Recognized" As Property

The Court further asked the parties to brief "whether or not it would have been traditionally recognized, in 2010 through 2014, that netblocks, either legacy or non-legacy, were recognized by the law and enforced by the law as property rights."  (10/1/20 Trans. 19:19-24.)  This is the appropriate inquiry under fair notice and constitutional due process principles—the "touchstone" of which is "whether the statute, either standing alone or as construed, made it reasonably clear *at the relevant time* that the defendant's conduct was criminal."  *See United States v. Lanier*, 520 U.S. at 266-67 (emphasis added).

There are no known legal treatises that commented on the property-status of IP netblocks prior to 2014. As for the cases that dealt with IP netblocks during that time, the defense has only been able to find three: *Kremen v. Cohen*, No. C 98-20718, 2006 WL 8443063 (N.D.Cal. Dec. 20, 2006), *In re Nortel Networks Inc.*, Case No. 09-10138-CCS, Dkt. 5315

(Bankr. D. Del. April 26, 2011) (attached as **Exhibit A**); and *In re Borders Group, Inc.*, Case No. 11-10614, Dkt. 2367 (Bankr. S.D.N.Y. Dec. 20, 2011) (attached as **Exhibit B**). None specifically address whether an IP netblock is property—the only thing the cases show with any amount of certainty is that the courts (1) did not expressly address the property question and (2) entered orders that required the transferee to comply with ARIN's policies:

- In *Kremen*, the plaintiff argued that he should not have to agree to ARIN's policies because IP netblocks were "monies and properties" that should be transferred to him without any changes. 2006 WL 8443063, at *2 (N.D. Cal. Dec. 20, 2006). The Court rejected these arguments and granted ARIN's motion for clarification. The plaintiff was ordered to enter into registration services agreements with ARIN as a condition of receiving any netblocks. *Id.* at *3.

- *Nortel* and *Borders*, *supra*, were both bankruptcy cases in which courts approved the transfer of the debtor's rights in certain IP netblocks to a third party. In both cases, the courts only approved sale orders after ARIN had had the chance to modify them—and those modifications included such changes as removing words like "title" and "property." *See Nortel*, Case No. 09-10138-CSS, Dkt. 5252-5 (Redline of Sale Order); *Borders*, Case No. 11-10614, Dkt. No. 2347 (Redline of Sale Order). And in both cases, the transfers were conditioned on the buyer agreeing to sign or having already signed LRSAs and otherwise agreeing to comply with ARIN's policies. *Nortel*, Ex. A, p. 4 ¶ I, p. 8 ¶5; *Borders*, Ex. B, p. 13 ¶ 14, Ex. 1 (Sale Agreement), p. 2 ¶¶ 4.

The restrictive conditions placed on the sales of the IP netblocks in *Kremen*, *Nortel*, and *Borders* hardly comport with traditional concepts of property. Thus, the court *Global Naps* was correct to characterize the property-status of netbocks as remaining a "largely unsettled threshold issue" on which there was "sparse authority" in 2015, the year *after* the alleged offense conduct. *See Glob. NAPS, Inc. v. Verizon New England, Inc.*, No. CV 02-12489-RWZ, 2015 WL 12781223, at *2-3 (D. Mass. Mar. 10, 2015). These three cases do not come close to showing that the right to use IP netblocks was a traditionally recognized property right during the relevant time period.[2]

## III.   CONCLUSION

During the relevant timeframe, IP netblocks had not "long been recognized" nor had they been "traditionally recognized" as property. Accordingly, the wire fraud counts in the Indictment must be dismissed—either for failure to state an offense or lack of sufficiency.

---

[2] Defendants also refer the Court to their prior briefing on this issue in Dkts. 169-1 at 23-24 and 188 at 17-20.

|     |     |     |
| --- | --- | --- |
|     | Respectfully submitted, |     |
| DATED:  November 2, 2020 | Gary S. Lincenberg<br>Naeun Rim<br>Bird, Marella, Boxer, Wolpert, Nessim,<br>Drooks, Lincenberg & Rhow, P.C. |     |
|     | By:   *s/ Naeun Rim*<br>           Naeun Rim<br>    Attorneys for Petr Pacas |     |
| DATED:  November 2, 2020 | David W. Wiechert<br>Jessica C. Munk<br>William J. Migler<br>Wiechert, Munk & Goldstein, PC |     |
|     | By:   *s/ Jessica C. Munk*<br>           Jessica C. Munk<br>    Attorneys for Jacob Bychak |     |
| DATED:  November 2, 2020 | Whitney Z. Bernstein<br>Thomas H. Bienert, Jr.<br>James Riddet<br>BIENERT \| KATZMAN PC |     |
|     | By:   *s/ Whitney Z. Bernstein*<br>           Whitney Z. Bernstein<br>    Attorneys for Mohammed Abdul Qayyum |     |
| DATED:  November 2, 2020 | Randy K. Jones<br>Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. |     |
|     | By:   *s/ Randy K. Jones*<br>           Randy K. Jones<br>    Attorney for Mark Manoogian |     |

# CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Randy K. Jones, Jessica C. Munk, and Whitney Z. Bernstein to affix their electronic signatures to this document.

Respectfully submitted,

DATED: November 2, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____*s/ Naeun Rim*_____
Naeun Rim
Attorneys for Petr Pacas

**CERTIFICATE OF SERVICE**

Counsel for Defendants certify that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Sabrina L. Feve
Assistant U.S. Attorney
sabrina.feve@usdoj.gov

Melanie K. Pierson
Assistance U.S. Attorney
melanie.pierson@usdoj.gov

Ashley E. Goff
Assistant U.S. Attorney
Ashley.Goff@usdoj.gov

Respectfully submitted,

DATED:  November 2, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.

By:  *s/ Naeun Rim*
Naeun Rim
Attorneys for Petr Pacas