# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **BORDERS GROUP, INC., *et al.*,**[1] | **Case No. 11-10614 (MG)** |
| **Debtors.** | **(Jointly Administered)** |

**ORDER PURSUANT TO SECTIONS 363 AND 105 OF THE BANKRUPTCY
CODE AND RULES 2002, 6004 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING AND AUTHORIZING THE SALE
OF THE DEBTORS' INTERNET ADDRESSES TO CERNER CORPORATION
FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES
AND WAIVING THE REQUIREMENTS OF BANKRUPTCY RULE 6004(H)**

Upon the Motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (the "Debtors") in their respective chapter 11 cases (the "Cases") for Order Pursuant

to Sections 363 and 105 of Title 11 of the United States Code (the "Bankruptcy Code") and

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

Approving and Authorizing the Sale of the Debtors' Internet Addresses to Cerner Corporation

Free and Clear of all Liens, Interests, Claims and Encumbrances and Waiving the Requirements

of Bankruptcy Rules 6004(h); and upon the Declaration of Jack Hazan in support of the Motion,

dated November 29, 2011 (the "Declaration"); and upon the arguments made at the Hearing held

on December 20, 2011 (the "Hearing"); and the Court having considered the Motion and the

arguments made and evidence proffered or adduced in support of the Motion at the Hearing; and

it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Borders Group, Inc. (4588); Borders International Services, Inc. (5075); Borders, Inc. (4285); Borders Direct, LLC (0084); Borders Properties, Inc. (7978); Borders Online, Inc. (8425); Borders Online, LLC (8996); and BGP (UK) Limited.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and other parties in interest; and adequate notice of the Motion having been given and it appearing that no other notice need be given; and having heard the objections made, if any, to the relief sought in the Motion; and after due deliberation and sufficient cause therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A. This Court has jurisdiction to approve the sale of the Internet Addresses and the Agreements (as defined below) (collectively, the "IA Sale") pursuant to 28 U.S.C. §§ 157(b) and 1334 and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

B. Venue of these cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

C. Approval of the IA Sale is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N) and (O). The statutory predicates for the approval of the IA Sale are sections 363 and 105 of the Bankruptcy Code and Rules 2002 and 6004 of the Bankruptcy Rules.

D. As evidenced by the affidavits of service filed with the Court, proper, timely, adequate and sufficient notice of the Motion, the IA Sale and the Hearing has been provided in accordance with sections 363, 365 and 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and the applicable Local Rules for the United States Bankruptcy Court for the Southern District of New York and in compliance with the Bidding Procedures Order. No other or further notice of the Motion, the Hearing or the IA Sale is required.

E. A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the IA Sale has been afforded to all parties in interest in the Cases,

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

including the following: (i) the Office of the United States Trustee, (ii) counsel to the DIP

Agents, (iii) counsel to the Committee, (iv) all parties who are known to assert a security interest

in, lien on or claim against any of the Internet Addresses, if any, (v) American Registry for

Internet Numbers ("ARIN") and (vi) all other applicable parties in interest, including all entities

on the 2002 service list as of the date of the Motion ((i) through (vi) collectively, the "Notice

Parties").

        F.      This Order constitutes a final and appealable order within the meaning of

28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), the parties may consummate

the IA Sale immediately upon entry of this Order.  Time is of the essence in consummating the

IA Sale to the Purchaser (as defined below).  Accordingly, cause exists to lift the stay to the

extent necessary, as contemplated by Bankruptcy Rule 6004(h).  To any extent necessary under

Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made

applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for

delay in the implementation of this Order.

        G.      As demonstrated by:  (i) the Declaration; (ii) the testimony and other

evidence proffered or adduced at the Hearing; and (iii) the representations of counsel made on

the record at the Hearing, the Debtors have marketed the Internet Addresses, and the Debtors and

Cerner Corporation, as the purchaser (together with its affiliates and designees, as applicable, the

"Purchaser") have negotiated the IA Sale in a diligent, noncollusive, fair and good faith manner.

