1              UNITED STATES DISTRICT COURT

2          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,        .
                                      .
5                   Plaintiff,        . No. 18-cr-4683-GPC
                                      .
6                   v.                . January 21, 2021
                                      . 2:00 p.m.
7    JACOB BYCHAK,                    .
     MARK MANOOGIAN,                  .
8    MOHAMMED ABDUL QAYYUM,           .
     PETR PACAS,                      .
9                                     .
                    Defendants.       . San Diego, California
10   . . . . . . . . . . . . . . . .

11

12          TRANSCRIPT OF TELEPHONIC STATUS HEARING
            BEFORE THE HONORABLE GONZALO P. CURIEL
                UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES:

16   For the Plaintiff:     United States Attorney's Office
                            By: SABRINA L. FEVE, ESQ.
17                              ASHLEY GOFF, ESQ.
                                MELANIE K. PIERSON, ESQ.
18                          880 Front Street, Room 6293
                            San Diego, California 92101
19
     For the Defendant      Law Office of David W. Wiechert
20   JACOB BYCHAK:          By: JESSICA C. MUNK, ESQ.
                            115 Avenida Miramar
21                          San Clemente, California 92672

22   For the Defendant      Mintz Levin
     MARK MANOOGIAN:        By:  RANDY K. JONES, ESQ.
23                          3580 Carmel Mountain Road, Suite 300
                            San Diego, California 92130
24   ///

25

```
 1    APPEARANCES (CONTINUED):

 2


 3    For the Defendant        Bienert, Miller & Katzman, P.L.C.
      MOHAMMED ABDUL           By:  JAMES D. RIDDET, ESQ.
 4    QAYYUM:                  903 Calle Amanecer, Suite 350
                               San Clemente, California 92673
 5

 6    For the Defendant        Bird Marella Boxer Wolpert
      PETR PACAS:                 Nessim Drooks & Lincenberg
 7                             By:  NAEUN RIM, ESQ.
                                    GARY S. LINCENBERG, ESQ.
 8                             1875 Century Park East
                               Suite 2300
 9                             Los Angeles, California 90067

10

11

12

13

14

15

16

17

18

19

20

21    Court Reporter:          Chari L. Bowery, RPR, CRR
                               USDC Clerk's Office
22                             333 West Broadway, Suite 420
                               San Diego, California 92101
23                             chari_bowery@casd.uscourts.gov

24    Reported by Stenotype, Transcribed by Computer

25
```

```
 1              SAN DIEGO, CALIFORNIA; JANUARY 21, 2021; 2:00 P.M.

 2                                -o0o-

 3              THE CLERK:  Calling matter number six on the

 4   calendar, Case Number 18-cr-4683, U.S.A. v. the Bychak

 5   defendants, on for telephonic status hearing.

 6              THE COURT:  All right.  Good afternoon.  I will ask

 7   counsel for Mr. Bychak to enter their appearance.

 8              MS. MUNK:  Good afternoon, Your Honor.  Jessica Munk

 9   on behalf of Jacob Bychak, who is present on the phone.

10              THE COURT:  Good afternoon, Ms. Munk.

11        And good afternoon, Mr. Bychak.

12              DEFENDANT BYCHAK:  Good afternoon.

13              MR. JONES:  Good afternoon, Your Honor.  Randy Jones

14   on behalf of Mark Manoogian, who is also on the phone.

15              THE COURT:  Good afternoon, Mr. Jones and

16   Mr. Manoogian.

17        And then, on behalf of Mr. Qayyum?

18              MR. RIDDET:  Good afternoon, Your Honor.  James

19   Riddet for Mr. Qayyum.  He is on the line with us.

20              THE COURT:  Good afternoon.

21        And as to Mr. Pacas?

22              MR. LINCENBERG:  Thank you, Your Honor.  Gary

23   Lincenberg for Mr. Pacas, who is on the line.

24              THE COURT:  Good afternoon, ladies and gentlemen.

25        We have set this status hearing to see if we can arrive at
```

1    a trial date.  We last held a hearing on December 17th, when

2    the Court first broached the subject of a trial date.  Because

3    of the number of attorneys involved in this litigation, counsel

4    asked for an opportunity to go over their schedules and offer

5    some dates in the fall, late 2021.

6         Let me inquire at this time, the parties had that

7    opportunity and, having done so, are there dates that you would

8    propose?  Ms. Munk?

