RANDY S. GROSSMAN
Acting United States Attorney
Melanie K. Pierson
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0450
Email:  Melanie.Pierson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>JACOB BYCHAK et. al.,<br><br>        Defendants. | Case No. 18cr4683-GPC<br><br>**MOTION FOR RULE 15(a) DEPOSITIONS OF LWT and SAD** |

In serving trial subpoenas on its witnesses, the United States has learned that two of its essential witnesses (LWT and SAD) have serious medical conditions that will prohibit their travel. In order to preserve the testimony of these essential witnesses for trial, the United States seeks an order permitting depositions of LWT and SAD, under oath, in the presence of all defendants and counsel, pursuant to Rule 15(a) of the Federal Rules of Criminal Procedure.

**I.**
**STATEMENT OF FACTS**

On October 31, 2018, a federal grand jury in the Southern District of California returned a ten-count indictment charging defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas with one

count of Conspiracy, in violation of Title 18, United States Code, Section 371; four counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343; five counts of Electronic Mail Fraud, in violation of Title 18, United States Code, Section 1037(a)(5), and Criminal Forfeiture. The charges related to the defendants' fraudulent acquisition of Internet Protocol (IP) addresses and the use of the purloined IP addresses to send spam.

The defendants are employed by Company A, a San Diego firm engaged in the business of digital advertising. Company A needed to constantly acquire large groups of IP addresses (netblocks) because the IP addresses carrying its advertising were repeatedly blocked by spam filters. Jake Bychak and Peter Pacas, on behalf of Company A, acquired a number of cut-rate netblocks that had been hijacked from their authorized users. In order to be able to use these netblocks to send commercial emails, the defendants provided fraudulent Letters of Authorization (LOAs) supposedly from the authorized users to the hosting companies and internet service providers (ISPs), indicating that the mailer was authorized by the registrant to use the netblock. Mark Manoogian and Abdul Mohammed (with the knowledge and agreement of their co-conspirators) knowingly created and used false LOAs purporting to be from the authorized users, and sent them to the ISPs. The ISPs relied on the false LOAs and permitted Company A to use the hijacked netblocks to send commercial email, which earned Company A substantial profits during the period of the conspiracy.

As part of its proof at trial, the United States will call various individuals as witnesses who were the authorized users of the netblocks hijacked by the defendants. These witnesses will testify that the LOAs sent by the defendants to the ISPs were false and fraudulent, and the defendants' use of the netblocks was unauthorized. One such witness is LWT, who was the authorized user of the netblock charged in Counts 2 and 10 [ECT]. Witness LWT has provided a statement indicating that LWT did not authorize the defendants to use the netblock in question, and that the witness was the sole person with the authority to make that decision. LWT reviewed the LOA provided by the defendants in relation to the netblock at issue and noted that (1) it was not on the witness' company letterhead, (2) no such authorization had been provided as claimed in the letter, (3) the purported signee was an individual whom the witness had not seen in approximately 15 years, and (4) the purported signee was not authorized to make the representation claimed in the letter.

Another such witness is SAD, whose forged signature appears on the LOA for the netblock charged in Counts 4 and 7 [Moore]. SAD reviewed the LOA provided by the defendants for the netblock at issue and advised that: (1) the signature on the LOA purporting to be his is a forgery, (2) he had ceased working for the registrant company approximately 13 years prior to the date of the false LOA, and (3) he never authorized anyone to use the netblock in 2013, as represented in the false LOA.

In the process of service of trial subpoenas on the witnesses, government counsel was contacted by counsel for LWT, who advised that LWT had a medical condition that could render the witness unavailable

to testify at the trial in this case. (See Pierson Declaration, filed under seal.) Counsel for the witness later provided additional information, as set forth in the Pierson Declaration. Similarly, SAD provided information to an FBI agent in Pennsylvania, advising that SAD also had multiple medical conditions that could render SD unavailable to testify at trial. (See Booth Declaration, filed under seal.)

## II.
## MEMORANDUM OF POINTS AND AUTHORITIES

### A. DUE TO EXCEPTIONAL CIRCUMSTANCES, IT IS IN THE INTEREST OF JUSTICE TO AUTHORIZE THE RULE 15(a) DEPOSITIONS OF TWO PROSPECTIVE TRIAL WITNESSES

Rule 15 authorizes a party to "move that a prospective witness be deposed in order to preserve testimony for trial." Fed. R. Crim. P. 15(a)(1). The "court may grant the motion because of exceptional circumstances and in the interests of justice." Id.

The movant has the burden of proof on a Rule 15(a) motion. United States v. Olafson, 213 F.3d 435, 442 (9th Cir. 2000). This court retains broad discretion in granting a Rule 15(a) motion, and should consider the particular circumstances of each case to determine whether the exceptional circumstances requirement has been satisfied. United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998). "Rule 15(a) only requires that the trial court find that due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness be taken and preserved for possible use at trial." Id.

While the Ninth Circuit has not required consideration of these factors, courts often consider the following factors when considering a

Rule 15 motion: (1) the unavailability of the witness at trial; (2) the good faith effort by the movant to obtain the witness's presence at trial; and (3) a demonstration by the movant that the expected testimony would be favorable and material. United States v. Zuno-Arce, 44 F.3d 1420, 1425 (9th Cir. 1995); United States v. Sanchez-Lima, 161 F.3d 545, 548 (9th Cir. 1998); United States v. Trumpower, 546 F.Supp.2d 849, 853 (E.D. Cal. 2008); and United States v. Moalin, 2012 WL 3637370, at *2 (S.D. Cal. Aug. 22, 2012). The Ninth Circuit has also held that before granting a Rule 15 motion, a court must consider the willingness of the witness to be deposed. Olafson, 213 F.3d at 442.

