```
 1                    UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,    .
                                  .
 5               Plaintiff,       . No. 18-cr-4683-GPC
                                  .
 6            v.                  . June 25, 2021
                                  . 11:00 a.m.
 7   JACOB BYCHAK,                .
     MARK MANOOGIAN,              .
 8   MOHAMMED ABDUL QAYYUM,       .
     PETR PACAS,                  .
 9                                .
              Defendants.         . San Diego, California
10   . . . . . . . . . . . . . . .

11                   TRANSCRIPT OF MOTION HEARING
12            BEFORE THE HONORABLE GONZALO P. CURIEL
                    UNITED STATES DISTRICT JUDGE
13

14

15   APPEARANCES:

16   For the Plaintiff:     United States Attorney's Office
                            By: SABRINA L. FEVE, ESQ.
17                              ASHLEY GOFF, ESQ.
                                MELANIE K. PIERSON, ESQ.
18                              CANDINA HEATH, ESQ.
                            880 Front Street, Room 6293
19                          San Diego, California 92101

20   For the Defendant      Law Office of David W. Wiechert
     JACOB BYCHAK:          By: DAVID W. WIECHERT, ESQ.
21                              JESSICA C. MUNK, ESQ.
                            115 Avenida Miramar
22                          San Clemente, California 92672

23   For the Defendant      Mintz Levin
     MARK MANOOGIAN:        By:  RANDY K. JONES, ESQ.
24                          3580 Carmel Mountain Road, Suite 300
                            San Diego, California 92130
25   ///
```

1   APPEARANCES (CONTINUED):

2

3   For the Defendant        Bienert, Miller & Katzman, P.L.C.
    MOHAMMED ABDUL           By:   WHITNEY Z. BERNSTEIN, ESQ.
4   QAYYUM:                        THOMAS BIENERT, ESQ.
                             903 Calle Amanecer, Suite 350
5                            San Clemente, California 92673

6

7   For the Defendant        Bird Marella Boxer Wolpert
    PETR PACAS:                Nessim Drooks & Lincenberg
                             By:   NICOLE VAN DYK, ESQ.
8                                  GARY S. LINCENBERG, ESQ.
                                   DARREN PATRICK, ESQ.
9                            1875 Century Park East
                             Suite 2300
10                           Los Angeles, California 90067

11

12

13

14

15

16

17

18

19

20

21

22   Court Reporter:          Chari L. Bowery, RPR, CRR
                              USDC Clerk's Office
23                            333 West Broadway, Suite 420
                              San Diego, California 92101
24                            chari_bowery@casd.uscourts.gov

25   Reported by Stenotype, Transcribed by Computer

```
 1            SAN DIEGO, CALIFORNIA; JUNE 25, 2021; 11:00 A.M.

 2                               -o0o-

 3            THE CLERK:  Calling item five on the calendar, Case

 4   Number 18-cr-4683, U.S.A. v. Bychak, et al.  If we can please

 5   have the appearance of defendant number one's attorneys first,

 6   please.

 7            MS. MUNK:  Good morning, Your Honor.  Jessica Munk

 8   and David Wiechert on behalf of Jacob Bychak, who is present on

 9   the phone.

10            THE COURT:  Good morning.  And then, for defendant

11   two?  Yes, sir.

12            MR. JONES:  Yes.  Good morning, Your Honor.  Randy

13   Jones on behalf of Mark Manoogian, who is not present.

14            THE COURT:  All right.  Good morning, Mr. Jones.  I

15   understand you are waiving your client's right to be present

16   for this proceeding; is that right?

17            MR. JONES:  That's correct, Your Honor.  Thank you.

18            THE COURT:  And so you have consulted with him, and

19   he has agreed to waive his appearance, true?

20            MR. JONES:  Yes.  Yes.

21            THE COURT:  Thank you, Mr. Jones.

22         And on behalf of defendant number three?

23            MS. BERNSTEIN:  Good morning, Your Honor.  Whitney

24   Bernstein on behalf of Mr. Qayyum.  I am joined on this call by

25   Tom Bienert of my office, and Carlos Navarro, of my office,
```

1   also will be jumping on the call briefly.  Mr. Qayyum also is

2   present on the call.

3        THE COURT:  Good morning, Ms. Bernstein and other

4   counsel, and Mr. Qayyum.

