RANDY S. GROSSMAN
Acting United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov
Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No. 18cr4683-GPC |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANTS' MOTION TO COMPEL DISCOVERY REGARDING THE ORIGIN OF RECORDS RECEIVED** |
| v. | |
| JACOB BYCHAK et. al., | |
| Defendants. | |

Defendants' Motion to Compel should be denied because it relies on a series of incorrect and unsupported assumptions, including that the prosecution team has both improperly withheld discovery and tasked private parties to misappropriate Company A documents. To date, the United States has disclosed both the records it received from the source of information at Spamhaus (SS) and, to the extent such information is

in the prosecution team's possession, the origin of those records. Any Company A records produced by SS that originated from a private party, such as a suspected Company A insider, were received after the United States had obtained search warrants and issued subpoenas seeking records from or related to Company A. The doctrine of inevitable discovery would also apply had the United States received such records earlier. Moreover, the provision of records by one private party to a second private party, who later provides those records to the government without any direction or encouragement by the United States does not provide a basis for suppression under the Fourth Amendment. As such, the requested information is neither material nor discoverable.

I.

STATEMENT OF RELEVANT FACTS

In June of 2014, SS advised the FBI that Spamhaus received information about the activities of Company A from an anonymous private party (Anon-1). SS speculated that Anon-1 was an individual (CY) who briefly worked at a firm related to Company A until mid-2013, prior to any of the substantive offenses charged in the Indictment. SS provided an email address for Anon-1 to the FBI.[1] The FBI then wrote to the email address SS provided for Anon-1. Anon-1 did not, however, agree to meet or speak with the FBI and the FBI did not ultimately receive documents or information from Anon-1. (See Declaration of Assistant U.S. Attorney Melanie Pierson, attached as Exhibit 1 hereto.)

In December of 2014, the United States obtained a warrant for defendant Manoogian's Company A email account, and, six months later, obtained a warrant for four other Company A email accounts and the email

---

[1] The government does not know whether the individual using the Anon-1 email address was actually CY.

account of Daniel Dye. In September of 2016, the United States issued subpoenas *duces tecum* to Company A and five related companies, obtaining documents and emails duplicative of those obtained in the warrants, as well as numerous additional records that the government will seek to admit at trial. *Id*. Of the approximately 1,904,907 pages of discovery produced to date, approximately 1,365,668 pages, or about 70%, consists of records obtained pursuant to those six subpoenas.

In December of 2017, after the issuance of the subpoenas, the FBI interviewed CY. The report of interview does not indicate that CY identified himself as Anon-1. Thereafter, through his attorney, CY provided four documents to the government in an email from his attorney dated January 10, 2018.

Defendants' Exhibit C (DKT 257-5)[2] is an email dated September 27, 2017, wherein SS advised the FBI, "So far I have not included anything our informants have given us." The dates of this email and the January 10, 2018 email from CY's attorney forwarding CY's documents show that the government did not receive any items or records from Spamhaus that originated from any anonymous private party or CY prior to September 27, 2017, at least a year after the subpoenas *duces tecum* were issued to Company A and the five related firms.

The government has provided the defense with the reports of contacts with SS, which document the information and records provided, and the dates upon which the contact or production occurred. The government has also provided the defense with the emails between the FBI and SS, and any attachments that were sent to the FBI with those emails, which also show the dates of transmission. The defense is therefore in possession of the information received by the government

---

[2] The bates stamp on Exhibit C is [Company A]-DISC26-02119.

from SS and the dates upon which the information was received. There is no evidence in any of these materials that the FBI directed or encouraged SS to attempt to obtain internal Company A documents. To the extent that SS provided information regarding the origin of the information SS provided to the government, that origin is documented in the reports and emails. The information known to the prosecution team regarding the origin of the information provided by SS has been disclosed, and the prosecution team has no further information in its possession to provide regarding that subject.

## II.

### THE INFORMATION SOUGHT IS NOT DISCOVERABLE.

In its motion to compel, the defense assumes that unidentified documents were "cultivated" or "purloined" from Company A by an unidentified Company A employee or fiduciary, whom they assume provided the documents to SS, whom they further presume provided the documents to the FBI. Although the prosecution team has provided the defense with all the information in its possession regarding the origin of the records disclosed in discovery, the defense now seeks to have the government conduct additional investigations on behalf of the defense and make further inquiry with Spamhaus regarding the origin of all records provided to the government.

The government should not be tasked with investigating unfounded assumptions set forth by the defense. The Ninth Circuit in *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) defined the standard for disclosure of documents or evidence material to the defense:

> A defendant must make a threshold showing of materiality, which requires a presentation of "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.

1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." Id.

