**WIECHERT, MUNK & GOLDSTEIN, PC**
David W. Wiechert, SBN 94607
Jessica C. Munk, SBN 238832
William J. Migler, SBN 318518
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822
Email: dwiechert@wmgattorneys.com
jessica@wmgattorneys.com
william@wmgattorneys.com

*Attorneys for Jacob Bychak*

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKYAND POPEO, P.C.**
Randy K. Jones, SBN 141711
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1510
Email: rkjones@mintz.com

Daniel J. Goodrich, BBO 692624 (Pro Hac)
Ryan Dougherty, BBO 703380 (Pro Hac)
1 Financial Center
Boston, MA 02111
djgoodrich@mintz.com
rtdougherty@mintz.com

*Attorneys for Mark Manoogian*

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
Thomas H. Bienert, Jr., SBN 135311
James D. Riddet, SBN 39826
Whitney Z. Bernstein, SBN 304917
Carlos A. Nevarez, SBN 324407
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Email: tbienert@bklwlaw.com
jriddet@bklwlaw.com
wbernstein@bklwlaw.com
cnevarez@bklwlaw.com

*Attorneys for Mohammed Abdul Qayyum*

**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG RHOW P.C.**
Gary S. Lincenberg, SBN 123058
Nicole Rodriguez Van Dyk, SBN 261646
Darren L. Patrick, SBN 310727
1875 Century Park East, Floor 23
Los Angeles, CA 90067
Telephone: (310) 201-2100
Email: glincenberg@birdmarella.com
nvandyk@birdmarella.com
dpatrick@birdmarella.com

*Attorneys for Petr Pacas*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JACOB BYCHAK, et al.,

Defendants.

Case No. 18-CR-4683-GPC
Honorable Gonzalo P. Curiel

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF MOTION FOR DISCOVERY OF CONFIDENTIAL INFORMANT**

[Declaration of Jessica C. Munk and Proposed Order filed concurrently herewith]

**Requesting In-Person Hearing**

Hearing Date: October 4, 2021
Hearing Time: 1:00 p.m.
Department: Courtroom 2D

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On April 30, 2019, the Court held that Defendants were not entitled to discovery identifying the government's confidential informant employed at the Spamhaus Project ("Spamhaus"), an international organization striving to police the sending of commercial email. But just like how much of the outside world has changed since the retrospectively halcyon days of April 2019, this case, and the circumstances surrounding the Spamhaus informant, have changed too. Since then, Defendants have obtained, via both voluntary and inadvertent government disclosure, evidence and information reflecting the Spamhaus informant's actual name and his importance to Defendants' anticipated motion to suppress confidential documents taken from Company A.

Since the Court's April 30, 2019 order, the government has produced documents showing that the Spamhaus informant had an outsized role in the government's investigation of Defendants, which included encouraging a former Company A insider to pass along purloined internal Company A documents to Spamhaus to ultimately pass along to the government. This is discussed more thoroughly in Defendants' concurrently filed Motion to Compel Discovery Re: Spamhaus' History of Assisting Governmental Investigations. The opportunity to interview this Spamhaus informant and/or call the informant as a witness regarding the potential illegal acquisition of Company A records would shed light on the extent of Spamhaus' assistance to the government here and the question of Spamhaus being a "state actor" for Fourth Amendment purposes, a question critical to Defendants' motion to suppress.

But to interview or call the informant as a witness, Defendants would need to know the Spamhaus informant's identity. Since the Court's April 2019 order, Defendants have learned of the Spamhaus informant's name via an inadvertent disclosure caused by the government's failure to redact his name on two recently produced documents. Defendants promptly alerted the government to its mistake and subsequently destroyed the documents in question according to the government's instructions, with all defense counsel agreeing to not use that information in their trial preparation.

However, one cannot unring a bell, and it is patently unfair to preclude the defense from utilizing this vital information that is pertinent to a key motion to suppress which, if successful, could significantly restrict the government's case. While Defendants are sympathetic to the general doctrine of clawing back inadvertent discovery disclosures (and the spirit of professional courtesy upon which the doctrine is grounded), the balancing of the interests here decisively weigh in favor of Defendants' using the informant's name; there is no comparison between Defendants' liberty interests at stake here against a non-existent threat of mischief against the informant.

Defendants thus request that the Court reconsider its previous April 30, 2019 ruling and find that Defendants are entitled to utilize the Spamhaus informant's identity given

both the inadvertent disclosure of his name and the recent disclosure of evidence demonstrating his ever-growing importance to this case.

## II. BACKGROUND

On March 15, 2019, Defendants jointly moved to compel discovery relating to the Spamhaus confidential informant, requesting, *inter alia*, that the Court order the government to provide Defendants his full name. Dkt. No. 71. On April 30, 2019, the Court denied this motion. Dkt. No. 93.

