RANDY S. GROSSMAN
Acting United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JACOB BYCHAK et. al.,<br><br>    Defendants. | Case No. 18cr4683-GPC<br><br>**UNITED STATES' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SPAMHAUS'S HISTORY OF GOVERNMENT CONACTS [ECF NO. 281] & RECONSIDERATION REGARDING THE CONFIDENTIAL INFORMANT [ECF NO. 2820** |

I.

INTRODUCTION

Defendants' motion to compel discovery of "all documents and information relating to all other occasions of Spamhaus aiding the government in any investigation or prosecution related to violations of the CAN-SPAM Act or other federal statutes," ECF No. 281 at 2, and their

renewed motion to disclose the identity of the Spamhaus Source ("S.S."), ECF No. 282, should be denied because these conjoined motions are factually and legally baseless.

The defense offers two new pieces of evidence in support of their motions. The first is an FBI report clarifying that SS was not a Confidential Human Source for the FBI until one month before this case was indicted, and the second is an excerpt from the email from SS identifying the 11 emails obtained from C.Y., taken out of context, which the defense fantastically misrepresents as assisting "the government in circumventing attorney-client privilege." ECF No. 281-1, Exs. B & C.

Upon careful review, neither of these documents support their motions. The eleven emails the defense seeks to use to ultimately support a motion to suppress the records subpoenaed from Company A were: (1) in some cases, first provided to the government by Company A or related firms in response to a 2016 grand jury subpoena, (2) not provided to the government by SS until 2017 – a year after the grand jury subpoenaed records from Company A and three years after the FBI obtained search warrants for Company A emails based on probable cause statements that made *no* mention of the disputed emails, and (3) provided to SS by an individual known to defendants, who is represented by counsel, whom defendants have never sought to interview, and who is the only witness who could establish whether or not the emails were, in fact, "purloined." Moreover, neither SS nor the Spamhaus Project can provide defendants with the facts needed to justify suppression of Company A emails produced pursuant to a 2016 grand jury subpoena based on emails transmitted to the government in 2017, so their motions therefore must fail on the facts.

Defendants' motions are also legally untenable as they rely on speculation at odds with the facts, making a threshold showing of materiality impossible. *See United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995). Defendants overly-broad request for any communications between any Spamhaus Project employees and any federal agency relating to violations of any federal law is the kind of fishing expedition that this Court and others have repeatedly rebuffed, and which runs afoul of *United States v. Armstrong*, 517 U.S. 456, 462 (1996) and its' long-standing prohibition of compelling discovery for similar types of speculative "sword" defenses.

SS is not a percipient witness to any of the events in this case and will not be called to testify by the government. The government's interest in protecting the identity of SS remains strong, even if his identity has been inadvertently discovered by defense counsel, where persons other than the defendants in this case may have reason to resent the conduct of the informant. *United States v. Long*, 533 F. 2d 505 508 (9th Cir. 1976). Because there are others under investigation by other offices of the FBI who may have cause to resent the actions of SS, his or her identity should not be disclosed in any form in this case.

## II.

### STATEMENT OF RELEVANT FACTS

The government incorporates by reference the Statement of Relevant Facts outlined in its August 6, 2021 brief in opposition to defendants' motion to compel discovery relating to the SS, *see* ECF No. 265, and offers the additional information:

Pursuant to the court's order of August 20, 2021, the FBI requested that SS identify the documents provided to the FBI that were received from the individual the defense accuses of "purloining" Company A

internal documents. In response, SS identified 11 emails. These 11 emails were previously transmitted to the FBI by SS in October of 2017, over a year after the grand jury subpoenas were issued for the records of Company A.

After receiving the information from SS, the United States identified the 11 emails for the defense. Three of the eleven emails received from SS were also provided by Company A or related firms in response to the 2016 subpoenas. (See Declaration of Assistant U.S. Attorney Melanie K. Pierson, attached hereto as Exhibit A.) Of the 11 emails, only five include any of the defendants in this case, and only one mentions a netblock at issue in this case. The five emails which include the defendants or the netblock all were sent between July 28, 2011, and September 8, 2011. None of the emails obtained from SS are intended for use in the government's case-in-chief, and none provided information that was used in charging the defendants in this case. The eleven emails at issue are provided as exhibits, filed under seal.

### III.

### THE INFORMATION SOUGHT IS NOT DISCOVERABLE.

Given that defendants' two motions to compel discovery rest upon the same underlying wish to show that the government violated the defendants' 4th Amendment rights prior to 2016 and thereby tainted the ensuing investigation such that suppression of all subpoenaed records is warranted, this response addresses both of defendants' motions.

