# Exhibit 1

*Declaration of Special Agent Charles Chabalko*

# **A F F I D A V I T**

I, Charles Chabalko, being duly sworn, hereby declare and state:

1.      I have been a Special Agent for the Federal Bureau of Investigation (FBI), assigned to the San Diego Field Office, since 2003. I have been on the Cyber squad since 2008. I am one of the case agents in the investigation and prosecution of the defendants in *United States v. Bychak*, 18cr4683-GPC.

2.      This investigation was opened by the San Diego Field Office of the FBI in February of 2014, following a referral from the Baltimore Field Office. The Baltimore Field Office had received information from Spamhaus that indicated that individuals later determined to be located in San Diego had hijacked IP addresses and were using them to send spam.

3.      I first met and interviewed the source of information at Spamhaus (SS) in June of 2014. I saw SS in person on only two other occasions: once between January and March of 2015, when SS assisted me in identifying DBA's and domain names associated with the IP addresses at issue, and again in May of 2016, when we participated in the same presentation at the National Cyber Forensics and Training Alliance (NCFTA) conference. According to its website, the NCFTA "was established in 2002 as a nonprofit partnership between private industry, government and academia for the sole purpose of providing a neutral, trusted environment that enables two-way collaboration and cooperation to identify, mitigate and disrupt cyber crime." Attendance at the three-day conference in 2016 was for law enforcement and invited partners, and was not open to the public. The powerpoint used

during our joint presentation was prepared and presented by SS, which provided details of the Spamhaus investigation. The presentation was focused on how to identify IP hijacking in general and did not discuss the details of the FBI investigation. The few slides related to this case were similar to the ones presented by SS in a powerpoint provided to the FBI at the beginning of this case. Although I do recall speaking at the conference, I do not recall explaining the slides.

4.   My communications with SS were usually by email. When SS sent me voluminous information, I sometimes spoke with SS by phone to target the information that I deemed relevant to my investigation.

5.   I have provided copies of my email communications with SS to the U.S. Attorney's Office to review and produce as discovery, as well as all reports related to my communications with SS. There is no log of my phone calls in this (or any other) case. Any material information from SS that was not contained in an email or other record I documented in a report. I never purposely spoke by phone with SS to avoid making a written record of any information.

6.   There is no separate file regarding SS in the San Diego Field Office. No payments were made to SS or Spamhaus for the information provided in this case. It is my understanding that the FBI makes no payments to Spamhaus for any information provided to agents by Spamhaus. I would have no ability to determine whether and when Spamhaus has provided information to other FBI field offices without contacting each individual office to inquire.

7.   The Spamhaus law enforcement portal provides me with access to historical data from Spamhaus that was formerly public but has now been removed from the public databases. Using the portal, I can search

for records indicating that Spamhaus at any time listed a company, individual, or IP address on its SBL (Spamhaus Block List) or ROKSO (Registry of Known Spamming Operations) databases. Once these listings are resolved, they are removed from the publicly available SBL and ROKSO databases, but can still be accessed through the law enforcement portal. The law enforcement portal does not allow me to determine what searches any individual may have made on the Spamhaus website.

8.    I have never directed SS to conduct any pro-active investigation. I have never directed SS to attempt to obtain internal Company A documents. On the occasions when SS indicated that potential sources of information unknown to me might be available regarding this case, I asked SS to provide a means for me to contact those sources directly (or asked SS to provide them with my contact information), and did not ask SS to probe them on my behalf. If I obtained information from any of those potential sources, I documented it in a report. While SS has sent me unsolicited suggestions, I have never discussed investigative or prosecutorial strategies with SS.

9.    In an unsolicited email on September 27, 2017, SS advised that SS had received internal emails from a source, some of which involved an attorney. SS asked, "does attorney/client privilege prevent you from viewing them?" On October 12, 2017, I received an unsolicited email from SS with the attached zip file "Interesting Emails.zip" containing documents and the message from SS, "Here are some interesting emails." I did not review this zip file attachment, instead I emailed the U.S. Attorney's Office for advice. Later that day, after receiving their advice via email, I sealed the attachment, pending a filter team review,

and did not review the documents in the zip file, nor did I discuss the documents or the content of the documents with SS.

10. Over a year later, in November of 2018, the government was preparing to provide discovery after the return of the October 31, 2018, indictment. On November 8, 2018, I received an email from SS, this time with the attached zip file "Interesting Emails Fixed.zip," containing what I believed to be the same document from the previously received zip file "Interesting Emails.zip." Although I do not recall why SS sent this email with the "fixed" zip file, I believe that in preparing to provide documents to the U.S. Attorney's Office for discovery, I noticed that the sealed zip file "Interesting Emails.zip" was corrupted, and I may have requested another copy from SS. I provided SS's November email with the zip file "Interesting Emails Fixed.zip" to the U.S. Attorney's Office. I do not recall reading the contents of either zip file until the time when the contents thereof were produced to the defense as discovery.

11. I did not ask SS to provide any information regarding searches conducted by defense counsel by accessing the publicly available Spamhaus website and ROKSO database. I received two such emails from SS, and immediately forwarded them to the U.S. Attorney's office. After receiving advice from the U.S. Attorney's office, I sent an email to SS on October 18, 2021, requesting that SS cease providing such information to us.

12. I have never provided SS with any of the defense filings in this case, and have never solicited advice from SS regarding the government's possible responses. SS sent me unsolicited emails in response to material contained in the publicly available defense pleadings.

a. In one of these unsolicited emails on September 27, 2021, SS stated "Spamhaus never encouraged [CY] to send any internal documents" since Spamhaus "didn't know he had them in the first place." "The government did not forward a single legal document from this case to Spamhaus." *Id.* SS noted that up until the time SS forwarded the documents in the zip file to me on October 17, 2017, "any talk about [CY] or other informants was only about handing them off to FBI to deal with, NOT about sending over any emails from him." *Id.* SS expressed fears regarding the disclosure of SS's identity, noting "Having my name revealed to the public, or having any of the defendants share the name with their business partners, would only result in me being a huge target for harassment and unfounded lawsuits," describing similar action taken against Spamhaus and its employees in other cases. *Id.*

b. In an email on August 6, 2021, SS stated, "I don't get paid anything and the government doesn't tell me what to do and vice versa." On August 3, 2021, SS wrote, "Spamhaus does not act under the direction of FBI or any other government agency."

c. SS observed in the email of August 6, 2021, "The prosecution doesn't ask for my advice, and if they could tell me what to do, they'd probably say to stop sending this stuff."

13. SS is currently acting as CHS for another field office of the FBI. I have spoken with agents from that field office. They requested that the identity of the CHS be protected to maintain the integrity of their investigation, and uphold the obligation of the FBI to maintain the confidentiality of the identity of informants.

I declare that the foregoing is true and correct, under penalty of perjury.

DATED: December 10, 2021     Charles Chabalko, Special Agent
                             Federal Bureau of Investigation