RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>ABDUL MOHAMMED QAYYUM (3), and<br>PETR PACAS (4),<br><br>Defendants. | Case No.: 18cr4683-GPC<br><br>**UNITED STATES' FIRST NOTICE OF EXPERT WITNESSES AND WITNESSES WITH EXPERTISE** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property

Section Senior Counsel Candy Heath, and hereby files its First Notice of Expert Witnesses and Witnesses with Expertise.

## INTRODUCTION

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Federal Rules of Evidence 702, 703, and 705, the United States hereby provides notice of its intent to elicit the testimony during its case in chief of two subject matter expert witnesses: (1) Professor Jennifer Rexford and (2) Sandra Brown, who are qualified to testify as expert witnesses, and as witnesses with subject matter expertise. Copies of their *curricula vitarum* were provided to the defense on March 2, 2022. A summary of Professor Rexford's and Ms. Brown's backgrounds and proposed testimonies is set forth below. The United States reserves the right to offer additional testimony by these subject matter experts, and other such expert witnesses, pursuant to Federal Rules of Evidence 701 through 705, and for these subject matter experts to amend or adjust their opinions and bases therefor, based on information perceived by or made known to the experts before or during trial. Both Professor Rexford and Ms. Brown are appearing by virtue of a trial subpoena, and neither has been retained by the government.

This case concerns complex, technological issues that are beyond the training and experience of a layman. The government expects that many of the fact witnesses who will testify during the trial will use terms and acronyms and discuss concepts that, without a proper context or explanation, will be confusing for the jury. The anticipated fact testimony regarding the acquiring, selling, registering, owning, transferring ownership, hijacking, and value of Internet Protocol (IP) netblocks (a block of IP addresses) is sufficiently beyond common experience, and thus requires explanation from witnesses with the subject matter expertise, such as Professor Rexford and Ms. Brown.

**A. Professor Jennifer Rexford**

<u>Overview of Relevant Background</u>

Since February 2005, Professor Jennifer Rexford has been a full professor in the Computer Science Department at Princeton University, having earned a BSE degree in

electrical engineering in 1991 from Princeton University, and MSE and PhD degrees in computer science and engineering in 1993 and 1996, respectively, from the University of Michigan.  Her career includes working at and conducting research at the Naval Research Laboratory and the AT&T Bell Laboratories from 1986 through 2004. As documented in her 30-page *curriculum vitae* and highlighted on the Princeton University website's faculty page http://www.cs.princeton.edu/~jrex, Professor Rexford's subject matter expertise was developed and cultivated via her education, training, skills set, and real-life experiences regarding the Internet and computer networking.  She is a prolific speaker and lecturer, and has authored and co-authored many publications and chapters within publications, to include:

> *Web Protocols and Practice: HTTP/1.1, Networking Protocols, Caching, and Traffic Measurement*, Addison-Wesley, May 2001;
>
> "*Passive traffic measurement for IP operations*," pp. 91-120, *The Internet as a Large-Scale Complex System, Oxford University Press*, 2005;
>
> "*BGP[1] policies in ISP[2] networks*," *IEEE Network Magazine*, special issue on interdomain routing, November/December 2005;
>
> "*Cooperative content distribution and traffic engineering in an ISP network*," in *Proc. ACM SIGMETRICS*, June 2009;
>
> "*A survey of BGP security issues and solutions*," in *Proceedings of the IEEE*, January 2010;
>
> "*Identifying performance bottlenecks in CDN[3]s through TCP[4]-level monitoring*," in *Proc. ACM SIGCOMM Workshop on Measurement Up the Stack*, August 2011.

---

[1] "BGP" means border gateway protocol, which is the protocol that enables the Internet to exchange routing information between autonomous systems.
[2] "ISP" means Internet service provider.
[3] "CDN" means content delivery network, which is a highly distributed platform of servers providing essential functions of delivering content and minimizing delays in delivering content on the Internet.
[4] "TCP" means transmission control protocol, which is the protocol then ensures the reliable transmission of packets on the Internet.

> "*The compositional architecture of the Internet*," in *Communications of the ACM*, March 2019; and
>
> "*Securing Internet applications from routing attacks*," in *Communications of the ACM*, June 2021.

Additionally, Professor Rexford has mentored and supervised dozens and dozens of Masters, PHD, and Post-doc students during her tenure at Princeton University, and has received innumerable recognition and honors over the years. Her technical and scientific expertise attracts regular invitations to present at, participate in, and provide leadership for various symposiums, conferences, committees, and advisory boards.

