| | |
|---|---|
| **WIECHERT, MUNK & GOLDSTEIN, PC**<br>David W. Wiechert, SBN 94607<br>Jessica C. Munk, SBN 238832<br>Jahnavi Goldstein, SBN 245084<br>27136 Paseo Espada, Suite B1123<br>San Juan Capistrano, CA 92675<br>Telephone: (949) 361-2822<br>Email: dwiechert@aol.com<br>       jessica@wmgattorneys.com<br>       jahnavi@wmgattorneys.com<br><br>*Attorneys for Jacob Bychak* | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKYAND POPEO, P.C.**<br>Randy K. Jones, SBN 141711<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA 92130<br>Telephone: (858) 314-1510<br>Email: rkjones@mintz.com<br><br>Daniel J. Goodrich, BBO 692624 (Pro Hac)<br>Ryan Dougherty, BBO 703380 (Pro Hac)<br>1 Financial Center<br>Boston, MA 02111<br>djgoodrich@mintz.com<br>rtdougherty@mintz.com<br><br>*Attorney for Mark Manoogian* |
| **BIENERT KATZMAN LITTRELL WILLIAMS LLP**<br>Thomas H. Bienert, Jr., SBN 135311<br>James D. Riddet, SBN 39826<br>Whitney Z. Bernstein, SBN 304917<br>Carlos A. Nevarez, SBN 324407<br>903 Calle Amanecer, Suite 350<br>San Clemente, California 92673<br>Telephone: (949) 369-3700<br>Email: tbienert@bklwlaw.com<br>       jriddet@bklwlaw.com<br>       wbernstein@bklwlaw.com<br>       cnevarez@bklwlaw.com<br><br>*Attorneys for Mohammed Abdul Qayyum* | **BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG RHOW P.C.**<br>Gary S. Lincenberg, SBN 123058<br>Alexis A. Wiseley, SBN 330100<br>Darren L. Patrick, SBN 310727<br>1875 Century Park East, Floor 23<br>Los Angeles, CA 90067<br>Telephone: (310) 201-2100<br>Email: glincenberg@birdmarella.com<br>       awiseley@birdmarella.com<br>       dpatrick@birdmarella.com<br><br>*Attorneys for Petr Pacas* |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SUPPRESS AND DISMISS UNDER THE FOURTH AMENDMENT AND REQUEST FOR AN EVIDENTIARY HEARING

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, et al.,<br><br>　　Defendants. | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SUPPRESS AND DISMISS UNDER THE FOURTH AMENDMENT AND REQUEST FOR EVIDENTIARY HEARING**<br><br>Hearing Date:　April 1, 2022<br>Hearing Time: 2:30 p.m.<br>Department:　　Courtroom 2D |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

**I.　INTRODUCTION**

　　The government's Response attempts to overcomplicate the Defendants' Motion to Suppress and Dismiss ("Motion"), and it argues a "trifecta" of state actors must exist in order to show an illegal search is attributable to the government under state action. This is simply not correct and an attempt to confuse the Court. Defendants' Motion and the relief sought is straight forward. Spamhaus and the Spamhaus Informant ("SI") are state actors based on the uncontroverted evidence, which the government ignores, showing Spamhaus has partnered with the FBI in numerous criminal investigations for more than a decade, and in this case Spamhaus, through its agent the SI, advised and directed the government's investigation and prosecution of the Defendants from the outset. If Spamhaus and the SI are state actors, and the SI either directed and/or acquiesced in CY's taking of documents and information from Company A and B (together "the Companies") to assist law enforcement, then that search is attributable to the government under state

1

action and the stolen documents and information, and the fruits thereof must be suppressed under the Fourth Amendment. In addition, the government's Response shows there are disputable issues of fact that warrant an evidentiary hearing. Specifically, an evidentiary hearing is necessary to resolve *why* CY took the documents and information from the Companies – which included the Defendants' emails that they have standing to challenge. It is moreover necessary to resolve *when* CY took the documents. Contrary to the government's assertions – there is no evidence in the record *when* and *why* CY took the documents and information.[1] Thus, the Court should hold an evidentiary hearing to resolve these disputed factual issues.

## II. DEFENDANTS HAVE SHOWN SPAMHAUS AND THE SI ARE STATE ACTORS AND SHOULD RECEIVE AN EVIDENTIARY HEARING TO RESOLVE DISPUTED FACTUAL ISSUES

Defendants have satisfied the two-part test for determining when a private entity functions as a state actor. *See United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994).

