| | |
|---|---|
| **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS LINCENBERG & RHOW P.C.** | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.** |
| Gary S. Lincenberg, SBN 123058 | Randy K. Jones, SBN 141711 |
| Nicole R. Van Dyk, SBN 261646 | 3580 Carmel Mountain Road, Suite 300 |
| Darren L. Patrick, SBN 310727 | San Diego, CA 92130 |
| Alexis A. Wiseley, SBN 330100 | Telephone: (858) 314-1510 |
| 1875 Century Park East, Floor 23 | Email: rkjones@mintz.com |
| Los Angeles, CA 90067 | |
| Telephone: (310) 201-2100 | Daniel J. Goodrich, BBO 692624 (Pro Hac) |
| Email: glincenberg@birdmarella.com | Ryan Dougherty, BBO 703380 (Pro Hac) |
| nvandyk@birdmarella.com | 1 Financial Center |
| dpatrick@birdmarella.com | Boston, MA 02111 |
| awiseley@birdmarella.com | djgoodrich@mintz.com |
| | rtdougherty@mintz.com |
| *Attorneys for Petr Pacas* | *Attorneys for Mark Manoogian* |
| **BIENERT KATZMAN LITTRELL WILLIAMS LLP** | **WIECHERT, MUNK & GOLDSTEIN, PC** |
| Thomas H. Bienert, Jr., SBN 135311 | David W. Wiechert, SBN 94607 |
| James D. Riddet, SBN 39826 | Jessica C. Munk, SBN 238832 |
| Whitney Z. Bernstein, SBN 304917 | 27136 Paseo Espada, Suite B1123 |
| Carlos A. Nevarez, SBN 324407 | San Juan Capistrano, CA 92675 |
| 903 Calle Amanecer, Suite 350 | Telephone: (949) 361-2822 |
| San Clemente, California 92673 | Email: dwiechert@aol.com |
| Telephone: (949) 369-3700 | jessica@wmgattorneys.com |
| Email: tbienert@bklwlaw.com | |
| jriddet@bklwlaw.com | |
| wbernstein@bklwlaw.com | |
| cnevarez@bklwlaw.com | |
| *Attorneys for Mohammed Abdul Qayyum* | *Attorneys for Jacob Bychak* |

Case No. 18-CR-4683-GPC

REPLY IN SUPPORT OF MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENTAL CONDUCT

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, *et al.*,<br><br>　　Defendants. | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENTAL MISCONDUCT**<br><br>Date: April 1, 2022<br>Time: 2:30 p.m.<br>Dept.: 2D |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 2

    A. Counsel's Search Terms Constitute Attorney Work Product. ................. 2

    B. Emails Between Goodman and Company B Are Protected by the Attorney-Client Privilege. ....................................................................... 4

    C. The Informant Acted on Behalf of the Government. ............................... 7

        1. The Government Acquiesced in the Informant's Conduct. ........... 7

            a. The Government Knew of the Informant's Pattern of Tracking and Providing Counsel's ROKSO Searches. ............................................................................ 7

            b. The Government Knew the Informant Had Provided Privileged Emails. ............................................................. 8

        2. The Informant Intended to Assist the Government. .................... 10

    D. The Government Has the Heavy Burden of Proving No Prejudice. .................................................................................................11

    E. At Minimum, an Evidentiary Hearing to Determine the Extent of the Taint and the Appropriate Remedy is Warranted. .......................... 12

III. CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Aguilar*,
  831 F. Supp. 2d 1180 (C.D. Cal. 2011) ......................................................... 5, 12

*United States v. Barrera-Moreno*,
  951 F.2d 1089 (9th Cir. 1991) ........................................................................ 13

*United States v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) ..................................................................... 4, 5, 6

*United States v. Cleaveland*,
  38 F.3d 1092 (9th Cir. 1994) .......................................................................... 10

*United States v. Danielson*,
  325 F.3d 1054 (9th Cir. 2003) ........................................................ 1, 7, 11, 12

