RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACOB BYCHAK (1), <br> MARK MANOOGIAN (2), <br> ABDUL MOHAMMED QAYYUM (3), and <br> PETR PACAS (4), <br><br> Defendants. | Case No.: 18cr4683-GPC <br><br> **UNITED STATES' MOTIONS IN LIMINE TO ADMIT:** <br> (1) COCONSPIRATOR STATEMENTS; and <br> (2) EVIDENCE OF NETBLOCKS NOT IDENTIFIED IN THE SUBSTANTIVE COUNTS |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property

Section Senior Counsel Candy Heath, and hereby files its above-referenced Motions in Limine, based on the files and records in this case.

## I.
## INTRODUCTION

The defendants in this case conspired to violate the wire fraud and CAN-SPAM statutes by fraudulently acquiring blocks of Internet Protocol ("IP") addresses registered to others. As part of this scheme, they falsely claimed to be the registered users of these IP netblocks and submitted these false representations in letters, known as "LOAs," that enabled them to control and use the IP netblocks. Defendants and their co-conspirators Daniel Dye and Vincent Tarney (charged elsewhere) discussed this fraudulent scheme in emails, via Skype, and over the phone, revealing the nature of the scheme, how they accomplished it, how they paid for it, how they benefited from it, and the risks involved in their conduct. As charged in the indictment, the scheme lasted for approximately four years. These communications between coconspirators, as well as other related evidence, are direct evidence of the conspiracy and inextricably intertwined with their criminal conduct. As discussed below, it is well-settled law that this direct evidence is admissible to prove the conspiracy under Federal Rule of Evidence ("FRE" or "Rule") Rule 801(d)(2)(E). Even if it was not considered inextricably intertwined with the charged conduct, this evidence would still be admissible pursuant to FRE 404(b) to prove their intent, plan, knowledge, and absence of mistake.

## II.
## POINTS & AUTHORITIES

**A. Statements Regarding the GetAds Netblocks Were Made by Conspirators During and in Furtherance of the Conspiracy to Fraudulently Acquire and Use these Netblocks.**

The government intends to introduce statements made by the coconspirators during the conspiracy, primarily in the form of emails and testimony involving one or more of the coconspirators. Rule 801(d)(2)(E) provides that such statements are not hearsay if they

Gov.'s Motions in Limine to Admit Evidence re  
GetAds & AFRINIC netblocks, etc.

2

18cr4683-GPC

were offered by the opposing party and were "made by the party's coconspirator during and in furtherance of the conspiracy." For the statements to be admissible as coconspirator statements, the government must demonstrate by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statements were made during the course of, and in furtherance of, the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *see also United States v. Liera*, 585 F.3d 1237, 1245-46 (9th Cir. 2009); *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994). Admission of coconspirator statements does not violate the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 56 (2004); *United States v. Bridgeforth*, 461 F.3d 864, 869 n.1 (9th Cir. 2006) (*Crawford* does not affect the admissibility of co-conspirator statements under Rule 801(d)(2)(E) "because co-conspirator statements are not testimonial.").

In determining these preliminary questions, the Court "is not bound by the rules of evidence except those with respect to privilege." FRE 104(a). Defendants' email messages regarding the netblocks they acquired via Dye and his employer, GetAds (the "GetAds netblocks"), satisfy *Bourjaily*'s three-part test. First, Count 1 outlines the preliminary evidence that a conspiracy existed, and the factual bases of Dye and Tarney's plea agreements further flesh out the existence of a conspiracy. The government's grand jury exhibits, produced in discovery, further show that, in furtherance of the conspiracy, the defendants communicated with Dye, Tarney, each other, and others to obtain control and use of the GetAds netblocks. These communications included emails about performing due diligence prior to the purchase of the netblocks' associated domain name, setting up the email accounts to control the domain name associated with the netblocks, creating the LOAs, and sending them to hosting companies. They also include communications about problems sending commercial emails using the netblocks, including communications indicating that GetAds netblocks had been blacklisted by various spam watchdog organizations, and occasions where the netblocks were reclaimed by the rightful registrants, and communications regarding the revenue that was earned from sending

commercial emails using the GetAds netblocks. The evidence shows the coconspirators' communications were intended to "keep a person abreast of the conspirators' activities" and "to induce continued participation in the conspiracy." *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1987). Thus, a conspiracy existed.

Second, the declarants involved are the defendants named in this case, along with Dye and Tarney. The evidence discussed herein establishes by a preponderance of the evidence that defendants were members of the conspiracy to violate the CAN-SPAM Act and commit wire fraud by fraudulently acquiring and using the GetAds netblocks. Their declarations made in furtherance of this conspiracy fall within the scope of Rule 801(d)(2)(E).

