```
1   RANDY S. GROSSMAN
    United States Attorney
2   MELANIE K. PIERSON
    SABRINA L. FEVE
3   Assistant U.S. Attorneys
    California Bar No. 112520/226590
4   Office of the U.S. Attorney
    880 Front Street, Room 6293
5   San Diego, CA 92101
    Tel: (619) 546-7976
6   Fax: (619) 546-0631
    Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov
7
8   CANDINA S. HEATH
    Senior Counsel
9   Texas Bar No. 09347450
    Computer Crime and Intellectual Property Section
10  U.S. Department of Justice
    Washington, D.C. 20005
11  Tel: (202) 307-1049
    Email: Candina.Heath2@usdoj.gov
12
13  Attorneys for Plaintiff
    United States of America
```

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>ABDUL MOHAMMED QAYYUM (3), and<br>PETR PACAS (4),<br><br>    Defendants. | Case No.: 18cr4683-GPC<br><br>**UNITED STATES' MOTIONS IN LIMINE FOR:**<br><br>**(1) RULING ON OBJECTIONS & EXHIBITS DURING DEPOSITION TESTIMONY OF L.W.T.; and**<br><br>**(2) RULING ON OBJECTIONS & EXHIBITS DURING DEPOSITION TESTIMONY OF S.A.D.** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property

Section Senior Counsel Candy Heath, and hereby files its above-referenced Motions in Limine, based on the files and records in this case, and the attached exhibits (including three filed under seal).

I.

## INTRODUCTION

On September 9, 2021, and September 15, 2021, pursuant to a court order, the government deposed witnesses LWT and SAD, respectively. Thereafter, the government produced the deposition videos and the transcripts thereof in discovery. The parties have since met and conferred on their respective objections. On those issues where there was agreement, the government redacted the testimony that both parties agreed should be removed, along with any objections of counsel.

In the attached deposition transcripts, the red highlighted items are those the government seeks to admit which the defense seeks to exclude, and the green highlighted items are those the defense seeks to admit which the government seeks to exclude. The yellow highlights represent the objections lodged on the record related to the green or red highlighted items. The parties have agreed to the admissibility of all the exhibits introduced through LWT and all but five of the exhibits introduced through SAD. The United States now asks the Court to admit the unchallenged testimony and exhibits and further requests rulings on the parties' outstanding evidentiary disputes. The deposition of LWT is attached as Exhibit 1, and the deposition of SAD is attached as Exhibit 2. The five disputed exhibits from SAD's deposition are attached as Exhibits 3 through 7 (exhibit 3-5 are filed under seal).

II.

## POINTS AND AUTHORITIES

After depositions were taken of witnesses LWT and SAD, the parties stipulated that those two witnesses were unavailable to testify at trial, due to infirmity. [ECF 285.] This stipulation allows their sworn deposition testimony to be admitted at trial over a hearsay

objection, pursuant to Federal Rule of Evidence ("FRE") 804(b)(1). The remaining rules of evidence are nonetheless applicable.

### A. The Deposition of LWT (Exhibit 1)

#### 1. Lack of Objection During the Deposition Waives the Challenge.

Rule 15(e) of the Federal Rules of Criminal Procedure provides that a deposition in a criminal case must be taken "in the same manner as a deposition in a civil matter." Rule 15(g) further provides that a "party objecting to deposition testimony or evidence must state the grounds for the objection during the deposition." Rule 30(c)(2) of the Federal Rules of Civil Procedure further requires that "objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record." *Nguyen v. LVNV Funding, LLC*, No. 15CV758-LAB (RBB), 2017 WL 951026, at *2 (S.D. Cal. Mar. 10, 2017). Rule 32(d)(3)(B) of the Federal Rules of Civil Procedure ("FRCivP") requires that a timely objection be made to errors and irregularities at an oral examination, and failure to lodge a contemporaneous objection waives the grievance.[1] *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 903 (N.D. Cal. 2016). Failure to object subjects the party to the maxim "[s]ilence, when speech is due, defeats later objection." *Concrete Mixing and Conveying v. Great Western Power Co. of California*, 46 F. 2d 331, 332 (N.D. Cal. 1928).

