RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>ABDUL MOHAMMED QAYYUM (3), and<br>PETR PACAS (4),<br><br>    Defendants. | Case No.: 18cr4683-GPC<br><br>**UNITED STATES' MOTIONS IN LIMINE TO EXCLUDE:**<br>  (1) **UNDISCLOSED EXPERTS;**<br>  (2) **UNDISCLOSED RECIPROCAL DISCOVERY;**<br>  (3) **EVIDENCE OF THE LAW;**<br>  (4) **EVIDENCE OF ADVICE OF COUNSEL;**<br>  (5) **WITNESSES FROM THE COURTROOM;**<br>  (6) **USE OF REPORTS FOR IMPROPER IMPEACHMENT; and**<br>  (7) **EVIDENCE OF IMMIGRATION STATUS & PUNISHMENT** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property Section Senior Counsel Candy Heath, and hereby files its above-referenced Motions *in Limine*, based on the files and records in this case.

## I.

## **INTRODUCTION**

On October 4, 2021, the court ordered the defendants to produce reciprocal discovery by March 10, 2022. On March 10, 2022, the defense produced as reciprocal discovery 33 documents consisting entirely of judicial decisions, legal filings, Congressional records, and a portion of the Federal Register (e.g., *Cleveland v. United States*, 531 U.S. 12 (2000) is marked "DEFENDANTS_0000001" through "DEFENDANTS_0000009"). To date, the defense has not identified any expert witnesses or disclosed any potential expert testimony. Defense counsel have also indicated that they do not believe they have a reciprocal discovery obligation to produce records that they intend to use in their case-in-chief that were ever produced in discovery by the government. Based on the scope and nature of defendants' reciprocal discovery production, which consists solely of legal records, the United States moves *in limine* to exclude the following:

1) Testimony and evidence of any experts for which notice was not timely provided;
2) Evidence and exhibits in the defense's case-in-chief that were not produced by March 10, 2022, absent a showing of prior unavailability;
3) Evidence consisting of cases and legal records, including decisions, regulations, and Congressional records, which would invade the exclusive province of the court to render legal conclusions and run afoul of Federal Rule of Evidence ("FRE") 403;
4) Evidence of advice of counsel;
5) Witnesses from the courtroom or review of prior trial testimony, absent a pretrial authorization;

6) Use of reports for improper impeachment; and

7) Evidence of immigration status and punishment.

## II.

## POINTS & AUTHORITIES

**A. Undisclosed Expert Testimony Should be Excluded.**

The district court's broad authority to manage the presentation of evidence and witnesses during trial includes "the unquestioned discretionary power to exclude evidence that should have been produced in reciprocal discovery." *United States v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011). In *Urena*, the Ninth Circuit upheld the district court's decision to exclude the defendant's expert witness, where the defendant had ample opportunity to designate the expert and chose not to do so until mid-trial. The court noted that "a district court may normally refuse to permit expert testimony from an expert not previously designated before trial in the pretrial conference." *Id*. at 909. Under *Urena* and Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, any untimely experts noticed by defendants should be excluded.

The government's January 2019 request for reciprocal discovery included a request for expert witness information pursuant to Rule 16(b)(1)(C). [ECF 48, p.3.] Since October 2021, the defendants have known their deadline for producing reciprocal discovery. Despite these clear deadlines and the unambiguous terms of Rule 16(b)(1)(C), they have chosen not to produce any expert notice. Accordingly, the United States requests that the court exclude testimony from all defense experts not identified prior to March 10, 2022, the reciprocal discovery deadline, [ECF 289].

Rule 16 states that the defense must, "at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705," and the "summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). The Rule is "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair

opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 Adv. Comm. Note. Unlike Rule 16(a)(1)(G) which only requires notice of government experts who will be offered in the government's "case-in-chief" at trial, Rule 16(b)(1)(C) contains no such limitation and so does not permit defendants to circumvent the notice requirement by deeming a defense expert a "rebuttal" witness. The reason is plain: all defense experts are called in the defense case-in-chief to "rebut" the government's case. Such an exception would eliminate the rule.  Based on the defendants' failure to provide timely notice of expert testimony, any such testimony should be excluded.

