1  **MINTZ, LEVIN, COHN, FERRIS,**  **BIRD, MARELLA, BOXER,**
   **GLOVSKY AND POPEO, P.C.**      **WOLPERT, NESSIM, DROOKS**
2  Randy K. Jones, SBN 141711       **LINCENBERG & RHOW P.C.**
3  3580 Carmel Mountain Road, Suite 300   Gary S. Lincenberg, SBN 123058
   San Diego, CA 92130              Nicole R. Van Dyk, SBN 261646
4  Telephone: (858) 314-1510        Darren L. Patrick, SBN 310727
   Email: rkjones@mintz.com         Alexis A. Wiseley, SBN 330100
5                                   1875 Century Park East, Floor 23
6  Daniel Goodrich, BBO 692624 (Pro Hac)   Los Angeles, CA 90067
   Ryan Dougherty, BBO 703380 (Pro Hac)    Telephone: (310) 201-2100
7  1 Financial Center               Email: glincenberg@birdmarella.com
   Boston, MA 02111                       nvandyk@birdmarella.com
8  djgoodrich@mintz.com                   dpatrick@birdmarella.com
9  rtdougherty@mintz.com                  awiseley@birdmarella.com

10 *Attorneys for Mark Manoogian*

11                                  *Attorneys for Petr Pacas*

12 **BIENERT KATZMAN**              **WIECHERT, MUNK &**
   **LITTRELL WILLIAMS LLP**        **GOLDSTEIN, PC**
13 Thomas H. Bienert, Jr., SBN 135311   David W. Wiechert, SBN 94607
14 James D. Riddet, SBN 39826       Jessica C. Munk, SBN 238832
   Whitney Z. Bernstein, SBN 304917   27136 Paseo Espada, Suite B1123
15 Carlos A. Nevarez, SBN 324407    San Juan Capistrano, CA 92675
16 903 Calle Amanecer, Suite 350    Telephone: (949) 361-2822
   San Clemente, California 92673   Email: dwiechert@aol.com
17 Telephone: (949) 369-3700              jessica@wmgattorneys.com
18 Email: tbienert@bklwlaw.com
         jriddet@bklwlaw.com
19       wbernstein@bklwlaw.com
         cnevarez@bklwlaw.com
20

21 *Attorneys for Mohammed Abdul Qayyum*   *Attorneys for Jacob Bychak*

Case No. 18-CR-4683-GPC

DEFENDANTS' MOTIONS IN LIMINE (NOS. 1 & 2) TO EXCLUDE REFERENCES TO PREJUDICIAL AND HIGHLY INFLAMMATORY MATERIAL AT TRIAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, *et al.*,<br><br>　　Defendants. | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**MEMORANDUM OF POINTS OF LAW AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE* NOS. 1 & 2 TO:**<br><br>**1. PRECLUDE REFERENCE AT TRIAL TO "SPAM" AND/OR THAT DEFENDANTS WERE "SPAMMERS"**<br><br>**2. PRECLUDE REFERENCE AT TRIAL TO MR. MANOOGIAN'S STATUS AS AN ATTORNEY**<br><br>Date: April 7, 2022<br>Time: 1:00 p.m.<br>Dept.: 2D |

## **MEMORANDUM OF POINTS OF LAW AND AUTHORITIES**

### I. INTRODUCTION

Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas (collectively, "Defendants") move *in limine* pursuant to Federal Rules of Evidence 401, 402, and 403 to respectfully request that the Court issue the following Orders to preclude reference at trial to the following irrelevant and unfairly prejudicial statements and topics:

　　1.　An Order precluding any reference to "spam" or that Company A sent "spam," or that the Defendants were "spammers," as those terms are highly inflammatory and mischaracterize Defendants' actions in this case in a way that immediately invites the jury to conclude the Defendants committed criminal acts.

Case No. 18-CR-4683-GPC

DEFENDANTS' MOTIONS IN LIMINE (NOS. 1 & 2) TO EXCLUDE REFERENCES TO PREJUDICIAL AND HIGHLY INFLAMMATORY MATERIAL AT TRIAL

    2.      An Order precluding all references at trial to the fact that Mark Manoogian is an attorney, that he attended law school, or that he represented Company A in any capacity as an attorney because Mr. Manoogian is not licensed to practice law in California, did not practice law during the time relevant to the Indictment, did not work for Company A as an attorney during the relevant time alleged in the Indictment, and his status as an attorney has no relevance to any issue of consequence at trial.

