# Exhibit C

ROBERT S. BREWER, JR.
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0420
Email: Melanie.Pierson@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>MOHAMMED ABDUL QAYYUM (3),<br>PETR PACAS (4)<br><br>　　　　Defendants. | Case No. 18cr4683-GPC<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION FOR BILL OF PARTICULARS** |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Robert S. Brewer, Jr. and Assistant U.S. Attorneys Melanie K. Pierson, Robert Ciaffa, and Sabrina L. Fève, and hereby files its Response and Opposition to Defendants' Motion for Bill of Particulars. Said Response is based on the files and records of the case.

　　DATED: January 18, 2019　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　ROBERT S. BREWER, JR.
　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　/s/*Melanie K. Pierson*
　　　　　　　　　　　　　　　　　　Assistant United States Attorney

I.

STATEMENT OF THE CASE

On October 31, 2018, a federal grand jury in the Southern District of California returned a ten-count indictment charging defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum and Petr Pacas, with Conspiracy, in violation of Title 18, United States Code, Section 371; four counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343; five counts of Electronic Mail Fraud, in violation of Title 18, United States Code, Section 1037(a)(5), and Criminal Forfeiture. The charges related to the defendants' fraudulent acquisition of Internet Protocol (IP) addresses and the use of the purloined IP addresses to send spam.

All defendants appeared for arraignment without being arrested. On November 1, 2018, defendants Bychak and Manoogian were arraigned, and entered pleas of not guilty to all charges. A hearing on all motions was scheduled for December 7, 2018. Defendants Qayyum and Pacas were arraigned on November 5, 2018, and also entered pleas of not guilty to all charges. At the joint request of the parties, the motion date was continued to January 25, 2019.

On November 21, 2018, the defendants filed a joint motion for a bill of particulars. The United States responds to this motion herein.

II

STATEMENT OF FACTS

The defendants were employed by Company A, a San Diego firm engaged in the business of digital advertising. Defendant Jacob Bychak held, among others, the title of Business Operations Manager. Defendant Mark

Manoogian (who is an attorney) represented himself to be Business Development Manager, and defendant Mohammed Abdul Qayyum was the Technical Operations Manager. Defendant Petr Pacas was employed as Director of Operations.[1]

To transmit its flood of digital advertising, Company A required numerous Internet Protocol (IP) addresses to send its commercial emails. Company A needed to constantly acquire large groups, or blocks, of IP addresses (hereafter, "netblocks") because the IP addresses used to transmit their email advertising were repeatedly blocked by spam filters. Jake Bychak and Petr Pacas, on behalf of Company A, acquired a number of cut-rate netblocks from Daniel Dye (charged elsewhere) that had been hijacked from their authorized users. To use these netblocks to send commercial emails, the defendants provided a fraudulent Letter of Authorization (LOA) -- supposedly from the authorized user -- to the hosting companies and internet service providers (ISPs), indicating that the mailer was authorized by the registrant to use the netblock. Mark Manoogian and Abdul Mohammed (with the knowledge and agreement of their co-conspirators) knowingly created and used false LOAs, represented to be from the authorized users, and sent them to the ISPs to allow Company A to use the hijacked netblocks to send commercial email, which earned Company A substantial profits during the period of the conspiracy.

Dye introduced the defendants to Vince Tarney (charged elsewhere), who operated his own firm in New Jersey, as a hosting company willing to host risky IP addresses. Both Dye and Tarney have pled guilty to

---

[1] Pacas moved to a related company in San Diego for several years and then back to Company A after Company A acquired the related company.

3

*Response and Opposition to Motion for Bill of Particulars*                                               18cr4683-GPC

felony violations of the CAN-SPAM Act (electronic mail fraud), and are awaiting sentencing.

## III

## POINTS AND AUTHORITIES

A.   <u>A Bill of Particulars Is Not Warranted in This Case</u>

Rule 7(f) of the Federal Rules of Criminal Procedure governs a bill of particulars. A bill of particulars has three functions: (1) to inform the defendant of the nature of the charge with sufficient precision to allow him to prepare for trial, (2) to avoid or minimize the danger of surprise at the time of trial, and (3) to enable to defendant to avoid double jeopardy when the indictment itself is too vague. <u>United States v. Giese</u>, 597 F. 2d 1170, 1180 (9th Cir. 1979). These purposes are served if the indictment provides sufficient details of the charges and if the Government provides full discovery to the defense. <u>United States v. Mitchell</u>, 744 F.2d 701, 705 (9th Cir. 1984). Rule 7(f) is not intended to serve as a vehicle for obtaining discovery form the government. <u>United States v. Grace</u>, 401 F. Supp. 2d 1103, 1106 (D. Mont. 2005), citing <u>Cooper v. United States</u>, 282 F. 2d 527, 532 (9th Cir. 1960). The Rule should not be invoked to "force the Government to spread its entire case before the accused." <u>Id.</u> "The defendant's Constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." <u>United States v. Kendall</u>, 665 F. 2d 126, 135 (9th Cir. 1981). Rather, all that is required is that the defendant be sufficiently informed of the government's theory of the case. <u>Yeargain v. United States</u>, 314 F. 2d 881, 882 (9th Cir. 1963).

