# Exhibit
# D

ADAM L. BRAVERMAN
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0420
Email: Melanie.Pierson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>     v.<br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>MOHAMMED ABDUL QAYYUM (3),<br><br>       Defendants. | Case No. 18cr4683-GPC<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS:**<br>  1. FOR DISCOVERY<br>  2. FOR FURTHER MOTIONS<br>  3. TO PRESERVE EVIDENCE |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Adam L. Braverman and Assistant U.S. Attorney Melanie K. Pierson, and hereby files its Response and Opposition to Defendants' Motions for Discovery, for Further Motions, and to Preserve Evidence. Said Response is based on the files and records of the case.

     DATED: January 11, 2019     Respectfully submitted,

                                ADAM L. BRAVERMAN
                                United States Attorney

                                */s/Melanie K. Pierson*
                                Assistant United States Attorney

I.

<u>STATEMENT OF THE CASE</u>

On October 31, 2018, a federal grand jury in the Southern District of California returned a ten-count indictment charging defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum and Petr Pacas, with Conspiracy, in violation of Title 18, United States Code, Section 371; four counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343; five counts of Electronic Mail Fraud, in violation of Title 18, United States Code, Section 1037(a)(5), and Criminal Forfeiture.   The charges related to the defendants' fraudulent acquisition of Internet Protocol (IP) addresses and the use of the purloined IP addresses to send spam.

All defendants appeared for arraignment without being arrested.  On November 1, 2018, defendants Bychak and Manoogian were arraigned, and entered pleas of not guilty to all charges.  A hearing on all motions was scheduled for December 7, 2018.  Defendants Qayyum and Pacas were arraigned on November 5, 2018, and also entered pleas of not guilty to all charges. At the joint request of the parties, the motion date was continued to January 25, 2019.

On November 20, 2018, defendant Qayyum filed motions for discovery, for further motions, and to preserve evidence. This motion was joined by defendant Manoogian on November 21, 2018, and by defendant Bychak on November 26, 2018.  The United States responds to these motions herein.

*Response and Opposition to Motions for Discovery,*
*Preservation of Evidence and for Further Motions*

*18cr4683-GPC*

II

STATEMENT OF FACTS

The defendants were employed by Company A, a San Diego firm engaged in the business of digital advertising.  Defendant Jacob Bychak held, among others, the title of Business Operations Manager.  Defendant Mark Manoogian (who is an attorney) represented himself to be Business Development Manager, and defendant Mohammed Abdul Qayyum was the Technical Operations Manager. Defendant Petr Pacas was employed as Director of Operations[1].

In order to transmit its flood of digital advertising, Company A required numerous Internet Protocol (IP) addresses to send out its commercial emails.  Company A needed to constantly acquire large groups of IP addresses (netblocks) because the IP addresses carrying their advertising were repeatedly blocked by spam filters.  Jake Bychak and Petr Pacas, on behalf of Company A, acquired a number of cut-rate netblocks from Daniel Dye (charged elsewhere) that had been hijacked from their authorized users.  In order to be able to use these netblocks to send commercial emails, the defendants provided a fraudulent Letter of Authorization (LOA) -- supposedly from the authorized user -- to the hosting companies and internet service providers (ISPs), indicating that the mailer was authorized by the registrant to use the netblock.  Mark

---

[1] Pacas moved to a related company in San Diego for several years and then back to Company A after the related company was acquired by Company A.

*Response and Opposition to Motions for Discovery,*
*Preservation of Evidence and for Further Motions*                                      *18cr4683-GPC*

Manoogian and Abdul Mohammed (with the knowledge and agreement of their co-conspirators) knowingly created and used false LOAs, represented to be from the authorized users, and sent them to the ISPs to allow Company A to use the hijacked netblocks to send commercial email, which earned Company A substantial profits during the period of the conspiracy.

Dye introduced the defendants to Vince Tarney (charged elsewhere), who operated his own firm in New Jersey, as a hosting company willing to host risky IP space.  Both Dye and Tarney have pled guilty to felony violations of the CAN-SPAM Act (electronic mail fraud), and are awaiting sentencing.

III

POINTS AND AUTHORITIES

A. THE GOVERNMENT HAS AND WILL COMPLY WITH RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE.  ANY ADDITIONAL DISCOVERY DEMANDS OF THE DEFENDANTS SHOULD BE DENIED.