The Debtors conducted an open and robust marketing and sale process for the Internet Addresses

that afforded a full, fair and reasonable opportunity for any person to make a higher or otherwise

better offer to purchase the Internet Addresses.  The Debtors and the Purchaser entered into the

purchase agreement on or about November 29, 2011 (the "Purchase Agreement"; together with

019

all other documents and agreements contemplated thereby or entered into in connection therewith, the "Agreements"), attached hereto as **Exhibit 1**, as the highest and best offer.

> H.      The Agreements constitute the highest and best offer obtainable for all of the Debtors' rights, title (if any), privileges and interests in the Internet Addresses (collectively, the "Internet Addresses"), and will provide a greater recovery for the Debtors' stakeholders than would be provided by any available alternative.  Thus, prompt consummation of the IA Sale contemplated by the Agreements at this time will serve the best interests of the Debtors, their estates, their creditors and all parties in interest by maximizing the value to be obtained from the Internet Addresses.

> I.      The Debtors have demonstrated both:  (a) good, sufficient and sound business purpose and justification for the IA Sale because, among other things, the Debtors and their advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Internet Addresses and determined that (i) the terms and conditions set forth in the Agreements, (ii) the transfer of the Internet Addresses by the Debtors to the Purchaser,[4] and (iii) the consideration to be paid as reflected in the Agreements are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Internet Addresses; and (b) compelling circumstances exist for the IA Sale under section 363 of the Bankruptcy Code before, and outside of, a chapter 11 plan because, among other things, absent the IA Sale the value of the Internet Addresses will be substantially diminished.

> J.      A sale of the Internet Addresses other than one free and clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and recoupment) and interests, including, without limitation, security interests of whatever kind or nature,

---

[4]    Notwithstanding anything else herein to the contrary, whenever this order refers to the "transfer" of the Internet Addresses or similar terminology, the Court means the transfer of the Debtors' rights, title (if any), privileges and interests in the Internet Addresses.

mortgages, pledges, deeds of trust, hypothecations, assignments, preferences, debts, easements,

charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court

or foreign or domestic governmental entity, taxes (including foreign, state and local taxes),

covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for

reimbursement, contribution, indemnity or exoneration, successor, product, tax, labor, alter ego

and other liabilities, causes of action, contract rights and claims, to the fullest extent of the law,

in each case, of any kind or nature, known or unknown, whether pre-petition or post-petition,

secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or

unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent

or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured,

legal or equitable (subject to any exceptions specifically provided in the Agreements or this

Order, collectively, "Interests") and without the protections of this Order would impact

materially and adversely the Debtors' estates and would yield substantially less value, with less

certainty than any available alternatives.  Without the protections afforded to the Purchaser under

the Bankruptcy Code and this Order, the Purchaser would have not offered the consideration

indicated in the Agreements for the Internet Addresses.  In addition, each entity with an Interest

in the Internet Addresses (i) has consented to the IA Sale or is deemed to have consented to the

IA Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction

of such interest or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy

Code and, therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5)

of the Bankruptcy Code have been satisfied.  Those holders of Interests who did not object, or

who withdrew their objections, to the Motion are (i) deemed to have consented pursuant to

section 363(f)(2) of the Bankruptcy Code.  Holders of Interests are adequately protected by

having their Interests, if any, attach to the cash proceeds of the IA Sale in the same priority as their pre-petition liens and/or security interests ultimately attributable to the property to which the Interests apply, subject to the terms thereof.  Therefore, approval of the Agreements and the consummation of the IA Sale free and clear of Interests is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.

K.     The consideration to be paid by the Purchaser under the Agreements in connection with the IA Sale, was negotiated at arm's length and constitutes reasonably equivalent value and fair and adequate consideration for the Internet Addresses under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia (collectively, "Laws").  The terms and conditions set forth in the Agreements are fair and reasonable under these circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding any of the Debtors or their creditors under any applicable Laws.