9              MS. PIERSON:  Melanie Pierson here, appearing on

10   behalf of the United States, along with a Sabrina Feve and

11   Ashley Goff.

12             THE COURT:  Yes.

13             MS. PIERSON:  The parties did meet and confer on

14   this.  The defense advised us that the convenient date that

15   they would agree upon would be a date in May of 2022, which was

16   a date that the government felt was too far.  So the parties

17   were unable to reach an agreement as to a convenient date.

18        The government would prefer to go forward in the fall of

19   this year, or as soon as the Court could, you know, get us a

20   time in the courtroom with a jury.

21             THE COURT:  All right.  Well, kicking out to 2022

22   would make it easier for the Court to work its way out of the

23   backlog of trials that it will be facing.  We still have about

24   three or four months, I would think, where we would be limited

25   to one trial per month, and we will be adding to the number of

1    cases that will be backlogged.  So I would be inclined to set

2    the case no earlier than the end of this year.

3         But let me inquire as to defense counsels' reasoning for

4    requesting a May 2022 trial date.  Who would like to address

5    that?

6              MR. LINCENBERG:  Your Honor, this is Gary Lincenberg.

7    I will take a stab at it.

8              THE COURT:  All right.

9              MR. LINCENBERG:  As the Court can imagine, given its

10   own calendar issues and all of the mess generated from COVID,

11   all of our trials that were set to go in 2020 have gotten

12   pushed, and so there's just a logjam of activity, without going

13   through every trial date of all of the current counsel.

14        I will give the Court one example.  Mr. Riddet's firm and

15   my firm have what is expected to be close to a three-month

16   trial in Arizona, a criminal case, that was supposed to start

17   in this past summer -- actually, earlier -- then got kicked,

18   then got kicked.  Now it is in April; looks like it is going to

19   get kicked again.  It is an older case than this one.  There

20   are six defendants, numerous agents and witnesses and so forth.

21   And the hope is that we can get that in in the fall of 2021,

22   which would heat everything up.

23        Without taking up the time to talk about all of the other

24   matters that have likewise been kicked, it is -- and then when

25   we start looking at early 2022, Ms. Munk's firm has a trial

1    that is expected to be a lengthy healthcare fraud trial, which
2    is already scheduled for February of 2022.
3         So our thinking was let's at least set a date, and if we
4    have a date in the calendar in May of 2022, at least then, when
5    other judges say, "I have to kick your case," we can tell the
6    judge, "No, May of 2022 doesn't work.  We have a trial before
7    Judge Curiel."  And at least we will have that date in the
8    books and can make other things have to work around that.
9              THE COURT:  So, let me ask, at this moment, what is
10   the starting dates for the trials that you are referencing?
11   This Arizona case is going to be in the fall of this year, did
12   you say?
13             MR. LINCENBERG:  No.  So, I will give the Court an
14   example of my calendar.  I have, first, a state court but a
15   preference case due to the age of my clients that was supposed
16   to start in March.  It keeps getting kicked off every two
17   months.  It just got kicked off to late February, and we know
18   it's going to get kicked again.
19        I now have two federal trials both set in April at the
20   same time because judges have just been kicking it without
21   asking anybody's schedules, and I understand that because it's
22   unclear how real those dates are.
23        But one is before Judge Hatter, in which other counsel on
24   this call are also involved, and that is set now for April.  It
25   is a three-defendant case.

1       The one in Arizona is a six-defendant case currently set

2    in April.  And there's now a continuance motion, which -- the

3    Court hasn't granted it yet, but I think the Court is going to

4    have to because of COVID reasons.  And we are looking to start

5    it in September, and it is a three-month trial.

6       I have some other dates on my calendar that I would

7    suggest that are either looser, or civil.

8       Mr. Wiechert's firm, Ms. Munk's firm, informed me they

9    have a March 2021 RIPA case (phonetic); they have a May 2021

10   federal murder case before Judge Carter, in Orange County; they

11   have a February 2022 healthcare fraud trial.

12      My partner, Ms. Rim, has a three-week trial set in August.

13      I know some of Mr. Riddet and Mr. Bienert's calendar, but

14   Mr. Riddet can speak to it if the Court needs further details.

15      And I believe Mr. Jones indicated that, from a trial

16   perspective, his calendar is largely clear.

17      So, looking at this, this is what led us to propose

18   May 2022 because any earlier date, I am just not sure it is

19   going to be a real date because of all of the other traffic jam

20   of trials.