Other courts in this circuit have found exceptional circumstances justified granting a motion for a Rule 15 deposition in circumstances similar to this case.  In United States v. Prokop, 2014 WL 1154164 (D. Nev. 2014), the court found exceptional circumstances to grant the motion for a deposition where the witness had not flown in a long time because of health issues, including knee replacement surgery that was progressing slowly and causing significant pain, and could not sit for more than an hour without taking pain medication, which then impacted her mental abilities. *See also,* Furlow v. United States, 644 F. 2d 764, 766 (9th Cir. 1981) [exceptional circumstances exist where witness was ill and on disability].

    **B.    The Facts Clearly Establish the Probable Unavailability of the Witnesses to Appear and Testify at Trial and That Their Unavailability is Beyond the Control of the United States.**

The Ninth Circuit has found that "Rule 15(a) does not require [a] conclusive showing of 'unavailability' before a deposition can be

taken." Sanchez-Lima, 161 F.3d at 548 (emphasis added). "It would be unreasonable and undesirable to require [a party] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition." United States v. Sines, 761 F.2d 1434, 1439 (9th Cir. 1985); see also, United States v. Rich, 580 F.2d 929, 934 (9th Cir. 1978) ("A defendant may depose a witness only if the witness *may be* unable to attend trial.")(emphasis added).

Here, as established by the Declaration of Assistant U.S. Attorney Melanie K. Pierson[1] and the Declaration of FBI Special Agent Glenn Booth, filed separately under seal, the United States has clearly established that the witnesses may be unable to attend trial. [*See* Pierson Declaration, ¶¶ 4 -7, Booth Declaration ¶¶ 3 -4.] Furthermore, it appears that circumstances regarding the inability of the witness to appear at trial are beyond the control of the United States. [*Id.*]

### C. The Anticipated Testimony of the Witness Would Be Favorable and Material to the United States

While Rule 15(a) does not require a conclusive showing of "material" testimony before a deposition can be taken, courts consider, as one factor, whether the movant has shown that the testimony is favorable and material. See Omene, 143 F.3d at 1170. Regarding materiality, the Ninth Circuit has looked to the "fundamental standards of relevancy" of the Federal Rules of evidence, "which require the admission of [evidence]

---

[1] The moving party may demonstrate the probable unavailability of a prospective deponent based on affidavits, representations made by counsel, and other reliable information. Sines, 761 F.2d at 1439.

which tends to prove" a particular fact of consequence, in defining "material" evidence under Federal Rule of Criminal Procedure 16. Other courts have held that "materiality" under Rule 15 is a term of art that means the substance of the evidence sought is material to the party moving to depose. United States v. Ramos, 45 F.3d 1519, 1522 (11th Cir. 1995). When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony by deposing the witness. United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir. 1993).

As set forth in the Statement of Facts above, the testimony of the witnesses is both material and favorable to the United States' proof of the charges in the indictment. Specifically, Counts 7 and 10, which charge electronic mail fraud (violations of the CAN-SPAM Act), require proof that the defendants "falsely represented themselves to be the registrant or the legitimate successor in interest to the registrant of 5 or more Internet Protocol addresses." Counts 2 and 4, which charge wire fraud, allege as a method and means of the scheme to defraud, that the defendants "created and sent letter to internet hosting companies, fraudulently making it appear that the registrant of the IP addresses had authorized  the defendants' use of the IP addresses."

LWT will testify that no authorization to use the netblocks at issue was given to the defendants and that LWT was the sole person with the authority to make that decision, so the claims in the LOA made by the defendants to be users authorized by the registrant were false. LWT will also testify that the LOA provided by the defendants in relation

to the netblock at issue is fraudulent because it was not on company letterhead, and the letter was supposedly signed in 2013 by someone not associated with the company in over 15 years. SAD will testify that the signature purporting to be his on the LOA submitted by the defendants is a forgery, and moreover, he had not been associated with the company that was the registrant of the netblock for over a decade. Such testimony is critical to the proof of these charges.

### D. **The Witnesses Would Participate in a Deposition if Ordered by This Court.**

Before granting a Rule 15 motion, courts must consider the willingness of the witness to be deposed. Olafson, 213 F.3d 442. As set forth in the Pierson and Booth Declarations, the witnesses would participate in a videotaped deposition, as ordered by the court. The witnesses would testify under oath in the presence of the defendants and their counsel, and be subject to cross-examination. As such, this factor also weighs in favor of granting the motion for a Rule 15 deposition.

In sum, a consideration of all the factors discussed above, including the probable unavailability of the witnesses for attendance at trial and the critical nature of the testimony to the government's proof, exceptional circumstances exist which make it in the interest of justice to authorize a Rule 15 deposition of this prospective trial witness.

//

//

//

# III.
## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court enter an order authorizing the taking of the depositions of LWT and SAD, pursuant to Fed. R. Crim. P. 15(a) to preserve testimony for trial.

DATED: June 23, 2021          Respectfully submitted,

                              RANDY S. GROSSMAN
                              Acting United States Attorney

                              /s/Melanie K. Pierson
                              Assistant United States Attorney