5   And with respect to defendant number four, may I have an

6   appearance?

7        MR. LINCENBERG:  Yes, Your Honor.  This is Gary

8   Lincenberg on behalf of Mr. Pacas.  Ms. Van Dyk and Mr. Patrick

9   are on the line with me.  My client is not present.  We have

10  consulted with him and his appearance has been waived.

11       THE COURT:  All right.  Thank you, Mr. Lincenberg.

12  We are also joined by one or more attorneys from the

13  United States.  May I have those appearances.

14       MS. PIERSON:  Melanie Pierson here for the United

15  States, along with Sabrina Feve, Ashley Goff, and Candi Heath.

16       THE COURT:  Good morning, Ms. Pierson and co-counsel.

17  We are on calendar for a status hearing regarding the

18  joint motion to continue the trial that was filed on June 11.

19  The government filed a response June 17, and the defense filed

20  a reply on June 24.

21  Before I move on to that, let me address a Rule 15 matter

22  that has now been filed by the government under seal.  I

23  understand that the defense has received a copy of that motion.

24  Let me inquire as to how much time is requested for the defense

25  to respond to the motion.  Is there anyone -- I know it was at

1    first addressed by Ms. Bernstein.

2         Ms. Bernstein, do you have any view on how long you should

3    have to respond?

4              MS. BERNSTEIN:  Your Honor, I am going to defer to

5    Mr. Wiechert for the Rule 15 matters, and I will take up the

6    motion to continue.

7              THE COURT:  All right.  Mr. Wiechert?  I am otherwise

8    prepared to allow you a week to respond.

9         And let me check with Ms. Pierson.  Did you file that

10   motion yesterday, or when was it filed?

11             MS. PIERSON:  I believe the motion was filed the

12   23rd, and we filed the motion -- we filed the motion openly, in

13   public.  What we simply sent to be filed under seal was the two

14   declarations in support of the motion, which included the

15   confidential medical information.

16             THE COURT:  But, otherwise, defense would have

17   received copies of those proposed sealed documents that have

18   now been sealed?

19             MS. PIERSON:  Yes.  Yes.  I copied them on the email

20   that I sent to the Court requesting sealing.

21             THE COURT:  So, that being the case, I would be

22   prepared to allow the defense to respond no later than

23   July 2nd, and then we will have a hearing on July 8th, at

24   1:00 p.m.

25             MS. PIERSON:  Sorry.  You said July what, the

1    hearing?

2         THE COURT:  July 2 for the response, and July 8, at

3    1:00 p.m., for the hearing on the Rule 15 matter.

4         Does anyone wish to be heard further on that?  No?

5         All right.  So, then, let's proceed with the joint motion

6    to continue trial, which I have reviewed, as well as the

7    response and reply.

8         Here is how I see things.  I know there's been some

9    back-and-forth as to what Court was told what at what time, and

10   there ultimately is a request to continue this trial to

11   September of 2022.  I am not prepared to do that.  And at this

12   point, looking at the conflicts created by pending trial dates,

13   here is how I look at that.

14        With respect to the Arizona case that has been scheduled

15   and is set for trial, I believe, August 23, 2021, at this

16   point, I have no quarrels with that trial date, with that case

17   going forward.  It deserves to go forward first.  It is the

18   oldest case of all of the cases that we have here.

19        My problem is somehow or another bumping our trial so that

20   2020 cases before my esteemed colleague Judge Hatter and Judge

21   Wright, Judges Carter and Holcomb, would go first before ours.

22   Our case deserves priority over those cases.

23        So, what I am prepared to do is to, at this point,

24   maintain the trial date that we have with a status hearing date

25   of November 4th, at which time we will be in a better position

1    to know exactly where we are, because there are estimates that

2    the Arizona trial may proceed for a number of weeks, and as we

3    know, things change.  Things change in many ways.  The case

4    could be bumped again.  The government could streamline their

5    case.  It could be much shorter.  The defense could decide they

6    are going to streamline their case.

7        So, given all of that, I don't think we should be making

8    our plans based upon the outermost estimate on how long that

9    trial may last.