Even though the defense contends in its motion that materiality has a low threshold, it still needs to be more than an educated guess about the existence of or importance of a document. *United States v. Salyer*, 271 F.R.D. 148, 158 (E.D.Cal. July 9, 2010). In the instant case, the defense's inquiry does not rise to the level of an educated guess. The defense assumes that unidentified documents exist, which were "cultivated" or "purloined" by unidentified private parties, who the defense speculates may be employees or fiduciaries of Company A. The defense further assumes that the unidentified private parties proffered these unidentified documents to SS at SS's request, who they presume was acting as an agent of the government. The defense additionally assumes that SS proffered these unidentified documents to the government, who failed to disclose them in discovery. Finally, the defense's biggest assumption is that the government directed all this activity in the first place.

The defense has failed to articulate any facts tending to show the sought-after documents exist or have not previously been produced. To the contrary, the government has repeatedly assured the defense that all the evidence intended to be used in its case-in-chief was obtained through grand jury subpoenas, which were issued in 2016. Thus, the evidence received via subpoenas and to be used as exhibits at trial during the government's case-in-chief were neither "cultivated" nor "purloined" by a purported employee or fiduciary of Company A.

Moreover, the inevitable discovery exception to the exclusionary rule applies where the prosecution can establish by a preponderance of the evidence that the information and records ultimately would have

been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984). Because the Company A information and records would be inevitably discovered through the lawful means of a subpoena to Company A, the defendants' claim of a Fourth Amendment violation is without merit. In fact, to the extent that any "purloined" records were received from either Anon-1 or CY, it was well after the subpoenas were issued.

On its face, it appears that the defense's motion to compel seeks documents related to its speculation that SS obtained documents from private parties they refer to as Company A informants. In support of their motion to compel, the defense acknowledges that they are seeking this information to mount a Fourth Amendment challenge. Defendants allege and have the burden to establish a Fourth Amendment violation, namely that a private party acted as an agent or instrument of the government. *United States v. Cleaveland*, 38 F.3 1092, 1093 (9th Cir.1994). As best can be discerned, the defense posits that either CY or Anon-1 were private parties who acted as agents or instruments of the government by acting as an agent of SS, who was in turn an agent of the government. The defense has provided no case law to support this attenuated argument of agency. Their argument also overlooks the fact that CY left Company A's affiliated business in mid-2013, well before SS met with the San Diego prosecution team.

The defense correctly sets out the two-part inquiry established to evaluate a violation of the Fourth Amendment in *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994):

> (1) whether the government knew of and acquiesced in the intrusive conduct; and
>
> (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends.

In looking at step two, if a private party has dual motives, that is a "legitimate, independent motivation to further its own ends" and a desire to assist law enforcement, the Ninth Circuit requires the Court to determine whether "the government's participation" in the search was "so extensive as to trigger Fourth Amendment scrutiny." *Cleaveland* at 1094. It is not enough that the government "used the fruits of the search to obtain a warrant." Id. Instead, the government must have "actively" participated in the search. *Id. See also United States v. Walther,* 652 F.2d 788, 792 (9th Cir. 1981) ("The presence of law enforcement officers who do not take an active role in encouraging or assisting an otherwise private search has been held insufficient to implicate Fourth Amendment interests, especially where the private party has had a legitimate independent motivation for conducting the search."); *Corngold v. United States*, 367 F.2d 1, 5-6 (9th Cir. 1966) (*en banc*) (explaining that even when a private party has dual motives, a search that law enforcement "joined actively" is equivalent to a search by the government).

Spamhous is an international nonprofit organization whose mission is to identify spammers and disrupt spamming-related activities. This mission is and was a "legitimate, independent motive" for Spamhaus to collect information on Company A.  Moreover, as the defense notes, an affiliate of Company A was actively suing Spamhaus at the time SS provided information to the FBI. This defamation lawsuit provided further reason for Spamhaus to seek and collect information about Company A. *See Ames v The Spamhaus Project Limited* [2015] EWHC 127 (QB)[3].  The facts therefore show that Spamhaus had legitimate,

---

[3] https://vlex.co.uk/vid/craig-ames-and-another-793272033 (last accessed August 6, 2021).

independent motives for gathering information regarding Company A's spamming activities.

In contrast, the defense has proffered no evidence that a private party illicitly searched Company A, let alone that the government encouraged or condoned such an intrusion. Even if such an intrusion had occurred, "the *subsequent* involvement of government agents does not retroactively transform the [private party's] intrusion into a government search." *United States v. Sherwin*, 539 F.2d 1, 6 (9th Cir. 1976) (emphasis added). Having provided no facts to support their various assertions, the defense has failed to make a threshold showing of materiality and their motion should be denied.

## CONCLUSION

Defendants' motion is a fishing expedition that lacks both a factual basis and legal support. For the foregoing reasons, the United States respectfully requests that the court deny the defendants' motion to compel discovery.

DATED: August 6, 2021

Respectfully submitted,

RANDY S. GROSSMAN
Acting United States Attorney

/s/*Melanie Pierson*
Assistant United States Attorney

/s/*Sabrina L. Fève*
Assistant United States Attorney

/s/*Candy Heath*
Senior Counsel
DOJ Computer Crime & Intel. Prop. Sec.