On February 12, 2021, almost two years later, Defendants received the government's 26th document production. Declaration of Jessica C. Munk ("Munk Dec.") at ¶ 3. Included within that production were various emails between the Spamhaus informant and FBI Special Agent Charles Chabalko between May 2014 and through and after the filing of the indictment in 2018. *Id.* These emails reflect close cooperation between the Spamhaus informant and the government during its investigation of Defendants, including references to the Spamhaus informant having communications with a Company A insider who was interested in cooperating against Company A. *Id*. Also included within this production of emails were references to the Spamhaus informant obtaining confidential internal documents from Company A via this Company A insider, with the Spamhaus informant advising Agent Chabalko on September 27, 2017 that the Company A insider had "sent internal emails implicating various people of doing various things." *Id.* at ¶ 4.

On July 30, 2021, Defendants moved to compel the government to identify those documents it possessed that were derived from the Company A insider via Spamhaus. Dkt. No. 257. On August 20, 2021, the Court granted this motion in part and ordered the government to have the Spamhaus informant identify which documents he provided to the government that came from the Company A informant. Dkt. No. 275.

On August 6, 2021, the government made its 39th document production. Munk Dec. at ¶ 5. Included within that production were documents pertaining to the Spamhaus informant. On one document the government failed to redact the informant's first name,

and on another document the government did not redact his last name, allowing Defendants to piece together the Spamhaus informant's full name. *Id.* Shortly after this was discovered, defense counsel alerted government counsel to the omitted redactions. *Id.* Government counsel requested that the documents be destroyed, and that Defendants not use the informant's actual name in their trial preparation, to which all defense counsel agreed. *Id.*

Defendants intend to both file a motion to suppress the internal Company A documents that the Spamhaus informant forwarded to the government and request a *Kastigar* hearing to determine the extent of the government's use of those documents and the leads and information derived therefrom. This motion will require Defendants to demonstrate that Spamhaus was a "state actor" when it interacted with the Company A insider vis-à-vis his theft of the documents. Being able to interview the Spamhaus informant, or subpoena the informant to compel disclosure of the communications with the Company A insider is thus of critical importance, and Defendants cannot coordinate these activities without this discovery and being able to utilize his full name. Munk Dec. at ¶ 6. This is the impetus for the instant motion.

The government's disclosure of evidence relating to the Spamhaus informant, and his direction of the government's investigation, including the production of numerous documents to the government, were not produced to the defense until almost two years *after* the Court's April 30, 2019 order, and thus could not have been presented to the Court for consideration at that time. Defendants accordingly now move the Court to reconsider its previous denial of their motion to compel discovery relating to the confidential informant on the ground that this new information represents a significant change in the circumstances bearing on the merits of this initial motion.

## III. ARGUMENT

### A. Motion for Reconsideration Standard

"[C]ourts, including the Ninth Circuit, have held that motions for reconsideration may be filed in criminal cases." *United States v. Carey*, No. 11-cr-00671-BAS-1, 2021

WL 1749900, at *3 (S.D. Cal. May 3, 2021) (citing *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000)). Courts have typically analyzed such reconsideration motions "under the same standards applicable to civil motions for reconsideration," finding reconsideration is appropriate if the district court is "(1) presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law." *Id.* (citing *United States v. Gomez*, No. 3:14-CR-3000-DMS, 2021 WL 347694, at *1 (S.D. Cal. Feb. 2, 2021)).

**B. The New Discovery Disclosures, Both Voluntary and Inadvertent, Warrant Reconsideration of the Court's Previous Denial of Defendants' Motion to Compel Disclosure of the Informant's Identity**

At the time of the Court's April 2019 decision, Defendants did not have the email correspondence between the FBI and the Spamhaus informant evidencing his heavy involvement in the government's investigation and his potential role in the theft of confidential Company A documents – these discovery productions were not provided to the defense until earlier this year. Munk Dec. at ¶ 7. Simply put, in April 2019 Defendants did not have the facts showing that the Spamhaus informant is a key component to Defendants' anticipated Fourth Amendment challenge. *Id.* Indeed, as only one example, it was not until August of this year, after the Court ordered the government to have the Spamhaus informant identify which documents he had received from the Company A informant, that the government produced emails between the FBI and the Spamhaus informant showing that the informant assisted the government in circumventing the attorney-client privilege in those documents taken from Company A. Specifically, the government produced a document "From Spamhaus" containing summaries of various emails and explaining that "I found the C[] Y[] email documents, and to avoid any potential attorney/client privilege issues (even though they were sent voluntarily by Y[] and not by their attorney herself), *I will only provide the headers of the emails as well as a summary of the contents* to provide some context."[1] *Id.* at ¶ 8. This alone warrants

[1] This email raises 5th and 6th Amendment concerns as well.

reconsideration.

However, it is the inadvertent disclosure of the informant's name, which did not occur until very recently, that represents the largest sea-change since the Court's April 2019 order. Defendants now have the very answer they have been seeking for over two years but are constrained from using this information to aid their defense because of the inadvertent disclosure doctrine, codified by Federal Rule of Evidence ("FRE") 502. Given this new discovery, reconsideration of Defendants' prior motion to compel the informant's identity is warranted.

Furthermore, the inadvertent disclosure doctrine is not absolute. Courts in the Ninth Circuit apply a five-factor test to determine whether an inadvertent disclosure constitutes a waiver of any privilege/confidentiality of disclosed documents: "(1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) scope of discovery; (4) the extent of disclosure; and (5) the overriding issue of fairness." *City of San Diego v. Kinder Morgan Energy Partners, L.P.*, Case No. 07-1883-MMA (WVG), 2012 WL 12884790, at *2 (S.D. Cal. May 1, 2012).