The defendants' first motion, ECF No. 281, seeks overly-broad discovery of all other contacts that not just SS, but also any other representative of Spamhaus, has ever had with any government agent. In support of this motion, defendants speculate that, "Evidence elaborating on similar instances of Spamhaus providing a similar level

of information and/or swiped internal documents as present in this case would provide abundant grist to Defendants' argument that the government acquiesced to the purloining of Company A's confidential documents," and would therefore be "highly material to a Fourth Amendment challenge." ECF No. 281 at 2. This level of speculation, which is in contravention to the facts known to all parties, does not rise to the level of materiality required to compel discovery.

Defendant's second motion, ECF No. 282, seeks to compel disclosure of the SS's identity. This motion similarly fails to make the requisite materiality showing. It also overlooks Ninth Circuit precedent that requires the district court to conduct an *in camera* review of an informant before compelling disclosure of the informant's identity.

  A. <u>The Request Lacks Materiality Because It Could Not Help the Defendants Prevail in a Motion to Suppress</u>.

To compel discovery, defendants "must make a threshold showing of materiality, which requires a presentation of 'facts which would tend to show that the Government is in possession of information helpful to the defense.'" *Santiago*, 46 F.3d at 894 (9th Cir. 1995) (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Id*. To meet this threshold, defendants argue that "[t]he opportunity to interview this Spamhaus informant and/or call the informant as a witness regarding the potential illegal acquisition of Company A records would shed light on the extent of Spamhaus' assistance to the government here and the question of Spamhaus being a "state actor" for Fourth Amendment purposes, a question critical to Defendants' motion to suppress." ECF No. 282 at 2.

The problem with defendants' representation is that it relies on speculation and ignores the facts before it. Even if materiality has a low threshold, it still needs to be more than an educated guess about the existence or importance of an alleged event. *United States v. Salyer*, 271 F.R.D. 148, 158 (E.D.Cal. July 9, 2010). Nothing that SS or any other Spamhaus representative could say can alter the facts regarding the timing of the receipt of the 11 emails versus the issuance of the grand jury subpoenas. The inevitable discovery exception to the exclusionary rule applies where the prosecution can establish by a preponderance of the evidence that the information and records ultimately would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984).

Defendants offer no evidence that SS tasked anyone at Company A to purloin emails, let alone did so with the government's encouragement, knowledge, or consent. To the contrary, Defendants offered Exhibit C ECF No. 257-5,[1] an email dated September 27, 2017, wherein SS advised the FBI, "So far I have not included anything our informants have given us." In the email, SS asked the FBI if it was interested in receiving the internal emails, which would not be a question if SS had been tasked with obtaining such emails.  If SS had not provided the government with any internal Company A documents prior to September of 2017, subsequently provided emails cannot form a basis to suppress evidence obtained via grand jury subpoenas issued a year earlier.

The government has provided the defense with the reports of contacts with SS, which document the information and records that SS provided, and the dates upon which the contact or production occurred. The government has also provided the defense with the emails between

---

[1] The bates stamp on Exhibit C is [Company A]-DISC26-02119.

Government's Response to Defendants'       6        18cr4683-GPC
Motion to Compel Discovery

the FBI and SS, and any attachments that were sent to the FBI with those emails, which also show the dates of transmission. The defense is therefore in possession of the information received by the government from SS and the dates upon which the information was received.

The defense also has the two search warrant affidavits that the FBI prepared prior to 2016 that lay out, in detail, the facts the FBI believed showed probable cause to believe that evidence of a crime would be found in Company A email accounts. There is no evidence in any of these materials that the FBI directed or encouraged SS to attempt to obtain internal Company A documents, let alone that they did so prior to 2016. Defendants' insistence on speculating, notwithstanding these contradictory records, that there *may* have been an allegedly illegal acquisition of Company A emails prior to 2016 is insufficient to demonstrate materiality.

Simply put, there is nothing that SS or any other Spamhaus representative could say about the transmission of emails to the FBI in 2017 that could lead to the suppression of evidence inevitably discovered via a grand jury subpoena issued in 2016. Moreover, prosecutors were not aware of the 11 emails until 2020. The 11 emails were not presented to the grand jury and will not be used by the government in its case-in-chief at trial. All of these facts indicate that the 11 emails were not material to the investigation and prosecution of this case.[2]

---

[2] Moreover, it is apparent by the fact that SS continues to send the FBI unsolicited emails regarding this case notwithstanding the obvious fact that said emails will be produced as discovery and likely litigated that SS is independent of and uncontrolled by the government.