<u>Summary of Testimony</u>

Professor Rexford's testimony, based on her scientific, technical, and specialized knowledge, will assist the jury by defining and explaining complex technical terms and concepts regarding the infrastructure of the Internet so that the jurors can understand the evidence presented and the testimony elicited during the trial. The government anticipates that Professor Rexford will define and explain certain concepts, terms, entities, and acronyms to include, but not limited to, the following: the Internet, Internet connectivity, Internet traffic, server, client, router, hop, IP address, netblock, ISP (Internet service provider), packets, DNS (dynamic name system), domain, website, URL (uniform resource locater), IPv4 (Internet protocol version 4), LOA (letter of authorization), web address, AS (autonomous system), ASN (autonomous name system), BGP (border gateway protocol), address block, ARIN (American Registry for Internet Numbers) and its foreign counterparts, SMTP (simple mail transfer protocol), WhoIs.com, TCP (transmission control protocol), and CDN (content delivery network).  The government anticipates that it will use exhibits such as charts or diagrams or a PowerPoint presentation to assist in its presentation of Professor Rexford's testimony.  The government will produce these exhibits to the defense when prepared.

All materials known to the government regarding Professor Rexford's expertise is publicly available, and primarily can be found on the Princeton University website's

faculty page. The government is unaware of any report prepared by Professor Rexford directly related to her anticipated testimony, nor has the government requested such a report.

### B. Sandra Brown

<u>Overview of Relevant Background</u>

Sandra Brown is the president and founder of IPv4 Market Group (https://ipv4marketgroup.com). Since its creation in May 2011, IPv4 Market Group has been a full-service broker of IPv4 netblocks, and specializes in IPv4 transfers from sellers to buyers in ARIN, RIPE, and APNIC regions. Prior to creating IPv4 Market Group, Ms. Brown worked as the Director of IT Engineering at Nortel Networks Corporation (Nortel) from January 2010 through May 2011. In May 2011 while at Nortel, Ms. Brown orchestrated the very first commercial transfer, a $7.5 million sale of 660,000 IPv4 addresses from Nortel to Microsoft, which inspired the creation of IPv4 Market Group. Since that first commercial sale, Ms. Brown and IPv4 Market Group have completed over 700 transfers of blocks of IP addresses. Ms. Brown obtained a BS degree in Computer Science in 1985 from the University of Toronto – New College, and an MBA in Business and Information Technology in 1992 from the University of Toronto – Rotman School of Management. Ms. Brown's subject matter expertise was developed and cultivated via her education, training, and experience regarding the characteristics, marketability, and value of IP netblocks. The government has provided a copy of Ms. Brown's CV to the defense in discovery.

<u>Summary of Testimony</u>

Ms. Brown will provide a brief history of IPv4 and the market for sales, purchases, and leases of IP addresses and netblocks. She will explain the practical and commercial aspects and industry standards of the market for IP addresses. Ms. Brown will define and explain additional terms and concepts to include, but not limited to RIR (regional Internet registry), IANA (Internet assigned numbers authority), and DNSBL (domain name system blacklists, such as Spamhaus, Sorbs, Barracuda, and Spamcop). Ms. Brown will discuss

the industry standards for due diligence in examining the reputation of IP netblocks and the resources available to determine a netblock's viability, that is, whether any of the IP addresses were blocked by commonly used blacklists, such as those used by Spamhaus and Spamcop.  In the event that the transaction involves blacklisted IP addresses, Ms. Brown will discuss the industry standards and practices applicable and the process and procedures to clean or delist the IP addresses.  Ms. Brown will discuss the differences in delegated, undelegated, allotted, legacy, historical, and pre-ARIN spaces.

Ms. Brown will describe a typical transaction to sell, purchase, or lease an IP block, as well as the paperwork, time, and resources involved from the 2011-time frame to present-day.  Ms. Brown will discuss the industry's standards and practices at or near the dates of the transfers of the netblocks at issue in this case.

Based on her extensive experience in brokering IPv4s and negotiating and consummating the sale, purchase, or lease of IP netblocks, the government anticipates she will testify that IP addresses are unique, can be sold, and the registered users and/or purchasers of IP addresses can have exclusive possession, use, and control. She will further testify that a sale of a block of IP addresses conveys the rights, title, and interest of the block, and IP addresses have value.  Relying on her subject matter expertise, and considering the 700 transactions by IPv4 Market Group from 2011 to current-day, Brown will render opinions on the value of IP addresses and the factors affecting or influencing value during the times relevant to the conspiracy timeframe.

All materials known to the government regarding Ms. Brown's expertise is publicly available, and primarily can be found on or via her company's website https://ipv4marketgroup.com, including a blog she hosts, which is available at https://ipv4marketgroup.com/blog/. The government is unaware of any report prepared by

//

//

Ms. Brown directly related to her anticipated testimony, nor has the government requested such a report.

DATED: March 10, 2022        Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/Melanie K. Pierson
Assistant United States Attorney

/s/Sabrina L. Fève
Assistant United States Attorney

/s/Candy Heath
Senior Counsel
Computer Crime and Intellectual Property Section
U.S. Department of Justice