*First*, the government knew of and acquiesced in the intrusive conduct. *Reed*, 15 F.3d at 931. As set forth in the Motion, the SI has directed and assisted the government in investigating and prosecuting this case since its inception in 2013. *See* Dkt. No. 330-1 at 5-11, 14-18. The government's Response ignores these facts. But the government cannot ignore the sequence of events illustrating the SI's involvement in this case:

- **In July 2013**, the SI brought this case to the Baltimore FBI office. *See* Exs. 15-17 attached to Munk Decl.[2]

- **In mid-2013**, CY left Company B. It is unknown when he improperly accessed and took the Companies' emails that involved the Defendants.

- **In September 2013**, CY began sending "tons of info" to the SI. Ex. 19 at 3284.

---

[1] The government repeatedly argues that CY must have taken the documents when he was employed at Company A and must have taken them before he started giving information to the SI. CY could have purloined the documents *after* his employment at the SI's request.

[2] Exhibits referenced herein are attached to the <u>Under Seal</u> Declaration of Jessica C. Munk, filed in support of the Motion. Dkt. No. 330-1.

- **In February 2014**, the Baltimore FBI investigation was transferred to San Diego. Dkt. No. 316-1 at ¶ 2.
- **On May 16, 2014**, Special Agent Chabalko ("Chabalko") and the SI exchanged their first email, in which Chabalko asked the SI to send him information "[p]er [their] telephone conversation." Ex. 18 at 3280.
- **On May 22, 2014**, the SI notified Chabalko he has been working with an anonymous informant he believed was CY and told Chabalko the informant has been "*sending us a ton of info since September 2013*." Ex. 19 at 3284 (emphasis added). At this point the government was on notice the documents and information they received from the SI might be tainted. In this email, the *SI referred to Chabalko and the FBI as "our 'partners'"* *Id.* at 3283.
- **On June 2, 2014**, the government met with the SI in person – the SI laid out this case for the government and provided numerous documents to the government. Ex. 20. At this meeting, the SI again discussed the anonymous informant he believed was CY and that *[t]his [informant] has provided information that only a former employee would know*." *Id.* at 1016 (emphasis added).
- **On June 3, 2014**, Chabalko emailed the SI's informant to see if they could meet, and over the next several days they exchanged emails. Ex. 22 at 1780.
- **On June 11, 2014**, the anonymous informant believed to be CY told Chabalko, "If you want to *send me questions like Spamhaus does*, they can probably vouch that *I help out with things they need specifically*." Ex. 22 at 1780 (emphasis added). This email also suggests that CY is giving documents and information to the SI in response to the SI's requests. Again, the government was put on notice that the information from the SI may be tainted.
- **On December 23, 2014**, the FBI issued its first search warrant for Mark Manoogian's Company A email as initially advised by the SI. Ex. 26. Chabalko relied on information provided by the SI in his search warrant affidavit. *Id.* at 108.
- **From 2015 to 2017**, the SI worked hand-in-glove with the FBI and provided the FBI

access to is Law Enforcement Portal; Chabalko and the SI made a joint presentation regarding this investigation to around 100 attendees at an industry conference, which included members of the public; and the SI regularly met with and/or spoke with the government to assist in this investigation. *See* Motion at 9-11.

- **October 12, 2017**, the SI sent purloined documents from CY to Chabalko including potentially privileged documents with the Companies' outside counsel. Exs. 42-43.
- **October 31, 2018**, the Indictment in this case was filed. Dkt. No. 1.
- **November 8, 2018**, the SI again sent purloined documents from CY to Chabalko and described some of the potentially privileged documents. Exs. 45-46.

The government argues that the timeline eliminates "any possibility that CY was an agent of the government"[3] when he stole the emails. Response at 11. According to the government's logic, CY could not have taken any documents or information from the Companies after he left that employment. Put differently, the government assumes that employment at the Companies is a prerequisite for finding that CY stole their documents and information.