*United States v. Fernandez*,
  388 F.3d 1199 (9th Cir. 2004) ................................................................... 11, 13

*In re Grand Jury Subpoenas*,
  454 F.3d 511 (6th Cir. 2006) .......................................................................... 12

*United States v. Hansen*,
  No. 4:18-CR-00346-DCN, 2019 WL 4397335
  (D. Idaho Sept. 13, 2019) ................................................................................. 2

*United States v. Harrison*,
  213 F.3d 1206 (9th Cir. 2000) ......................................................................... 4

*United States v. Jack*,
  No. CR S-07-0266 FCD, 2009 WL 453051
  (E.D. Cal. Feb. 23, 2009) ................................................................................. 2

*United States v. Marshank*,
  777 F. Supp. 1507 (N.D. Cal. 1991) ......................................................... 11, 12

*United States v. Mazzarella*,
  784 F.3d 532 (9th Cir. 2015) ............................................................................ 7

*United States v. Nobles*,
  422 U.S. 225 (1975) .......................................................................................... 2

*United States v. Restrepo*,
    930 F.2d 705 (9th Cir. 1991) ................................................................................. 11

*United States v. Ryan*,
    548 F. 2d 782 (9th Cir. 1976) ......................................................................... 11, 13

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ................................................................................. 3

*United States v. Segal*,
    No. 02-CR-112, 2004 WL 830428 (N.D. Ill. Apr. 16, 2004) ................................. 2

*United States v. Simpson*,
    813 F. 2d 1462 (9th Cir. 1987) ....................................................................... 11, 13

*United States v. Sullivan*,
    No. CR 17-00104-JMS-KJM, 2020 WL 1815220
    (D. Haw. Apr. 9, 2020) ........................................................................................... 9

*United States v. Walther*,
    652 F.2d 788 (9th Cir. 1981) .............................................................................. 7, 8

## I. INTRODUCTION[1]

In its Opposition, the government concedes that it was aware of the Informant's pattern of tracking ROKSO searches conducted by the defense attorneys in this case since September 15, 2017. The government concedes that it made no attempt to stop the Informant from providing information about those searches until October 18, 2021, only after Defendants raised the issue. And the government concedes that Agent Chabalko knowingly sent a zip drive containing privileged emails directly to the prosecution team, without first sending them to the filter team to review, and that the privileged emails contained in that zip file were never produced to the government by Company B. These undisputed facts are more than sufficient to establish that the Informant affirmatively and intentionally invaded the attorney client and work product privileges, putting the government to its "heavy burden" under *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003). The government has failed to meet that heavy burden in its papers, and the Court should therefore dismiss this case or permit Defendants to fully develop the record of misconduct that the government seeks to conceal.

Indeed, instead of addressing the facts, the Opposition is largely devoted to the specious argument that neither counsel's ROKSO search information nor Goodman's emails to a Company B executive were, in fact, attorney work product or privileged information. But the government fails to cite a single case suggesting that search terms are not work product, and ignores the facts undermining its privilege arguments. Finally, the government asserts that its conduct was permissible because it obtained a court order, engaged a filter team, and consulted an ethics advisor. *See* Opp. 24. But the court order did not address the information at issue on this Motion, and the filter team and ethics advisor were only consulted *after* the privilege invasions occurred,

---

[1]   Undefined capitalized terms are defined in the Motion, and referenced exhibits are attached to the Under Seal Lincenberg Declaration submitted therewith.

1                                                                    Case No. 18-CR-4683-GPC
REPLY IN SUPPORT OF MOTION TO DISMISS BASED ON OUTRAGEOUS GOVERNMENTAL CONDUCT

1 and do not excuse the Government's misconduct.  The Motion should be granted.