Third, the statements relating to the GetAds netblocks were made by the defendants, Dye, and Tarney during and in furtherance of the conspiracy. In *United States v. Nazemian*, 948 522, 529 (9th Cir. 1991), the Ninth Circuit provided the following examples of admissible coconspirator statements:

> [S]tatements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

Statements that serve a necessary part of the conspiracy by concealing it are also statements made in furtherance of the conspiracy. *United States v. Blakey*, 960 F. 2d 996, 998 (11th Cir. 1992), cited within *Hawkins v. Bunnell*, 16 Fed. Appx 656, 658 (9th Cir. 2001). These are the types of statements made in relation to the GetAds netblocks by the defendants, Dye, and Tarney. Their electronic and oral communications relating to the acquisition and use of the GetAds netblocks are therefore admissible co-conspirator statements under Rule 801(d)(2)(E).[1]

---

[1] In some cases, members of the conspiracy responded to or forwarded emails to each other from individuals who were not members of the conspiracy. These portions of longer email

**B. Evidence of the GetAds and AFRINIC Netblocks is Admissible**.

In an abundance of caution, on March 18, 2022, the government filed written notice of its intention to use evidence of and relating to the GetAds netblocks, even though that evidence is direct evidence of the conspiracy and inextricably intertwined with the substantive counts. In its Rule 404(b) notice, the government also identified and gave notice for the netblocks 196.194.0.0/15, 196.193.0.0/16, and 196.246.0.0/16 (the "AFRINIC netblocks"). [ECF No. 347.] This notice satisfies the government's obligations under Rule 404(b)(3).

1. The GetAds Netblocks

The GetAds netblocks are admissible as direct evidence of the conspiracy. "The rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 1125, 1231 (9th Cir. 2011). To the extent that the government's proof involves "evidence of uncharged acts that were part of the conspiracy," they are admissible without regard to Rule 404(b). *United States v. Kirby*, 692 Fed.Appx 334, 337 (9th Cir.2017); *United States v. Liliard*, 353 F.3d 850, 854 (9th Cir. 2003).

Evidence "should not be considered 'other crimes' evidence when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined.'" *United States v. Soliman,* 813 F.2d 277, 279 (9th Cir. 1987) (citations omitted). The policies underlying Rule 404(b) are inapplicable when offenses committed as part of a single criminal episode or scheme, and do not become other acts simply because the defendant "is indicted for less than all of his actions." *Id.; see also United States v. Williams*, 989 F 2d 1061, 1070 (9th Cir. 1993). In this case, evidence of and relating to all defendants' purchase of the eleven domains from Dye and GetAds, along with their use and control of approximately 24 netblocks associated with these domains, is inextricably intertwined with the charged conduct because events relating to the acquisition

---

chains are admissible as adoptive admissions under FRE 801(d)(2)(B) or for their effect on the listener. *See United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991).

Gov.'s Motions in Limine to Admit Evidence re  
GetAds & AFRINIC netblocks, etc.  
5  
18cr4683-GPC

of GetAds netblocks early in the conspiracy informed the defendants' thoughts and actions relating to the later acquisition and use of the GetAds netblocks that are charged in the substantive counts.

The government has maintained throughout this case that it intends to present evidence regarding the GetAds netblocks and domains listed in Grand Jury Exhibit 251. This list, which the government included in its FRE 404(b) notice, consists of eleven domains and 24 associated IP netblocks that the defendants acquired through coconspirator Dye between March of 2011 and October of 2013. Of these eleven domains and associated netblocks, only five are identified as the subject of the nine substantive counts of the indictment. The remaining six domains and associated netblocks are encompassed within the charged conspiracy (Count 1), which is alleged to have occurred between December of 2010 and September of 2014.

Presentation of evidence relating to all eleven domains and 24 associated netblocks is important to the jury's understanding of the defendants' evolving illegal scheme and their criminal intent. All eleven domains were acquired by the defendants through coconspirator Dye, pursuant to virtually identical three-page contracts that described the purchase of a domain name for an exorbitant fee, while neglecting to mention the associated hijacked netblock, which was the true item of value in the transaction but for which they lacked authorization. For all eleven domains and the associated netblocks, the defendants used letters of authorizations (LOAs), falsely represented to have been written by the registrants of the netblocks, to gain control and use of the IP addresses assigned to the associated netblock to send commercial email. For all eleven domains, the defendants learned that the associated GetAds netblocks did not possess all the rights and properties that were available to legitimate IP block registrants.

Significantly, at two different times during the conspiracy, the defendants learned that GetAds netblocks other than those charged in the substantive counts had been reclaimed by the rightful registrants, but nonetheless continued to work with Dye and use the remaining GetAds netblocks. In later discussions related to other GetAds netblocks, the

Gov.'s Motions in Limine to Admit Evidence re
GetAds & AFRINIC netblocks, etc.

6

18cr4683-GPC

defendants acknowledged to each other the risk that the rightful registrants would reclaim the netblocks. Evidence relating to the reclaimed netblocks is critical to the juror's understanding of the defendants' knowledge that they lacked authorization to use the other netblocks obtained from Dye. For example, after the first GetAds netblock was reclaimed, defendant Pacas wrote to Dye on March 28, 2013:

> I now have full understanding how the process works – we realize that there is some risk (if somebody reclaims the Ips, we can't do much to protect them or claim them back). I understand that it's flying under the radar and using unclaimed Ips for as long as somebody (who purchased the organization, not just the assets) doesn't claim it back with old company documentation. I don't expect to see this very often, but it looks like we got burned on the first purchase.