In the LWT transcript (Exhibit 1), no objection was raised by the defense during the deposition to the following testimony:

-page12, lines 20-5, page13, lines 1-3 [witness explained purpose of her company]

-page 35, lines 8-12 [witness stated attorneys researched the history of the netblock]

-page 39, lines 12-16 [witness testified that she believed the netblock was an asset]

-page 51, lines 15-20 [witness testified she was doing her best to answer but had suffered a stroke].

---

[1] Failure to object, under the rule, does not waive objections to competence, relevance or materiality, unless the ground for it might have been corrected at the time.

Because no contemporaneous objection was made, the objections should be deemed waived. Moreover, it is impossible for the government to know the defense objection to such evidence and respond herein. The United States requests an opportunity to respond to any future objections raised by the defense.

The United States maintains that the above evidence is relevant and admissible under FRE 401, as it will assist the jury in understanding the nature of the business assigned to the netblock, the due diligence performed by the witness prior to the sale of the netblock, the witness's understanding of any value of the netblock and the reason for any problems or affect the witness might have had in testifying. The defense should also have permitted the government an opportunity to cure any potential defect by raising a timely objection and their failure to do so should not prejudice the government.

2.   <u>Vague and Confusing Testimony Should be Excluded under Rule 403</u>.

Rule 403 of the Federal Rules of Evidence provides that the court may exclude relevant evidence if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury. During the cross-examination of LWT, defense counsel sought to establish that LWT had not spoken to the individual defendants. The witness was asked if she had met or spoken with one of the defendants, to which she replied that she had not spoken to anyone in "the book." [Exhibit 1, page 49, lines 4-12.] The reference to "the book" referred to a book of exhibits that was placed before the witness during the deposition. The government objected to the question as vague. The witness' reference to "the book" has the strong potential to confuse or mislead the jury into assuming that "the book" refers to the book of all trial exhibits, rather than the book with a limited number of exhibits for the deposition that was presented to the witness. As defense counsel also established on the record that the witness had not spoken to the individual defendants in this case, this additional piece of confusing evidence is cumulative.

//

//

### 3. The Remaining Defense Objections Should be Denied.

After establishing that LWT was the president and CEO of her company and had handled the sale of the netblock in 2016 (after it was hijacked by the defendants), the witness was asked if she viewed the IP addresses sold to be corporate assets. Defense counsel objected to the question as vague, and lacking foundation. The witness then answered that she considered the IP addresses to be assets. [Exhibit 1, p. 23, line 24 through p. 25, line 4.] The foundation had been abundantly established, with testimony that LWT, president and CEO of the company, had sold the netblock for $850,000 and had authenticated a contract and escrow agreement she had signed on behalf of the company in relation to the sale. Such a foundation is more than adequate to allow the witness to state whether she considered the IP addresses to be corporate assets. Moreover, such a question is quite specific, and not vague.

LWT testified that a broker was involved in the sale of the netblock assigned to her company. The witness was asked if she knew how the broker determined she was the owner of the IP addresses involved in the sale. The witness responded that the broker "hired an attorney" who "reviewed files and did research" and "assured me that the ownership was indeed" her company. The defense objected to the question based on hearsay and lack of foundation. [Exhibit 1, p. 25, lines 5-12.] While the statement of the broker regarding ownership is an out of court statement, it is not offered for the truth of the matter asserted (i.e., that LWT was the owner of the netblock), but for the effect on the listener (i.e., she understood that she was the rightful owner). The question and answer are also offered to show how it was possible to research and identify the netblock's owner. As the president and CEO of the company, who participated in the sale of the netblock (and signed the transfer documents), LWT was aware of the full nature of the services she received from the broker. Accordingly, an adequate foundation was laid for the question and the question and answer should be admitted.