### B. Undisclosed Defense Exhibits Should be Excluded.

The district court's power to exclude evidence that should have been produced in reciprocal discovery extends beyond expert witnesses to include exhibits that the defendants intend to use in their case-in-chief. *See, e.g., Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) (excluding evidence that was not identified by the defendant until the middle of the trial); *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (upholding the exclusion of defense exhibits because they were not disclosed until after the jury was sworn in). The United States is entitled to a fair trial and late production of reciprocal discovery is contrary to such right. *See Matthews v. United States*, 485 U.S. 58, 72 (1988) ("After all, a criminal trial is not a game or sport. The very nature of a trial is a search for truth." (citations and quotations omitted)).

To comply with an order for reciprocal discovery, it is not sufficient to state, as defendants have, that their trial exhibits may include unidentified records previously produced by the government.  Put another way, defendants are incorrect to argue that they do not have a reciprocal discovery obligation for any record obtained from the government. Rule 16(b) requires the defense to disclose items "within the defendant's possession, custody, or control; and the defendant intends to use the item in the defendant's case in chief at trial." The plain language of Rule 16(b) does not limit disclosure to items the

defendant obtained independent of the government, but instead requires disclosure of all items intended to be used.

In this case, the government has produced approximately 2 million pages of discovery to date. Despite the volume of this evidence, defendants have had long had insight into the government's case-in-chief courtesy of the government's November 2018 production of the grand jury exhibits upon which the government relied when indicting this case, as well as a September 2021 draft of the government's exhibit list. Defendants have not offered any similar roadmap. In *United States v. Swenson*, 298 F.R.D. 474, 478 (D. Idaho, February 14, 2014), where the government's production of discovery "measured in terabytes," the court found it was insufficient for the defendant to simply state that the documents intended for use by the defense at trial were encompassed in the government's discovery productions. The court found that "the requirements of Rule 16 can only be satisfied by identifying the specific documents which the Defendant intends to use at trial." The *Swenson* court cited a District of Columbia District Court opinion, *United States v. Hsia*, 2000 WL 195067 *1,[1] which held that the defendant could not satisfy her discovery obligations by providing the government with "the thousands of pages of discovery she received from the government" but must instead identify specific documents. In so holding, the *Hsia* court noted that the purpose of the rule was to "avoid surprise and gamesmanship."

This case has been pending for over three years, during which the defendants have undoubtedly begun identifying potential exhibits for their case-in-chief. It would render the court's order to provide reciprocal discovery essentially meaningless if the defendants could comply by simply indicating the defense intended to admit unspecified documents from the government's discovery productions. Accordingly, the government requests that the court exclude defense evidence not produced or identified to the government by March

---

[1] Both the *Swenson* and *Hsai* courts also required the defendants to disclose the evidence they intended to use to cross examine the government's witnesses, if such evidence was not used solely for impeachment.

Government's Motions in Limine to Exclude Evidence
of and Relating to the Law, inter alia.

5

18cr4683-GPC

10, 2022, as specified by the court in the order of reciprocal discovery, unless they can show the documents were previously unavailable.

### C. Evidence Regarding the Law Should be Excluded.

The reciprocal discovery provided by the defense consists solely of legal documents, including bates-stamped copies of *Cleveland v. United States*, 531 U.S. 12 (2000), *Dowling v. United States*, 473 U.S. 207 (1985), *Kelly v. United States*, 140 S.Ct. 1565 (2020), and *McNally v. United States*, 435 U.S. 350 (1987). (An index of defendants' reciprocal discovery prepared by the government is attached hereto as Exhibit 1.) Such items should not be admitted as evidence. "Legal treatises, statutes, regulations and the like are not admissible." *Thomas v. Garcia*, No. 1:08-CV-00689-JLT PC, 2013 WL 3773861, at *5 (E.D. Cal. July 17, 2013). "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Weitzenhoff,* 35 F.3d 1275, 1287 (9th Cir. 1993) (internal quotation marks omitted). Admitting the evidence produced in defendants' reciprocal discovery would be an invasion of the province of the court.