Allowing any reference to the above-described issues or topics at trial serves no purpose other than to unfairly prejudice the jury and deprive the Defendants of their right to a fair trial.

## II.    LEGAL STANDARD

Only relevant evidence is admissible under Federal Rules of Evidence 401 and 402, but even relevant evidence must be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice" under Rule 403 "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Ninth Circuit has "warned repeatedly" against admitting evidence that makes a "conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Bradley*, 5 F.3d 1317, 1321 (9th Cir. 1993) (quoting *United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir. 1985)). Rule 403 is "designed principally to promote the twin policies of assuring 'correct' factual determinations in individual cases and actual and perceived fairness in the judicial process as a whole." *United States v. Robinson*, 544 F.2d 611, 616 (2d Cir. 1976).

In evaluating the prejudicial nature of a specific piece of evidence, a district

court should consider whether the government could have made the same showing through less prejudicial means. *United States v. Sine*, 493 F.3d 1021, 1035 (9th Cir. 2007). "The Supreme Court has held that 'what counts as to the Rule 403 probative value of an item of evidence . . . may be calculated by comparing evidentiary alternatives.'" *Id.*, quoting *Old Chief*, 519 U.S. at 182-183 ("If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk."). Indeed, when potential evidence, characterizations of that evidence, or argument has the potential to inflame or mislead the jury, that evidence should be excluded where neutral evidence is available that will not suggest that the jury should make a decision on an improper basis. *See id.*

Courts have frequently precluded the use of words that signal that an illegal or improper act has occurred before illegal conduct is proved because of the highly prejudicial effect of such a characterization. *See, e.g.*, *FreeLife Int'l., Inc. v. American Educ. Music Publ'ns Inc.*, No. CV07-2210-PHX-DGC, 2010 U.S. Dist. LEXIS 38411, at *19 (D. Ariz. Mar. 25, 2010) (granting motion *in limine* with regard to use of the word "pyramid" as it "carries the potential of prejudice"); *William Hablinksi Arch. v. Amir Constr., Inc.*, No. CV 03-6365 CAS, 2006 WL 8442793, at *9 (C.D. Cal. December 8, 2006) (in copyright dispute over architectural work, precluding plaintiff from using term "copycat house" for being "unfairly prejudicial"). Words are also precluded from use when their use presupposes the factual establishment of a legal conclusion. *See Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-1273 LJO BAM, 2013 U.S. Dist. LEXIS 67957, at *21 (E.D. Cal. May 13, 2013) (granting motion *in limine* to preclude use of the term "trade secret" at trial due to potential for prejudice).

## III. ARGUMENT

### A. There Is No Probative Value In Using The Inflammatory And Inaccurate Term "Spam" To Describe Company A Or Defendants' Activities And Use of The Term Poses Significant Danger Of Unfair Prejudice, Confusion Of The Issues, And Misleading The Jury.

While "spam" does not have a precise definition, it is widely understood to constitute junk email messages that are "dubious in nature and origin, and a substantial proportion consists of pornographic images or links to pornographic websites. Spam may also contain child pornography or links to illegal websites containing child pornography." *United States v. Kelley*, 482 F.3d 1047, 1055-1056 (9th Cir. 2007) (Thomas, J., dissenting); *see Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1044-1045 & n.1 (9th Cir. 2009) ("[I]gnored by most and reviled by some, spam is largely considered a nuisance and a source of frustration to e-mail users."). The transmission of unwanted and illicit "bulk e-mail advertising, or spam, is a controversial and much maligned practice." *Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1298 (D. Colo. 1998). Put simply, referring to email as "spam" evokes a feeling that the email is not only unwanted and intrusive, but that the messages contain offensive and potentially illegal content. *See* Adam Hamel, *Will the Can-Spam Act of 2003 Finally Put A Lid on Unsolicited E-Mail?*, 39 New Eng. L. Rev. 961 (2005) (spam is "associate[ed] with fraud, pornography, and computer viruses, spam presents real threats to American business, children, and the elderly, and jeopardizes the very future of the Internet").

The government has repeatedly demonstrated a conscious decision to mischaracterize Company A's legitimate commercial email marketing business as involving sending spam, and by extension, seeks to portray the Defendants as nefarious "spammers." *See, e.g.*, *Indictment*, ¶ 8, ECF No. 1 ("[D]efendants concealed their use of the IP addresses to send 'spam' emails . . .") (attached hereto as Exhibit A ["Ex"] to Declaration of Daniel J. Goodrich ["Goodrich Decl."]); Transcript of February 14, 2019 Motion Hearing, at pp. 16:12-15, ECF No. 281

(Government comparing unsolicited commercial emailing to "a boiler-room scheme, where people were being called by phone and receiving phone calls that they did not want and potentially luring them into doing things they did not want to do.") (attached hereto as Goodrich Decl. Ex. B). These mischaracterizations are not only highly inflammatory and factually incorrect, but they are also of zero probative value concerning any issue of consequence in this case and must be excluded.