A bill of particulars is not a matter of right. <u>United States v. Burgin</u>, 61 F.2d 1352, 1358 (5th Cir.1980). So long as the Government provides the defense with a detailed indictment and a "significant amount of discovery," no bill of particulars is warranted. <u>United States v. Ayers</u>, 924 F.2d 1468, 1483 (9th Cir. 1991). "Full discovery obviates the need for a bill of particulars." <u>United States v. Giese</u>, 594 F.2d 1170, 1180 (9th Cir.1979). "Even if an indictment is vague, a bill of particulars is not necessary if the government's disclosures and discovery adequately advise the defendant of the charges against him." <u>United States v. Middleton</u>, 35 F. Supp. 2d 1189, 1193 (N.D. Cal. 1999).

    B.   <u>The Indictment Is Sufficiently Precise to Inform Defendants of the Charges and to Protect them from Double Jeopardy</u>.

The Indictment in this case charges three separate offenses: 1) conspiracy to commit wire fraud and electronic mail fraud (18 U.S.C. § 371); 2) wire fraud (18 U.S.C. § 1343); and 3) electronic mail fraud (18 U.S.C. § 1037). All three offenses stem from the defendant's false representations that they were the registrant, or the legitimate successor in interest to the registrant, of various IP netblocks, and their subsequent use of these netblocks to send commercial electronic mail messages, commonly known as spam. These allegations are detailed in paragraph two of the Indictment, which identifies the conspiracy's "Manner and Means,"[2] and in paragraphs five through eight, which describe

---

[2] Paragraph two reads "The objects of the conspiracy were to be accomplished, in substance, as follows:

    a. Members of the conspiracy would identify or pay to identify blocks of Internet Protocol (IP) addresses called "netblocks" that were registered to others and appeared to be inactive.

    b. Members of the conspiracy would create and send letters to Internet hosting companies fraudulently stating the letter bearer had been

the scheme to defraud.[3]  In addition, Counts Six through Ten of the Indictment specify, by numerical identity and associated domain name, the IP addresses alleged to have been involved in the substantive offenses.  This information is adequate to advise the defendants of the nature of the charges they face, to minimize or avoid surprises at trial, and to avoid double jeopardy in future cases.  Accordingly, no bill of particulars is warranted.  United States v. Giese, 597 F. 2d 1170, 1180 (9th Cir. 1979).

C. Full Discovery and the Government's Disclosures Further Obviate the Need for a Bill of Particulars.

The Government has already produced two discs of discovery, has loaded loading near a million pages of additional evidence onto hard drives for the defense.  The first disc, produced on November 4, 2018,

---

authorized by the registrants of the inactive IP addresses to use the IP addresses.

c. Members of the conspiracy would use the fraudulently acquired IP addresses to send commercial email ("spam") messages."

[3] Paragraphs five through eight read:

5. It was a part of the scheme and artifice to defraud that the defendants searched for IP addresses registered to third parties that appeared to be inactive.

6. It was a further part of the scheme and artifice to defraud that the defendants created and sent letters to Internet hosting companies fraudulently making it appear that the registrant of the IP addresses had authorized the defendants' use of the IP addresses.

7. It was a further part of the scheme and artifice to defraud that the defendants used the IP addresses to send commercial email messages knowing they did not obtain control of the IP addresses from the true registrant or the legitimate successor in interest.

8. It was a further part of the scheme and artifice to defraud that the defendants concealed their use of the IP addresses to send "spam" emails by using business names, post office boxes, and email addresses under different names.

contained 888 pages consisting of the 257 grand jury exhibits, which are the primary documents the United States will use to prove its case-in-chief, together with an index. The second disc, produced on December 4, 2018, also with an index, contained approximately 850 pages consisting of approximately 180 reports generated by the FBI in the course of the investigation.

The Government has also loaded approximately one terabyte of evidence onto hard drives for the defense, which was made available the week of January 14, 2019. The hard drives include the evidence obtained by the United States from all search warrants and subpoenas issued in the course of the investigation, and also includes an index.

In addition to providing full discovery, Government counsel met at length with counsel for each of the defendants and explained the Government's theory of the case against each of their clients, and showed counsel evidence that the Government intends to use to prove its case. These disclosures further obviate the need for a bill of particulars. United States v. Giese, 597 F. 2d 1170, 1180 (9th Cir. 1979).

    D.    The Particulars Requested Are Already in the Possession of the Defense.

Because full discovery has been provided, the defendants are already in possession of the particulars they are requesting. Their additional requests will be addressed individually below.