The Government has already produced two discs of discovery, and is in the processing of loading additional evidence onto hard drives for the defense.  The first disc, produced on November 4, 2018, contained 888 pages consisting of the 257 grand jury exhibits, which are the primary documents the United States will use to prove its case, together with an index.  The second disc, produced on December 4, 2018 (also with an index), contained approximately 850 pages consisting of approximately 180 reports generated by the FBI in the course of the investigation.

In addition, on or about December 17-20, 2018, the Government produced to the defendants a hard drive containing approximately 55

gigabytes (922,971 pages) of discovery, comprising the evidence obtained by the United States from all search warrants and subpoenas issued in the course of the investigation.

The discovery provided via the two discs and the hard drives is well in excess of that required by Rule 16 of the Federal Rules of Criminal Procedure. The Government will continue to comply with the rules concerning discovery. The defendants' specific requests are discussed below.

1. <u>The Government Has Already Disclosed Information Subject to Disclosure under Rule 16(a)(1)(A)and (B) of the Federal Rules of Criminal Procedure.</u>

The Government has already disclosed the written and recorded statements of the defendants, as well as the substance of any relevant oral statements they made in response to questions by Government agents.

The defendants are not entitled to summaries of oral statements of the defendants made to persons not known by them to be government agents, and the memorialization of any such statements in a written report does not make them discoverable as "written" statements of the defendants. <u>United States v. Hoffman</u>, 794 F.2d 1429, 1432, n.4 (9th Cir.1986).

The Government will not be producing documents relating to the defendants' arrests, as none of the defendants in this case were arrested. Instead all appeared for arraignment with their attorneys.

2. <u>The Government Will Comply with Rule 16(a)(1)(D).</u>

The Government has already provided the defendants with a copy of the printout of the results of the database check for evidence of prior convictions.

The Government is well aware of and will fully perform its duty

under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment, as well as its duty under <u>Giglio v. United States</u>, 405 U.S. 150 (1972) to provide information on any benefits provided to Government witnesses in exchange for their testimony and impeachment material.  The Government agrees to provide this information at least one week prior to trial, after all of the trial witnesses have been identified.

   3.   <u>The Government Will Comply with Rule 16(a)(1)(E).</u>

   The Government will permit the defendants to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within the possession, custody, or control of the Government, and which are material to the preparation of the defendants' defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the defendants, and agrees to preserve such evidence during the pendency of this proceeding.

   The defendants are not entitled to all evidence known or believed to exist which is, or may be favorable to the accused, or which pertains to the credibility of the Government's case.  As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980):

   "[T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."

<u>Id.</u>, 611 F.2d at 774-775 (citations omitted).  <u>See also</u> <u>United States</u>
<u>v. Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980) (the Government not
required to create exculpatory material that does not exist); <u>United</u>
<u>States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not
create any pretrial discovery privileges not contained in the Federal
Rules of Criminal Procedure).

4.   <u>The Government Will Comply with Rule 16(a)(1)(F)</u>

The Government has provided the defendants with the results or
reports of physical or mental examinations, and of scientific tests or
experiments, or copies thereof, which are within the possession of the
Government that have been performed to date, and will continue to provide
any further such reports that by the exercise of due diligence may become
known to the attorney for the Government and are material to the
preparation of the defense or are intended for use by the Government as
evidence-in-chief at the trial.

5.   <u>The Government Will Comply with Rule 16(a)(1)(G)</u>

The reports of forensic handwriting examiners have been disclosed
to the defense.  Because the results were inconclusive, the Government
does not intend to present them at trial.  The Government will provide
any additional summaries of expert testimony as such evidence is
identified as the case proceeds to trial, but no later than two weeks
prior to trial.

6.   <u>Jencks Material</u>

Production of witness statements is governed by the Jencks Act,
18 U.S.C. § 3500, and need occur only after the witness testifies on
direct examination.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118

*Response and Opposition to Motions for Discovery,*
*Preservation of Evidence and for Further Motions*

*18cr4683-GPC*

(9th Cir. 1986); <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir.), <u>cert. denied</u>, 454 U.S. 902 (1981).  Indeed, even material believed to be exculpatory and therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th Cir. 1979).

As a practical matter, the government has disclosed the reports of FBI investigation, so advance <u>Jencks</u> material (with the exception of transcripts of grand jury testimony) has already been provided.