L.     The Purchaser is not an "insider" (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.

M.     The Purchaser negotiated the terms and conditions of the IA Sale in good faith and at arm's length.  The Purchaser has acted in good faith in all respects in connection with these Cases and the IA Sale in that (i) the Purchaser recognized that the Debtors were free to negotiate with any other party that expressed interest in consummating the IA Sale, (ii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser with the Debtors in connection with the IA Sale have been disclosed and (iii) the

negotiation and execution of the Agreements and all other aspects of the IA Sale were conducted in good faith. The Purchaser purchased the Internet Addresses in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and are, therefore, entitled to the protections afforded thereby.

N.     The Debtors and their management actively participated in the sale process and acted in good faith. Accordingly, neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the IA Sale, the Agreements or any related action to be avoided under section 363(n) of the Bankruptcy Code.

O.     No transfer or other disposition of the Internet Addresses pursuant to the Agreements will result in any of the Purchaser having any liability or responsibility (i) for any Interest, (ii) for the satisfaction in any manner of any Interest or (iii) to third parties or the Debtors, except as expressly set forth in the Agreements or this Order. Without limiting the effect or scope of the foregoing, no transfer or other disposition of the Internet Addresses pursuant to the Agreements does or will subject any of the Purchaser to any liability for Interests against the Debtors or the Debtors' Interests in such Internet Addresses by reason of such transfer under any Laws, including, without limitation, any theory of successor or transferee liability, antitrust, product line, de facto merger or substantial continuity or similar theories. The Purchaser (i) is not a continuation of the Debtors or their estates and there is no continuity between any of the Purchaser and the Debtors, (ii) is not holding itself out to the public as a continuation of the Debtors and (iii) is not a successor to the Debtors or their estates and the IA Sale does not constitute a consolidation, merger or de facto merger of any of the Purchaser and the Debtors. The IA Sale is not being undertaken for the purpose of escaping liability for the Debtors' debts. The Purchaser has given substantial consideration under the Agreements for the

023

benefit of the holders of liabilities in the Debtors.  The consideration given by the Purchaser constitutes valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of liabilities against or Interests in the Debtors or any of the Internet Addresses.

P.      Each of the Debtors (i) has full corporate or other power to execute, deliver and perform its obligations under the Agreements, (ii) has all of the corporate or other power and authority necessary to consummate the IA Sale and (iii) has taken all actions necessary to duly and validly authorize and approve the IA Sale and Agreements.

Q.      Upon entry of this Order, each of the Agreements is a legal, valid and binding contract between and among the parties thereto and is enforceable in accordance with its terms.

R.      As of Closing, the consummation of the IA Sale contemplated by the Agreements will be legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including Sections 105(a), 363(b), 363(f) and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the IA Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.      **Motion Granted, Objections Overruled.**

1.      The relief requested in the Motion is granted and approved in all respects as provided herein.

2.      Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

8

**B.** **IA Sale Approved and Authorized.**

3.     The IA Sale and the transfer and assignment of the Internet Addresses to the Purchaser pursuant to the Agreements is hereby approved and authorized in accordance with, and under sections 363(b), 363(f), 363(m) and 365(a) of the Bankruptcy Code.

4.     The terms and conditions of the Agreements and all payments and IA Sales contemplated thereunder are hereby approved in all respects and incorporated herein.  The Debtors are authorized and directed to execute and deliver, and empowered to fully perform under, consummate, and implement the Agreements and the IA Sale, together with all additional instruments and documents that may be reasonably necessary or desirable to do so, and to take all further action as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring the Internet Addresses to the Purchaser as contemplated in the Agreements and this Order.

5.     Pursuant to section 363(f) of the Bankruptcy Code, the Internet Addresses may be transferred to the Purchaser pursuant to the IA Sale as of the Closing, free and clear of all Interests, pursuant to the terms of the Agreements and this Order.  The transfer of the Internet Addresses to the Purchaser, as provided in the Agreements will be legal, valid and effective to the fullest extent provided herein.

6.     Any Interests shall attach to the proceeds of the IA Sale in the order of their priority, with the same validity, force and effect which they previously had against the Internet Addresses, subject to the rights and defenses, if any, of the Debtors and their estates with respect thereto, and the proceeds of the IA Sale shall be allocated and managed in accordance with any applicable Orders of this Court related thereto and in accordance with the terms of any chapter 11 plan that may be confirmed and effective in these cases.