21           THE COURT:  Well, it sounds like the fall wouldn't be

22   practicable.  It wouldn't be likely that we would be able to

23   get this case tried in the fall.

24      But let me ask, why wouldn't we be able to try it next

25   February?

```
 1            MR. LINCENBERG:  Well, next February works for me,
 2   but Ms. Munk and Mr. Wiechert say they have a healthcare fraud
 3   trial set in February of 2022.
 4       I know of another light -- go ahead.
 5            THE COURT:  That's a case where the trial date has
 6   been scheduled; is that right?
 7            MS. MUNK:  Yes, Your Honor.  Hi, Your Honor.
 8            THE COURT:  Hi, Ms. Munk.
 9            MS. MUNK:  Good afternoon, Your Honor.  Sorry.  I
10   don't want to interrupt.  It is so hard on the phone.
11       That has been continued.  It is before Judge Walter, in
12   the Central District, in L.A., and it has been set for
13   February 15, 2022.  That is expected to go to trial.
14            THE COURT:  When was it set for trial?
15            MS. MUNK:  I want to say it was set -- there was a
16   stipulation, and I actually wasn't involved in that, but I
17   believe the stipulation got filed over a month ago or a month
18   or two ago.  It's been set for a little bit.
19            THE COURT:  How long is that case supposed to take?
20            MS. MUNK:  It is estimated for at least a month.  I
21   actually think it will be a little longer than that.
22            THE COURT:  Okay.  I think somebody wanted to be
23   heard with respect to where we stand, and I stopped them in
24   their tracks.  Did someone want to provide their observations?
25            MR. JONES:  Yes, Your Honor.  This is Randy Jones.
```

1          Reaching out to the government, the government indicated

2     their case in chief is expected to last 10 to 12, 10 to 15

3     days.

4               THE COURT:  Is that right, Ms. Pierson?

5               MS. PIERSON:  That is correct.

6          And the government has a very serious speedy trial

7     consideration here.  I cited to defense counsel the case of

8     *United States v. Lloyd*, 125 F.3d. 1263, where the Court held

9     that there was a speedy trial violation because the Court put

10    off trial for 112 days.  And the Court's opinion basically says

11    that the Court can't credit vague statements by a party's

12    lawyers about special scheduling conflicts or, you know, that

13    there must be an inquiry to determine whether the parties

14    really need a continuance, how long a delay, and what

15    adjustments can be made with respect to the trial calendars or

16    other plans of counsel.

17         The government really wants to get to trial sooner rather

18    than later.  This case has been pending in this court for over

19    two years and was under investigation five years before that.

20    The facts of this case are old.  The witnesses' memories are

21    dimming.  It is important for the United States to get this

22    case to trial sooner rather than later.

23         While everyone gave their trial dates, I wrote them down,

24    and there are trial dates in March and February.  There are

25    trial dates in April.  And that's all that is for sure.  There

1  are no other trial dates set.  There was a trial date noted in

2  August, but there was nothing noted in the fall.  No one said

3  that they have a trial now scheduled for October, November, or

4  December, or September --

5          THE COURT:  I thought --

6          MS. PIERSON:  -- so it would seem that that range

7  appears to be wide open for this trial.

8      The government believes that our case in chief could be

9  presented in 10 to 15 days, assuming -- and that estimate

10  assumes cross-examination that is about the same length as the

11  direct examination.  Given that, that would be our estimate of

12  our case in chief, and we would like to move forward sooner

13  than later.

14          THE COURT:  So, let me inquire of defense counsel, is

15  that true; currently, there are no trial dates scheduled for

16  counsel in the months of October, November, and December?

17          MR. LINCENBERG:  Your Honor, on behalf of my firm --

18  this is Mr. Lincenberg -- what I indicated to the Court was

19  there was no trial date set, but there is a motion to continue

20  the Arizona case to September.  And as the Court knows,

21  Arizona, like California, is a red-hot state with COVID right

22  now, very restricted.  And this is a six-defendant case that is

23  a bit of a logistical nightmare during COVID because, you know,

24  you are talking about 20 lawyers in the courtroom and lots of

25  jurors and so forth.

1    And so the date that was agreed upon by the parties, if

2    the Court grants the motion -- it has not yet been granted --

3    is for it to begin in September, and it would then last for

4    about three months.

5         MS. MUNK:  And, Your Honor, this is Jessica --

6         MR. LINCENBERG:  Excuse me, Ms. Munk; I was just

7    going to finish up and say that trial is one in which

8    Mr. Bienert and Ms. Bernstein will be lead trial counsel for

9    defendant number one out of six defendants, and I am lead

10   counsel for defendant number three in that case.