10       So, then, the second thing is that I would be prepared to

11   trail our case to a date after the conclusion of the Arizona

12   trial, keeping in mind the need for some ability to prepare for

13   that trial, but also, taking into account that, at this point,

14   we are in June of 2021.  I would expect that there has been a

15   significant amount of preparation up to this point, and if not,

16   I think that's defense counsel's mistake.  But they have the

17   time, and we have a number of attorneys, experienced attorneys,

18   who are in the position to delegate as to those matters that

19   can be delegated and otherwise be in a position to try the case

20   within a reasonable period of time after the conclusion of the

21   Arizona case.

22       So that's what I am prepared to do, but let me hear from

23   counsel first, Mr. Wiechert -- actually, Ms. Bernstein, you

24   said you were taking the laboring oar on this motion, so let me

25   hear from you.

1          MS. BERNSTEIN:  Thank you, Your Honor.

2      And we appreciate Your Honor's position, and I think that

3  it does sound wise to set a status conference but can represent

4  to the Court, being intimately involved with the Arizona case,

5  barring a true miracle, there is no way we are going to be in a

6  position to do anything in that case by the end of November or

7  December.

8      The government's estimate of their case in chief has been

9  12 weeks.  The Court has set this case for 16 weeks but has

10  also limited the number of days that we are appearing each

11  week.  So the case was originally set for all 16 weeks and we

12  were supposed to try the case five days a week.  That has now

13  been cut down to four days a week, and some weeks are three

14  days a week.  There's also been breaks scheduled for one of the

15  defense counsel's wedding, and I believe that break is in the

16  beginning of November.

17      So, the government's case-in-chief estimate is now

18  expected to actually take the duration of the scheduled trial

19  days.  The Court's scheduling of that case has not taken into

20  account any defense case.  There are six defendants.  This the

21  government's prosecution of the former executives and employees

22  of backpage.com.  It is an aggressive trial of first

23  impression.  The government has noticed 90 witnesses.  We have

24  over 2,000 exhibits noticed on the most recent exhibit list,

25  and some of those exhibits are thousands of pages each.

1    And we do have most, though not all, of our motions *in*

2    *limine*, that have not meaningfully limited the government's

3    case at all.

4    So I don't -- I would love to be in a position to try this

5    case before Your Honor at the end of 2021, but I am afraid we

6    are still going to be stuck in Arizona for some time.

7    The Court has also advised us in that matter to not

8    schedule things in the beginning part of January so that we are

9    also in a position to continue the trial if we haven't

10   concluded by the time the case is over.

11   So I think what probably makes the most sense is if this

12   Court sets a firm trial date and whether this Court sets that

13   at the requested time of September or sometime sooner,

14   understanding what the Court said about our other matters in

15   the Central District of California, I think it would be helpful

16   if we had a firm trial date so that we can follow up with other

17   courts and so that we can keep it clear.

18   I am afraid if we leave this to be an amorphous trailing

19   after the Arizona trial, with some amount of time so that we

20   can recover from a five-month, out-of-state trial and get back

21   to the rest of our practice and prep for this complex case, I

22   am afraid that if we just trail this without a date on calendar

23   that we will have other things set, and it is just going to

24   have a continual cascading effect of having to notify and bump

25   all other courts.

1          The pandemic has, unfortunately, created this logjam for

2     everyone and for all of the courts, and we do want to be

3     mindful to try this case before Your Honor and also been

4     respectful of other court calendars.  We think a firm date, so

5     we can plan around that, would be very helpful.

6          To the Court's point about defense counsel preparation, we

7     certainly have prepared for this case.  But I can also say that

8     gearing up for a five-month, out-of-state trial, a lot of our

9     focus -- for at least myself, and Mr. Lincenberg and

10    Mr. Bienert -- is being directed to Arizona for the time being.

11    So we are just -- it just isn't very realistic or practical for

12    us to do prep work in this case right now, prep work for the

13    Arizona trial, try the Arizona case, and dive straight into

14    another severely complex case that the government represents

15    will take a significant amount of time.

16         We don't even exactly know what the government's case is

17    at this point.  Discovery has been ongoing.  I think -- I don't

18    know the date, but it was within the past week or two that we

19    received the government's 31st production.  So I don't know

20    when the government plans to cease discovery, if they plan to

21    cease discovery, but this case has continued to evolve as well.

22         So I guess, to summarize, I do think it would make more

23    sense for this Court to set a firm trial date so that we can

24    all plan around that.  We do request September so that we

25    can -- given the other matters that we have scheduled.  But I

1    can let my colleagues speak to the viability of moving their

2    other matters.