Additionally, the commentary to FRE 502 demonstrates that fairness is the watchword when it comes to the rule and overrides other considerations if invocation of the doctrine would unfairly disadvantage the opposing party. The 2007 Advisory Committee Explanatory Notes to subparagraph (a) explain that there is subject matter waiver as to the disclosed document if "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." And the Statement of Congressional Intent regarding subparagraph (b) makes clear that enacting FRE 502 did not "foreclose notions of fairness from continuing to inform application of the standard in all aspects as appropriate in particular cases."

Consideration of these factors leads to the conclusion that Defendants should be allowed to utilize the Spamhaus informant's identity in their trial preparation. As to the five factors, it must be noted that while the government rectified the error quickly, it was

*Defendants* who first alerted the government to the oversight; it is thus highly likely that the government would not have taken corrective measures so expeditiously if not for Defendants flagging the issue. And while the "scope of discovery" factor may weigh in the government's favor because it has made over 40 separate document productions, the inadvertent disclosure comprised the entirety of the subject matter at issue – the name of the Spamhaus informant. This is not a situation where the inadvertent disclosure has given Defendants some inferential insight that would require production of reams of additional documents to put the disclosed documents into the proper context. Here, when the government failed to appropriately redact the Spamhaus informant's name, they disclosed the entirety of that category of information – the whole kit and caboodle with nothing further needed. The "extent of disclosure" factor thus weighs heavily in Defendants' favor.

Lastly, the fairness factor weighs heavily toward Defendants. As noted, it was Defendants who alerted the government to its error, out of respect for the inadvertent disclosure doctrine and as a professional courtesy. Moreover, there is clearly a disparity between the competing interests involved. The Spamhaus informant has become a cynosure of this case for the defense, and proper exploration of a potential Fourth Amendment challenge requires them to have access to the informant to learn both his history of cooperating with the government and the specific role the informant played in the theft of internal Company A documents which the government now possesses. Ultimately at stake in this case is Defendants' very liberty. Contrast this with the government's interest in maintaining the informant's identity secret, which is negligible – and apparently an afterthought given the government's careless redaction mistakes.

Moreover, while a confidential informant's identity is generally afforded protection out of concern that disclosure may place the informant and/or his family at personal physical risk, this is not a case where the defendants and their counsel pose any danger to the informant whatsoever. This case does not involve or relate to a violent felony or gang activity; rather it involves the utilization of allegedly stolen IP netblocks to send

commercial email, about as milquetoast a crime imaginable. The alleged unlawful activity occurred several years ago. And, Defendants have (likely) never personally met the Spamhaus informant who likely resides geographically distant from them. There is not a shred of evidence that Defendants have, would, or even could pose any threat to the informant by knowing his identity. Moreover, if the Court felt that the Defendants posed any risk to the informant, disclosure of the name could be on an attorneys' eyes only basis.

In summary, it is unfair to preclude Defendants from using vital information they already possess to aid in their defense against criminal charges. The Court should thus reconsider its previous April 30, 2019 order and grant Defendants' motion to compel discovery relating to the Spamhaus informant's identity.

**IV. CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court reconsider its denial of their joint Motion to Compel Discovery Relating to Confidential Informant, Dkt. No. 93, and compel the government to provide discovery relating to the Spamhaus informant's identity.

Respectfully submitted:

Dated: September 20, 2021

**WIECHERT, MUNK & GOLDSTEIN, PC**

By: *William J. Migler*
David W. Wiechert
Jessica C. Munk
William J. Migler
*Attorneys for Jacob Bychak*

Dated: September 20, 2021

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By: *Randy K. Jones*
Randy K. Jones
*Attorneys for Mark Manoogian*

Dated: September 20, 2021

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: *Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
James D. Riddet
Whitney Z. Bernstein
Carlos A. Nevarez
*Attorneys for Mohammed Abdul Qayyum*

Dated: September 20, 2021

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: *Nicole Rodriguez Van Dyk*
Gary S. Lincenberg
Nicole Rodriguez Van Dyk
Darren L. Patrick
*Attorneys for Petr Pacas*

**CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE**

Pursuant to section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Randy K. Jones, Whitney Z. Bernstein, and Nicole Rodriguez Van Dyk.

Dated: September 20, 2021

By: s/*Jessica C. Munk*
Jessica C. Munk

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

AUSA Melanie K. Pierson
AUSA Sabrina L. Feve
AUSA Ashley E. Goff
U.S. Attorney's Office
880 Front Street, Rm 6293
San Diego, CA 92101
melanie.pierson@usdoj.gov
sabrina.feve@usdoj.gov
ashley.goff@usdoj.gov

Candina S. Heath
Department of Justice
1301 New York Avenue NW, Suite 600
Washington, DC 20530
candina.heath2@usdoj.gov

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 20, 2021, at San Juan Capistrano, California.

s/*Jessica C. Munk*
Jessica C. Munk