To succeed in their motion to suppress evidence, defendants must also satisfy the two-prong test in *United States v. Reed*, 15 F. 3d 928, 931 (9th Cir.1994), namely that: (1) the government knew of and acquiesced in the intrusive conduct, and (2) SS performed the search intending to assist law enforcement efforts rather than to further his/her own ends. If a private party has dual motives, that is a "legitimate, independent motivation to further its own ends" and a desire to assist law enforcement, the Ninth Circuit requires the Court to determine whether "the government's participation" in the search was "so extensive as to trigger Fourth Amendment scrutiny." *United States v. Cleaveland*, 38 F.3 1092, 1094 (9th Cir. 1994). It is not enough that the government "used the fruits of the search to obtain a warrant." *Id.* Instead, the government must have "actively" participated in the search. *Id.; see also United States v. Walther,* 652 F.2d 788, 792 (9th Cir. 1981)* ("The presence of law enforcement officers who do not take an active role in encouraging or assisting an otherwise private search has been held insufficient to implicate Fourth Amendment interests, especially where the private party has had a legitimate independent motivation for conducting the search.")

As defendants recognize, the Spamhaus Project is an international nonprofit organization whose mission is to identify spammers and disrupt spamming-related activities. This mission is and was a "legitimate, independent motive" for SS and Spamhaus to collect information on Company A, particularly in light of the concurrent litigation involving Spamhaus and Company A. Defendants have proffered no evidence that a private party illicitly searched Company A, let alone that the government encouraged or condoned such an intrusion. Even if such an intrusion had occurred, "the *subsequent* involvement of government

agents does not retroactively transform the [private party's] intrusion into a government search." *United States v. Sherwin*, 539 F.2d 1, 6 (9th Cir. 1976) (emphasis added). Having provided no facts to support their various assertions, the defendants rely purely on speculation and have failed to make the requisite showing of materiality.

B. <u>Records Sought for a "Shield" Claim are not Covered by Rule 16</u>.

The Supreme Court has ruled that the need for discovery to explore a hope, despite all evidence to the contrary, that SS and the FBI knowingly set out to purloin internal Company A documents is not supported by Rule 16 of the Federal Rules of Evidence. In *Armstrong*, the Court denied the defendant's request for information relating to a claim of selective prosecution, finding it not discoverable under Rule 16. 517 U.S. at 462. The Court held that information sought for reasons other than responding to the government's case-in-chief are not items "material to the defense" as contemplated by Rule 16. *Id.* The Court distinguished between "shield" and "sword" claims, finding that shield claims (which defend against the government's case-in-chief) fall within Rule 16, while sword claims (which challenge the prosecution's conduct of the case) do not.

Bolstering a motion to suppress evidence is not relevant to defending the government's case-in-chief and does not entitle the defendant to discovery. *United States v. Hunt*, 2013 WL 5279075 *1 (E.D. Cal.) (discovery regarding IRS Fraud Technical Advisors denied in a tax case). "To the extent Defendant wishes to investigate the informant so that Defendant may present a motion to suppress, Defendant is not entitled to discovery for that purpose." *United States v. Hood*, 2020 WL 7714207 *4 (E.D. Cal.) (discovery related to informant in a drug case denied).

In *United States v. Chon*, 210 F. 3d 990, 995 (9th Cir.2000), the defendants submitted a discovery request to the government for:

> all materials pertinent to NCIS activities targeting civilians, materials implicating widespread and repeated violations of the PCA [Posse Comitatus Act] in the State of Hawaii and within the United States, information reflecting warnings to the NIS/NCIS against violating the PCA, and materials of all Organized Crime Drug Enforcement Task Force activities targeting civilians.

The defense sought the records to challenge the government's conduct in the case, making a broad claim for discovery similar to the one that the defendants in this case. The court denied the request as not related to a "shield" claim, citing *Armstrong*. *Id*. Further amplifying *Armstrong*, in *United States v. McDuffie,* 2012 WL 12897946 *3 (E.D. Wash.), the court granted discovery sought for a motion to suppress evidence, finding that the defense (defendant did not commit crime because drugs were planted by agents) was a "shield" under *Armstrong*. *But see*, *United States v. Soto-Zuniga*, 837 F. 3d 992. 1000-1001 (9th Cir. 2016) (reading *Armstrong* to apply only in cases of selective prosecution).

C. <u>The Overly Broad Request Seeks Records Unrelated to this Case</u>.

The Ninth Circuit cases that have permitted discovery related to "sword" claims have done so narrowly. For example, in *United States v. Cedano Arellano*, 332 F. 3d 568, 570 (9th Cir. 2003) and *United States v. Thomas*, 726 F.3d 1086, 1096-97 (9th Cir. 2013), the Ninth Circuit allowed discovery related only to the specific narcotics detection canine involved in the search of the defendant to support a motion to suppress, not the type of wide-ranging discovery requested in this case.