This assumption is flawed. CY is "highly skilled technically" and has been deemed a "boy genius and self-described hacker." *See* Ex. 20 at 1015-16. Someone with these credentials could easily take documents and information at any point, regardless of whether he continued working at the Companies.[4] In fact, misappropriation of corporate information often occurs *after* an employee ceases employment with his or her employer. *See, e.g.*, *A Place for Mom v. Perkins*, 475 F. Supp. 3d 1217, 1226 (W.D. Wash. 2020) (Defendant was sued for misappropriation of trade secrets for accessing plaintiff's sales database 11 times *after* her employment and 4 times *after* she began working for

---

[3] Defendants do not contend that **CY** was an agent of the government. Rather, the evidence shows that **Spamhaus and the SI** were acting as agents of the government, and an evidentiary hearing is needed to determine if CY stole the documents with the SI's direction and/or acquiescence.

[4] The government's reliance on *United States v. Veatch*, 674 F.2d 1217, 1222 (9th Cir. 1982) is also misplaced because retroactivity does not apply when an illegal search happens at the direction or acquiescence of a government agent – here the SI.

plaintiff's direct competitor). Thus, what the timeline actually shows is that an evidentiary hearing is warranted to determine *when* and *why* CY took the information and documents. *See United States v. Mazzarella*, 784 F.3d 532, 541 (9th Cir. 2015) (remanding for evidentiary hearing regarding warrantless seizure of company documents by an informant); *United States v. Love*, 57 F. App'x 751, 752 (9th Cir. 2003) (citing *United States v. DiCesare*, 765 F.2d 890, 896 (9th Cir.1985), *amended by* 777 F.2d 543 (9th Cir.1985)) (reversing and remanding district court's denial of an evidentiary hearing to resolve "a dispute concerning issues of fact relevant to the legality of the search.").

Finally, relying on *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2011), the government argues that Spamhaus cannot be a state actor because it has not been conferred Congressional statutory authority. Response at 13. This argument is overstated. While some courts have relied on Congressional statutory authority as a metric for determining whether a private company functions as a state actor, it is not a requirement. *See, e.g.*, *Skinner v. Ry. Lab. Executive' Ass'n*, 489 U.S. 602, 615 (1989) (private railroad companies that required employees to submit to drug testing requirements prescribed by the Federal Railroad Administration were state actors and the drug tests were searches implicating the Fourth Amendment).

Here, even absent statutory authority, there is no question that Spamhaus is a law enforcement partner of the FBI. Attempting to distance itself from Spamhaus and the SI, the government's Response ignores key facts illustrating their close relationship. Spamhaus has worked alongside the FBI in numerous criminal investigations for more than fifteen years.[5] This working relationship is so extensive that the FBI has even touted Spamhaus as being a joint partner. *See* Motion at 5 nn.6-9. While the government cites to numerous references on Spamhaus' website about what they do and their mission – the

---

[5] *See* FBI, Testimony to House Committee on Small Business Regulatory Reform and Oversight Subcommittee, https://archives.fbi.gov/archives/news/testimony/small-business-cyber-security.

government omits all the references to Spamhaus partnering with law enforcement.[6] For example, Spamhaus' website not only touts that it works closely with law enforcement, but plainly states that the FBI is one of its "main [law enforcement agency] working partners"[7]:

 

**Second**, Defendants have shown that Spamhaus and the SI intended to assist law enforcement efforts. *Reed*, 15 F.3d at 932. The SI's actions in this case have gone beyond any simple mission "to track and report accurate information regarding spam and related cyber threats." Response at 12. Indeed, the SI's intent throughout this investigation has been to assist law enforcement efforts.[8] As set forth in the Motion, the SI has worked hand-in-glove with the government since 2013. *See* Motion at 6-11. The SI laid out this entire case for the government and provided numerous documents. Ex. 20. The SI also

---

[6] Further, the government's suggestion that Spamhaus receives no funding from the U.S. government is not determinative. *See* Response at 12 (relying on *Ackerman*). The government also fails to point to any public statement on Spamhaus' website that it receives no government funding, let alone provide a sworn statement from the government to this effect.

[7] *See* https://www.spamhaus.org/organization/ (last visited March 8, 2022).

[8] The government's argument that the SI could have a dual motive under *United States v. Cleaveland*, 38 F.3d 1092 (9th Cir. 1994) is also unavailing given the SI's continued pursuit to assist the government in the criminal prosecution of the Defendants – a motive that goes far beyond tracking and reporting spam.

shared Spamhaus' Law Enforcement Portal and credentials with Chabalko (Exs. 18, 28, 30-32), and advised the government on how to charge this case. Ex. 40. And the SI repeatedly referred to the FBI when speaking with Chabalko as Spamhaus' "partner." Exs. 19, 24.