2 **II.    ARGUMENT**

3          **A.    Counsel's Search Terms Constitute Attorney Work Product.**

The government fails to cite a single case supporting its view that defense counsel's search terms are not protected by the work product doctrine.  *See* Opp. 16-17.  In fact, the law is clear that "***investigatory search terms … are privileged under the work product doctrine***."  *United States v. Hansen*, No. 4:18-CR-00346-DCN, 2019 WL 4397335, at *7 (D. Idaho Sept. 13, 2019) (emphasis added); *see also United States v. Jack*, No. CR S-07-0266 FCD, 2009 WL 453051, at *1 (E.D. Cal. Feb. 23, 2009) (declining to order the government to disclose its "key words and phrases and search terms"  where the government argued that "they are protected work product"); *United States v. Fumo*, No. CRIM.A. 06-319, 2007 WL 3232112, at *3 (E.D. Pa. Oct. 30, 2007) (acknowledging argument that "keyword terms" are "confidential attorney work product," but reaching holding on other grounds).[2]

Indeed, here, the express purpose of the Informant sharing counsel's ROKSO search information with the government, was to give the government "***an idea of what [counsel] were up to***" and ***what they "seem[] worried about***."  Mot. at 8-9, 13 (quoting Exs. 6 & 10 (emphasis added)).  It is hard to imagine what type of information would fall more squarely within the purview of work product doctrine—the very purpose of which is to "shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case"—than information provided to the government for the express purpose of sharing what counsel was "up to" and "seem[ed] worried about."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).

---

[2]  As these cases illustrate, the work-product doctrine applies regardless of whether search terms are used by an attorney to develop the legal or factual aspects of a case. The government's attempt to distinguish *United States v. Segal,* No. 02-CR-112, 2004 WL 830428 (N.D. Ill. Apr. 16, 2004) on that basis is therefore unavailing.

The government is also wrong that defense counsel waived the privilege by "disclosing" its search terms to Spamhaus.  Opp. 17-18.  Waiver of work-product protection requires disclosure "to an adversary, and not merely to a third party." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (emphasis added).  Spamhaus is neither defense counsel's "adversary," nor its "potential adversary." *Id.* at 1121.  In this case, Defendants have only one adversary: the government.  As such, defense counsel's searches in Spamhaus's ROKSO database were done in anticipation of trial in this case **against the government**, not in anticipation of any matter involving Spamhaus.  *See id*. at 1122 (finding no waiver where privileged material was "prepared in anticipation of a dispute between [defendant] and the [government], not between [defendant] and [the third-party]").

Nor is Spamhaus's privacy policy indicative of waiver.  To the contrary, the policy states that it may share information "required by or relating to" government investigations, but only if it is necessary for "preventing fraud," "the performance of a task carried out in the public interest," or "to comply with a legal obligation."[3]  Because of these limited grounds for disclosure, defense counsel had a "reasonable basis" for believing its searches would remain confidential.  *Sanmina Corp.*, 968 F.3d at 1121.  And the government does not (and cannot) argue that any of these purposes would be served by invading the privilege of counsel, and passing that information to the government to bolster its case.[4]

Finally, as explained in the Motion, during the period of the alleged conspiracy, the names of Defendants, key witnesses and the netblocks at issue appeared on Spamhaus's block lists.  *See* Mot. 6.  The government collected and

---

[3]  Privacy Policy, SPAMHAUS, https://www.spamhaus.org/organization/privacy/ (last visited: Mar. 9, 2022).

[4]  The government provides no basis whatsoever for its claim that counsel "took no steps to mask or otherwise anonymize the[ir] Internet connection" and "took no measures to anonymize their actions."  Opp. 18.

relied on this information to build its case. It was therefore incumbent upon defense counsel to visit Spamhaus's website, and the ROKSO database in particular, to investigate the charges against Defendants and develop their defense. It cannot be that conducting online research to develop defenses constitutes a "waiver"—particularly where, as here, the ***only way*** for counsel to investigate certain claims is through an online third-party like Spamhaus.