Further demonstrating that defendants knew and understood that they were not the authorized user of the GetAds netblocks, the defendants used the fact that netblocks were reclaimed to negotiate favorable terms for future netblock contracts with Dye. The evidence relating to the reclaimed netblocks (and the defendant's subsequent acknowledgement to other co-conspirators of the risks of using netblocks obtained via Dye) is evidence of the defendants' knowledge of their lack of authorization to use the netblocks in 2014 when they were using the netblocks acquired from Dye to send commercial emails, as charged in the substantive counts.

In the event the Court determines that evidence of and relating to the GetAds netblocks is not direct evidence of the conspiracy and inextricably intertwined with the conspiracy and substantive counts, the government submits this evidence is properly noticed and admissible as evidence of defendants' intent, plan, knowledge, and absence of mistake under Rule 404(b).

   2. The AFRINIC Netblocks

Evidence relating to the AFRINIC netblocks is admissible to prove intent, preparation, plan, knowledge, and absence of mistake regarding defendants' misuse of LOAs to acquire control and use of IP addresses that were not rightfully theirs. The

Gov.'s Motions in Limine to Admit Evidence re
GetAds & AFRINIC netblocks, etc.

7

18cr4683-GPC

government anticipates that defendants will seek to blame Dye and Tarney for the fraudulent LOAs that were submitted in connection with both the conspiracy and the substantive counts. The evidence relating to the AFRINIC netblocks is significant because Dye and Tarney were not involved in those transactions, although the defendants used the same method and means, namely the use of fraudulent LOAs to acquire and use the AFRINIC netblocks for which they were not the legitimate registered users.

On December 15, 2019, the United States produced in discovery a December 4, 2019, news article, *How Internet Resources Worth R800 Million Were Stolen and Sold on the Black Market*, that described how IP addresses allocated to Africa had been hijacked. The list of hijacked African IP blocks included the AFRINIC netblocks previously acquired and used by the defendants. On January 13, 2020, the United States produced in discovery an FBI report that provided further details regarding defendants' acquisition of the AFIRNIC netblocks. Along with the FBI report, the United States also produced Company A emails and records showing that, on April 8, 2013, defendants negotiated the purchase of 196.193.0.0/16 from an Indian company via two wire transfers totaling $89,600. After completing the wire transfer, defendant Manoogian emailed himself a LOA template on April 10, 2013, that was drafted to announce the 196.193.0.0/16 IP block via Hostwinds, the same hosting company that defendants had used to announce many of the hijacked GetAds netblocks. The next day, defendant Mark Manoogian emailed a finalized version of this LOA to co-defendants Abdul Mohammed and Jake Bychak with the message, "looks official." The LOA sent by defendant Manoogian was purportedly signed by A.S.Y, in his capacity as "Manager" for "AirSea Freight Services." The "AirSea Freight Services" LOA sent by Manoogian to his codefendants had what appeared to be an official letterhead and stamp. Records obtained from Hostwinds show that, in late April 2013, defendants successfully arranged for the 196.193.0.0/16 IP block to be announced. On May 1, 2013, however, Hostwinds received a complaint that the announcement was for hijacked IP addresses. Despite this notice, in an email of May 13, 2013, defendant Manoogian directed

Gov.'s Motions in Limine to Admit Evidence re
GetAds & AFRINIC netblocks, etc.

8

18cr4683-GPC

coworkers to use the hijacked IP block – and indicated that it should be used in conjunction with two of the hijacked GetAds netblocks.

The Ninth Circuit employs a four-part test to determine the admissibility of Rule 404(b) evidence. *United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013) (quoting *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012). The four factors apply to the facts of this case as follows:

1. *The evidence tends to prove a material point.* As discussed above, the evidence tends to show knowledge and intent, and absence of mistake or accident regarding the charged conduct.

2. *The other act is not too remote in time.* The events relating to the netblocks not identified in the substantive counts and the AFRINIC netblocks all occurred within the period of the conspiracy charged in Count 1 of the Indictment.

3. *The evidence is sufficient to support a finding that the Defendant committed the other act.* The evidence presented will primarily be in the form of the defendants' own statements, as presented through their emails and coconspirator testimony.

4. *The act is similar to the offense charged.* The acts are exactly the same conduct as the offenses charged, but involve additional netblocks.

As all four-parts of the Rule 404(b) test favor admissibility, the evidence should be allowed.

//

//

# III.
# CONCLUSION

For the reasons discussed above, the government respectfully submits that evidence relating to the GetAds and AFRINIC netblocks is admissible, as are emails sent by the defendants and coconspirators Dye and Tarney during and in furtherance of the conspiracy.

DATED: March 24, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/Melanie K. Pierson
Assistant United States Attorney

/s/Sabrina L. Fève
Assistant United States Attorney

/s/Candy Heath
Senior Counsel
Computer Crime and Intellectual Property Section
Department of Justice, Criminal Division