Finally, the witness was asked a series of questions to elicit the evidence regarding the effect on the victim of the use of the netblock to send spam and the use of her company's

name without permission, to which the defense objected on the grounds of foundation, relevance, and vagueness. [Exhibit 1, p. 31, line 10 through p. 32, line 3.] Victims of fraud are permitted to testify at trial about how they were affected by the crime. In *United States v. Green,* 428 F.3d 1131, 1344 (8th Cir. 2005), the victims of the fraud were permitted to testify "about their experience, recounting the steps taken to prove that they did not purchase the equipment and to repair their credit." *Green* found the victims' testimony to be relevant and even "emotional," but not to the extent that it would lure the factfinder into finding guilt on a ground different from proof specific to the offense charged, citing *Old Chief v. United States*, 519 U.S. 172 (1997). *Id.* In this case, the testimony of the witness that the image of her company was harmed by the use of the netblocks to send spam and that she was shocked and felt violated to learn that her property was used without authorization is relevant to show that the defendants deprived LWT and her company of a property interest (including business goodwill), acted without authorization in using her company's name and netblock to send spam, and could not reasonably believe their scheme was a "victimless" crime involving forgotten or abandoned property, but is not so inflammatory that it should be excluded.

B. **The Deposition of SAD (Exhibit 2)**

1. <u>Speaking Objections and Arguments of Counsel Should be Excluded</u>.

Rule 30(c)(2) of the Federal Rules of Civil Procedure requires that objections on the record be stated concisely in a nonargumentative and nonsuggestive manner. Speaking objections are improper. *Van Osten v. Home Depot*, 2021 WL 3471581 * 14 (S.D. Cal, 2021). Moreover, arguments of counsel are not evidence, *United States v. Nicoechea*. 986 F. 2d 1273, 1280 (9thCir. 1993), nor are statements and objections of counsel. Ninth Circuit Model Jury Instruction 1.4 [What is Not Evidence]. Accordingly, all objections of counsel should be excluded from the record, after the court rules.

In particular, the defense seeks to present to the jury statements of defense counsel at the deposition of SAD to the effect that the testimony of the witness was "improper" and "unacceptable" [Exhibit 2, page 109, line 25 through page 110, line 22], as well the

counsel's statement that the witness was "evasive." [Exhibit 2, page174, lines 8-13]. Such statements by counsel are clearly not evidence in any way and should not be presented to the jury.

### 2. Improper Cross Examination Should be Excluded.

It is improper during cross examination to tell the jury the substance of inadmissible evidence. *United States v. Sanchez*, 176 F. 3d 1214, 1222 (9th Cir. 1999). This principle gives rise to the common objection of "reading from items not in evidence." The emails that defense counsel read aloud were inadmissible hearsay. Pursuant to FRE 801(d)(1) a prior statement of a witness is not hearsay if the statement "is inconsistent with the declarant's testimony and was given under penalty of perjury," or "is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." The emails at issue were neither inconsistent with the testimony of the witness, nor provided under penalty of perjury. Nor were they consistent statements, offered to rebut an alleged recent fabrication, improper influence, or motive, as no allegation of recent fabrication, influence, or motive was raised. Accordingly, the contents of the emails are inadmissible hearsay which cannot be presented to the jury.

In addition, the emails themselves that defense counsel asked SAD to read aloud were inadmissible extrinsic evidence of the witness's prior statements. Pursuant to FRE 613(b), "extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it." FRE 613(b) clearly contemplates that extrinsic evidence is only admissible if the prior statement was *inconsistent* with the statement provided to the tribunal. During the examination, SAD made no statement that was inconsistent with the emails prior to defense counsel reading (or asking SAD to read) the content of the emails into the record. Accordingly, the emails are not admissible under FRE 613(b).