There is no reasonable scenario under which a defense witness could establish a foundation for why these bates-stamped legal documents should be presented to the jury. "It is axiomatic that ignorance of the law is no defense." *United States v. Smith-Baltiher,* 424 F.3d 913, 924 (9th Cir. 2005). In *United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015), the Seventh Circuit held that, "The wire-fraud statute requires a specific intent to defraud but *not* willfulness or any other proxy for knowledge of the law," noting that mistake of law is not a defense to wire fraud. *See also Shaw v. United States*, 137 S. Ct. 462, 467 (2016) (bank fraud conviction does not "require [defendant's] actual knowledge of those bank-related property-law niceties" or other "depend[] upon their property-law expertise"); *United States v. Porcelli*, 865 F.2d 1352, 1358 (2d Cir. 1989) ("The specific intent required under the mail fraud statute is the intent to defraud, and not the intent to violate a statute."). Mistake of law is also not a defense to a general intent crime such as a violation of the CAN-SPAM Act. *United States v. Scarmazzo,* 554 F. Supp 2d 1102, 1107 (E.D. Cal. 2008).

Evidence of and relating to case law, statutes, regulations, and Congressional document should be excluded as irrelevant under FRE 402 and for having a high probability of misleading the jury and confusing the issues by invading the court's exclusive role as arbiter of the law in violation of FRE 403. To the extent that evidence of and relating to the law also requires specialized knowledge and expertise, i.e. a graduate law degree, such evidence falls under FRE 702, which both requires notice the defendants have failed to provide and is inadmissible even with a properly-notice expert. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law"). The legal materials produced by defendants in reciprocal discovery should therefore be excluded.

### D. Evidence Regarding Advice of Counsel Should be Excluded.

Defendants' reciprocal discovery production of approximately 1,300 pages of legal documents suggests they intend to present evidence and testimony regarding the law and, by extension, legal advice. Because of the thorny issues such evidence would raise, and the likelihood that it would disrupt trial and potentially mislead or confuse the jury, the government moves to exclude this evidence absent defendants first satisfying *United States v. Ibarra–Alcarez,* 830 F.2d 968, 973 (9th Cir. 1987). Under *Ibarra-Alcarez*, defendants seeking to present an advice-of-counsel defense must show that: 1) there was full disclosure to an attorney of all material facts; 2) the defendant received advice regarding the specific course of conduct followed; and 3) the defendant relied upon this advice in good faith. 830 F.2d at 973. This showing must be made before any advice of counsel argument can be presented to the jury. *United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010) (defendant "needed to present evidence that he fully advised his attorney of his plan, received advice regarding that plan from the attorney, and followed that exact advice in good faith" as a "predicate[]" for an advice of counsel instruction). Moreover, where, as here, attorneys often acted more as a "business partner" than a "legal advisor," advice of counsel would not apply. *Id.* at 539-40.

A defendant claiming to have relied upon the advice of counsel waives the attorney-client privilege with respect to communications that tend to show that he relied upon advice of counsel, as well as other communications pertaining to the same subject. *United States v. Ortland,* 109 F.3d 539, 543 (9th Cir.1997) (quoting *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992)). In response to the grand jury subpoenas in this case, the United States received approximately 724 pages of privilege logs, with each page identifying 5-10 individual communications of indeterminate length. If the government is required to review thousands of pages of materials disclosed during trial, this would cause a lengthy delay in violation of FRE 403 and risk the loss of the time-screened jury. As Rule 16 requires that the defendants produce in reciprocal discovery all documents intended for use in the defense case, and no such discovery has been produced, evidence of and relating to advice of counsel should therefore be excluded.[2]