*First*, "spam" is a loaded term that reeks of criminality and is only valuable to the government because, contrary to the evidence, it immediately conveys to the jury that Defendants partook in a criminal enterprise to send unsolicited, and likely illegal, emails that contained pornographic or harmful content. But, in fact, sending spam is not illegal. *See Gordon*, 575 F.3d at 1045, 1047–1048 (Ninth Circuit recognizing that CAN-SPAM Act "does not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices"). Here, the facts demonstrate that Company A was in the business of sending and/or facilitating legitimate commercial marketing campaigns via email to willing customers who had opted in to receiving these emails. Clients such as USAA, Liberty Mutual, Geico, Disney, Fidelity, Subway, and Uber used Company A's services to communicate with customers and potential customers. These legitimate advertising emails bear no resemblance to the intrusive content or phishing schemes that the term spam brings to mind. Indeed, it is undisputed that Company A never sent obscene, pornographic, or illicit emails.

Similarly, the evidence at trial will further confirm that none of the Defendants were responsible for actually sending any commercial email, let alone unwanted spam. The undisputed facts reflect that the Defendants were members of Company A's Operations team and were employed to acquire the IP addresses necessary to facilitate Company A's commercial email marketing operations. Accordingly, to allow the government to mischaracterize the Defendants as spammers or to present Company A as being in the business or sending spam would be giving the government

a license to brand the Defendants as criminals without any supporting evidence. *See, e.g.*, *United States v. Kilbride*, 584 F.3d 1240, 1244 (9th Cir. 2009) (Defendants convicted for sending spam emails including sexually explicit images). Because the terms "spam" and "spammers" are inherently prejudicial and lack any probative value, this Court must exclude those terms from this case if Defendants are to receive a fair trial.

*Second*, to the extent that the government argues there is some slight probative value in referring to legitimate advertising emails as a type of spam – there is not – any perceived value is substantially outweighed by the prejudice to the Defendants of being depicted as criminal spammers. This is particularly true where, as here, there is a less prejudicial and more accurate term available: "commercial email." The government is well aware of a neutral alternative and freely uses the neutral and accurate term "commercial email" when addressing the facts of this case. It is only when the government decides to ramp-up its rhetoric does it choose to deploy the term spam against the Defendants.

For example, in the government's response to the Defendants' request for a Bill of Particulars, the government begins by dramatically framing the case as "charges related to the defendants' fraudulent acquisition of Internet Protocol (IP) addresses and the use of the purloined IP addresses **to send spam**." *Government's Response and Opposition to Defendants' Motion For Bill of Particulars*, at p. 2, ECF No. 51, (attached hereto as Goodrich Decl. Ex. C) (emphasis added). By contrast, in its "Statement of Facts," the government refers to Company A's operations more accurately as "digital advertising" and states that Company A "required numerous Internet Protocol (IP) addresses to send its **commercial emails**." *Id.* at p. 2-3 (emphasis added). The government's response proceeds to refer repeatedly to "commercial email" until the government shifts back to advocacy mode, at which point the government uses the term "spam" and conflates

commercials email with spam. *See*, *e.g.*, *id.* at p. 9 (describing the "multiple commercial email messages" alleged to have been sent by Defendants under the heading "**All Spam Emails** and Multiple **Commercial Email Messages**") (emphasis added). Tellingly, the Indictment uses similar sleight of hand by defining commercial email as "spam." *Indictment* ¶ 2(c), ECF No. 1 ("Members of the conspiracy would use the fraudulently acquired IP addresses to send commercial email ('spam') messages") (Ex. A).

Requiring the government to use the neutral term "commercial email," rather than the more inflammatory and highly prejudicial term "spam," will alleviate the prejudice that would be inflicted on the defendants; "commercial email" also has the benefit of being an accurate description of Company A's operations and the advertising communications that were transmitted. Moreover, the government has already proven that it will not be prejudiced by using the factually accurate term, "commercial email," in lieu of "spam" in describing Company A's advertising communications. *See Gerawan Farming, Inc.*, 2013 U.S. Dist. LEXIS 67957, at *21 (granting motion *in limine* to preclude reference to prejudicial word where party "will not suffer any prejudice if it is required to use a phrase in lieu of" prejudicial term). As is the case here, "when the probative value of the evidence is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury, the evidence must be kept out." *United States v. Hitt*, 981 F.2d 422, 423 (9th Cir. 1992).