        1.    IP addresses and Netblocks Obtained and Used Illegally

Counts Six through Ten of the Indictment specify, numerically and by associated domain name, the IP addresses and netblocks that are the subject of the substantive counts. In addition, the Government intends

*Response and Opposition to Motion for Bill of Particulars*     7     18cr4683-GPC

to present evidence of other IP addresses to support the conspiracy charged in Count 1. The first disc of discovery, provided to the defendants on November 4, 2018, contains 888 pages consisting of the 257 grand jury exhibits, which, as mentioned above, are the primary documents the United States will use to prove its case-in-chief. Grand Jury Exhibit 251 identifies, numerically and by associated domain names, the eleven IP netblocks that the Government alleges were illegally hijacked by the defendants, providing the defense with the particular they request.

### 2. All False Statements and Letters to Hosting Companies

The grand jury exhibits provided to the defense on November 4, 2018, are roughly organized by IP netblock and group the evidence relating to each particular netblock together. The grand jury exhibits provide copies of all of the Letters of Authority (LOAs) located by the Government to date related to the eleven netblocks specified in Grand Jury Exhibit 251, and emails related to their origin and use. These LOAs form the basis for the false statements and fraudulent submissions alleged in the Indictment. The discovery provided on the hard drives, in addition to the Grand Jury exhibits, contains numerous copies of these same LOAs, which were transmitted among the co-conspirators. The discovery has been provided in a format that can be searched by keywords, allowing the defense to easily locate all copies of the LOAs. Accordingly, the defense has been provided with the particular it requests.

### 3. All Spam Emails and Multiple Commercial Email Messages

The defense seeks particulars regarding the individual emails that will be used to prove that the defendants sent multiple commercial email messages using the netblocks at issue. Once again, the defendants are already in possession of this information in the discovery they were provided on November 4, 2018. Along with the information about each netblock, among the grand jury exhibits the United States provided internal tracking records obtained from the defendants, called "Blackmail Reports." These reports tracked, on a daily basis, the various commercial emails sent by the defendants. The reports specified the commercial email campaign sent by netblock, and the exact number of emails sent each day for that campaign by the each IP address. The reports indicate that the defendants often sent as many as 81 million commercial emails per day using the netblocks at issue. Because of the huge numbers of emails involved, it is unreasonable to request that the Government identify each individual email, since the commercial nature and number of the emails sent using each IP address (the elements that the Government must prove at trial) are shown by the Blackmail Reports. Accordingly, the defense has been provided with the particular it requests.

### 4. All Business Names Used to Conceal Identity

The defense requests particulars regarding business names, post office boxes, and email addresses used by the defendants to conceal their identity as the senders of the spam as issue, which are alleged as part of the scheme to defraud in the wire fraud counts. During the course of the conspiracy, the defendants utilized hundreds of DBAs, post

office boxes, and thousands of domain names to conceal their identity as the senders of spam. Each time a spamwatch organization or ISP would question or block delivery of their emails, the defendants would change the names of the domain sending the emails, the IP addresses used, and create new DBAs and email address to control these new domain names. This occurred on a regular (sometimes weekly) basis. The data identifying the business names, domain names, and post office boxes is available in the discovery provided. It can be found in the responses to subpoenas issued to the issuers of the DBAs, domain names, and post office boxes (whose identities are well known to the defendants). Accordingly, the defense has been provided with the particular it requests.

### 5. Amount of Proceeds Alleged.

The defense seeks particulars regarding the derivation of funds warranting forfeiture, the amount of funds generated by the illegal conduct, and the properties subject to forfeiture. The particulars sought by the defense are contrary to the plain language of Rule 32.2(a) of the Federal Rules of Criminal Procedure,[4] which states that, "The indictment or information need not identify the property subject to forfeiture or specify the amount of any money judgement that that the government seeks." As a practical matter, the discovery provided on the hard drives contains the internal financial records of the company that establish the amount of money earned by the defendant's employer utilizing the hijacked netblocks. Accordingly, although they are not

---

[4] The case relied upon by the defense, United States v. Vasquez-Ruiz, 136 F. Supp.2d 941 (N.D. Ill.2001) cites Rule 7(c)(2) of the Federal Rules of Criminal Procedure. This Rule was superseded by Rule 32.2(a) in 2002 Amendments to the Federal Rules.

entitled to such particulars, the defense is in possession of the information sought.

### III

### CONCLUSION

On the basis of the foregoing, the Government respectfully requests that Defendants' Motion for Bill of Particulars be denied.

DATED:   January 18, 2019          Respectfully submitted,

                                   ROBERT S. BREWER, JR.
                                   United States Attorney


                                   */s/ Melanie K. Pierson*
                                   MELANE K. PIERSON
                                   Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                                )<br>          Plaintiff,            )<br>                                )<br>     v.                         )<br>                                )<br>                                )<br>JACOB BYCHAK (1),               )<br>MARK MANOOGIAN (2),             )<br>MOHAMMED ABDUL QAYYUM (3),      )<br>PETR PACAS (4),                 )<br>                                )<br>          Defendants.           )<br>_____) | Case No. 18-CR46836-GPC<br><br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

    I, MELANIE K. PIERSON, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action.  I have caused service of the Government's Response and Opposition to Defendant's Motion for Bill of Particulars on the opposing party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on January 18, 2019.

                                s/ Melanie K. Pierson
                                MELANIE K. PIERSON