7.   <u>Prior Similar Act Evidence</u>

The government has disclosed the evidence currently in its possession that might be argued to be admissible under Rule 404(b) relating to the purchase and use of other hijacked netblocks by the defendants in addition to those affirmatively charged in Counts 6-10 of the Indictment. All these events occurred during the period of the conspiracy alleged in the indictment.

The purchase and use of other hijacked netblocks and the submission of other fraudulent LOAs by the defendants during the period of the conspiracy are considered to be uncharged overt acts. It has long been held that overt acts not specifically named in the indictment are nonetheless admissible.  <u>Houston v. United States</u>, 217 F. 852 (9th Cir. 1914).

In <u>United States v. Soliman</u>, 813 F. 2d 277, 279 (9th Cir.1987), the court held that a summary chart of 102 fraudulent insurance claims was admissible at the defendant's trial for three counts of mail fraud, in

the face of a defense challenge that they were "other crimes" evidence under Rule 404(b) of the Federal Rules of Evidence..  The court noted that "evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined." In <u>Soliman</u>, the other events were direct evidence of the scheme to defraud in the mail fraud counts.   In this case, the evidence of the purchase and use of other hijacked netblocks and fraudulent LOAs is direct evidence of the conspiracy to illegally use the purloined netblocks to send spam, as charged in the Indictment, and is inextricably intertwined with transactions alleged in the indictment.

        8.   <u>Henthorn Material</u>

    The government will conduct a review of the personnel files of the federal agents involved in the case, and any impeachment material falling within the purview of <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) will be disclosed.

        9.   <u>Impeachment Information</u>

    The defendants request various categories of impeachment evidence: bias or motive to lie, evidence of criminal investigation or convictions, and evidence affecting perception.   The government has disclosed evidence currently in its possession that falls into these categories, but this disclosure is not yet complete.

    The government will disclose such evidence in compliance with its continuing obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972), no later than one week before trial, when the witnesses for trial have been identified.

9

10.   <u>Witness Names and Addresses</u>

There is no requirement in a non-capital case for the Government to supply the defense with a list of witnesses it expects to call at trial.  <u>United States v. Thompson</u>, 493 F. 2d 305, 309 (9th Cir. 1974), <u>cert. denied</u>, 419 U.S. 835 (1974).  As a practical matter, however, the defendants have been provided with the agents' reports, which generally provide the names and addresses of the known witnesses to date.

11.   <u>Informants and Cooperating Witnesses</u>

Two cooperating witnesses (Dye and Tarney) assisted in the investigation of this case.  Both are represented by counsel.  The defense requests nine specific categories of information relating to the potential impeachment of these witnesses, many of which are extremely fact-specific, as well as statements made by the witnesses' attorneys during plea negotiations, and AUSA notes.

The Government is aware of its constitutional obligations under <u>Brady</u>, <u>Giglio</u>, and their progeny, and will comply with them.  With respect to the defendants' request for statements made by the witnesses' attorneys and for AUSA notes, the Government objects.

a.   <u>Statements by Witnesses' Attorneys and AUSA Notes</u>

The Government has already provided the defendants with the FBI reports of proffers and other statements made by its cooperating witnesses, even though such reports are likely covered under the Jencks Act and are required to be disclosed only after the witness has testified.  The Government will also disclose to the defendants any agreements with the prospective witnesses, and any impeachment material.

*Response and Opposition to Motions for Discovery,*
*Preservation of Evidence and for Further Motions*                                    *18cr4683-GPC*

With respect to the defendants' blanket request for statements made by the witnesses' counsel, and for AUSA notes, such material is not discoverable unless it is exculpatory or impeaching.  If the Government becomes aware of any such information, it will disclose it.  A defendant's mere speculation that such material may contain helpful information is not enough to trigger disclosure.  See United States v. Croft, 124 F.3d 1109, 1124 (9th Cir. 1997) (defendants' request for notes of meetings between government agents and cooperating witnesses properly denied where request based solely on assumption they might be helpful); United States v. Henke, 222 F. 3d 633, 642 (9th Cir. 2000) (defendants' request for notes of interviews with witness properly denied where defendants "made no showing that they might discover something exculpatory or impeaching"); United States v. McVeigh, 954 F. Supp. 1454 (D. Colo. 1997) (Government counsel's notes of preparatory interview with witness not discoverable absent evidence that government counsel did anything impermissible to influence witness's statement).