7.      All persons and entities holding Interests are hereby barred and enjoined from asserting such Interests in any manner against any of the Purchaser, their successors or assigns, or against the Internet Addresses.  No person or entity shall interfere with the Purchaser's title to or use and enjoyment of the Internet Addresses on account of the Interests, and the Purchaser shall be free to sell or otherwise transfer the Internet Addresses it acquires in its sole discretion, subject to the provisions of the Agreements and this Order.  All persons and entities with rights in any Internet Addresses subject to the IA Sale are directed to surrender such rights in such Internet Addresses to the Purchaser upon demand.

8.      This Order shall be construed as, and shall be for any and all purposes, a full and complete general assignment, conveyance and transfer of the Internet Addresses or a bill of sale transferring good and marketable title in the Internet Addresses to the Purchaser pursuant to the terms of the Agreements.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the IA Sale and to give effect to the Agreements.

C.      **No Assumed Liabilities.**

9.      The Purchaser (as a successor entity, successor employer or otherwise) has not acquired and will not acquire or assume or be deemed to have acquired or assumed at Closing any obligations or liabilities of the Debtors whatsoever except as expressly provided in the Agreements and this Order, and all entities are hereby permanently enjoined and restrained from asserting or prosecuting any claim on account of any obligations or liabilities against any of the Purchaser or agents on account of the Internet Addresses.

10.     Except as expressly provided in the Agreements or this Order, neither the Purchaser nor their respective successors or assigns shall be obligated or liable, either directly or indirectly, as successor, transferee or otherwise, for any obligations or liabilities of the Debtors

or their affiliates (whether under federal or state law or otherwise) as a result of the sale or purchase of the Internet Addresses or employment of any employee or former employee of the Debtors.  Except as expressly provided in the Agreements or this Order, none of the Purchaser nor any of their respective successors and assigns shall be or be deemed to be a successor or successor in interest or responsible person or potentially responsible person to the Debtors or any current or former creditor, employee, equity holder or other party in interest with respect to any liability, and to the extent permitted by applicable law, none shall have any liability (whether under federal or state law or otherwise) for successor liability, including with respect to any liabilities arising from or under products liability, tax, environmental, employment or other applicable law.

**D.      Order Binding.**

11.      This Order (a) shall be effective as a determination that, upon the Closing of the IA Sale, all liabilities of any kind or nature whatsoever existing as to the Internet Addresses being sold by the Debtors prior to the Closing of the IA Sale have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities, including, without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Internet Addresses.  Upon consummation of the IA Sales set forth in the Agreements, the Purchaser or its designee shall be authorized to file termination statements or lien terminations in any jurisdiction to remove any record, notice filing or financing statement

recorded to attach perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under Section 363 and the related provisions of the Bankruptcy Code.  To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend, on account of the filing or pendency of these Cases or the consummation of the IA Sale, any permit or license relating to the operation of the Internet Addresses sold, transferred, or conveyed to the Purchaser.

12.     If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, *lis pendens* or other document or agreement evidencing liens on or Interests in the Internet Addresses shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Interests which the person or entity has with respect to the Internet Addresses, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Purchaser is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the IA Sale.

### E.     Good Faith.

13.     The IA Sale is undertaken by the Debtors and the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the IA Sale shall not affect the validity of the IA Sale to the Purchaser, unless such authorization is duly stayed

pending such appeal.  The Purchaser is a good faith purchaser of the Internet Addresses, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