11        THE COURT:  And did I hear Ms. Munk?  Were you going

12   to say something?  Or Ms. Rim?

13        MS. MUNK:  Sorry, Your Honor.  I just wanted to weigh

14   in that Mr. Wiechert -- I possibly will be helping him with

15   this, but he has an in-custody first degree murder case that is

16   currently set for Judge Carter in the Central District.  It is

17   set for May, but given, again, because of COVID and stuff, I

18   think he is expecting that that is going to get continued to

19   the fall.  It hasn't yet, but I just want to note that it is an

20   in-custody first degree murder case.

21        THE COURT:  All right.  Well, at this point, there

22   are certainly lots of moving parts, and it is a dynamic

23   situation, given COVID.  And due to this wretched state of

24   affairs that we find ourselves in, I expect that these types of

25   hearings will be held throughout the land, and there are going

1    to be attorneys saying, "Well, Judge Curiel said this," or

2    "Judge Carter said this."  And at this point, as a starting

3    point, we have to look at what has been scheduled.

4         So, to the extent that something has been scheduled, then

5    I am not going to place a burden on counsel and double set.

6    But to the extent that what we are talking about is the

7    possibility of scheduling trials nine, ten months from now, it

8    doesn't seem logical, rational, to operate in that manner.  And

9    at this point, I would be prepared to set the matter for trial

10   in October so that we can have this out of the way.  Because I

11   expect that it is not going to get any easier to schedule

12   cases, and as such, to the extent that the Court now sets this

13   case for trial -- and I will certainly be pushing the

14   government to put on its case in chief in far less than 15

15   days, and the question is whether or not 10 days is even

16   necessary -- but I certainly will push to have this case tried

17   within two or three weeks.  And then, with that, the parties

18   can, hopefully, set their cases for trial in late November,

19   December, January, and not worry about our case.  But it just

20   doesn't seem wise to think about all the if's and possibilities

21   as far as rescheduling of cases.

22        To the extent at this time that there is not any dates

23   that have been set in October, November, December, I am just

24   going to go ahead and make a decision to set this case for

25   October.

1              MR. RIDDET:  Your Honor, may I just -- if I may just

2     briefly be heard, again.  I hear where the Court is coming

3     from.  I think it makes sense in many ways to set a date in

4     there.  I am not sure what position that puts Mr. Bienert and

5     Ms. Bernstein, as well as myself, in with regard to the matter

6     in Arizona, where all of these different counsel got together

7     to work out a date for this lengthy trial that keeps getting

8     pushed along a bit.

9          Do I now have to tell the Court and counsel in this case

10    that, while we agreed to the September date as the first

11    available date that would work for everybody, we now have

12    another judge set another trial?  Or should -- is it that the

13    Court's -- is the Court okay if we just leave this case set for

14    October, but, if the case in Arizona gets pushed to September,

15    just to advise this Court of that and go back to the wheel?

16         I am not sure what my obligations are to the other Court,

17    and that's why, while I get it, why both the government and the

18    Court wants to set it in October, we know right now that May is

19    a clean date, and that's why we are arguing for May.

20             THE COURT:  When was this proposed motion to continue

21    presented?

22             MR. RIDDET:  I think the filing date was -- it was

23    within January.  It was within the last several weeks.

24             THE COURT:  And who is the presiding judge?

25             MR. RIDDET:  It is Judge Bernovich,

1    B-E-R-N-O-V-I-C-H, in Phoenix.  It is a fairly high-profile

2    case.  It is called, colloquially, The Back Page Case.

3           THE COURT:  And are the defendants in custody or are

4    they out on bail?

5           MR. RIDDET:  The defendants are on bail.

6           THE COURT:  What date was the case filed?

7           MR. RIDDET:  I believe 2018.  I don't have the date

8    in front of me.  I believe it was in 2018.  And we are on about

9    our fourth trial date right now, fourth or fifth trial date,

10   the last several being pushed because of COVID.

11          MS. RIM:  This is Naeun Rim.

12      It was April 2018, so about five months before this case.

13   Maybe seven, actually.

14          THE COURT:  So, let me ask, to the extent that it was

15   granted and it would start in September, it is expected it

16   would finish by December?

17          MR. RIDDET:  Yes.

18          THE COURT:  And then, with respect to January, did

19   somebody comment that they have a case starting in January?