3            THE COURT:  Ms. Bernstein, I don't see why it is that

4    this Court would take a back seat to the cases that are pending

5    in the Central District, which are from 2020, 2019.  That

6    doesn't make any sense to the Court.  Can you explain why it

7    makes sense to give those cases priority?

8            MS. BERNSTEIN:  I think --

9            MR. LINCENBERG:  Ms. Bernstein, if I may jump in --

10   this is Gary Lincenberg.

11       Judge, I agree with Your Honor that it makes sense to set

12   a status conference.  I agree with the reasoning that this case

13   should take priority.  And so I have no qualms with it

14   generally.

15       Part of the problem is the practicalities of what do we do

16   with the judges in the other cases?  And if there's dates for

17   motions and prep and we have those dates -- you know, that was

18   in part why I was suggesting at that hearing -- the Court

19   probably looked back at the transcript.  We were talking about

20   setting the May date because, the next thing we know, there's

21   other dates; Courts are setting dates for cases that come

22   along.  And what do we say to those judges when -- we say,

23   "Well, we don't have a trial right now in September.  We could

24   theoretically do it.  But the Court should know that, in Judge

25   Curiel's courtroom, this is what is going on, and counsel

1    doesn't have these dates," and the like.

2        And that's a little bit of the quandary, as we are doing

3    all of these prep on these various trials -- and I know we are

4    not the only ones suffering this hardship that is in part

5    because of COVID.  The Court has scheduling issues.  The

6    prosecutors do as well.  But that's why we are suggesting

7    having -- setting a trial date that's certain.

8        And if the Court, at the end of the day, says the Court

9    prefers to do a status conference and then, you know, we take

10   it up with the other judges in terms of priority, we will work

11   with that.  It just -- it gets our heads spinning on what cases

12   we have to deal with, what deadlines.  And there's an

13   exponential effect with the prosecutors in those other cases,

14   what they are telling their judges and the like.  And that's

15   part of the argument in terms of setting a date.

16           THE COURT:  So, here is the response.  We are having

17   a status hearing on this case, essentially, today.  We are

18   going to have another one in November.  And we may have another

19   one after that.  And unfortunately, it's partly because of

20   COVID, but it's mainly because we are talking about a mega

21   trial that may consume 16 or 20 weeks.  And meanwhile, we are

22   somewhat held hostage here in the case that involves more than

23   six attorneys.  Certainly we have, I don't know, six seven,

24   eight, attorneys.

25       So it would be difficult under the best of circumstances

 1   to find a trial date for this case, as we have seen.  But,

 2   then, as far as trying to thread the needle through the morass,

 3   through the challenges of a post-COVID calendar, it is going to

 4   keep our heads spinning for probably the next six to 12 months.

 5   That's just the reality of it.

 6        But at this point, I am wary of setting a firm date today

 7   rather than saying we will trail and we will deal and we will

 8   all do the best that we can to deliver each defendant and the

 9   community with their right to a speedy trial.

10        Let me hear from the government.

11            MS. PIERSON:  The government finds the Court's

12   tentative to be eminently reasonable, a status in November,

13   with the idea that the trial date remains the same and will

14   trail the Arizona case.

15        The information that we received from the prosecutors in

16   Arizona, you know, just in the last week, when we filed our

17   motion, is they did not expect the trial -- they expected the

18   trial to conclude before our date began, irrespective of four

19   days a week or 90 witnesses or whatever.  So we would -- we

20   agree with the Court's tentative.