In the case of *United States v. Wolfenbarger*, 2018 WL 4913753 (N.D. Cal.), the defendant was charged with child pornography offenses after Yahoo! sent a CyberTipline report to the FBI. The defendant sought extensive discovery, in support of a motion to suppress, to show that

the FBI had knowledge of the intercepts by Yahoo! and acquiesced, making Yahoo! a state actor. The original discovery order would have required the government to

> contact all 195 FBI field offices that received tips and review all case files associated with the 288 CyberTipline reports, the result of 100 or more search warrants executed on Seller Accounts, results of search warrants conducted in all spin-off cases executed by FBI field offices, results from grand jury subpoenas on associated financial accounts in all spin-off cases, 505 return results from approximately 421 administrative subpoenas in the main OST case, subpoenas issued in all spin-off cases, and documentation of interviews of witnesses, targets, and victims.

The reviewing court, in rejecting the overly-broad order, found it to be a "akin to the speculative fishing expedition that Defendant sought in his first motion to compel and that the Magistrate Judge rejected."

Defendants' request for "[e]vidence elaborating on similar instances of Spamhaus providing a similar level of information and/or swiped internal documents" is akin to the speculative fishing expedition that *Wolfenbarger* rejected and that this court has thus far denied in this case. The defense is in full possession of all the records of communications between SS and the FBI related to this case. They also possess the 11 documents provided to the FBI by SS that were received from the individual the defense accuses of purloining Company A documents, and the dates upon which the documents were provided. The records of what SS may have done with other FBI offices or what other Spamhaus contacts may have done with the FBI on other cases provides no evidence regarding whether the FBI in this case directed SS to use a third party to obtain internal Company A records.

D. <u>The New Evidence Does Not Support the Motion</u>.

As new evidence in support of this motion, the defense falsely claims that the FBI has used SS as a "confidential informant" in this

case since 2013, ECF No. 281 at 4, and then recently attempted to "rewrite history" regarding the status of SS. The falsity of this notion is evidenced by the FBI 302 attached as Exhibit B, ECF No. 281-4, to the declaration in support of their motion. In that report, the FBI notes that SS did not become a confidential source for the FBI until October 12, 2018, a month before the indictment in this case. The report goes on to state, "prior to the CHS being opened, this individual voluntarily provided information to the FBI, at no direction of any Special Agents."

In fact, SS became a CHS in 2018 for another FBI field office on a matter not related to this case. When discovery was produced in December of 2018 in this case, when redacting the name of SS, the FBI replaced it with the new CHS number. When this was discovered, the defense was provided with copies of the original reports with the name of SS redacted, to demonstrate there were no other changes to the records, and the 302 regarding the redaction was prepared. In providing this report to the defense, the government was not "rewriting history" but was instead, consistent with its discovery obligations, clarifying a misleading impression provided by the method used to redact the identity of SS from prior discovery.

The United States provided the defense with the email communication from SS identifying the 11 emails. In support of their motion, the defense points to one comment in the 31-page response from SS they falsely claim shows "that the informant assisted the government in circumventing the attorney-client privilege in those documents taken from Company A." ECF No. 281 at 6. In that comment, SS stated that he was identifying the 11 emails by their headers and a summary of the content "to avoid any potential attorney-client privilege issues (even

though they were sent voluntarily by Y[] and not by their attorney…).” Rather than assisting in circumventing attorney-client privilege, SS exhibited a sensitivity to the issue. This sensitivity was demonstrated in emails provided earlier to the court by the defense wherein SS noted the availability of internal emails that involved an attorney and inquired whether the FBI wanted such documents.[3] ECF 257-5, Exhibit C. When the comment is viewed with the entirety of the 31-page email, and the fact that these 11 emails had been previously provided *in full* to the defense, the claim that the government and SS conspired to circumvent the attorney-client privilege in this case does not survive careful scrutiny.

E. The Identity of SS Should Not be Further Disclosed Due to Participation in Other Cases.

The informant's privilege generally allows the government to withhold the identity of persons who have furnished information to law enforcement officials regarding violations of law. *United States v. Krumwiede*, 2020 WL 6145115 *1 (D. Oregon); *Roviaro v. U.S.* 353 U.S. 53, 59 (1957). In each case, the court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62. In the Ninth Circuit, "[t]o obtain disclosure, a defendant must show a need for the information, and in doing so, must show more than a mere suspicion that the informant has information which will prove relevant and helpful to his defense, or that will be essential to a fair trial." *United States*

---

[3] Similarly, the government exhibited sensitivity to the issue by conducting a taint review of the emails, once potential attorney-client documents were discovered, which delayed the discovery production. *See* Declaration of Assistant U.S. Attorney Melanie K. Pierson, ECF 265-1, ¶9.