In summary, Defendants have shown that Spamhaus and the SI were acting as agents of the government in 2013, when the SI began providing information and documents to the government, including information and documents resulting from CY's illegal search under the Fourth Amendment. Accordingly, the Court should grant Defendants' Motion. In the alternative, the Court should hold an evidentiary hearing to resolve the factual issues regarding CY's illegal search of Defendants' emails.

### III. DEFENDANTS HAVE STANDING TO CHALLENGE THE ILLEGAL TAKING OF DOCUMENTS AND INFORMATION BECAUSE THEY HAD A REASONABLE EXPECTATION OF PRIVACY THEREIN

Defendants have standing to assert violations of their Fourth Amendment rights in their stolen emails. Each Defendant submitted a declaration setting forth the basis for their subjective and reasonable expectations of privacy in their company emails. *See* Dkt. Nos. 330-2-5.

The government's reliance on *United States v. SDI Future Health, Inc*., 568 F.3d 684, 695-698 (9th Cir. 2009) is misplaced as that case addressed standing to contest a search of *physical commercial premises* – beyond an individual's office – not email communications. The three-part test the court applied in *SDI* was limited to determining exclusive use of a *physical area* searched beyond an individual's office. *Id.* at 697. This test is simply not applicable as Defendants are challenging a search of their emails – not a search of any physical premises.[9]

As explained in the Motion (*see* Dkt. No. 330-1 at 21-22), to establish standing, an individual must have a subjective expectation of privacy in their company email

---

[9] *New York v. Burger*, 482 U.S. 691 (1987) is likewise inapposite, as it dealt with standing in the limited context of "closely regulated businesses." *See* Response at 5. The Companies are not closely regulated businesses.

communications, and that expectation of privacy must be objectively reasonable. *United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007). The relevant cases show that even a company's right to monitor, or limited/passive monitoring of employee emails does not extinguish an employee's expectation of privacy in his/her emails; nor does accessing a network or sharing a computer. *Id.* at 1146-47. Nevertheless, Defendants each filed declarations indicating that they each had an expectation of privacy in their company emails – they set passwords on their company laptops and email accounts,[10] which they did not share with anyone, including the company, and none of them were aware of any policy to monitor their email communications, let alone any actual monitoring. *See* Bychak Decl., Dkt. 330-2 at ¶¶ 3, 5-7; Manoogian Decl., Dkt. 330-3 at ¶¶ 3, 5-7; Qayyum Decl., Dkt. 330-4 at ¶¶ 2-3, 5-6; and Pacas Decl., Dkt. 330-5 at ¶¶ 7-11. Utilizing computer passwords (which Defendants did, in addition to separate email account passwords) satisfies a subjective expectation of privacy. *See United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007) (use of password on computer is sufficient to show expectation of privacy). Additionally, Defendants often accessed their company emails on their personal cell phones, further cementing their subjective expectation of privacy. *See Riley v. California*, 573 U.S. 373, 397 (2014) (establishing heightened privacy protections for personal cell phones and noting that government access to data stored in the cloud (such as Defendants' emails) was problematic under the Fourth Amendment).

In addition, the government takes umbrage with Defendants' use of the terms "stolen" and "purloined," claiming CY had permissible access to the emails. Response at 3. However, CY was specifically prohibited from taking documents and information from the Companies after his employment. *See* Ex. 1; Munk Decl. at ¶ 3. Indeed, the fact that

---

[10] The government's suggestion about a practice of sharing passwords within the company is baseless and entirely unsupported by any evidence. Response at 6-7. The government acknowledges as much in a footnote. *Id.* at 7 n.12.

8

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SUPPRESS AND DISMISS UNDER THE FOURTH AMENDMENT AND REQUEST FOR AN EVIDENTIARY HEARING

CY neither sent or received, nor was even copied on three of the eleven emails further suggests that they were taken by improper means.[11]

Finally, relying on two Company B employment contracts, the government argues that Defendants lack standing to challenge a search of their company emails. Response at 7. But the purported employment contract involving Defendant Jacob Bychak is not actually Mr. Bychak's employment agreement with Company B, because Defendant Bychak never even worked for Company B.[12] Further, the employment agreement the government relies on between Defendant Pacas and Company B is similar to the employment agreement CY had with Company B, which shows CY was not allowed to steal company documents and does not negate Pacas' standing.