### B. Emails Between Goodman and Company B Are Protected by the Attorney-Client Privilege.

The government acknowledges that the communications identified in the Motion between Goodman and a Company B executive were made in confidence, between an attorney and client—who insisted that they remain protected from disclosure—and never produced them to the government. Opp. 11. In so doing, it does not deny that it intentionally reviewed documents presumptively protected by the attorney-client privilege.[5] The government sets forth three arguments as to why the Court should nonetheless excuse its privilege invasion. Each fails.

*First*, the government defends its invasion by asserting that the attorney-client privilege does not extend to Goodman's communications with corporate employees. But the Ninth Circuit has made clear that "[t]he attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice." *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). The emails at issue were between Goodman and a Company B executive, and copied Defendant Pacas and CY. *See* Exs. 13A and 13B. At the time they were

---

[5]    The government's assertion that the "***prosecution team***" did not review privileged emails does not excuse the government's invasion, because "***the knowledge of one government actor must be imputed to another***." Opp. 2, 22 (emphasis added). *United States v. Harrison*, 213 F.3d 1206, 1215 (9th Cir. 2000), (emphasis added). The government does not address—much less dispute—that Agent Chabalko reviewed or knew the contents of at least one of the privileged emails. Mot. 11-12 (citing Ex. 14).

sent, Goodman served as counsel to Company B, and Defendant Pacas and CY were Company B employees.[6]  Citing *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010), the government argues that Defendants must show that they hold a "joint privilege" over communications with corporate counsel.  Opp. 12.  No such showing is required because Company B never produced the emails to the government and, thus, never waived the privilege in the first place.  *See id.* at 1156 (addressing an employee's "attempt to claim a personal attorney-client privilege … **after the corporation has waived its own privilege**") (emphasis added).[7]

*Second*, the government asks the Court to ignore its privilege invasion because Goodman was providing "business" advice.  This argument ignores controlling Ninth Circuit law holding that attorney-client privilege extends to "**legal advice regarding the client's business affairs**." *Chen*, 99 F.3d at 1501 (emphasis added).  "[T]here is a rebuttable presumption that the lawyer is hired … to give 'legal advice,' whether the subject of the advice is criminal or civil, business … or anything else." *Id.*  Goodman was retained by Company B as outside counsel to provide legal advice on various issues, including Company B's response to anti-spam organizations such as Spamhaus.  Ex. 2 at 1766.  Thus, her communications with Company B personnel on that topic are presumptively privileged.

Without any facts to rebut that presumption, the government resorts to arguing that Goodman's emails are not privileged because they "are the same type

---

[6]  CY, an "ex-employee" of Company B, "cannot waive the corporation's privilege" (*Chen*, 99 F.3d at 1502), as the government suggests.  *See* Opp. 5.

[7]  In any event, courts have not limited the parties who may seek dismissal to the privilege holders.  *See, e.g.*, *United States v. Aguilar*, 831 F. Supp. 2d 1180, 1182, 1194 (C.D. Cal. 2011) (dismissing charges against **all defendants**, explaining that the government, among other things, "improperly reviewed e-mail[s] … between **one Defendant** and her lawyer" and "misrepresented how it had gone about obtaining such e-mail[s]") (emphasis added).  Defendants may still claim a violation of their rights based on an intrusion into the attorney-client relationship.

of [Goodman] emails" that Judge Moskowitz determined were not privileged. Opp. at 14. That argument is a non-starter. Judge Moskowitz only considered emails between Goodman and Brower—*a third party* retained to assist Goodman in representing Company A and Company B—and not confidential emails between Goodman and Company B personnel. *Compare* Exs. 13A & 13B, *with* Gov. Exs. 3 & 4; *see also* Gov. Ex. 1 at 6-7 (discussing the purpose of a "third party communication").[8] Moreover, the fact that non-privileged portions of the email chain in Exhibit 13A were produced does not demonstrate that every version of the email chain—including versions that contain privileged content—is not privileged. *See* Opp. 6, 14-15. Indeed, the government does not (and cannot) dispute that the privileged version of the email chain was not produced **because** it is privileged.