The examination of the witness regarding the emails begins on page 84 of the transcript, where defense counsel, having established that SAD reviewed the emails in preparation for his testimony, began to read from the one of the emails:

> Q: Okay. The next line you say "I have had horrible email conversations…
>
>     Govt Counsel: Objection. Reading from a doc-
>
> Q: …with your fellow officers of the court in San Diego."
>
>     Govt Counsel: Objection. Reading from a document not in evidence.
>
> Q: How many – how many emails have you – did you – were you referring to there that you had with – with fellow officer of the court in San Diego?
>
> [Exhibit 1, p. 89, lines 11-22].

After receiving a response from the witness about the number of emails, defense counsel continued reading from the email:

> Q: Okay. And then you also said, "I informed them that any future communications should be done by San Diego personnel in person." Why did you write that sir?
>
>     Govt Counsel: Objection, relevance.
>
> A: Why did I write that?
>
> Q: Yes.
>
> A: Because of the fact they were going to force me to fly to San Diego.
>
> Q: Okay. In fact, you say "This is because they need to feel the pain they would be putting me through by forcing me to appear in person by flying coast to coast when there is technology to do the same thing remotely."
>
>     Govt Counsel: Objection, reading from document not in evidence.
>
> Q: Do you remember saying that sir?
>
> A: Can you restate the question again?
>
> Q: That next sentence, why don't you read it to me that begins with "This is."
>
> [Exhibit 1, page 92, line 1-20.]

1  Defense counsel then insisted that SAD read the section from the email aloud, and SAD
2  complied. This pattern continued throughout the examination regarding the emails of the
3  witness.

4      Q: Okay. Let's go to – to the next paragraph and the second sentence from the
5  bottom of that paragraph that says, "I also do not trust the prosecutor." Can you read that
6  please? [page 94, line 24 through page 95, line 2.]

7      Q: Then read the next sentence after that sir. [page 95, lines 8-9.]

8      Q: Sir, let's go to the second paragraph that begins with the number 2. And if you
9  don't mind, could you read the entire paragraph beginning with – this is indicated –
10  designated as num- with the number 2? [page 106, lines 19-23]

11      Q: Okay sir. In this email, if you look at paragraph 3, it has the number 3? Can you
12  read that paragraph to us? [page 111, lines 19-21]

13      Q: Okay, do you recall in paragraph 2 that reads. "Bearing item number 1 in mind,
14  please arrange to take me off the witness list as I will only testify under duress caused
15  by the states attorney. Don't I have a Fifth – Fifth Amendment rights not to testify?"
16  [page 122, lines 22-25, page 123, line 1.]

17  Further examples of this practice of reading from the emails can be found in the transcript
18  as follows: page 123, lines 23-35; page 124, lines 2-6; page 126, lines 5-11; pages 127,
19  lines 2-7; and page 130, lines 1-4.

20      The witness did not make any inconsistent statements that required impeachment at
21  all during the examination. To the extent that SAD was asked if his prior statements were
22  true, the witness confirmed they were true, and were consistent with the statements
23  provided at the deposition. (See, for example, Exhibit 1, page 103, lines 1-4.).
24  Accordingly, there is no basis for the hearsay exception for prior consistent statement to
25  rebut recent fabrication, or the admissibility of the emails as extrinsic evidence of prior
26  inconsistent statements. Therefore, both the emails the defense seeks to admit, as well as
27  the improper cross examination regarding those emails, should be excluded.

28

### 3. Evidence Related to SAD's Displeasure Regarding Travel to San Diego to Testify Should Be Excluded as Irrelevant.

FRE 402 states that "[i]rrelevant evidence is not admissible." Only relevant evidence may be admitted at trial. *United States v. Vallejo*, 237 F.3d 1008, 1015 (9th Cir. 2001). The relevance of a particular piece of evidence is determined by the facts of the case. *Id.* Relevance is not inherent in any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. *Id.* FRE 401 states that evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The United States requests that the court exclude portions of the cross examination and defense exhibits used with SAD as lacking relevance under FRE 402. Specifically, the government requests the court exclude from the jury's view any testimony elicited regarding SAD's personal travel plans and SAD's email communications with the government regarding his displeasure with the government at having to travel.