### E. Witnesses Should be Excluded from the Courtroom.

Pursuant to FRE 615, upon request by a party, the Court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. Exceptions to the rule of exclusion are provided for: (1) a party who is a natural person; (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney; or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.[3] This rule does not require the exclusion of a testifying government agent from trial during the testimony of other witnesses because the agent is an officer of the government. *United States v. Thomas*, 835 F. 2d 219, 223 (9th Cir. 1987). The Ninth Circuit has long

---

[2] Even if defendants were to satisfy *Ibarra-Alcarez*, additional hurdles remain. Companies A and B (not defendants) hold the privilege and have declined to waive it. The defense may also seek to compel the government to immunize attorneys who would otherwise refuse to testify. Unless these issues are addressed beforehand, they will also likely disrupt the trial.

[3] The rule applies equally to expert witnesses. Experts are subject to exclusion unless a party can establish that the expert is essential to their case, that is, the expert must hear the fact testimony of other witnesses to form a basis for their opinions. *McConnell v. Wal-Mart Stores*, 995 F. Supp 2d 1164, 1174 (D. Nev. 2014). This exception is inapplicable here because the defense has not provided notice of any expert testimony.

permitted one case agent to sit at government counsel table throughout the testimony of other trial witnesses, even though the agent eventually testified. *United States v. Meyer*, 403 F. 2d 52 (9th Cir. 1968).

The United States requests that the Court enter an Order requiring, in addition to the exclusion of witnesses from the courtroom, that no witness or prospective witness may be shown or have read to him any transcript of another witness's pretrial or trial testimony or any part thereof, unless the witness qualifies for an exception to the rule of exclusion. While Rule 615 does not directly address the question of whether showing or reading transcripts of prior testimony to a witness would violate a sequestration order, it is impossible to distinguish oral testimony from transcripts thereof for the purpose of the rule. The Supreme Court has addressed this issue in a manner that suggests that it would include the reading of transcripts within the ambit of Rule 615:

> [T]he court should have insulated the witnesses. All of the newspapers and radio stations apparently interviewed prospective witnesses at will, and in many instances disclosed their testimony . . . . Although the witnesses were barred from the courtroom during the trial the full verbatim testimony was available to them in the press. This completely nullified the judge's imposition of the rule.

*Sheppard v. Maxwell*, 384 U.S. 333, 359 (1966).

Therefore, under Rule 615, the government respectfully requests that this Court order: 1) witnesses excluded from the courtroom except during their own testimony; and 2) order the attorneys (a) to so advise their witnesses, and (b) not to show or read any transcript of another witness's pretrial or trial testimony, or recount, or permit others to recount, such testimony with a witness.

### F. Exclude Use of Law Enforcement Reports to Impeach Witnesses.

Interview summaries prepared by agents with the Federal Bureau of Investigation (known as "FBI 302s") and their rough notes are not statements of the persons interviewed under the Jencks Act. The defense should be precluded from introducing the contents of the FBI 302s or the rough notes to impeach witnesses during cross examination, publishing the contents of the 302s or the notes to the jury, or otherwise suggesting to the jury that the

Government's Motions in Limine to Exclude Evidence
of and Relating to the Law, inter alia.

9

18cr4683-GPC

302s or the notes are statements of the witnesses who neither authored them nor immediately adopted them.

### 1. FBI 302s and notes are not statements of the interviewed witness.

To provide for full and fair cross-examination, the Jencks Act requires that, after a witness for the United States testifies on direct examination, the government must provide the defense with any statements made by the witness that relates to the subject of his or her testimony. 18 U.S.C. § 3500. However, in this case, all the statements in the possession of the government of its anticipated witnesses have already been produced to the defense.