Finally, this Court should preclude the Government from using the term spam because it will confuse and mislead the jury. Indeed, the CAN-SPAM Act "does not ban spam outright, but rather provides a code of conduct to regulate commercial e-mail messaging practices." *Gordon*, 575 F.3d at 1047–1048. Nor does the Act even use the term "spam." *See* 15 U.S.C. §§ 7702(2)(A) & (B) & (17) (using the term "commercial electronic mail message"—instead of "spam"—to refer to "any electronic mail message the primary purpose of which is the commercial

advertisement or promotion of a commercial product or service").

Likewise, the charges against the Defendants here relate to registering and announcing IP addresses, which has nothing to do with sending spam messages. *See* 18 U.S.C. § 1037(a)(5). In other words, although the government has charged the Defendants with violating a provision of the so-called CAN-SPAM Act, the activity charged does not relate to the Defendants actually sending any spam email. In fact, the Defendants are charged under section (a)(5) of the Act, which concerns falsely representing oneself as an IP registrant and has nothing to do with sending spam email. Allowing the government to refer to the Defendants as spammers, without any factual predicate for doing so, would invite the jury to prejudge the Defendants as guilty under the CAN-SPAM Act before hearing any of the evidence, or considering the provision under which Defendants are charged. In the context of a prosecution under the CAN-SPAM Act, allowing the government to refer to the Defendants as "spammers" is akin to allowing the government to refer to individuals charged with larceny as "thieves." *Cf. Hall v. United States*, 419 F.2d 582, 587 (5th Cir. 1969) (condemning the government's reference to the defendant as a "hoodlum" as a "type of shorthand characterization of an accused, not based on evidence, [that] is especially likely to stick in the minds of the jury and influence its deliberations"); *Getchell v. United States*, 282 F.2d 681, 690-691 (5th Cir. 1960) (reversing a conviction where the government repeatedly referred to the defendant as a con man).

In sum, the mere mention of spam or that Defendants are spammers unfairly paints a picture for the jury that the Defendants partook in an intrusive email campaign, transmitting harmful content including viruses, pornography, or other illicit material to unwilling recipients. Because this characterization is factually unsupported and the government can easily use the term "commercial email" in lieu of "spam," the government should be precluded from using the term "spam" or referring to the Defendants as "spammers" at trial.

### B. Evidence That Mark Manoogian Is An Attorney Is Highly Prejudicial And Irrelevant To Any Issue Of Consequence In This Case

The government has indicated that it intends to emphasize that Mr. Manoogian is an attorney. *See, e.g., Government's Response and Opposition to Defendants' Motions For Discovery, For Further Motions, and To Preserve Evidence*, at p. 3, ECF No. 47 ("Defendant Mark Manoogian (who is an attorney) represented himself to be Business Development Manager") (attached hereto as Goodrich Decl. Ex. D); *Government's Response and Opposition to Defendants' Motion For Bill of Particulars*, at pp. 2-3, ECF No. 51, (same) (attached hereto as Goodrich Decl. Ex C). But the fact that Mr. Manoogian is an attorney is irrelevant to the charges at issue and makes no fact in consequence more or less likely because Mr. Manoogian is not licensed to practice law in California, never practiced law before or during the time relevant to the Indictment, was not employed as an attorney at Company A during the relevant period in the Indictment, and he did not in fact provide any legal opinions concerning the events at issue in this case. *See* Fed. R. Evid. 401. The government simply wants to use this description to insinuate to the jury that Mr. Manoogian knew or should have known that what the government now characterizes as criminal activity was, at the time, criminal. Because of this inherent unfairness, the issue of Mr. Manoogian's status as an attorney must be completely excluded from the trial.

Mr. Manoogian was employed at Company A as a Business Development Manager on the Operations Team. The position of Business Development Manager was not within the legal department at Company A, and the position did not require a law degree or license to practice law. As a Business Development Manager, Mr. Manoogian was tasked with acquiring IP addresses to facilitate Company A's commercial marketing operations – a role that required no legal analysis, experience, or skill. He was never responsible for conducting legal reviews of any documents or providing his legal opinion on **any** matters at Company A. Simply put, Mr.