On the other hand, when it is undisputed that the information exists and is, in fact, impeaching, the Ninth Circuit has regularly upheld a defendant's right to obtain notes which contain inconsistent statements or conclusions of a witness.  See Paradis v. Arave, 130 F. 3d 385,391 (9th Cir. 1997)(Brady requires disclosures where notes contradict witness's testimony); United States v. Service Deli, Inc., 151 F.3d 938,942-43 (9th Cir. 1998)(same).

The impeaching quality of the information must be very clear in order for it to be consider "material" under Brady.  In United States v. Antonakeas, 255 F. 3d 714, 725-26 (9th Cir. 2001), the Ninth Circuit

rejected the defendant's claim that the Government was required to disclose a DEA report summarizing a witness's statement during six months of plea negotiations. The defendant claimed that the witness's initial failure to implicate him constituted <u>Brady</u> material because it contradicted the witness's later trial testimony. The Ninth Circuit affirmed the conviction, and upheld the District Court's finding that the report was "devoid of any material or exculpatory content, but rather merely reveals a witness (Sergio) cooperating with the government in an increasing manner."

Statements made by a witness's attorney can be discoverable only under very limited circumstances. For example, in <u>Spicer v. Roxbury Correctional Institute</u>, 194 F.3d 547, 557 (4th Cir. 1999), the Court required the prosecutor to disclose that he had been told by the witness's attorney that the witness had made a statement which was materially inconsistent with the statement made to the prosecutor which bore directly on the defendant's guilt -- whether the witness had seen the defendant fleeing on the day of the crime. The Fourth Circuit went to great lengths to explain that its holding was limited:

> We do not hold that the prosecutor is obligated under <u>Brady</u> to seek out or to uncover inconsistencies in the version of events that a witness presents to his own attorney in preparation for plea negations. The prosecution cannot be responsible for procuring exculpatory material that flows in private discussions from a witness to his attorney. *Nor do we hold that the prosecution is obligated to disclose potentially exculpatory material contained in the back-and-forth hypothesizing that commonly occurs during plea negotiations between the prosecution and defense attorneys.* But when the prosecutor receives information that he, as an objectively reasonable prosecutor, should recognize as exculpatory or of impeachment value, he is under a duty to disclose it to the defendant if it is material.

12

_Id_. at 565. (emphasis added).

As clearly demonstrated by the decisions of the Ninth Circuit and other federal courts, the Government is required to disclose only that information which is material and impeaching, not a myriad of generalized discussions among the prosecutor, the investigating agent, the witness and his attorney, which the defendants speculate may contain discoverable material.[2]  The Government will provide defendants with all of the information constitutionally required to be disclosed to ensure a fair trial.  Accordingly, this request should be denied.

b.   _Identity of Informants_

The defendants further seek disclosure of the names and addresses of informants.  The defense has been provided with reports of the statements of an individual who was a source of information about the offenses at issue, without naming that person. The source was not a percipient witness to the offenses, and is not contemplated as a witness in the government's case in chief. "Where the informer is a mere tipster, disclosure of his identity will rarely be appropriate under the balancing test of _Roviaro_." _United States v. Lewis_, 671, F.2d 1025, 1027 (7th Cir. 1982).

In _United States v. Gonzalo Beltran_, 915 F.2d 487, 488-89 (9th Cir.1990), the Ninth Circuit specified three factors that the court should consider in deciding whether to order the Government to disclose the identity of an informant.  Those factors are: (1) the degree of the

---

[2] _But_ _see_, _United States v. Sudikoff_, 36 F.Supp.2d 1196 (C.D. Cal. 1999)(defendant's right to discovery not limited to information that is material, and includes "proffer information" from witness's attorneys).  _Sudikoff_ is not binding on this court, and "is a significant departure from the Supreme Court's articulation of the prosecutor's constitutional _Brady_ obligations." _United States v. Acosta_, 357 F.Supp.2d 1228, 1243 (D. Nev. 2005).