### F.   <u>Other Provisions.</u>

14.   Notwithstanding anything herein to the contrary, including, without limitation, paragraphs J, 3-8,  11 and 16, hereof, (i) the IA Sale, as stated in the Agreements, is conditioned upon ARIN's consent including any terms and/or conditions established by ARIN's transfer policies or any other policies, guidelines, or regulations developed by ARIN and published on its website, as may be amended and supplemented from time to time (collectively, "<u>ARIN's Policies</u>"), (ii) the transfer of the Debtors' interests in the Internet Addresses to the Purchaser is subject to ARIN's Policies, (iii) the Debtors and the Purchaser are required to comply with ARIN's Policies before any transfer of the Debtors' rights in the Internet Addresses may be effectuated.; (iv) ARIN is not required to take any action in violation of ARIN's Policies in connection with or as a consequence of this Order, the IA Sale, or the Agreements, nor shall ARIN be required to apply a different standard to the transfer of the Internet Addresses than it does to the transfer of non-legacy Internet Protocol numbers.  Nothing in this Order is intended, nor shall be construed, as exempting the Debtors and Purchaser from complying with the ARIN Policies.  Subject to the conditions set forth in this paragraph, ARIN has approved of the transfer as contemplated herein and shall take reasonable steps to provide assistance for the transfer as contemplated in this Order.

15.   The Purchaser is a party in interest and shall have the ability to appear and be heard on all issues related to this Order, the IA Sale, the Agreements and the various procedures and hearings contemplated therein.

16.   The Agreements and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of

029

this Court, provided that any such modification, amendment or supplement is not material and adverse to the Debtors.

17.     This Order and the terms and provisions of the Agreements shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Purchaser and each of the respective affiliates, successors and assigns thereof, and any affected third parties including, but not limited to, all persons asserting an interest in the Internet Addresses, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Order and the terms and provisions of the Agreements, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agreements, as well as the rights and interests granted pursuant to this Order and the Agreements, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Purchaser and their respective successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Each of the Purchaser and the trustee shall be and hereby are authorized to perform under the Agreements upon the appointment of the trustee without further order of this Court.

18.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the IA Sale.

030

19.     In the event that anything contained in any plan(s) confirmed in these Cases or any order confirming such plan(s) shall conflict with the provisions of this Order or of the Agreements, this Order shall control.

20.     This Court shall retain jurisdiction (i) to enforce and implement the terms and provisions of the Agreements, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, (ii) to resolve any disputes arising under or related to the IA Sale, Agreements, Interests and Internet Addresses, (iii) to interpret, implement and enforce the provisions of this Order and (iv) to protect the Debtors and/or the Purchaser against any assertions of Interests.

21.     The failure to include specifically any particular provision of the Agreements in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreements and all of their provisions, payments and IA Sales, be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

22.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), because time is of the essence, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.

23.     To the extent that anything contained in this Order explicitly conflicts with a provision in the Agreements and/or any other related agreements, this Order shall govern and control.

24.     Notwithstanding any order of this Court confirming the *First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* or any modified or amended version of such plan and

031

notwithstanding the occurrence of the Effective Date (as defined in such plan) of any such plan, the Debtors are hereby authorized to close on the IA Sale as provided herein as if such closing occurred prior to such Effective Date.

Dated:  December 20, 2011
        New York, New York


_____/s/Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge

16

**<u>Exhibit 1</u>**
[Purchase Agreement]

November 29, 2011

Tony Linville
Vice President, Infrastructure Services
Cerner Corporation
2800 Rockcreek Parkway
N. Kansas City, MO 64117

Re: <u>In re Borders, Inc. – Purchase of IPv4 Addresses</u>

Dear Mr. Linville:

    This is to confirm the terms of your agreement to purchase certain assets of Borders, Inc. (the "Company"), jointly administered Debtors and Debtors in possession in a chapter 11 case (the "Bankruptcy Case") pending in United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The agreement is subject to the following terms and conditions:

1. <u>Purchaser</u>:  Cerner Corporation (the "Purchaser").

2. <u>Assets</u>:  This agreement sets forth the terms of the acquisition by Purchaser of all of the Company's right, title and interest in a /16 block of 65,536 Internet Protocol Addresses identified as block 170.71.0.0/16 with a range of consecutive IP Addresses from 170.71.0.0 through 170.71.255.255 (the Company's right, title and interest in such Internet Protocol Addresses being hereinafter referred to as the "Assets").  The transaction will be effected pursuant to the attached assignment document set forth on Exhibit A hereto reflecting the provisions described in this Agreement ("Assignment").  The Assignment shall provide for a simultaneous execution and delivery of the Assignment and closing of the transaction ("Closing").