20          MR. RIDDET:  I believe Ms. Munk said they have a case

21   in February.

22          MS. MUNK:  Yes, that's correct.

23          THE COURT:  Is there any reason why we wouldn't be

24   able to try the case in January?

25          MS. MUNK:  Well, Your Honor, I would imagine we will

1    be doing prep for this other trial.

2        I know the government talked about or Your Honor talked

3    about the government's case finishing within two to three

4    weeks.  We expect that we will probably have some time as well

5    for a defense case.  We don't completely know what that is, but

6    I think also factoring in time for that would be reasonable.

7    So this might end up being a three- to four-week trial.

8            THE COURT:  So, going back to January of 2022, what

9    would the problem be with a trial set in January?  It would be

10   that you wouldn't be able to prepare for a February case?

11           MS. MUNK:  Yes, Your Honor.

12       But, also, that I am not sure that the trial would

13   conclude in time for the February case, as well.

14           THE COURT:  And keeping in mind that it's going to be

15   impossible to just seamlessly, precisely end up being able to

16   give everybody the time frames for how long the trials are

17   going to last.  We are all going to have to be somewhat

18   flexible, even this Court, because of the number of attorneys

19   that are involved in this litigation.  So it is impossible to

20   foretell exactly when these cases are going to begin or

21   conclude.

22       All we can do is the best we can to set trial dates that

23   look -- if not plausible, look like they would be reasonable in

24   terms of being able to start, and with all the attorneys, with

25   adequate time to prepare.

1       At this juncture, given that this motion to continue has

2   been pending for two weeks, and there's been no action on the

3   motion, I am prepared to set the matter in October.

4       Nature abhors a vacuum, and at this point, the hole in the

5   October trial schedule is going to be filled.  So I am prepared

6   to set it for October 4th.

7               MR. JONES:  Your Honor, can I say something first?

8               THE COURT:  Yes, sir.

9               MR. JONES:  In light of all the uncertainties, we

10  are, as Mr. Lincenberg said, are clear we can set May 2022, and

11  everybody set -- you've got four defendants.  None are in

12  custody.  The case, as government counsel said, has been two

13  years, so a difference of three or four months is not going to

14  make a difference in this type of case, if we set it in

15  May 2022.

16              THE COURT:  Well, I don't know if I agree with that

17  because it looks like everyone is free in October, November,

18  December, unless this case is continued until September; and,

19  if it is continued to September, if it actually goes forward,

20  which we don't know the answer to that.

21      So it seems to me, the longer we put this off, the more we

22  will encounter situations where one of the defense attorneys

23  reports that they have a client who is in custody, who is

24  awaiting trial, and whose trial has now been scheduled in May

25  or April, or in June, because it started in April and it is not

1  clear if they will have enough time to prepare for the May

2  trial; or, to the extent we have a May trial, they won't have

3  enough time to start their June trial.

4      So, there's all these different variations in themes that

5  will potentially impact any trial date that we give in the next

6  year while we try to return to some sense of normalcy.

7      So, rather than October, I will set the matter for

8  December, December 6th.  And then we will go as close to

9  Christmas as we can, and then, if necessary, we will go up to

10  Christmas.  In order to avoid a situation where we are not done

11  by Christmas, let's start by November 30.  And then we will

12  have motions *in limine* on November 18, at 2:00 p.m.

13      With respect to Jencks and *Giglio*, what is the

14  government's proposal with respect to turning over that

15  information, if they haven't already?  Ms. Pierson?

16          MS. PIERSON:  Sorry.  I was on mute, and I was

17  talking away.

18      We will turn it over a month before trial.

19          THE COURT:  So, that will be October 29th.  The 30th

20  is a Saturday.  So I will direct that it be produced on the

21  29th.