21            MS. BERNSTEIN:  Ms. Pierson, I am just curious.  That

22   is news to me because the government -- they have not made that

23   representation to us.  Does the government believe that the

24   defense case will also conclude?  We are going somehow do this

25   entire case, now, in about 12 weeks?

```
 1              THE COURT:  So, I understand there's a lot of
 2    back-and-forth.  I get that.  And I am not in a position to be
 3    able to figure out what is going to happen precisely, which is
 4    precisely the reason why we need to have a status hearing on
 5    November 4th.  And at this point, we will maintain the trial
 6    date that we have, and then we will set the matter for a status
 7    hearing on November 4.  And I expect, by then, a number of
 8    things will have changed.  Some of these cases that are listed
 9    as set for trial in ECF 240-1, at pages 5 to 6, may go away.
10    There may be some where they may be continued.  There's any
11    number of things that can happen, because there are so many
12    moving parts.
13         So, at this point, we will set the matter for a status
14    hearing on November 4 --
15              MR. WIECHERT:  Your Honor, this is Mr. Wiechert.  If
16    I could just speak to that status conference date in November.
17              THE COURT:  Yes.
18              MR. WIECHERT:  That is so close to the trial date,
19    within a few weeks of the trial date, that we would have to
20    have subpoenaed witnesses, put together jury instructions, do a
21    lot of things.
22              THE COURT:  Do you want to do it earlier?  Do you
23    want to have it in October?
24              MR. WIECHERT:  Yes.  I think it would be much better
25    to have it a month before, perhaps the first week of October.
```

1    Because, then, the Arizona case will be in the midst.  We will

2    still have a good idea of where the Arizona case is going to

3    end up in terms of timing.  But if it looks like the trial,

4    your trial, is going to be pushed out, we don't have to

5    reinvent the wheel if it gets pushed out in November.

6              THE COURT:  That's fine.

7              MR. WIECHERT:  The idea --

8              THE COURT:  I am sorry?

9              MR. WIECHERT:  One other thing, just the idea of

10   trailing, if the Arizona case ends the first week of January,

11   let's say, I have, on the third week of January, a first-degree

12   murder trial.  My client has been in custody.  She will have

13   been in custody for two years.  That case is going to go, and I

14   think that because of her status in custody and because of the

15   severity of the case and because of the public interest --

16             THE COURT:  I am sorry.  Which case is that?  Is that

17   listed in the ECF 240?

18             MR. WIECHERT:  Yes, it is.

19             THE COURT:  Which case is that?

20             MR. WIECHERT:  It is United States v. Sheila Ritze,

21   R-I-T-Z-E.

22             THE COURT:  All right.  And that's an estimated two

23   weeks?

24             MR. WIECHERT:  Yes.  That's an estimated two weeks.

25        So our projection was that if we started trial at the end

1   of November, we would finish this trial by, perhaps, the end of

2   December, and then I would start that murder case the third

3   week of January.  But if the trial in Arizona ends, let's say,

4   around January 1st, there's -- I cannot participate in both

5   trials at the same time, and we are not a large firm, so I

6   am --

7           THE COURT:  There's no way for any of us to know what

8   the situation is going to be even as of October.

9       So, I agree that it makes sense to move up the status

10  hearing date to October so that, in the event it looks like the

11  Arizona case is winding down, then the parties can set in

12  motion their subpoenas and start to prepare in earnest.

13      So I can set it for October 8th.  Does that work for

14  everybody?

15          MS. BERNSTEIN:  Your Honor, we are not sitting for

16  trial on October 4th.  I don't know if there's the ability --

17  we are not sitting for the Arizona trial on October 4th, if

18  there is the ability to set it before Your Honor that day.

19          THE COURT:  We can do it that day.  We can do it

20  October 4th.  We can do it telephonically.

21      And you are all welcome to be present in person, as are

22  your clients, since they have a constitutional right to be

23  present in court.  They are welcome to be in court.  But to the

24  extent that they waive their personal appearance and wish to

25  appear telephonically or just waive their appearance, period, I

 1    will accept those waivers.

 2         And then we will set it for October 4, at 1:00 p.m.

 3         The Court, I believe, has already found excludable time

 4    with respect to the time frame between some weeks ago and

 5    November 30th, and the Court will just confirm the previous

 6    exclusions under the Speedy Trial Act.  And finding that, under

 7    3161(h)(7)(B)(iv) and (B)(i), that this time is time where we

 8    cannot set the trial for various reasons; the unavailability of

 9    trial dates and the need of counsel to prepare for the Arizona

10    mega trial.

11         And then, is there anything else before we conclude?

12         So, we have on calendar this follow-up, July -- I think it

13    was the 8th?  Is that correct, Madam Clerk?

14              THE CLERK:  Yes.

15              THE COURT:  July 8, at 1:00 p.m., for the Rule 15

16    motion.