*v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000), *as amended* (Mar. 5, 2001).

Even when the identity of the informant is known to counsel in the instant case, the informant privilege remains if "persons other than the particular defendant may have cause to resent the informant's conduct." *United States v. Long*, 533 F. 2d 505, 508 (9th Cir. 1976); *Krumwiede*, 2020 WL 6145115 at *2. In this case, SS is providing information to at least one other FBI field office in furtherance of criminal investigations. As such, there remain others who might "have cause to resent" the conduct, so the privilege remains.

The defendant has the burden to prove the need for disclosure of a confidential informant. *United States v. Sanchez,* 908 F.2d 1443, 1451 (9th Cir.1990). In *Gonzalo Beltran,* 915 F.2d 487, 488-89, (9th Cir. 1990), the Ninth Circuit set forth three factors a court must consider to determine whether to order disclosure of identifying information regarding an informant: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in non-disclosure. In this case, SS was not at all involved in the criminal conduct at issue. There is no dispute that SS is not a percipient witness to any of the offenses charged in the indictment, and will not be called as a witness in the government's case in chief. The potential testimony of SS relates only to the speculative claim of a Fourth Amendment violation, and not to the defendants' potential defenses to the charges in the indictment. Finally, the government's interest in non-disclosure remains strong as SS continues to provide information on other criminal conduct to offices of the FBI in other areas of the United States.

*United States v. Napier*, 436 F.3d 1133, 1136-39 (9th Cir. 2006) further rebuffs defendants' argument that the identity of SS is allegedly material because it might support an effort to suppress documents subpoenaed from Company A. In *Napier*, the government produced a search warrant affidavit redacted to conceal identifying information about a government informant. *Id.* at 1136. The defendant moved to unseal the redacted portion, citing the need to pursue a *Franks* hearing, while the government opposed the motion based on the need to protect the integrity of an ongoing criminal investigation and the informant's safety. *Id.* The district court denied the defendant's motion to compel discovery and the Ninth Circuit affirmed. Noting the defendant's failure to make a "substantial preliminary showing of a[n] entitlement to a *Franks* hearing," the Ninth Circuit held that, before providing an informant's identifying information, the district court should first conduct "an *in camera* hearing where the judge would question the confidential informant to determine whether the sealed information involving the informant was truthful, and whether Napier had made a threshold showing of falsehood." *Id.* at 1138-39.

    *Napier* reiterated earlier Ninth Circuit decisions that ruled that defendants seeking to unmask an informant "must show more than a mere suspicion that the informant has information which will prove relevant" and that *in camera* review of an informant is a requisite precondition before disclosing the informant's identity. *United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000), as amended (Mar. 5, 2001) (internal citations and quotation marks omitted). "Balancing the defendant's and the government's interests, a district court must hold an *in camera* hearing whenever the defendant makes a 'minimal threshold showing' that disclosure would be relevant to at least one defense." *Id*. (citing

*United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993); *United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir. 1989)). Under this controlling Ninth Circuit authority, then, even if defendants satisfy the threshold showing of materiality, the remedy is for the Court to conduct an *in camera* review – not, as defendants claim, to disclose SS's identity.

In this case, *in camera* review may be unnecessary, both because the defense has failed to make the requisite showing and also because the statements of SS in response to these allegations are already known to the parties, as a result of the email sent by SS to the FBI on September 21, 2021. This email was produced in discovery and is also provided here as Exhibit 14. In that email, SS denied requesting that internal Company A documents be provided to Spanhaus by any Company A insider and asserted that the information collected information about Company A was due to work at Spamhaus, independent from the needs of the FBI.

//

CONCLUSION

For the foregoing reasons, the United States respectfully requests that the court deny the defendants' motion compel discovery in this case as a fishing expedition, lacking the necessary factual basis to establish their right to such discovery.

DATED: September 27, 2021

                  Respectfully submitted,

                  RANDY S. GROSSMAN
                  Acting United States Attorney

                  /s/Melanie K. Pierson
                  Assistant United States Attorney

                  /s/Sabrina L. Feve
                  Assistant United States Attorney

                  /s/Candina S. Heath
                  Senior Counsel
                  Computer Crime and Intellectual Property Section
                  Department of Justice, Criminal Division