In summary, Defendants have established in sworn declarations that they each had a subjective expectation of privacy in their company emails – they were unaware of any policy by the company to monitor their emails, they set passwords on their laptops and emails accounts and did not share those passwords with anyone – thus their subjective expectation of privacy was reasonable. Accordingly, the Defendants have shown they have standing under the Fourth Amendment to challenge the illegal search of their emails.

## IV.    THE INVITED INFORMANT DOCTRINE DOES NOT APPLY

Failing to make a persuasive argument against Defendants' right to assert standing, the government lobs the "invited informer" doctrine into the mix. The doctrine is inapplicable and unavailing. To utilize this doctrine, the government must acknowledge that CY was an agent of the government – an argument at odds with its position. Nevertheless, the invited informant doctrine only applies to situations in which the individual defendant **voluntarily** reveals information to a government informant. *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1034 (9th Cir. 2020), *rev'd and remanded*

---

[11] The government's argument that CY "was likely a party to email groups" is without any support or evidence. Response at 6.

[12] Rather, it is an employment contract that his brother, Richard Bychak, had with Company B.

*on other ground*, 2022 WL 626693 (U.S. Mar. 4, 2022). The government has made no showing whatsoever that any of the information CY provided to the SI were obtained by CY as an invited informant. The government provided no dates, recordings, or notes of conversations wherein any of the Defendants voluntarily proffered information to CY.

The government also likens CY to the undercover agent in *United States v. Wahchumwah*, 710 F.3d 862 (9th Cir. 2013), but that case is distinguishable. There, an undercover agent was invited into defendant's home wearing a hidden camera and observed the illegal sale of eagle parts and then obtained a search warrant. *Id.* at 866. The government contends that "CY was invited into the workplace by his **employers**" – not by any of the individual Defendants. Response at 9 (emphasis added). However, the government fails to provide any authority to support that the doctrine can apply when the "invitation" is made by a non-individual, non-defendant corporation, rather than by an individual defendant. The government further contends that the eleven emails "were nothing more than [CY] could observe with his own eyes, while on the premises." *Id*. *Wahchumwah* found that the defendant had no expectation of privacy to the areas of his home that were "knowingly exposed" to the agent. *Id*. at 867. This is vastly different than what the government can show.

Here the facts show that CY stole eleven of the Defendants' emails – which, as discussed at length above, arguably occurred *after* his employment with Company B was terminated – and that CY was not a party to several of those emails. Therefore, the emails could not have been "knowingly exposed" to CY. Accordingly, the invited informant doctrine does not apply.

## V. CONCLUSION

Based on the foregoing, Defendants respectfully request the Court dismiss or suppress the illegally obtained documents and information by a state actor as well as their fruits. Alternatively, Defendants request that the Court hold an evidentiary hearing to fully develop the factual record surrounding the stolen documents and information.

Respectfully submitted:

Dated:  March 11, 2022        **WIECHERT, MUNK & GOLDSTEIN, PC**

By: *Jessica C. Munk*
   David W. Wiechert
   Jessica C. Munk
   Jahnavi Goldstein
   *Attorneys for Jacob Bychak*

Dated:  March 11, 2022        **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By: *Randy K. Jones*
   Randy K. Jones
   *Attorneys for Mark Manoogian*

Dated:  March 11, 2022        **BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: *Carlos A. Nevarez*
   Thomas H. Bienert, Jr.
   James D. Riddet
   Whitney Z. Bernstein
   Carlos A. Nevarez
   *Attorneys for Mohammed Abdul Qayyum*

Dated:  March 11, 2022        **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: *Alexis A. Wiseley*
   Gary S. Lincenberg
   Alexis A. Wiseley
   Darren L. Patrick
   *Attorneys for Petr Pacas*

**CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE**

Pursuant to section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Randy K. Jones, Carlos A. Nevarez, and Alexis A. Wiseley.

Dated: March 11, 2022                              By: s/*Jessica C. Munk*
                                                                    Jessica C. Munk

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

AUSA Melanie K. Pierson
AUSA Sabrina L. Feve
AUSA Ashley E. Goff
U.S. Attorney's Office
880 Front Street, Rm 6293
San Diego, CA 92101
melanie.pierson@usdoj.gov
sabrina.feve@usdoj.gov
ashley.goff@usdoj.gov

Candina S. Heath
Department of Justice
1301 New York Avenue NW, Suite 600
Washington, DC 20530
candina.heath2@usdoj.gov

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 11, 2022, at San Juan Capistrano, California.

s/*Jessica C. Munk*
Jessica C. Munk