*Third*, in a last ditch effort to justify its review of privileged emails, the government invokes the crime-fraud exception. To do so, the government must submit "evidence that if believed by the jury would establish the elements of an ongoing violation." *Chen*, 99 F.3d at 1503. "Mere allegations or suspicion by the government are insufficient." *Id*. Here, the government merely asserts that the privileged emails "suggest[] that false information be provided to the anti-spam organization." Opp. 15-16. This argument is entirely unsupported by the underlying documents, and based on sheer speculation that is insufficient to meet the legal standard. *See* Exs. 13A and 13B. The government further speculates that the emails are "in furtherance of the scheme charged in this case, which involved disguising the identity of the entity in control of the IP addresses"—in other words, using a DBA, which is a common and entirely legal business practice. Opp. 16. Again, these sort of allegations are insufficient to meet the standard.

---

[8] If the government actually believed that the emails in Exhibits 13A and 13B were "the same type" of communications as the third-party emails involving Brower, the prosecution team would not have turned them over to the taint team for review on September 23, 2020—well after Judge Moskowitz's February 2019 order.

### C. The Informant Acted on Behalf of the Government.

The government argues that Defendants failed to establish conduct by a government agent because the Informant "was not working on behalf of the government." Opp. 8.[9] Again, the government is wrong. An individual acts as a government agent if (1) "the government knew of or acquiesced in the intrusive conduct" and (2) the informant "intended to assist law enforcement." *United States v. Mazzarella*, 784 F.3d 532, 539 (9th Cir. 2015). Undisputed facts—described at length in the Motion (*see* Mot. 8-9, 15-17)—show that both prongs are met.

#### 1. The Government Acquiesced in the Informant's Conduct.

The government acquiesces in an informant's conduct when it has knowledge of the informant's "particular pattern" of activity. *United States v. Walther*, 652 F.2d 788, 793 (9th Cir. 1981). Here, there is no question that the government knew that the Informant was sharing privileged information for years without objection.

##### a. The Government Knew of the Informant's Pattern of Tracking and Providing Counsel's ROKSO Searches.

The government does not dispute that it was aware of the Informant's "particular pattern" of tracking and sharing ROKSO searches conducted by or on behalf of attorneys since at least September 15, 2017. Ex. 6. Nor does the government dispute that, over the next four years, the Informant sent at least five emails containing ROKSO search terms related to this case.[10] Exs. 6, 7, 8, 9, 10. This clear pattern of activity, and the government's knowledge thereof, establishes

---

[9] The government strips this quote from its factual context in *Danielson*. As noted in the Motion (*see* Mot. 15), the next line in the *Danielson* opinion explains that "once the [government] learned … that [the informant] had obtained trial strategy information," if the informant continued to engage in such conduct, it was "***now acting on behalf of the government***." 325 F.3d at 1068 (emphasis added).

[10] Four emails were sent while the protective order proceedings were pending. The government's failure to even ask the Informant to stop until Judge Moskowitz resolved the motion shows its blatant disregard for its constitutional obligations.

the government's acquiescence in the Informant's improper conduct.  *See Walther*, 652 F.2d at 793 ("The [government] … knew … that [the informant] had made it a practice to inspect [luggage], and had acquiesced in that practice.").  By September 2021, the government had acquiesced in the Informant's conduct to such a degree that its own conduct was akin to deliberate intrusion.  It does not matter whether the government knew that the Informant would provide Brower's ROKSO search terms "***related to this case***" (Ex. 4), or ***defense counsel's*** ROKSO search terms (Ex. 5). *See Walther*, 652 F.2d at 793 (finding violation even though "the DEA had no prior knowledge that this particular search would be conducted").  The Informant's prior emails are proof of the government's acquiescence in the Informant's pattern of tracking and sharing counsel's search terms.  *See id.*  ("[The informant's] prior experience with the DEA provides proof of the government's acquiescence.").