During the cross examination of SAD, defense counsel extensively explored SAD's vacation that conflicted with the prior trial date, as well as three emails written by SAD, wherein SAD discussed his infirmity and complained bitterly that representatives of the government did not appear to be sympathetic to his desire not to travel to San Diego during the pandemic. The government consistently objected to such testimony as irrelevant. Since, after the deposition, the defense has stipulated that SAD is unavailable, that line of questioning bears no relevance to any issue now before the court.

While any infirmity that might affect SAD's ability to perceive or recall facts at issue is a fair subject for cross examination, questions about his vacation travel or his displeasure with the government's request that he appear in San Diego to testify at trial do not make any fact of consequence to the determination of any issue before the jury more or less probable. For example, during SAD's deposition, defense counsel emphasized portions of the emails wherein the witness stated that the government made him "feel like a criminal," put him through "four months of hell," that he did "not trust the prosecutor to have my

back on the witness stand," and the prosecutor "comes across to me as only wanting victories in her court cases." The witness later explained that the reason he made those statements stemmed from the prosecution being "unsympathetic to the point of doing a remote testimony." [Exhibit 2, p. 96.] As the danger of unfair prejudice far outweighs any imagined probative value, the statements should further be excluded under FRE 403.

Because the statements related only to SAD's desire to avoid traveling to San Diego to testify, they offer no insight into the credibility of the witness in general, or to the motives of the witness when not asked to travel. The Supreme Court has noted that Confrontation Clause of the Sixth Amendment entitles the defense to explore on cross examination a witness's "motive for favoring the prosecution in his testimony." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986). The statements the defense seeks to admit are not evidence of the witness's motive for favoring the prosecution and should be excluded. In *Van Arsdall*, the Court stated, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* As SAD's contested statements are not relevant to issues the jury must decide, and only demonstrate an animosity towards the government subpoenaing him to testify, rather than a motive for favoring the prosecution, they should be excluded.

The segments of the transcript objected to on the grounds of relevance include all the items the defense seeks to include in Exhibit 2 on pages 92-100, 104-116, and 120-132, which are highlighted in green, as well as the three emails offered as exhibits by the defense, attached here as Exhibits 3, 4 and 5.

4. <u>The Remaining Defense Objections Should be Denied.</u>

The defense objected to a series of questions to SAD to establish a foundation to admit two documents as company business records, as well as the admission of the documents themselves. The documents are the application for the original assignment of a particular netblock (attached here as Exhibit 6) and the letter to SAD's then-employer,

assigning the netblock (attached here as Exhibit 7). This discussion began on page 24, line 7 of the transcript (Exhibit 2), and concluded on page 29, line 6. SAD testified that he personally filled out the application for the netblock on behalf of his company in 1993, faxed it to Network Solutions (who was assigning netblocks at that time, as one of the predecessors to ARIN), and received the letter of assignment a few days later in response. SAD testified that the records were used, maintained, and relied upon by his company.

      As the person who both prepared and maintained the records for the company in the ordinary course of his business, contemporaneously with the dates on the documents, the witness provided the proper foundation for the admission of the referenced exhibits as business records, satisfying the requirements as an exception to the hearsay rule found at FRE 803(6).  A document kept in the ordinary course by one business, but not made by the business, can nonetheless qualify as a business record of FRE 803(6) if the record was kept in the regular course and the business relied on the document. *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993).  Because the witness provided the appropriate foundation and the records meet the requirements for the business records exception to the hearsay rule, the defense objections should be denied. Moreover, these records are especially probative in this case, as they will provide the jury with information regarding exactly how companies obtained netblocks prior to the inception of ARIN (the American Registry of Internet Numbers), and how the companies were advised of the IP addresses which were assigned to them.  The documents also are relevant to show that the netblock at issue was assigned to the company for which the witness worked, and not the defendants.