A statement within the meaning of the Jencks Act is defined as "a written statement made by said witness and signed or otherwise adopted or approved by him;" a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously;" or a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e). In *Palermo v. United States*, the Supreme Court held that, because the Jencks Act is meant to restrict the defense's use of discoverable statements to impeachment, 360 U.S. 343, 349 (1959), "only those statements which could properly be called the witness' own words should be made available to the defense." *Id.* at 352. The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *Id.* at 352-53. "Consistent with *Palermo*, FBI 302s are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute. Unless the witness has reviewed and adopted the FBI 302s" [which was not the practice in this case] "the 302s are not statements of the witness under subsection (e)(1) of the Jencks Act." *United States v. Kot,* 2012 WL 1657118, at *2 (D. Nev. May 10, 2012). Furthermore, because 302s are written after the conclusion of an interview and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2). Every circuit court to address the question has held that FBI 302s

generally are not discoverable under the Jencks Act.[4] *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material"), abrogated on other grounds by *Ross v. Oklahoma*, 487 U.S. 81 (1988).

### 2. Improper use of FBI 302s and notes at trial should be excluded.

Although production of the FBI 302s was not required as Jencks of the non-FBI witnesses, the government has provided broad discovery, including producing the 302s and interview notes constituting the agents' thought processes and interpretations during the interviews of other individuals. The defense should be precluded from introducing the contents of the 302s and interview notes to impeach witnesses on the basis of inconsistent statements because the 302s and notes are not the statements of the witnesses themselves. Moreover, defendants should be precluded from publishing the contents of the 302s and notes to the jury, or otherwise suggesting to the jury that those records are statements of

---

[4] Other circuit decisions include *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable under . . . the Jencks Act"); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously.").

the witness. To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo* holding that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. at 350.

Of course, the defense may freely ask a witness whether he or she made a statement during an interview with the agent. However, if the defense is not satisfied with the witness's answer, the defense may not display, read from, publish, or introduce the contents of the 302 as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination"), abrogated on other grounds by *United States v. Booker,* 543 U.S. 222 (2005); *United States v. Leonardi*, 623 F.2d 746, 757 (2nd Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it"). Moreover, the defense may not use the 302 in a way that suggests to the jury that the 302 is a statement of the witness. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the FRE); *United States v. Kot,* 2012 WL 1657118, at *2 (D. Nev. 2012).

Interview reports have been admitted as inconsistent statements when they have been "immediately adopted" by the witness. *United States v. Haisher*, 2012 WL 5199148 *3, (D. Nev. 2012), citing *United States v. Rubin*, 609 F. 2d 51, 62 (2nd Cir. 1979). *United States v. Leonardi,* 623 F .2d 746, 757 (2nd Cir. 1980) (refusing to admit FBI agent's

written statements for impeachment because it was created five days after the interview, did not purport to memorialize all of witness' statements, and witness did not previously adopt document.) In this case, the interviews were primarily conducted over five years ago, and the reports of interview were not "immediately adopted" by any of the witnesses at the time. It would be unfair and improper to allow the 302s and notes to be used to impeach them at a trial occurring 5 to 7 years after the statements were made. Therefore, the government respectfully requests that this Court exclude improper use of FBI 302s, and order that the defense be prohibited from introducing the 302s, publishing them to the jury, or otherwise suggesting to the jury that the 302s are inconsistent statements of the witnesses who neither authored them, nor adopted them at any time near the date they were written.