Manoogian did not work as an attorney at Company A at the time relevant here.

Though it is true that Mr. Manoogian graduated from New England Law School in Boston and became a member of the Massachusetts Bar in 2008, these facts are completely irrelevant to any issue in this case. Mr. Manoogian practiced law for a total of two months at his father's law firm after becoming a licensed attorney in Massachusetts; he never sat for the California bar; he never worked at Company A in a legal capacity during the relevant timeframe. The only plausible reason the government would want to describe Mr. Manoogian as an attorney is to suggest to the jury that Mr. Manoogian was involved with Company A's legal department, which did in fact review and affirm that transactions the government now contends are criminal. Similarly, the government will likely try to argue that because Mr. Manoogian is an attorney, he somehow had an elevated sense of awareness, or knowledge concerning the acts the government has reshaped as criminal. Put differently, the government is likely to argue that Mr. Manoogian should have known that the Defendants' conduct was criminal because he is an attorney. But this would be an unfairly prejudicial and patently inaccurate characterization of Mr. Manoogian given that he had two months of land use and zoning law experience in a completely different jurisdiction, did no work for Company A as an attorney at any of the relevant times, and had no knowledge or expertise about any generally applicable areas of the law. In short, any reference to the fact that Mr. Manoogian is an attorney will improperly conjure up a level of knowledge and experience that simply did not exist.

## IV. CONCLUSION

Defendants respectfully request that the Court preclude the government from making reference to the highly prejudicial, and minimally probative, topics as described above. Specifically, that the Court enter the following Orders *in limine*:

1. An Order precluding any reference to "spam" or that Company A sent "spam," or that the Defendants were "spammers," as those terms are highly inflammatory and mischaracterize Defendants' actions in this case in a way that immediately invites the jury to conclude the

Defendants committed criminal acts.

2. An Order precluding all references at trial to the fact that Mark Manoogian is an attorney, that he attended law school, or that he represented Company A in any capacity as an attorney because Mr. Manoogian is not licensed to practice law in California, did not practice law during the time relevant to the Indictment, did not work for Company A as an attorney during the relevant time alleged in the Indictment, and his status as an attorney has no relevance to any issue of consequence at trial.

Respectfully submitted,

Dated: March 24, 2022

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By: *s/ Randy K. Jones*
Randy K. Jones
Daniel J. Goodrich (Pro Hac)
Ryan Dougherty (Pro Hac)
*Attorneys for Mark Manoogian*

Dated: March 24, 2022

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: *s/ Gary S. Lincenberg*
Gary S. Lincenberg
Nicole Rodriguez Van Dyk
Darren L. Patrick
Alexis A. Wiseley
*Attorneys for Petr Pacas*

Dated: March 24, 2022

**WIECHERT, MUNK & GOLDSTEIN, PC**

By: *s/ Jessica C. Munk*
Jessica C. Munk
David W. Wiechert
*Attorneys for Jacob Bychak*

Dated: March 24, 2022

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: *s/ Whitney Z. Bernstein*
Whitney Z. Bernstein
Thomas H. Bienert, Jr.
James D. Riddet
Carlos A. Nevarez
*Attorneys for Mohammed Abdul Qayyum*

Case No. 18-CR-4683-GPC

DEFENDANTS' MOTIONS IN LIMINE (NOS. 1 & 2) TO EXCLUDE REFERENCES TO PREJUDICIAL AND HIGHLY INFLAMMATORY MATERIAL AT TRIAL

**CERTIFICATION OF AUTHORIZATION TO SIGN SIGNATURE**

The undersigned counsel of record for Defendant Mark Manoogian certifies that the content of this document is acceptable to each of the Defendants' counsel whose electronic signature appears thereon, and that I have obtained their authorization to sign this document on their behalf.

                                          *s/       Randy K. Jones*
                                              Randy K. Jones

# CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

> AUSA Melanie K. Pierson
> AUSA Sabrina L. Feve
> AUSA Ashley E. Goff
> U.S. Attorney's Office
> 880 Front Street, Rm 6293
> San Diego, CA 92101
> melanie.pierson@usdoj.gov
> sabrina.feve@usdoj.gov
> ashley.goff@usdoj.gov

> Candina S. Heath
> Department of Justice
> 1301 New York Avenue NW, Suite 600
> Washington, DC 20530
> candina.heath2@usdoj.gov

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 24, 2022, at San Diego, California.

/s/ Randy K. Jones
Randy K. Jones

123561770v.1