13

informant's involvement in the criminal activity, 2) the relationship between the defendant's asserted defense and the likely testimony of the informant, and (3) the government's interest in non-disclosure. In this case, the informant is a tipster with no involvement in the offense. The Government's interest in non-disclosure stems from an interest in potentially using this individual as a source for tips on future investigations.  The burden is on the defense to show that there is a relationship between the expected testimony of the informant and the defense to be raised at trial.  <u>United States v. Johnson</u>, 886 F.2d 1120, 1122 (9th Cir. 1989).  The defense has made no assertion whatsoever that the informant's testimony is relevant to any defense that might be mounted.  Accordingly, the United States objects to an order requiring the disclosure of the name and address of the informant at this time.

12.  <u>Notice of Intent to Present Evidence</u>

The defendants request that the government identify the evidence it intends to use in its case in chief to allow them the opportunity to move to suppress such evidence.  The primary evidence that the government will use in its case in chief are the items disclosed on November 4, 2018, consisting of 888 pages containing the 257 grand jury exhibits. The exhibits relate to eleven acquisitions of netblocks, which are described by netblock number and associated domain names in Grand Jury Exhibit 251.

With respect to each of the hijacked netblocks, the United States intends to present the following evidence, among others: (a) records identifying the true registrant of the netblock and the associated domain name, (b) records relating to the acquisition of the netblock and

associated domain by the defendants, including contracts of sale, drafts of contracts, invoices, emails, and financial records evidencing the transfer of funds; (c) Letters of Authorization (LOAs), drafts of LOAs, emails, and other requests to host the hijacked netblocks or portions thereof and other representations that the defendants are seeking to use or are authorized to use the hijacked netblocks, (d) emails, SWIPS and other records indicating that the defendants broke up the hijacked netblocks into smaller sub-netblocks for use in sending spam, (e) emails, spreadsheets and other internal Company A records (such as Blackmail reports) which indicate that the hijacked netblocks were used to send commercial emails, (f) spam complaints regarding the hijacked netblocks, (g) emails and other records indicating that the hijacked IP ranges had been blocked by an ISP or blacklisted by any anti-spam organization (such as SpamCop or Spamhaus) due to hijacking or sending spam, (h) emails, domain name registration, EarthClass mail post office box records, and filings for DBAs and fictitious business names used to conceal the identity of the defendants and Company A as the users of the hijacked netblocks, (i) internal Company A records indicating the amount of money earned from the hijacked netblocks, including tax records, spreadsheets, emails and internal calculations, and (j) witness testimony concerning the above.

B. <u>FURTHER MOTIONS</u>

The Government has no objection to the filing of further motions at a date set by the court at the next status date, given the large quantity of discovery to review. The Government requests that the court not issue an order permitting the filing of an unlimited number of

*Response and Opposition to Motions for Discovery,*
*Preservation of Evidence and for Further Motions*                                    *18cr4683-GPC*

1  additional motions at any future date, but instead requests that the

2  court review each request for further motions on its own merit.

3    C. <u>PRESERVATION OF EVIDENCE</u>

4     The government has no objection to preserving the physical evidence

5  seized in this case, and has directed the agents to do so.

6                                III

7                            <u>CONCLUSION</u>

8     On the basis of the foregoing, the Government respectfully requests

9  that Defendants' Motions for Discovery, for Further Motions and For

10  Preservation of Evidence be denied, to the extent that they are opposed

11  by the Government.

12

13    DATED:     January 11, 2019         Respectfully submitted,

14                                        ADAM L. BRAVERMAN
                                          United States Attorney
15

16

17                                        <u>s/Melanie K. Pierson</u>
                                          MELANE K. PIERSON
18                                        Assistant U.S. Attorney

19

20

21

22

23

24

25

26

27
                                         16
28  *Response and Opposition to Motions for Discovery,*                    *18cr4683-GPC*
    *Preservation of Evidence and for Further Motions*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 18-CR4683-GPC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| JACOB BYCHAK (1), | ) | |
| MARK MANOOGIAN (2), | ) | |
| MOHAMMED ABDUL QAYYUM (3), | ) | |
| | ) | |
| Defendants. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, MELANIE K. PIERSON, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the Government's Response and Opposition to Defendant's Motions for Discovery and For Further Motions on the opposing party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 11, 2019.

s/ Melanie K. Pierson
MELANIE K. PIERSON

*Response and Opposition to Motions for Discovery,*
*Preservation of Evidence and for Further Motions*

*18cr4683-GPC*