3. <u>Purchase Price</u>:  Purchaser shall pay $786,432.00 ("Purchase Price") in cash at Closing as consideration for the Assets.

   Purchaser shall, upon execution of this agreement, deposit $78,643.20 (10% of the Purchase Price) (the "Deposit") with Company's escrow agent, U.S. Bank, N.A. (the "Escrow Agent") via the following wire instructions:

   Bank Name: U.S. Bank N.A.
   Location: 777 E. Wisconsin Avenue, Milwaukee, WI 53202-5300
   ABA Number: 091000022
   Account Name:  USBANK CT WIRE CLRG
   Account No: A/C 180121167365
   Swift Code: USBKUS4T or USBKUS44IMT
   Swift Contact: William Wiechmann (612-303-7502)

   If the Closing takes place as provided herein, then Company agrees to credit the Deposit against the Purchase Price and the Deposit shall be paid by the Escrow Agent to the Company at the Closing.  If the Closing does not occur on or before January 31, 2012 (or such later date as may be mutually agreed upon by the parties) (the "Outside Date") as a result of Purchaser's failure to perform its obligations hereunder, Company may terminate this Agreement by delivery of written notice to

1

Purchaser in which event Company, as its sole and exclusive remedy, shall retain the Deposit as liquidated damages.  If the Closing does not occur on or before the Outside Date for any reason other than Purchaser's failure to perform its obligations hereunder, Purchaser may terminate this Agreement by delivery of written notice to Company whereupon the Deposit shall be returned to Purchaser.

4.  ARIN Approval:  The sale shall be subject to consent by the American Registry for Internet Numbers ("ARIN"), which shall include Purchaser's agreement to sign a Legacy Registration Services Agreement (the "LRSA") with ARIN.  Purchaser shall cooperate in good faith with ARIN regarding the LRSA and will promptly provide ARIN with any information reasonably required for its approval process.  Purchaser shall be liable for and pay any sales and transfer taxes, filing fees, documentary fees or other charges payable to any third party (other than resulting income taxes) payable in connection with the purchase, sale or transfer of the Assets to Purchaser.

5.  Bankruptcy Court Approval:  The sale shall be subject to obtaining an order from the Bankruptcy Court (the "Sale Order") reasonably acceptable to Purchaser (i) approving the sale and assignment to Purchaser free and clear of all charges, liens, claims, encumbrances and/or rights of any third parties, provided that following the sale and assignment the Assets shall be subject to the terms of the LRSA and (ii) waiving the 14-day stay required by Bankruptcy Rule 6004(h).  Because the policies of ARIN may not constitute interests that the Company may sell free and clear of pursuant to Section 363(f) of the Bankruptcy Code, the transfer of the Assets authorized pursuant to the Sale Order shall not be free and clear of ARIN's policies. The Company shall file a motion for approval of the transaction by the Bankruptcy Court no later than December 31, 2011.

6.  Closing:  Closing will take place promptly after the receipt of any necessary approvals as outlined above.  Closing shall take place at the offices of Company's counsel, Kasowitz, Benson, Torres & Friedman LLP, New York, New York as soon as practicable but in any event not later than two (2) Business Days after Bankruptcy Court Approval and ARIN approval is obtained unless otherwise agreed to by the parties.  Upon Closing, Company shall transfer title to the Assets in accordance with the terms of the Sale Order.

7.  Liabilities.  Purchaser shall assume all liabilities, claims or obligations relating to the Assets arising upon and after Closing. Company will be and remain liable for, and Purchaser will not assume, all liabilities, claims or obligations relating to the Assets arising prior to Closing.

8.  Representations and Warranties.

(a)     As of the date of this agreement and as of Closing and after giving effect to the Sale Order, Company represents and warrants to Purchaser as follows:

(i)     This agreement has been duly executed and delivered by Company and constitutes the valid and binding obligation of Company, enforceable against it in accordance with its terms.  The execution, delivery and performance of this agreement have been duly authorized by all necessary action on the part of Company subject to Bankruptcy Court approval as required in Section 5 hereof.