22          MS. PIERSON:  Okay.

23          THE COURT:  And then motions *in limine* will be due on

24  November 4, with responses on November 11.

25      And is there anything else to address at this moment?

```
 1            MS. PIERSON:  I would ask the Court to order

 2    reciprocal discovery, please.

 3            THE COURT:  What is the position of the defense?  Do

 4    you propose to provide it a month before trial as well?

 5            MR. LINCENBERG:  Your Honor, this is Gary Lincenberg.

 6        It's hard to look down the counsel table and see who wants

 7    to jump up to speak first.

 8        But that's fine, to the extent that we have reciprocal

 9    discovery.  That's fine.  That date is fine.

10            THE COURT:  So, that will be the order.

11        And then I expect that any number of things may happen

12    between now and October, and I expect that I will likely hear

13    from them after counsel have had an opportunity to meet and

14    confer.

15        So, that being the case, at this moment, let me advise the

16    defendants, Mr. Bychak, Mr. Manoogian, Mr. Qayyum, Mr. Pacas,

17    that you are to appear here in court on November 18th, at

18    2:00 p.m., for motions *in limine*; and then November 30th, at

19    8:30 a.m. for trial.

20        Do you understand, Mr. Bychak?

21            DEFENDANT BYCHAK:  Yes, I understand, Your Honor.

22            THE COURT:  And Mr. Manoogian?

23            DEFENDANT MANOOGIAN:  Yes, Your Honor.

24            THE COURT:  Mr. Qayyum?

25            DEFENDANT QAYYUM:  Yes, Your Honor.
```

```
 1              THE COURT:  And Mr. Pacas?

 2              DEFENDANT PACAS:  Yes, Your Honor.

 3              THE COURT:  And let me inquire that the parties agree

 4   to proceed in this manner; that is, telephonically versus

 5   in-person, given the COVID pandemic and the standing emergency

 6   order which prevents, prohibits any in-court proceedings?  Do

 7   you all waive your constitutional right to be present in court

 8   for this hearing today?

 9       Mr. Bychak?

10              DEFENDANT BYCHAK:  Yes, I do, Your Honor.

11              THE COURT:  Mr. Manoogian?

12              DEFENDANT MANOOGIAN:  Yes, Your Honor.

13              THE COURT:  Mr. Qayyum?  Mr. Qayyum?  Did we lose

14   Mr. Qayyum?

15              MR. RIDDET:  I am sorry, Your Honor.  I don't hear

16   him answering up when you are asking the question.  I can

17   answer for him, if we have lost the connection with him.

18              DEFENDANT QAYYUM:  I am here.

19              MR. RIDDET:  There he is.

20              THE COURT:  Do you waive your appearance here in

21   court, given the pandemic, sir?

22              DEFENDANT QAYYUM:  Yes, sir.  Yes, Your Honor.

23              THE COURT:  And Mr. Pacas?

24              DEFENDANT PACAS:  Yes, Your Honor.  Just for today,

25   correct?
```

1          THE COURT:  Yes.  Just for today.

2          DEFENDANT PACAS:  Yes, Your Honor.

3          THE COURT:  And then the Court will find excludable

4   time between now and October -- I am sorry -- November 18th,

5   given the current state of affairs relating to the COVID-19

6   pandemic, the judicial emergency that has been declared on

7   numerous occasions since last March by Chief Judge Larry Alan

8   Burns, the backlog in cases which has prevented the Court from

9   setting a trial earlier than November 18; the mere fact that we

10  spent 35 minutes attempting to balance the respective

11  obligations that the attorneys have to arrive at a trial date,

12  given the backlog not only in this court but in courts

13  throughout the country.  So that will be under

14  3161(h)(7)(B)(i).

15      Is there anything else to address at this time from the

16  defense side?

17          MR. LINCENBERG:  This is Mr. Lincenberg.

18      No, Your Honor.  And thank you for your patience in

19  working through this.

20          MR. JONES:  No, Your Honor, on behalf of

21  Mr. Manoogian.

22          THE COURT:  Anything from the government's side?

23          MS. PIERSON:  Is the Court specifically finding the

24  granting of this continuance outweighs the interest of the

25  public and defendants to a speedy trial?

1          THE COURT:  I do make that specific finding.

2      That concludes this proceeding.  Take care and stay safe.

3          ALL:  Thank you, Your Honor.

4      (End of proceedings at 2:34 p.m.)

5                         -o0o-

6              C-E-R-T-I-F-I-C-A-T-I-O-N

7

8          I hereby certify that I am a duly appointed,

9  qualified and acting official Court Reporter for the United

10 States District Court; that the foregoing is a true and correct

11 transcript of the proceedings had in the aforementioned cause;

12 that said transcript is a true and correct transcription of my

13 stenographic notes; and that the format used herein complies

14 with rules and requirements of the United States Judicial

15 Conference.

16          DATED:  June 7, 2021, at San Diego, California.

17

18                    /s/  Chari L. Bowery

19                    _____
                      Chari L. Bowery
                      CSR No. 9944, RPR, CRR
20

21

22

23

24

25