17         Anything else from the defense?

18              MR. JONES:  Nothing for Mr. Manoogian, Your Honor.

19              MR. WIECHERT:  Nothing on behalf of Mr. Bychak.

20              MR. LINCENBERG:  Nothing further, Your Honor.

21              MS. BERNSTEIN:  Nothing for Mr. Qayyum.  I won't --

22              THE COURT:  I am sorry, Ms. Bernstein?

23              MS. BERNSTEIN:  I will be unavailable on the 8th, but

24    I have checked with my colleagues and someone will still be

25    there for Mr. Qayyum.  So there's nothing further.  Thank you,

1    Your Honor.

2          THE COURT:  And on behalf of the United States,

3    Ms. Pierson?

4          MS. PIERSON:  I would just like to know, on the 8th,

5    that will be in person?

6          THE COURT:  Yes.  Let's make that in person to the

7    extent that that is somewhat substantive.  It is somewhat

8    procedural but also somewhat substantive.  So, given that, we

9    will hold that hearing in court.

10       And then, to the extent that the --

11         MS. PIERSON:  Nothing further.

12         THE COURT:  -- to the extent that the defendants wish

13   to waive their appearance, I will permit that.

14       Go ahead.

15         MR. WIECHERT:  Your Honor, one other thing, with

16   regard to the Rule 15 issues, it is our expectation it is

17   likely we will be able to bang out a stipulation with the

18   government with regard to the contours of conducting the

19   Rule 15 deposition before the hearing date, so if that's the

20   case, we will get it before you, and it may not be that we even

21   have to have a hearing.

22         THE COURT:  All right.  Very good.  I appreciate any

23   meet-and-confer and any efforts to try to resolve this

24   informally.

25       That will conclude this proceeding.  Have a good weekend.

```
 1             MR. LINCENBERG:  I am sorry, Your Honor.  Gary

 2   Lincenberg, Your Honor.

 3             THE COURT:  Yes.  Yes.

 4             MR. LINCENBERG:  With regard --

 5             THE COURT:  With regards -- I think we lost you.

 6   Mr. Lincenberg, if you can hear me, we lost you.

 7        Are other attorneys on the line still?

 8             ALL:  Yes, Your Honor.

 9             THE COURT:  Mr. Lincenberg?  I don't know what

10   happened.

11             MR. LINCENBERG:  Can you hear me?

12             THE COURT:  Mr. Lincenberg, can you hear me?

13        Yes, now I can.  You cut off.

14             MR. LINCENBERG:  I am sorry, Your Honor.  I was just

15   going to ask, on the 8th, if it was also possible to appear

16   telephonically.

17        Hello?

18             THE COURT:  Yeah.  I am thinking about it.

19        What is the position of the government?

20             MS. PIERSON:  We will defer to the Court on that.  I

21   was suggesting in person.

22             THE COURT:  Number one, it looks like counsel are

23   aiming to have this resolved informally.  I mean, it's not the

24   most substantive of motions.  And it, in some ways, may not

25   even be more substantive than what we handled today.  So if all
```

1    counsel agree that they believe that this matter does not

2    require an in-person hearing, I will accept that.

3         Do all defense counsel believe that this matter does not

4    require an in-person hearing?

5              MS. BERNSTEIN:  Yes, for Mr. Qayyum.

6              MR. JONES:  Yes, for Mr. Manoogian.

7              MS. MUNK:  Yes, for Mr. Bychak.

8              THE COURT:  And Ms. Pierson?

9              MS. PIERSON:  Well, if everyone is in agreement, then

10   that's fine.

11             THE COURT:  So, then, we will proceed telephonically

12   on July 8th on the Rule 15 hearing.

13        And then, hopefully, with that, that concludes this

14   matter, and we will talk to you all on July 8, if the matter is

15   not resolved.  Take care.

16             ALL:  Thank you, Your Honor.

17        (End of proceedings at 11:30 a.m.)

18                            -o0o-

19

20

21

22

23

24

25

```
 1                    C-E-R-T-I-F-I-C-A-T-I-O-N

 2

 3           I hereby certify that I am a duly appointed,

 4   qualified and acting official Court Reporter for the United

 5   States District Court; that the foregoing is a true and correct

 6   transcript of the proceedings had in the aforementioned cause;

 7   that said transcript is a true and correct transcription of my

 8   stenographic notes; and that the format used herein complies

 9   with rules and requirements of the United States Judicial

10   Conference.

11                 DATED:  June 30, 2021, at San Diego, California.

12

13                          /s/  Chari L. Bowery

14                          _____
                            Chari L. Bowery
15                          CSR No. 9944, RPR, CRR

16

17

18

19

20

21

22

23

24

25
```