The government's cited cases do not suggest otherwise.  This is not a case where there is no evidence that the Informant consulted with the government prior to tracking and providing ROKSO search information.  *See* Opp. 8-9 (citing *United States v. Ryan*, 548 F. 2d 782, 791 (9th Cir. 1976)).  Here, the Informant regularly emailed with "updated" ROKSO searches.  *See, e.g.*, Exs. 8, 9, 10.  Nor is this a case where the government "passive[ly] tolera[ted]" the conduct despite "warn[ing] [the informant] to refrain."  Opp. 8 (quoting *United States v. Simpson*, 813 F. 2d 1462, 1468 (9th Cir. 1987)).  Here, the government rendered no warning, and even ***thanked*** the Informant for providing this information.  *See, e.g.*, Ex. 9.

    **b.**  **The Government Knew the Informant Had Provided Privileged Emails**.

The government also knew that the Informant planned to share facially privileged emails involving Goodman, and took no measures to safeguard them from being improperly revealed to the prosecution team until *after* they had already been provided.  The timeline is undisputed:

- On September 27, 2017, the Informant told the government that he had facially privileged emails involving Goodman.  *See* Ex. 11.

- On October 12, 2017, the Informant sent the government a zip file containing those facially privileged emails. *See* Ex. 12.
- On November 8, 2018, the Informant sent the government a "fixed" zip file containing the same facially privileged emails. *See* Ex. 13.
- On November 8, 2018, the Informant told Agent Chabalko to "*Read the linda_libel.txt email in particular*"—referring to one of the facially privileged emails, which was never produced to the government by anyone—and then summarized the contents of that email. *See* Ex. 14.[11]

While the government touts its use of a taint team, "only documents **known** to be privilege-free" may pass from the taint team to the prosecution team. *United States v. Sullivan*, No. CR 17-00104-MS-KJM, 2020 WL 1815220, at *8 (D. Haw. Apr. 9, 2020) (emphasis in original). The government does not dispute that: (i) after receiving the first zip file on September 27, 2017, "[n]o effort was made to have a filter team review the emails or to develop facts regarding the origin of the emails" (Mar. 4, 2022 Pierson Decl. ¶ 13); (ii) Agent Chabalko sent the November 8, 2018 zip file directly to the prosecution team (Nov. 1, 2021 Pierson Decl. ¶ 8); and (iii) the government did not employ a filter team to review those documents until September 23, 2020 (*see id.*). Thus, when the zip file passed from Agent Chabalko to the prosecution team, its contents were not "known" to be privilege-free, and the government's use of an after-the-fact filter team cannot change that.

Instead of acknowledging its errors, the government ties itself in knots trying to justify its conduct, asserting—for the first time in its Opposition—that the zip file was not sent to a filter team because there was "no reason to believe that such effort would produce evidence relevant in this prosecution." Mar. 4, 2022 Pierson Decl. ¶ 13. That argument strains credulity when the government fails to explain how it could have reached this conclusion if, as Agent Chabalko states, he "did not review the documents in the zip file" and "did not discuss those documents or their contents

---

[11] The government completely ignores Exhibit 14, and Agent Chabalko offers no explanation—either for his improper conduct, or for his failure to be forthcoming with the Court about the extent of his improper conduct. *See* Mot. 11.

with the [Informant]." Supp. Chabalko Decl. ¶¶ 5, 9.  Incredibly, the government then suggests that Agent Chabalko—an FBI agent of nearly 20 years—would not have known to withhold privileged information from the prosecution team when it requested "all" emails.  *See id*. ¶ 1 ("I have been a Special Agent for the [FBI] … since 2003"); Mar. 4, 2022 Pierson Decl. ¶ 14 ("We did not discuss whether 'all' emails would include the emails" in the zip file).  Given the government's repeated failure to acknowledge its errors and adequately explain its conduct, combined with Agent Chabalko's failure to be forthcoming, an evidentiary hearing is warranted.