      The defense further objected to a series of questions designed to explain to the jury the importance of the netblock to the witness's company.  The witness testified that it was important so that the company could grow and compete with sales offices in remote locations that could communicate on the company network. The witness, a supervisor of technical services and computer operations, noted that the mainframe computer the company had been using was no longer sufficient for the needs of the company. This testimony, which is relevant and admissible over defense objections regarding lack of

foundation, personal knowledge, vagueness, and relevance, is found on Exhibit 2, pages 37-38, highlighted in red.

The defense also objected to a question establishing that the assignment of the netblock was intended for use by the witness's company alone. The witness was asked, "was that internet range allowed to be used by any other company or any other individual?" The witness stated that Network Solutions "assigned the class B IP address network 167.87 to [his company] alone." [Exhibit 2, page 39, lines 3-15.] The question was not vague, did not call for a legal conclusion, and as a supervisor of computer operations who personally filed the application and received the assignment, had full knowledge and awareness of how the netblock could be used. The use of the netblock is also pertinent to the issue of what sorts of possessory rights and interests netblock registrants had, including the right to exclusive use. Accordingly, the defense objections should be denied, and the testimony should be admitted.

The witness testified that, in 2000, the company that he worked for (which had been assigned the netblock) was acquired by another larger company, where he continued to be employed for another six years, with the same title.  The witness testified that all assets of his former firm, including the netblock, were acquired by the new firm, noting that documents establishing the acqusition were filed with the SEC. The defense objected to the testimony relating to all assets being acquired by the new firm, citing lack of foundation or personal knowledge, speculation, vague and non-responsive.  (See Exhibit 2, page 41, lines 7-12; page 44, lines 18-19.) The witness was a supervisory employee in both companies and stated that documents had been filed with the SEC, demonstrating his personal knowledge and foundation for the testimony.

The witness later testified that his company operations were moved from the earlier assigned netblock to the network of the new company. Defense counsel again attempted to improperly introduce inadmissible hearsay evidence during cross examination, asking the witness "So if you were to be made aware that [the new company] was contacted by the FBI in 2015 and told there had been an improper transfer, that they never received that at

that time?" The defense repeatedly, over government objection, inserted the fact that the new company was not aware it owned the netblock until contacted by the FBI in 2015, although the witness stated he had no knowledge of that. These questions can be found on Exhibit 2, page 159, line 13 through page 160, line 16. This improper cross examination should be excluded.

Finally, the witness testified that the Letter of Authorization (LOA) submitted by the defendants to the hosting company for the netblock assigned to SAD's former employer was forged. The defense now seeks to redact SAD statements that use the word forgery, and statements regarding whether SAD was a handwriting expert, in connection with the witness's review of the LOA that he purportedly signed. [Page 101, line 25-Page 102, line 4; Page 102, line 18-20; and page 117, line 11]. Pursuant to FRE 901(b)(2), handwriting can be authenticated by a non-expert's opinion, based on familiarity with it that was not acquired for the current litigation. Given that the witness is competent to identify his own signature and whether it was forged, the witness's characterization of the document, and the question of defense counsel about his expertise should stand.

//

//

## III.
## CONCLUSION

For the following reasons, the United States respectfully requests that the court exclude the vague and confusing question and answer posed to witness LWT, deem the matters with no contemporaneous objections to her testimony waived, and deny the other defense requests to exclude the requested testimony of LWT, while also admitting the LWT deposition testimony and exhibits. The United States further requests that, with respect to the deposition of SAD, the court exclude speaking objections and statements of counsel, exclude improper cross examination, exclude the three defense exhibits, exclude irrelevant evidence relating to SAD's displeasure at the possibility of travel to San Diego during the pandemic, deny the other defense requests to exclude evidence, and admit the testimony and the two government exhibits relating to the acquisition of the netblock in 1993 as well as the remaining uncontested government exhibits.

DATED: March 24, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/Melanie K. Pierson
Assistant United States Attorney

/s/Sabrina L. Fève
Assistant United States Attorney

/s/Candy Heath
Senior Counsel
Computer Crime and Intellectual Property Section
Department of Justice, Criminal Division