### G. References to Immigration Status & Punishment Should be Excluded.

In this case, two of the defendants are not U.S. citizens. Pursuant to FRE 401, 402, and 403, the government requests that the court exclude testimony, evidence, and argument regarding the defendants' immigration status and the potential penalties associated with a conviction in the instant case. In a federal criminal prosecution, the jury's sole function is to determine guilt or innocence. Evidence regarding punishment or potential collateral effects of conviction is thus irrelevant and inadmissible before the jury. The punishment provided by law upon conviction of a criminal violation is a matter exclusively within the province of the Court and should never be considered by the jury in any manner in arriving at their verdict as to guilt or innocence. *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). This precept is explained succinctly in Ninth Circuit Model Jury Instruction 7.4, which provides that "[t]he punishment provided by law for this crime is for the court to decide. [The jury] may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt." The Supreme Court has further opined that:

> [t]he principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor between the judge as sentencer and the jury as trier of fact. Providing jurors sentencing information invites them to ponder

matters that are not within their province, distracts them from their responsibilities, and creates a strong possibility of confusion.

*Shannon v. United States*, 512 U.S. 573 (1994).

The legal authorities are unequivocal that presenting information to the jury about potential punishment associated with a conviction is prejudicial. Breach of this standard has often been grounds for reversal. A jury is obligated to "reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975). Absent a statutory requirement that the jury participate in the sentencing decision, nothing is left "for jury determination beyond the guilt or innocence of an accused." *Frank*, 956 F.2d at 879, citing *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir. 1974) and *United States v. Davidson*, 367 F.2d 60, 63 (6th Cir. 1966).

The Ninth Circuit Model Jury Instructions (1.1 and 3.1) further advise the jury that they are not to be influenced by "sympathy." This would include any sympathy that might be engendered by revealing the immigration status and possible consequences of a conviction on that immigration status, to the jury. Such matters are not relevant to the issue of guilt or innocence. In *United States v. Mercado*, 2020 WL 496069 *3, (N.D. Cal. 2020), the court excluded evidence of the defendant's immigration status, finding it irrelevant to the drug offenses for which the defendant was charged, in spite of defense arguments that the jury's decision might be affected by an erroneous belief that he was violating the immigration laws. See also, *United States v. Walia*, 2014 3734522 *4 (E.D. New York, 2014) [immigration consequences not admissible as irrelevant in a drug case]; *United States v. Adeleken*, 2021 WL 4847894 *7 (S.D. New York, 2021) [immigration consequences not admissible as irrelevant in wire fraud case].

Evidence dealing with possible punishment or other collateral consequences of conviction (such as deportation or removal) is not probative of the issue of guilt or innocence. Since such evidence would not tend to prove or disprove any fact of consequence to the jury's determination of guilt or innocence, such evidence is not "relevant," as that term is defined by FRE 401. Such evidence should, therefore, be excluded under FRE 402, which specifically provides that evidence which is not relevant

is inadmissible. Moreover, any possible probative value attached to such evidence is far outweighed by the possibility of unfair prejudice, misleading the jury, and jury confusion. Accordingly, it should be further excluded under FRE 403.

### III.
### CONCLUSION

Defendants' reciprocal discovery signals their intention to introduce evidence involving questions of law to the jury. Legal conclusions, however, are the exclusive province of the court and are inadmissible under FRE 403 and 702. Defense exhibits provided as reciprocal discovery should therefore be excluded at trial. The complex issues raised by evidence of and relating to advice of counsel, including whether the privilege is properly waived, will violate FRE 403 and 702, and cause extensive delay if they are not properly vetted pre-trial. Evidence relating to advice of counsel should therefore also be excluded unless it is fully considered in advance of trial.

//

//

Because Defendants failed to produce any other discovery or notice any expert witnesses by the Court-imposed reciprocal discovery deadline, such testimony and evidence should be excluded, absent a showing such evidence was previously unavailable. Finally, the government respectfully requests that the Court exclude witnesses other than the case agent from trial and, by extension, from reviewing other witnesses' testimony, exclude FBI reports and notes from use as improper impeachment, and exclude evidence of immigration status or potential punishment.

DATED: March 24, 2022      Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/Melanie K. Pierson
Assistant United States Attorney

/s/Sabrina L. Fève
Assistant United States Attorney

/s/Candy Heath
Senior Counsel
Computer Crime and Intellectual Property Section
Department of Justice, Criminal Division