(ii)     Company has not previously assigned, transferred, conveyed or otherwise encumbered its right, title and interest in the Assets.

(iii)     There are no claims, judgments or settlements against, pending or, to the Company's knowledge, threatened in writing with respect to the Assets.

2

(iv)     Company is not currently a party to, and will not enter into, any agreements, oral or written, that are inconsistent with its obligations under this agreement.

(v)      Upon Closing, Company will transfer the Assets to Purchaser free and clear of all charges, claims, liens, encumbrances and/or rights of any third parties in accordance with the provisions of the Sale Order and this agreement.

(vi)     The representations and warranties of Company in this agreement and any ancillary agreement shall not survive the Closing and shall be null and void ab initio and of no further force or effect immediately after the Closing.

(b)      As of the date of this agreement and as of Closing, Purchaser represents and warrants to Company as follows:

(i)      This agreement has been duly executed and delivered by Purchaser and constitutes the valid and binding obligation of Purchaser, enforceable against it in accordance with its terms.  The execution, delivery and performance of this agreement have been duly authorized by all necessary action on the part of Purchaser.

(ii)     Purchaser is not currently a party to, and will not enter into, any agreements, oral or written, that are inconsistent with its obligations under this agreement.

(iii)    Subject to the provisions of the Sale Order, Purchaser acknowledges and agrees that (i) it is receiving the Assets on an "as is" and "where is" basis and (ii) except as expressly provided herein, Company makes no express or implied warranties of any kind, including but not limited to warranties of merchantability, fitness for a particular purpose, condition, suitability or title, in respect of the Assets.

9.   Documents to be Delivered at Closing.  Company will deliver all instruments reasonably necessary to transfer the Assets to Purchaser in accordance with this Agreement.

10.  Confidentiality.  Neither Company nor Purchaser, nor their respective representative or designees, shall disclose, without the other party's prior written consent, the existence of this agreement or any information pertaining to this agreement or the Assets, or any part of the Assets, unless such disclosure is required to be disclosed pursuant to any rule, regulation, order, decision, decree, subpoena or other legal process.  If such disclosure is required by legal process, the party seeking disclosure shall notify the other party of this request promptly prior to any disclosure to permit such other party to oppose such disclosure by appropriate legal action.  Purchaser and Company agree that the foregoing provisions of this Paragraph 10 shall not apply to any applications, motions and proceedings by or on behalf of Company in support of procuring the issuance of the Sale Order by the Bankruptcy Court.

11.  Applicable Law; Jurisdiction:  This Agreement and the transactions contemplated hereby shall be construed in accordance with and governed by the laws of the State of New York.  Any proceeding to enforce the rights and obligations of any Party under this Agreement shall be commenced and maintained exclusively in the Bankruptcy Court and the Bankruptcy Court shall have exclusive jurisdiction over any such proceeding.

036

12. <u>Notice</u>.  All notices hereunder shall be in writing, dated and signed by the Party giving the same.  Each notice shall be either (a) delivered in person to the address of the Party intended at the address of such Party as shown below, (b) delivered to the United States Postal Service addressed to the Party for whom it is intended at the address of such Party as provided below, (c) sent by facsimile with a confirmation sheet, or (d) delivered to a nationally recognized overnight courier service that traces any such notice.  The address at which any Party hereto is to receive notice may be changed from time to time by such Party by giving notice of the new address to all other parties hereto.  The addresses of the Parties, until changed in accordance with the foregoing, are:

Purchaser:            Cerner Corporation

                      2800 Rockcreek Parkway
                      North Kansas City, MO 64117
                      Attn: Chief Legal Officer
                      Facsimile:  (816)571-2556

Company:              Borders Group, Inc.
                      100 Phoenix Drive
                      Ann Arbor, Michigan 48108
                      Attn:  James Toner, Esq.
                      Facsimile:  (734) 477-1370

                      And copies (which shall not constitute notice) to:

                      Kasowitz, Benson, Torres & Friedman LLP
                      1633 Broadway
                      New York, New York 10019
                      Attn:  Andrew K. Glenn, Esq.
                      Facsimile:  (212) 506-1800

                      Hilco Streambank, LLC
                      97 Chapel Street, 3rd Floor
                      Needham, Massachusetts 02492
                      Attn: Jack Hazan
                      Facsimile:  (212) 610-5603

And to counsel for the Official Committee of Unsecured Creditors of Company at:

                      Lowenstein Sandler PC
                      65 Livingston Avenue
                      Roseland, New Jersey 07068
                      Attn:  Bruce Buechler, Esq.
                      Facsimile:  (973) 597-2309

[Remainder of page intentionally left blank.]

4

Please sign below to indicate your agreement to the foregoing.  Upon receipt of the fully executed agreement and the Good Faith Deposit, the Company shall proceed to obtain the necessary approvals.

Borders, Inc.

By: _____

Name: _Holly Felder Etlin_

Title: _President_

Accepted:

Cerner Corporation

By: _____

Title: _____

Date: _____

Signature Page to IP Address Sale Agreement

Please sign below to indicate your agreement to the foregoing.  Upon receipt of the fully executed agreement and the Good Faith Deposit, the Company shall proceed to obtain the necessary approvals.

Borders, Inc.

By: _____

Name: _____

Title: _____

Accepted:

Cerner Corporation

By: _____
MARC G NAughton

Title: Exec VP + CFO

Date: 11/29/11

5

039

**EXHIBIT A**

**ASSIGNMENT OF ASSETS**

   **THIS ASSIGNMENT OF ASSETS** (the "Assignment") is made as of _____ ___, 2011, by **Borders, Inc.** (the "Assignor"), in favor of **Cerner Corporation** (the "Assignee") pursuant to that certain Agreement dated _____ 2011 (the "Agreement").  Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Agreement.

   **WHEREAS,** pursuant to the Agreement, Assignor agreed to sell, assign, transfer, convey and deliver to Assignee, and Assignee agreed to purchase, accept and assume, the Assets (comprised of Assignor's rights, title and interest in a /16 block of 65,536 Internet Protocol Addresses identified as block 170.71.0.0/16 with a range of consecutive IP Addresses from 170.71.0.0 through 170.71.255.255, as more particularly described in the Agreement), on and subject to the terms and conditions provided for therein; and

   **WHEREAS,** the Assignor desires to sell, assign, transfer, convey and deliver to Assignee the Assets, to the Assignee on the terms and conditions set forth in the Agreement; and

   **WHEREAS,** Assignee desires to purchase, accept and assume the Assets on the terms and conditions set forth in the Agreement.

   **NOW, THEREFORE,** in consideration of the foregoing and other good and valuable consideration payable pursuant to the Agreement, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

   **1.**  **Assignment of Rights.** The Assignor hereby sells, assigns, transfers, conveys and delivers, to Assignee, its successors and assigns, the Assets, for its own use, and for its successors, legal representatives and assigns in accordance with the terms set forth in the Agreement.

   **2.**  **Acceptance of Rights.** Assignee hereby accepts the sale, assignment, transfer, conveyance and delivery of the Assets in accordance with the terms set forth in the Agreement.

   **IN WITNESS WHEREOF,** the parties hereto have caused this Assignment to be duly executed as of the date first above written.

       **ASSIGNOR:**
       **BORDERS, INC.**

       By:_____
        Name:
        Title:

STATE OF _____  )
          )
COUNTY OF _____ )

   On this _____ day of _____, 2011, personally appeared before me _____, the _____ of Borders, Inc., to be known, and known by me to be the duly authorized representative of the corporation described in, and who executed the foregoing instrument on behalf of, and at the direction of,

6

Borders, Inc., and acknowledged that he executed the same, of his and Borders, Inc.'s own free will and for the purposes set forth herein.

_____
Notary Public

[SEAL}

**ASSIGNEE:**
**CERNER CORPORATION**

By: _____
   Name:

7