### 2.     The Informant Intended to Assist the Government.

The government argues that the Informant "collected the information with the intent to further its own ends." Opp. at 10.  But "the mere existence of a legitimate, independent motive apart from crime detection or prevention does not immunize [improper conduct] from scrutiny." *United States v. Cleaveland*, 38 F.3d 1092, 1094 (9th Cir. 1994), as amended (Jan. 12, 1995).  The Informant was collecting and sharing ROKSO search terms to assist the government in its investigation and prosecution of this case, and was in fact successful in advancing the government's investigation.  The Informant's own emails bring this to bear.  *See, e.g.*, Ex. 4 (listing searches "***related to this case***") (emphasis added); Ex. 5 (revealing searches run by ***defense counsel*** in this case); Ex. 10 (listing searches relating to Company A and witnesses in this case).  The Informant likewise gave the privileged emails that CY stole from Company B to the government to help the investigation.  In fact, when the Informant first told Agent Chabalko that CY had been sending him "a ton of info," Agent Chabalko told the Informant that recruiting CY "would be extremely helpful" and "vital to our investigation." Supp. MPA at 3.[12]

---

[12] While ***Spamhaus*** may seek to eliminate all commercial email "beyond what is criminally prohibited under the CAN-SPAM Act," or to discredit Brower (Opp. 10-11), ***the Informant*** plainly intended to assist the government in its investigation and prosecution of this case.

### D. The Government Has the Heavy Burden of Proving No Prejudice.

Defendants do not "misunderstand" their burden or quote "loose language" from *Danielson*. Opp. 20. To the contrary, the Ninth Circuit has explained that, in order to make a *prima facie* showing that the government intentionally reviewed privileged material, "the **government informant** must have acted affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged information." *Danielson*, 325 F.3d at 1071 (citing *Weatherford v. Bursey*, 429 U.S. 545 (1977)) (emphasis added). Defendants have made the requisite showing here.

While the government argues that its "passive tolerance … of a private informant's questionable conduct" is "less egregious than the conscious direction of government agents" (Opp. 21), it fails to cite a single case involving a years-long pattern of conduct by an informant, undertaken with the government's knowledge, even if not at its explicit request.[13] By contrast, in cases where the Informant acted affirmatively, and with the government's knowledge, "courts have looked to whether there is a pattern of similar government misconduct." *United States v. Marshank*, 777 F. Supp. 1507, 1530 n.17 (N.D. Cal. 1991) (ordering dismissal for privilege violations). A pattern of similar government misconduct exists here.

Moreover, Defendants have identified substantial prejudice resulting from the government's misconduct. Counsel's investigatory search terms have given the prosecutors who will try this case insight into how various attorneys are thinking about the charges, raising questions about how the government may make its trial

---

[13] *See United States v. Restrepo*, 930 F.2d 705, 713 (9th Cir. 1991) (no violation where the only conduct by the informant was testifying before a grand jury); *United States v. Fernandez*, 388 F.3d 1199, 1239 (9th Cir. 2004), modified, 425 F.3d 1248 (9th Cir. 2005) (no violation where informant "talk[ed] about a conspiracy" to harm one defendant); *United Simpson*, 813 F.2d at 1468 (no violation where the informant was sexually involved with a suspect over a five-month period); *Ryan*, 548 F. 2d at 791 (no violation where the informant urged defense counsel to withdraw from the case because there was "no evidence that [he] consulted with state agents before").

strategy decisions.[14]  It is irrelevant that the government does not intend to use the actual search information in its case in chief.  *See* Opp. 6 n.3.  What matters is that the government has knowledge of counsel's strategy and mental processes, which would not have been revealed in the absence of counsel's search information.[15]

### E.    At Minimum, an Evidentiary Hearing to Determine the Extent of the Taint and the Appropriate Remedy is Warranted.

Even if each individual privilege invasion "might [not] have been enough to tip the scales," the "cumulative effect" of the government's "errors and indiscretions" operated to Defendants' prejudice and the indictment should be dismissed.  *Samango*, 607 F.2d 877, 884 (9th Cir. 1979); *Aguilar*, 831 F. Supp. 2d at 1205 (considering "the cumulative effect of the … errors and indiscretions").

And, even if the government has somehow shown on the papers that "all of its pre-trial and trial strategy" is not tainted by its violations of Defendants' constitutional rights (it has not), the Court should, at minimum, order an evidentiary hearing where the government is put to its "heavy burden" of proof.  *Danielson*, 325 F.3d at 1074 (remanding to "hold an evidentiary hearing at which this standard can be applied").  The government's untested statements in declarations are insufficient to meet this burden.  *See, e.g., Marshank*, 777 F. Supp. at 1511 (ordering dismissal for privilege violation, after making findings of fact based, in part, on "testimony presented at [an evidentiary] hearing"); *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 517 (6th Cir. 2006) ("[L]eaking of privileged materials to investigators

---

[14]  For example, knowing that counsel searched ROKSO records relating to Daniel Dye enables the prosecution to anticipate that line of defense in presenting its case. *See Danielson*, 325 F.3d at 1074.  Knowing that counsel searched records relating to one defendant, rather than the others, offers the same advantage, and may even impact the government's decision "about what witnesses to call (and in what order)" and "about what questions to ask (and in what order)." *Id.*; *see also* Mot. at 20.

[15]  The government asserts that defense counsel disclosed—in some unidentified "previous communications"—that "one defense might involve portraying … Dye as the mastermind of the scheme." Opp. 21.  Counsel recall no such communications.

would raise the spectre of *Kastigar*-like evidentiary hearings.").[16]

### III. CONCLUSION

Defendants respectfully request that the Court grant the Motion or, in the alternative, order an evidentiary hearing.

Respectfully submitted,

Dated: March 11, 2022
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: *s/ Gary S. Lincenberg*
Gary S. Lincenberg
Nicole Rodriguez Van Dyk
Darren L. Patrick
Alexis A. Wiseley
*Attorneys for Petr Pacas*

Dated: March 11, 2022
**WIECHERT, MUNK & GOLDSTEIN, PC**

By: *s/ Jessica C. Munk*
Jessica C. Munk
David W. Wiechert
*Attorneys for Jacob Bychak*

Dated: March 11, 2022
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: *s/ Whitney Z. Bernstein*
Whitney Z. Bernstein
Thomas H. Bienert, Jr.
James D. Riddet
Carlos A. Nevarez
*Attorneys for Mohammed Abdul Qayyum*

---

[16] The government's own cases are in accord. *See Fernandez*, 388 F.3d at 1239 (decision "[i]n light of the district court's findings of fact"); *Simpson*, 813 F. 2d at 1464 (decision "[a]fter an eight-day evidentiary hearing"); *United States v. Barrera-Moreno*, 951 F.2d 1089, 1093 (9th Cir. 1991) (decision "[o]n the basis of the factual findings of the court"); *Ryan*, 548 F.2d at 788 (decision "[a]fter a thorough review of the evidence presented at this hearing").

| | | |
|---|---|---|
| 1 | Dated: March 11, 2022 | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.** |
| 2 | | |
| 3 | | By: *s/ Randy K. Jones* <br> Randy K. Jones <br> Daniel J. Goodrich (Pro Hac) <br> Ryan Dougherty (Pro Hac) <br> *Attorneys for Mark Manoogian* |

**CERTIFICATION OF AUTHORIZATION TO SIGN SIGNATURE**

The undersigned counsel of record for Defendant Petr Pacas certifies that the content of this document is acceptable to each of the Defendants' counsel whose electronic signature appears thereon, and that I have obtained their authorization to sign this document on their behalf.

*s/     Alexis A. Wiseley*
Alexis A. Wiseley