EXHIBIT A

<pre>
 1                    UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,      .
                                    .
 5                  Plaintiff,      . No. 18-cr-4683-GPC
                                    .
 6                  v.              . February 14, 2019
                                    . 1:00 p.m.
 7   JACOB BYCHAK,                  .
     MARK MANOOGIAN,                .
 8   MOHAMMED ABDUL QAYYUM,         .
     PETR PACAS,                    .
 9                                  .
                    Defendants.     . San Diego, California
10   . . . . . . . . . . . . . . . .

11                  TRANSCRIPT OF MOTION HEARING
12            BEFORE THE HONORABLE GONZALO P. CURIEL
                    UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14
     For the Plaintiff:     United States Attorney's Office
15                          By: MELANIE K. PIERSON, ESQ.
                                SABRINA FEVE, ESQ.
16                          880 Front Street, Room 6293
                            San Diego, California 92101
17
     For the Defendant      Law Office of David W. Wiechert
18   JACOB BYCHAK:          By: JESSICA C. MUNK, ESQ.
                            115 Avenida Miramar
19                          San Clemente, California 92672

20   For the Defendant      Mintz Levin
     MARK MANOOGIAN:        By:  RANDY K. JONES, ESQ.
21                          3580 Carmel Mountain Road, Suite 300
                            San Diego, California 92130
22

23

24

25   ///
</pre>

```
1    APPEARANCES (CONTINUED):

2

3    For the Defendant      Bienert, Miller & Katzman, P.L.C.
     MOHAMMED ABDUL         By:  WHITNEY Z. BERNSTEIN, ESQ.
4    QAYYUM:                903 Calle Amanecer, Suite 350
                            San Clemente, California 92673
5

6    For the Defendant      Bird Marella Boxer Wolpert
     PETR PACAS:              Nessim Drooks & Lincenberg
7                           By:  NAEUN RIM, ESQ.
                            1875 Century Park East
8                           Suite 2300
                            Los Angeles, California 90067
9

10

11

12

13

14

15

16

17

18

19

20

21   Court Reporter:        Chari L. Bowery, RPR, CRR
                            USDC Clerk's Office
22                          333 West Broadway, Suite 420
                            San Diego, California 92101
23                          chari_bowery@casd.uscourts.gov

24   Reported by Stenotype, Transcribed by Computer

25
```

```
 1              SAN DIEGO, CALIFORNIA; FEBRUARY 14, 2019; 1:00 P.M.

 2                                  -oOo-

 3              THE CLERK:  Calling Item Number 1 on the calendar,

 4     18-cr-4683, U.S.A. v. Defendant Number 1, Jacob Bychak.

 5              MS. MUNK:  Good afternoon, Your Honor.  Jessica Munk

 6     on behalf of Jacob Bychak, who -- we filed a waiver of his

 7     appearance, per the Court's order when we were last here, Your

 8     Honor.

 9              THE COURT:  Good afternoon.

10              THE CLERK:  Defendant 2, Mark Manoogian.

11              MR. JONES:  Good afternoon, Your Honor.  Randy Jones,

12     on behalf of my client, Mark Manoogian, who has also waived his

13     appearance today.

14              THE COURT:  Good afternoon.

15              THE CLERK:  Defendant Number 3, Mohammed Abdul

16     Qayyum.

17              MS. BERNSTEIN:  Good afternoon, Your Honor.  Whitney

18     Bernstein with Bienert, Miller & Katzman, on behalf of Mohammed

19     Abdul Qayyum, who has also waived his appearance.

20              THE CLERK:  Defendant Number 4, Petr Pacas.

21              MS. RIM:  Good afternoon, Your Honor.  Naeun Rim on

22     behalf of Petr Pacas, who has also waived his appearance.

23              THE COURT:  Good afternoon, defense counsel.

24              MS. FEVE:  Good afternoon, Your Honor.  Sabrina Feve

25     and Melanie Pierson for the United States.
```

1    of concern to the Court and it is a cause of concern to the

2    government.

3        To the extent that they are saying that they have to speak

4    with Company A to fulfill their own constitutional duty to

5    prepare a defense, in that regard, we are much more

6    sympathetic, and we are willing to engage with and discuss with

7    them what they believe the prejudice is and why it is they

8    believe that only Company A can help them and in what form they

9    need that.

10       I understand that there are going to be times when they

11   don't want to come to us, but at the end of the day, they are

12   going to have to go and retain their own independent experts,

13   understanding that no matter what joint defense agreement they

14   may or may not have, there will likely come a time when their

15   clients' interest is adverse to that of Company A, and they

16   should be in a position where they have an independent expert

17   who is capable of advising them without contemplating the

18   interests of Company A.

19            THE COURT:  All right.  So it sounds to me like

20   there's a two-step involved here.  The first step is with

21   respect to the government showing good cause to withhold the

22   information relating to grand jury exhibits, testimony, FBI

23   reports.  And then, in addition, you would provide the Court

24   with information, to the extent that it exists, whether or not

25   there are concerns with respect to representatives of

1    Company A, who are themselves targets, so that by having this

2    very open-ended kind of view of, "Okay, anybody at Company A,"

3    that that then walks right up to the problem, that it now is

4    potentially compromising an ongoing investigation.

5         To the extent that you can show good cause exists, to the

6    extent that there is some further reason as to why there should

7    be a limited group of people -- well, not a limited group of

8    people -- that you provide that information, I would then be

9    prepared to have this information provided to the defense.  And

10   then, based upon their review, argue to the Court that it needs

11   to be reviewed by an identified group of individuals at

12   Company A in order to allow them to prepare the defense.

13            MS. FEVE:  Just to provide a record for the Court, in

14   this case, the allegations are that these individuals as

15   well -- in the course of their employment for Company A, sent

16   unsolicited, commercial e-mail to people who had not consented,

17   registered to or agreed to be the recipients of this e-mail,

18   which is commonly call "spam."  So, under these allegations,

19   the people who received the unsolicited e-mails were victims.

20        For instance -- now, just to illustrate, the records we

21   are discussing with the Court are from the mail-forwarding

22   service and the webmail provider.  In the case of the

23   mail-forwarding service, the third-party information we are

24   seeking to protect and limit having distributed to Company A

25   comes from victims.  These are people who actually took

1    multiple steps to try and get themselves off the e-mail

2    distribution lists that were being distributed and used by

3    Company A to send the spam.  These were the people who were

4    saying, "I don't want you to communicate with me."  So, giving

5    their records, their personal information to the person they

6    are specifically saying, "I don't want you to communicate with

7    me," is part of why we are saying we believe there's a

8    compelling reason, there's good cause to protect their privacy.

9         Similarly, with the webmail records that we are getting,

10   these are individuals who a webmail provider identified as

11   being victims of spam.

12        So, to draw an analogy, if we had a boiler-room scheme,

13   where people were being called by phone and receiving phone

14   calls that they did not want and potentially luring them into

15   doing things they did not want to do, this would be analogous

16   to us saying, "While we may have only indicted employees of the

17   boiler room, we are seeking a protective order for those

18   third-party records that include PII from being disseminated

19   back to the boiler room."  We are giving it to the individual

20   defendants in this case, but we are saying, "Please prevent

21   them from giving it to their employer absent a showing of good

22   cause and necessity."

23        Does that help illustrate to the Court how we perceive the

24   victims' PII in this case?

25             THE COURT:  I think so.  Ultimately, as a starting

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA


UNITED STATES,                    :
                                  :
                    Plaintiff  :
                                  :
          vs.                     :   NO.  18-cr-4683-GPC
                                  :
JACOB BYCHAK, et al.,             :
                                  :
                    Defendants :


VIDEOTAPED TRIAL DEPOSITION OF STEPHEN A. ███


Taken in the Edward N. Cahn U.S. Courthouse & Federal Building, Conference Room 3600, 504 West Hamilton Street, Allentown, Pennsylvania, on Wednesday, September 15, 2021, commencing at 10:34 a.m., before Steven R. Mack, Registered Merit Reporter, and Bill Heilman, Videographer.


* * *
GALLAGHER REPORTING & VIDEO, LLC
Mill Run Office Center
1275 Glenlivet Drive, Suite 100
Allentown, PA  18106
(610)439-0504 / (800)366-2980
GallagherReporting@Verizon.net

APPEARANCES:

        U.S. DEPARTMENT OF JUSTICE
        CRIMINAL DIVISION
        By:  CANDINA S. HEATH, ESQ.
        1301 New York Avenue NW
        John C. Keeney Building
        Washington, DC 20530
        candina.heath2@usdoj.gov
         -- For the Plaintiff

        WIECHERT, MUNK & GOLDSTEIN, PC
        By:  JESSICA C. MUNK, ESQ.
        27136 Paseo Espada
        Suite B1123
        San Juan Capistrano, CA 92675
        jessica@wmgattorneys.com
         -- For Defendant Jacob Bychak

        MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND
        POPEO, P.C.
        By:  RANDY K. JONES, ESQ.
             MARK J. GOODRICH, ESQ.
        3580 Carmel Mountain Road
        Suite 300
        San Diego, CA 92130
        rkjones@mintz.com
         -- For Defendant Mark Manoogian

        BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
        DROOKS, LINCENBERG & RHOW, P.C.
        By:  NICOLE R. VAN DYK, ESQ.
        1875 Century Park East, 23rd Floor
        Los Angeles, CA 90067-2561
        nvandyk@birdmarella.com
         -- For Defendant Peter Pacas

                * * *
      GALLAGHER REPORTING & VIDEO, LLC
        Mill Run Office Center
      1275 Glenlivet Drive, Suite 100
        Allentown, PA  18106
      (610)439-0504 / (800)366-2980

       GallagherReporting@Verizon.net

```
APPEARANCES:  (CONT'D.)

            BIENERT KATZMAN LITTRELL WILLIAMS, LLP
            By:  CARLOS A. NEVAREZ, ESQ.
            601 West 5th Street
            Suite 720
            Los Angeles, CA 90071
            cnevarez@bklwlaw.com
             -- For Defendant Mohammed Abdul Qayyum

ALSO PRESENT:

            Andy Stengel, FBI agent

ALSO PRESENT REMOTELY:

            Melanie Pierson, Esq.
            Sabrina Feve, Esq.
            Ryan T. Dougherty, Esq.
            Darren L. Patrick, Esq.
            James D. Riddet, Esq.
            Ray Christenson, IT
            Dominick Bellizzie, IT
```

* * *

GALLAGHER REPORTING & VIDEO, LLC

Mill Run Office Center

1275 Glenlivet Drive, Suite 100

Allentown, PA  18106

(610)439-0504 / (800)366-2980

GallagherReporting@Verizon.net



 1

 10                            (The witness was duly sworn.)

 11

 17   BY MS. HEATH:

 18   Q.            Please state your name for the record,

 19   your full name.

 20   A.            Stephen Alan ███.

 21   Q.            And do you reside in or around the

 22   Allentown, Pennsylvania, area?

 23   A.            I resi -- yes.

 24   Q.            Are you married?

 25   A.            Yes.

```
 1   and I have reviewed them, as I am doing now again.
 2   Q.          Do you recognize any of those
 3   individuals?
 4   A.          No.
 5   Q.          Do you recognize any of the names of
 6   these companies?  Hostwinds, H-o-s-t-w-i-n-d-s.
 7   A.          No.
 8   Q.          Adconion, A-d-c-o-n-i-o-n.
 9                ████████    ████████
█    ████████
11   A.          No.
12   Q.          Amobee, A-m-o-b-e-e.
13   A.          No.
14                ████████    █████████
15   Q.          GetAds, G-e-t-a-d-s.
16                ████████    █████████
17   A.          No.
18   Q.          CoreXchange, the C-o-r-e-X-c-h-a-n-g-e.
19                ████████    ██████████
20   A.          No.
21   Q.          Do you recognize the names of these
22   individuals?  Jacob Bychak.
23   A.          No.
24   Q.          Mark Manoogian.
25   A.          No.
```

```
1    Q.            Mohammed Abdul Qayyum.

2    A.            No.

3    Q.            Peter Pacas.

4    A.            No.

5    Q.            Daniel Dye.

6    A.            No.

7    Q.            Vincent Tarney.

8    A.            No.

9    Q.            Did any of these individuals or entities

10   contact you regarding the transfer of the block --

11                 ███████████   ████████████   █████████

12   Q.            -- 167.87.0.0?

13   A.            No.

14   Q.            Did you ever authorize any of these

15   individuals or entities to use your name?

16                 ████████████   ███████████   ████████

     ██         ████████████   █████████████

     ██         ██████████   █████████████████

19   A.            No.

20   Q.            Did you ever authorize any of these

21   individuals or entities to sign Government's

22   Exhibit 40 on your behalf?

23                 ████████████   ██████████   ████████

     ██    █████████

     ██                 ██████████   █████████████████
```

1   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮  ▮▮▮▮▮▮

4   ▮  ▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮  ▮▮▮▮▮▮  ▮▮▮▮▮

6   ▮  ▮▮▮

7   Q.          Okay.  In the third paragraph there you

8   ask Mr. Booth to "Please share this email with your

9   superiors in the Federal Court system, as no one

10  else is looking at my best interest at this time.

11  As I stated before, I did not own the asset, Siemens

12  owned the asset in 2013 when the document your

13  office showed me was forged."

14              You remember writing that?

15  A.          Yes, and that's correct.

16  Q.          So you did not own the asset?

17  A.          That's correct.  Sie --

18  Q.          And the asset that you were talking

19  about is the net block that Ms. Heath spoke with you

20  about earlier, correct?

21  A.          That is correct.

22  Q.          All right.  And then on the --

23  continuing with that, it says, "I am not the victim,

24  they are."

25  ▮  ▮▮▮▮▮▮  ▮▮▮▮▮

103

1    Q.          But going on it says, "I am not the

2    victim, they are."  That's your statement to the

3    Government, correct?

4    A.          That's correct.

5    ██              ████

     ██              ████████████████

     ██              ████

                    ████████    ████████

     ██              █████████████████████

10                  All right.  And then I'm going to

11   show you the next in -- in order for the defense.

12   This will be Defense Exhibit B.  This is an email

13   dated May 31st, 2021, from Steve Dorn to Glenn

14   Booth.

15                  (Defendant's Exhibit B was marked

16   for identification.)

17              ████████    ██████████████

     ████████████████████████████

     ████████████████████████████

     ████████████████████████

              ████████    ████████

     ███████████████████████████████

     ██████████████████

24                  MR. JONES:  We give a copy, let

25   the record reflect I'm giving a copy of Defendant's

```
 1   Q.          If you look at --
 2   A.          Oh, okay.
 3   Q.          -- the bottom of the --
 4   A.          Oh, okay.
 5   Q.          -- page there, it said -- can you read?
 6   Does it say Government Exhibit?
 7   A.          Okay, 190.  Okay.
 8   Q.          190.  The same pictures that Ms. Heath
 9   showed you about two hours ago.
10   A.          Okay.
11   Q.          And I think you identified them,
12   correct, as people that you've never met before,
13   right?
14   A.          Correct.
15   Q.          So looking at Government Exhibit No. 90,
16   have you ever spoken to this person before?
17   A.          No.
18   Q.          Have you ever met this person before?
19   A.          No.
20   Q.          Has this person ever made any
21   representations to you to give him or someone else
22   the net block?
23   A.          No.
24   Q.          Okay.  Let's look at 191.  Do you have
25   that one in front of you?
```

# EXHIBIT C

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,          )
                                   )
                                   )
               Plaintiff,          )
                                   )
                                   )
   -vs-                            ) No. 18 CR 4683 GPC
                                   )
                                   )
JACOB BYCHAK (1),                  )
MARK MANOOGIAN (2),                )
MOHAMMED ABDUL QAYYUM (3),         )
PETR PACAS (4)                     )
                                   )
                                   )
               Defendants.         )
                                   )


VIDEOTAPED DEPOSITION OF DR. LEONA ▮▮▮▮▮, Ph.D.

THURSDAY, SEPTEMBER 9, 2021, 11:29 A.M.

REDLANDS, CALIFORNIA


Reported by Stephanie Shearer, CSR No. 6851
Shelburne Sherr Job No. 102386

Leona ███████████ - 09/09/2021

```
1              UNITED STATES DISTRICT COURT

2             SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,        )
                                      )
5                                     )
                   Plaintiff,         )
6                                     )
                                      )
7       -vs-                          ) No. 18 CR 4683 GPC
                                      )
8                                     )
     JACOB BYCHAK (1),                )
9    MARK MANOOGIAN (2),              )
     MOHAMMED ABDUL QAYYUM (3),       )
10   PETR PACAS (4),                  )
                                      )
11                                    )
                   Defendants.        )
12                                    )

13

14

15

16

17

18

19

20

21          VIDEOTAPED DEPOSITION OF DR. LEONA ████████,

22   Ph.D., taken at 1200 California Street, Suite 260,

23   Redlands, California, on Thursday, September 9, 2021, at

24   11:29 a.m., before Stephanie Shearer, Certified

25   Shorthand Reporter, in and for the State of California.
```

```
 1    APPEARANCES:

 2    For Plaintiff, United States of America:

 3              UNITED STATES DEPARTMENT OF JUSTICE
              BY:  SABRINA L. FEVE, ESQ., (AUSA)
 4              880 Front Street, Fourth Floor
              Room 6293 (Mailing)
 5              San Diego, California 92101
              Telephone:  (619) 379-3834
 6              E-mail:  sabrina.feve@usdoj.gov

 7    For Defendant Jacob Bychak:

 8              WIECHERT, MUNK & GOLDSTEIN, PC
              BY:  JESSICA C. MUNK, ESQ.
 9              27136 Paseo Espada, Suite B1123
              San Juan Capistrano, California 92675
10              Telephone:  (949) 361-2822
              E-mail:  jessica@wmgattorneys.com
11
      For Defendant Mark Manoogian:
12
                MINTZ
13              BY:  RANDY K. JONES, ESQ.
              3580 Carmel Mountain Road, Suite 300
14              San Diego, California 92130
              Telephone:  (858) 314-1510
15              E-mail:  rkjones@mintz.com

16                -and-

17                MINTZ
              BY:  DANIEL J. GOODRICH, ESQ. - (TELEPHONIC)
18              One Financial Center
              Boston, Massachusetts 02111
19              Telephone:  (617) 542-6000
              E-mail:  djgoodrich@mintz.com
20
      For Defendant Mohammed Abdul Qayyum:
21
                BIENERT, KATZMAN, LITTRELL & WILLIAMS, LLP
22              BY:  CARLOS A. NEVAREZ, ESQ.
                   JAMES D. RIDDET, ESQ. - (TELEPHONIC)
23              903 Calle Amanecer, Suite 903
              San Clemente, California 92673
24              Telephone:  (915) 227-6377
              E-mail:  cnevarez@bklwlaw.com
25              E-mail:  jriddet@bklwlaw.com
```

```
 1   APPEARANCES (CONTINUED):

 2   For Defendant Petr Pacas:

 3               BIRD MARELLA
               BY:  NICOLE R. VAN DYK, ESQ.
 4             1875 Century Park East, 23rd Floor
               Los Angeles, California 90067-2561
 5             Telephone:  (310) 201-2100
               E-mail:  nvandyk@birdmarella.com
 6
     For Deponent:
 7
               LAW OFFICE OF ROBERT WILLIAM MORRIS
 8             BY:  ROBERT WILLIAM MORRIS, ESQ.
               1200 California Street, Suite 260
 9             Redlands, California 92352
               Telephone:  (909) 792-6455
10             E-mail:  lawofficerobertmorris@verizon.net

11   ALSO PRESENT:

12             Mr. Ray Christensen
               Technical Support
13
               Mr. Barry Varanese
14             Videographer

15

16

17

18

19

20

21

22

23

24

25
```

**Leona** ▆▆▆▆▆▆▆▆ – *09/09/2021*



| | |
|---|---|
| 11:31:00 | 1 |
| 11:31:03 | |
| 11:31:07 | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 11:31:18 | |
| 11:31:18 | |
| 11:31:18 | |
| 11:31:18 | |
| 11:31:18 | |
| 11:31:29 | |
| 11:31:32 | |
| 11:31:32 | |
| 11:31:32 | |
| 11:31:32 | |
| 11:31:42 | |
| 11:31:43 | |
| 11:31:46 | |
| 11:31:56 | 24 | (Witness sworn) |
| 11:31:57 | 25 |

| | | |
|---|---|---|
| 12:00:35 | 1 | Q    Turning your attention to Government Exhibits |
| 12:00:39 | 2 | 190, 191, 192, 193, 194, 195 and 196, if you could take |
| 12:01:00 | 3 | a moment to look at each of those pictures. |
| 12:01:17 | 4 | A    I have looked at them. |
| 12:01:18 | 5 | Q    Have you had an opportunity to review those |
| 12:01:21 | 6 | pictures prior to today? |
| 12:01:23 | 7 | A    Yes, I have. |
| 12:01:24 | 8 | Q    Do you recognize any of the individuals |
| 12:01:29 | 9 | depicted in Government Exhibits 190 through 196? |
| 12:01:33 | 10 | A    Will you repeat the question, please. |
| 12:01:38 | 11 | Q    Do you recognize any of the individuals? |
| 12:01:41 | 12 | A    No, I do not. |
| 12:01:42 | 13 | Q    And that's with regard to all of the pages |
| 12:01:45 | 14 | between 190 and 196 that we've just looked at? |
| 12:01:49 | 15 | A    That is correct. |
| 12:01:50 | 16 | Q    I'm going to now ask you about a series of |
| 12:01:54 | 17 | names, and I'm just going to ask you if you have ever |
| 12:01:58 | 18 | met or spoken with or communicated with any of the |
| 12:02:01 | 19 | following people by name. |
| 12:02:02 | 20 | A    All right. |
| 12:02:03 | 21 | Q    The first name is Jacob Bychak. |
| 12:02:06 | 22 | A    I do not recognize that name. |
| 12:02:08 | 23 | Q    The second name is Mark Manoogian. |
| 12:02:13 | 24 | A    I do not recognize that name. |
| 12:02:14 | 25 | Q    The third name is Mohammed Abdul Qayyum. |

| | | | |
|---|---|---|---|
| 12:02:19 | 1 | A | I do not recognize that name. |
| 12:02:21 | 2 | Q | The fourth name is Petr Pacas. |
| 12:02:24 | 3 | A | I do not recognize that name. |
| 12:02:25 | 4 | Q | The fifth name is Daniel Dye. |
| 12:02:27 | 5 | A | I do not recognize that name. |
| 12:02:29 | 6 | Q | And the sixth name is Vincent Tarney. |
| 12:02:32 | 7 | A | I do not recognize that name. |

12:02:34    8        Q    Did you ever authorize anyone I have mentioned

12:02:37    9   or any of the people in those pictures marked as

12:02:41   10   Government Exhibits 190 through 196 to use any of the

12:02:45   11   IP addresses in the 165.192.0.0 IP address range?

12:02:52   12        A    No, I did not.

12:02:53   13        Q    Did Educational & Corporate Technologies, Inc.,

12:02:59   14   ever send or endorse the sending of unsolicited

12:03:03   15   commercial e-mail messages using that IP address range?

12:03:07   16        A    No.  If they did, they were not authorized to

12:03:10   17   do it.

12:03:10   18   ████████████████████████████████████████████████████

12:03:13        ██████████████████████

12:03:13        ████████████████████████████████████

12:03:17        ████████████████████████████████████████████

12:03:19        ███████████████████

12:03:19   23   BY MS. FEVE:

12:03:26   24        Q    Would you have known if Educational & Corporate

12:03:30   25   Technologies sent out unsolicited commercial e-mail

Leona ███████████████  – 09/09/2021

| | | |
|---|---|---|
| 12:27:47 | 1 | Q    And you believe an agent of ECT, Darrell Lynn, |
| 12:27:49 | 2 | acquired it? |
| 12:27:51 | 3 | ████████████████████████████████████████ |
| 12:27:53 | 4 | THE WITNESS:  Darrell Lynn was a volunteer for |
| 12:27:55 | 5 | ECT. |
| 12:27:56 | 6 | BY MS. MUNK: |
| 12:27:56 | 7 | Q    Okay.  And do you believe he acquired it, or do |
| 12:28:00 | 8 | you know how it was acquired? |
| 12:28:01 | 9 | A    I'm not -- |
| 12:28:03 | 10 | ████████████████████████████████████ |
| 12:28:04 | 11 | BY MS. MUNK: |
| 12:28:04 | 12 | Q    Do you believe Darrell Lynn acquired it? |
| 12:28:07 | 13 | A    He might have. |
| 12:28:08 | 14 | Q    Okay.  But you don't know how it was acquired? |
| 12:28:12 | 15 | A    I believe it was donated. |
| 12:28:15 | 16 | Q    Okay.  But you did not acquire the netblock, |
| 12:28:17 | 17 | correct? |
| 12:28:18 | 18 | A    I physically was the Superintendent of Schools. |
| 12:28:21 | 19 | I did not do that.  My IT director probably did. |
| 12:28:25 | 20 | Q    And ECT didn't provide any consideration for |
| 12:28:28 | 21 | the netblock, correct? |
| 12:28:30 | 22 | ████████████████████████████████████████ |
| 12:28:33 | 23 | THE WITNESS:  Do you mean did they purchase it? |
| 12:28:34 | 24 | BY MS. MUNK: |
| 12:28:34 | 25 | Q    Did they pay for it? |

| | | | |
|---|---|---|---|
| 12:28:37 | 1 | A | No, not at that time. |
| 12:28:38 | 2 | Q | Okay.  You said it was donated, correct? |
| 12:28:41 | 3 | A | That's what I think. |
| 12:28:42 | 4 | Q | And other than the act of acquiring the |
| 12:28:46 | 5 | | netblock for free, do you have personal knowledge |
| 12:28:49 | 6 | | regarding any other circumstances relating to Mr. Lynn's |
| 12:28:53 | 7 | | effort to acquire the netblock? |
| 12:28:54 | 8 | | ████████████████████████████████████ |
| 12:29:00 | | | ███████████████████████████████████████ |
| 12:29:05 | | | ████████ |
| 12:29:06 | | | ███████████████████ |
| 12:29:09 | | | ██████████ |
| 12:29:09 | 13 | Q | Okay.  So I'm talking about in 1993, when ECT |
| 12:29:14 | 14 | | acquired the netblock. |
| 12:29:16 | 15 | | Do you have any other personal information |
| 12:29:19 | 16 | | other than that ECT got it for free? |
| 12:29:22 | 17 | A | I believe it was donated. |
| 12:29:25 | 18 | Q | Okay.  And beyond that, you don't have any |
| 12:29:28 | 19 | | personal knowledge how Mr. Lynn or somebody else |
| 12:29:31 | 20 | | acquired it, correct? |
| 12:29:32 | 21 | A | Not to my knowledge. |
| 12:29:35 | 22 | Q | Okay.  Thank you. |
| 12:29:37 | 23 | | And ECT didn't use the netblock after it was |
| 12:29:41 | 24 | | acquired, correct? |
| 12:29:43 | 25 | | ████████████████████████████ |

Leona ▇▇▇▇▇▇▇▇▇▇ - 09/09/2021



| 12:29:47 | 1 | THE WITNESS:  Not with my knowledge. |
| 12:29:48 | 2 | BY MS. MUNK: |
| 12:29:48 | 3 | Q    Okay.  So as far as you're aware, ECT didn't |
| 12:29:52 | 4 | use the netblock, correct? |
| 12:29:53 | 5 | A    Not at that time. |
| 12:29:57 | 6 | Q    And ECT was in operation, I believe you said, |
| 12:30:01 | 7 | from 1993 to 1995, correct? |
| 12:30:04 | 8 | A    That's when I said Darrell Lynn was an |
| 12:30:09 | 9 | employee. |
| 12:30:09 | 10 | Q    Right, but I believe you testified that ECT |
| 12:30:14 | 11 | actively operated from 1995 to 1997 -- excuse me -- |
| 12:30:19 | 12 | 1993 to 1995? |
| 12:30:23 | 13 | |
| 12:30:23 | | |
| 12:30:23 | | |
| 12:30:27 | | |
| 12:30:27 | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| 12:30:43 | 24 | THE WITNESS:  ECT still is a corporation today. |
| 12:30:43 | 25 | /// |

Leona ▓▓▓▓▓▓▓▓▓▓  - 09/09/2021

| | | |
|---|---|---|
| 12:32:04 | 1 | the netblock was ever registered with any entity during |
| 12:32:08 | 2 | the time frame ECT operated? |
| 12:32:12 | 3 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| 12:32:15 | 4 | THE WITNESS:  I don't believe so. |
| 12:32:16 | 5 | BY MS. MUNK: |
| 12:32:16 | 6 | Q    You don't believe you have any knowledge of the |
| 12:32:22 | 7 | netblock being registered? |
| 12:32:24 | 8 | A    I know when it was registered. |
| 12:32:26 | 9 | Q    Okay.  And when was that? |
| 12:32:27 | 10 | A    It was registered in 2016. |
| 12:32:31 | 11 | Q    When you sold the netblock? |
| 12:32:33 | 12 | A    It was before then. |
| 12:32:34 | 13 | Q    Shortly before selling the netblock? |
| 12:32:37 | 14 | A    Correct. |
| 12:32:38 | 15 | Q    Okay.  Okay.  So prior to 2016, at any point |
| 12:32:43 | 16 | prior to 2016, you didn't register the netblock with |
| 12:32:47 | 17 | ARIN, correct? |
| 12:32:48 | 18 | A    No, I did not, personally. |
| 12:32:50 | 19 | Q    Okay.  But you registered it in 2016 during the |
| 12:32:55 | 20 | period of selling the netblock? |
| 12:32:57 | 21 | A    Correct. |
| 12:32:57 | 22 | Q    So prior to being contacted by a broker in |
| 12:33:08 | 23 | 2016, you believed the netblock was worthless? |
| 12:33:11 | 24 | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |
| 12:33:16 | 25 | THE WITNESS:  It was not of direct monetary |

| | | |
|---|---|---|
| 12:33:21 | 1 | value to the operation of the corporation. |
| 12:33:23 | 2 | BY MS. MUNK: |
| 12:33:23 | 3 | Q    Okay.  And you believed that it had no value |
| 12:33:26 | 4 | and was worthless, correct? |
| 12:33:28 | 5 | ███████████████████████████████████ |
| 12:33:31 | 6 | THE WITNESS:  I believed it was not valuable at |
| 12:33:37 | 7 | the time. |
| 12:33:37 | 8 | BY MS. MUNK: |
| 12:33:37 | 9 | Q    And by "valuable at the time," you mean it had |
| 12:33:47 | 10 | no monetary value? |
| 12:33:47 | 11 | A    Correct. |
| 12:33:47 | 12 | ██████████████████████████████████████ |
| 12:33:47 | | ██████████████████████████████████████ |
| 12:33:50 | | ██████████████████████████████████████ |
| 12:33:53 | | ██████████████████████ |
| 12:33:56 | | ██████████████████████ |
| 12:34:02 | 17 | Q    Okay.  And you filed for personal bankruptcy in |
| 12:34:09 | 18 | 2010, correct? |
| 12:34:10 | 19 | ███████████████████ |
| 12:34:12 | 20 | THE WITNESS:  I don't recall. |
| 12:34:13 | 21 | BY MS. MUNK: |
| 12:34:13 | 22 | Q    Do you recall filing for bankruptcy? |
| 12:34:13 | 23 | █████████████████████████████ |
| 12:34:13 | | ████████████████████ |
| 12:34:13 | | ████████████████████ |

# EXHIBIT D

<pre>
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,     .
                                   .
 5                Plaintiff,       . No. 18-cr-4683-GPC
                                   .
 6                v.               . April 30, 2019
                                   . 1:00 p.m.
 7   JACOB BYCHAK,                 .
     MARK MANOOGIAN,               .
 8   MOHAMMED ABDUL QAYYUM,        .
     PETR PACAS,                   .
 9                                 .
                  Defendants.      . San Diego, California
10   . . . . . . . . . . . . . . . .

11                 TRANSCRIPT OF MOTION HEARING

12           BEFORE THE HONORABLE GONZALO P. CURIEL
                  UNITED STATES DISTRICT JUDGE
13

14

15   APPEARANCES:

16   For the Plaintiff:    United States Attorney's Office
                           By: MELANIE K. PIERSON, ESQ.
17                             SABRINA FEVE, ESQ.
                           880 Front Street, Room 6293
18                         San Diego, California 92101

19   For the Defendant     Law Office of David W. Wiechert
     JACOB BYCHAK:         By: JESSICA C. MUNK, ESQ.
20                             DAVID W. WIECHERT, ESQ.
                           115 Avenida Miramar
21                         San Clemente, California 92672

22   For the Defendant     Mintz Levin
     MARK MANOOGIAN:       By:  RANDY K. JONES, ESQ.
23                         3580 Carmel Mountain Road, Suite 300
                           San Diego, California 92130
24

25   ///
</pre>

```
1   APPEARANCES (CONTINUED):

2

3   For the Defendant        Bienert, Miller & Katzman, P.L.C.
    MOHAMMED ABDUL           By:  WHITNEY Z. BERNSTEIN, ESQ.
4   QAYYUM:                       JAMES RIDDET, ESQ.
                                  THOMAS BIENERT, ESQ.
5                            903 Calle Amanecer, Suite 350
                             San Clemente, California 92673

6

7   For the Defendant        Bird Marella Boxer Wolpert
    PETR PACAS:                Nessim Drooks & Lincenberg
8                            By:  NAEUN RIM, ESQ.
                             1875 Century Park East
9                            Suite 2300
                             Los Angeles, California 90067
10

11

12

13

14

15

16

17

18

19

20

21

22  Court Reporter:          Chari L. Bowery, RPR, CRR
                             USDC Clerk's Office
23                           333 West Broadway, Suite 420
                             San Diego, California 92101
24                           chari_bowery@casd.uscourts.gov

25  Reported by Stenotype, Transcribed by Computer
```

```
 1              SAN DIEGO, CALIFORNIA; APRIL 30, 2019; 1:00 P.M.

 2                              -o0o-

 3              THE CLERK:  Calling Item Number 1 on the calendar,

 4    Case Number 18-cr-4683, U.S.A. v. Defendant Number 1, Jacob

 5    Bychak, if I could please have the appearance of the attorney.

 6              MS. MUNK:  Good afternoon, Your Honor.  Jessica Munk

 7    and Dave Wiechert on behalf of Jacob Bychak, who is present in

 8    court.

 9              THE COURT:  Good afternoon.

10              THE CLERK:  Defendant Number 2, Mark Manoogian.

11              MR. JONES:  Good afternoon, Your Honor.  Randy Jones

12    on behalf of my client, Mark Manoogian, who is present in

13    court.

14              THE COURT:  Mr. Jones, good afternoon.

15              THE CLERK:  Defendant Number 3, Mohammed Abdul

16    Qayyum.

17              MS. BERNSTEIN:  Good afternoon, Your Honor.  Whitney

18    Bernstein, with Jim Riddet and Tom Bienert, present on behalf

19    of Mr. Qayyum, who is also present before the Court.

20              THE COURT:  Good afternoon.

21              THE CLERK:  And Defendant Number 4, Petr Pacas.

22              MS. RIM:  Good afternoon, Your Honor.  Naeun Rim on

23    behalf of Petr Pacas, who is present in court.

24              THE COURT:  Good afternoon.

25              MS. FEVE:  Good afternoon, Your Honor.  Sabrina Feve
```

```
 1              THE COURT:  Netblocks.  That those were the victims.
 2        To show that there was a false representation wouldn't
 3   require for Mr. Holden to recount that he was a victim,
 4   correct?
 5              MS. RIM:  Your Honor, I think that's a question that
 6   has to be answered.  I don't think I can answer that question.
 7   It is the government's theory in their case.  I am not sure.
 8              THE COURT:  Let me ask, do you believe that you are
 9   required in your case in chief to demonstrate Mr. Holden was a
10   victim?
11              MS. FEVE:  No, Your Honor.
12              THE COURT:  I wouldn't see that that would be a
13   requirement at this point.
14              MS. FEVE:  And this is for the wire fraud or for the
15   CAN-SPAM charge, Your Honor?
16              THE COURT:  Well, certainly for the SPAM, and I am
17   not sure about the wire fraud.  I haven't looked at that very
18   closely.
19        But I kept encountering this language about Mr. Holden as
20   a victim, and it seems like the statute is not directed at
21   Mr. Holden as much as it is to individuals who would end up
22   being the recipients of these emails.  And then if anyone is a
23   victim, it would be the IP person -- the entity that has had
24   their profit accessed through false verifications, so that they
25   would be the victims, but it wouldn't be Holden.
```

```
 1              MS. FEVE:  No, Your Honor.  Our theory is not that
 2    Mr. Holden is the victim here.  I think the most obvious
 3    victims are the individuals who were the registrants of these
 4    IP netblocks who had their property used without their consent.
 5    It is -- with regard to the CAN-SPAM Act, there's an argument
 6    that the webmail providers are also potential victims.
 7              THE COURT:  The webmail provider, would that be --
 8              MS. FEVE:  The argument would be that Gmail, because
 9    it had to incur the cost of filtering the spam and was deceived
10    by one of -- in this case, the IP block.  Now, again, that is
11    to say Gmail is a potential victim if you look at the statute.
12    But the victims that we have been focusing on in this case --
13    and that's clear from the discovery -- have been individuals
14    whose identities and property were used without permission.
15              THE COURT:  So I guess I went on -- if not a detour,
16    I am asking these questions because what I am hearing is
17    there's an assertion that Mr. Holden presents himself as a
18    victim because he was fooled on the front end, in 2013, and
19    then later on, in 2014; when, really, was he fooled in 2014,
20    given that he might have been told by the CHS in 2013 that
21    these were false?
22         And then, my question is does that really matter in terms
23    of proving these charges, that in 2014 he did or didn't know?
24              MS. FEVE:  I would refer back to the elements here,
25    and I don't believe that there's an element for either --
```

1          THE COURT:  I don't believe there is either.

2     And so, to the extent that it is not an element, then that

3 proposition that you are offering, that the CHS would be able

4 to show that there was no reliance or that there was no

5 deception in 2014, it is a nonissue.

6          MS. RIM:  Your Honor, a misrepresentation is an

7 element.

8          THE COURT:  Certainly.

9          MS. RIM:  I don't know who the misrepresentation

10 would be made to apart from Mr. Holden.  But even if he is

11 going to testify that he knew these LOAs were forged, we do not

12 have a 302 to that effect.  We don't have a statement from him

13 confirming that he is going to testify to that.  I am not

14 questioning the government's representation, but the government

15 doesn't know what Mr. Holden is going to say.

16     We shouldn't have to prove what Mr. Holden is going to say

17 to be able to interview a witness who had extensive

18 communications with what is undoubtedly a central witness in

19 the government's case and who talked to him potentially about

20 the authenticity of these letters as part of our investigation.

21     I don't know what he is going to say today, but by the

22 time he gets on the stand and says something, it is going to be

23 too late for me to say, "Hold on.  Now we know we need this

24 informant's testimony."  We should be able to investigate this

25 now.

# EXHIBIT E

FD-302 (Rev. 5-8-10)

**OFFICIAL RECORD**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry _____10/27/2014_____

On October 27, 2014, THOMAS CONNER, former owner/co-founder of TelaLink, was telephonically interviewed, telephone number, ███████████, e-mail address, ████████████████, by Special Agent Charles W. Chabalko IV, Federal Bureau of Investigation. After being advised of the identity of the interviewing Agent and the nature of the interview, CONNER provided the following information:

CONNER advised that he is the former co-founder/owner of TelaLink. TelaLink was founded in 1993 by CONNOR, TIM MOSES, and BILL BUTLER. On November 22, 1999, TelaLink was sold to PSINet and in May 2001, both PSINet and TelaLink filed for bankruptcy and are no longer in business. CONNER is currently employed by SiteMason.com, a company he also co-founded located in Nashville, TN. CONNER confirmed that TelaLink was located at 110 30th Avenue North, Suite 5, Nashville, TN, 37203.

SA Chabalko sent CONNER, via e-mail, two Letters of Agency (LOA's), on TelaLink letterhead, authorizing Hostwinds to announce two (2) IP net Blocks, 207.234.0.0/17 and 207.152.0.0/18, registered to TelaLink. The purpose of the e-mail was for CONNER to verify the legitimacy of the LOA's.

When asked if he or a TelaLink employee authorized anyone to utilize the above stated IP blocks, CONNER stated no.

When asked if he or a TelaLink employee wrote and/or provided the LOA's to Hostwinds, CONNER stated no.

When asked if he or a TelaLink employee authorized anyone to write the LOA's on the behalf of TelaLink, CONNER stated no.

When asked if he or a TelaLink employee authorized "Gino Lacross" to submit a LOA on behalf of TelaLink, CONNER stated no. CONNER added that he has never heard of Lacross and believes that he never worked for TelaLink.

| | | |
|---|---|---|
| Investigation on _____10/27/2014_____ at San Diego, California, United States (Phone) | | |
| File # 288A-SD-4318838 | Date drafted | 10/27/2014 |
| by Charles W. Chabalko IV | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

ADCONION-DISC02-REPORTS-00051

FD-302a (Rev. 05-08-10)

288A-SD-4318838

Continuation of FD-302 of  Interview of Thomas Conner.                        , On  10/27/2014 , Page   2 of 2

CONNER believes that any and all claims to the IP blocks were relinquished
in the sale of the company to PSINet and that he (CONNOR) or the other
TelaLink shareholders would not have authority for the Company after
November 1999.

CONNER added that he believes the LOA's are not legitimate because the
LOA's reference the address 110 30th Avenue North, Suite 5, Nashville, TN.
 TelaLink has not been at this address for many years and is now occupied
by his current company, SiteMason.com.

ADCONION-DISC02-REPORTS-00052

# EXHIBIT F

FD-302 (Rev. 5-8-10)

**OFFICIAL RECORD**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    12/04/2015

On October 29, 2015, MIKE DURBIN, former owner/founder of OPEN BUSINESS
SYSTEMS (OBS), e-mail address,                         telephone number,
                   residing at                                    was
telephonically contacted Special Agent Charles W Chabalko IV, Federal
Bureau of Investigation, regarding an IP Block registered to OBS . After
being advised of the identity of the interviewing Agent and the nature of
the interview, DURBIN provided the following information:

DURBIN stated that he is the former owner/operator of OBS which he founded
in 1991. OBS had approximately 60 employees and was acquired by OSAGE
SYSTEMS GROUP, based in Phoenix, Arizona, in 1999/2000.  OSAGE SYSTEMS
GROUP went out of business shortly thereafter in 2001.  DURBIN currently
works as a Technical Manager at Oracle in Itasca, Illinois.

On October 29, 2015, SA Chabalko sent DURBIN an email requesting
information regarding an IP Block registered to OBS in 1994. The IP Block
is as follows:

     168.129.0.0

A WHOIS search of the above IP block on ARIN.net lists the following
registrant information:

NetRange: 168.129.0.0 - 168.129.255.255

CIDR: 168.129.0.0/16

OriginAS:

NetName: OBS-NET

NetHandle: NET-168-129-0-0-1

Parent: NET-168-0-0-0-0

NetType: Direct Assignment

RegDate: 1994-04-25

| Investigation on | 11/17/2015 | at | San Diego, California, United States (Phone, Email) |
|---|---|---|---|

File # 288A-SD-4318838                                    Date drafted  11/17/2015

by  Charles W. Chabalko IV

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

ADCONION-DISC02-REPORTS-00567

FD-302a (Rev. 05-08-10)

288A-SD-4318838

Continuation of FD-302 of  Interview of Mike Durbin of Open Business
Systems.                                                        , On  11/17/2015 , Page  2 of 4


Updated: 2007-08-17

Ref: http://whois.arin.net/rest/net/NET-168-129-0-0-1

OrgName: Open Business Systems

OrgId: OBS-6

Address: 175 Hansen Court Suite 109

City: Wood Dale

StateProv: IL

PostalCode: 60191

Country: US

RegDate: 1994-04-25

Updated: 2011-09-24

Ref: http://whois.arin.net/rest/org/OBS-6

OrgAbuseHandle: CKN23-ARIN

OrgAbuseName: No, Contact Known

OrgAbusePhone: +1-800-555-1234

OrgAbuseEmail: nobody@example.com

OrgAbuseRef: http://whois.arin.net/rest/poc/CKN23-ARIN

OrgTechHandle: CKN23-ARIN

OrgTechName: No, Contact Known

OrgTechPhone: +1-800-555-1234

OrgTechEmail: nobody@example.com

OrgTechRef: http://whois.arin.net/rest/poc/CKN23-ARIN

route: 168.129.0.0/16

descr: OBS-NET

FD-302a (Rev. 05-08-10)

288A-SD-4318838

Continuation of FD-302 of Interview of Mike Durbin of Open Business Systems. , On 11/17/2015 , Page 3 of 4

descr: Open Business Systems (OBSnet)

origin: AS3581

notify: bwolfe@obs.net

mnt-by: OBS-MAINT-MCI

changed: bwolfe@obs.net 19960325

source: SAVVIS

SA Chabalko provided the following documents, via email, for DURBIN to review:

**The Domain registration for OpenBusinessSystems.net.**

**A Document dated May 11, 2012, from Rchard Hillis, CTO of OBS, using the email address, "noc@openbusinesssystems.net".**

**ARIN WHIOS information for IP Block 168.129.0.0**

On November 17, 2015, SA Chabalko telephonically contacted DURBIN to follow-up with him regarding the email SA Chabalko sent him on 10/29/2015.

When asked if he recalled IP block, 168.129.0.0, DURBIN stated vaguely. DURBIN confirmed that the IP Block was registered to the same OBS he founded and that the company most likely used the IP block while in operation. The address used in the registration was the address used by OBS while in operation. DURBIN advised that when OBS was acquired, all assets were transferred to OSAGE SYSTEMS GROUP, which would include the IP block.

When asked if he registered the domain, OpenBuisnessSystems.net in January 2011, DURBIN stated no and that OBS only used the domains OBS.net and OBS.com. Again, DURBIN confirmed that the address used to register the domain is the same address used by OBS, but this was never a domain registered or used by OBS.

When asked if he provided authorization to Cogent to route IP block 168.129.0.0 in May 2011, Durbin stated no. When asked if Richard Hillis, CTO of OBS was an employee of OBS, Durbin stated no. When asked if he ever authorize the use of the IP Block after OBS was acquired in 1999, DURBIN stated no.

ADCONION-DISC02-REPORTS-00569

FD-302a (Rev. 05-08-10)

288A-SD-4318838

Continuation of FD-302 of  Interview of Mike Durbin of Open Business
Systems.                                                     , On  11/17/2015 , Page  4 of 4

ADCONION-DISC02-REPORTS-00570

# EXHIBIT G

FD-302 (Rev. 5-8-10)

- 1 of 3 -

OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry     02/26/2015

On February 24, 2015, RHONDA JOHNSON, Manager, Network and Systems
Administration for EDUCAUSE, ███████████████████████████████████
██████████████████████████ was telephonically interviewed. After being
advised of the identity of the interviewing Agent and the nature of the
interview, JOHNSON provided the following information:

JOHNSON advised that IP block 163.253.0.0/16 does belong to EDUCOM, now
known as EDUCAUSE.  In 1998 EDUCOM merged with another organization named
CAUSE to become EDUCAUSE, an association for higher education information
technology.

JOHNSON advised that in early 2013, EDUCAUSE was contacted by ARIN who
advised that ARIN was receiving complaints that spammers were using
EDUCAUSE's IP range. JOHNSON advised that EDUCAUSE was unaware that their
IP block was being used by spammers. EDUCAUSE provided documentation to
ARIN showing that the IP range belongs to EDUCAUSE.
When asked if EDUCAUSE/EDUCOM gave authorization to use their IP range,
JOHNSON stated no and that EDUCAUSE/EDUCOM has never leased or authorized
the use of the IP block, 163.253.0.0/16.

JOHNSON stated that a report of the incident was prepared by EDUCAUSE and
she would provide the report to SA Chabalko via email.

On February 24, 2015, SA Chabalko received the following email from
Jonathan E. Lang, Chief Technology Officer for EDUCAUSE. The email stated
the following:

*Charles,*
*Thank you for the return email , and for contacting EDUCAUSE. I'm following*
*up on your discussion with Rhonda, and your request for information on*
*Educom's IP grant.*

| | | |
|---|---|---|
| Investigation on | 02/24/2015 at | San Diego, California, United States (Phone) |
| File # | 288A-SD-4318838 | Date drafted 02/24/2015 |
| by | Charles W. Chabalko IV | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

288A-SD-4318838

Continuation of FD-302 of  Interview with Rhonda Johnson of EDUCOM.  , On  02/24/2015  , Page  2 of 3

*Educom was an organization for the advancement of higher education information technology. In 1992 Educom was granted an original grant of a /16 IPv4 address range: 163.253.0.0/16.*

*In 1998 Educom merged with another organization named CAUSE to become EDUCAUSE, an association for higher education information technology. Educom and its successor, EDUCAUSE, have never leased the use of this address range to any other entity.*

*In early 2013, ARIN contacted EDUCAUSE to inform us that this IP range was being used by spammers and they were receiving abuse complaints about communications using that IP range. ARIN inquired if Educom and EDUCAUSE were the same company, and if so, we should prove this to ARIN and have them update the records for this range.*

*In 2013 EDUCAUSE began the process of proving to ARIN that Educom did indeed become EDUCAUSE. These steps included approximately 50 staff hours in researching and providing documentation that was acceptable to ARIN. In February 2014, ARIN updated its records for this IP range to show that EDUCAUSE is now the owner (through an acquired assets transfer from Educom).*

*In late 2014, EDUCAUSE arranged with Merit Network, Inc. to advertise the IP range to allow a process of cleanup in preparation for future action. Currently Merit Networks, Inc. is advertising the IP range for EDUCAUSE and they will assist us with future use or distribution of the range.*

*Educom and EDUCAUSE have never leased, allowed, or agreed to use of the 163.253.0.0/16 IPv4 range by any other party.*

*EDUCAUSE has not suffered significant monetary damage by criminals hijacking this IP space, other than staff response to repeated abuse claims from agencies.*

*EDUCAUSE and Merit Networks, Inc. will incur expenses involved with cleanup in preparation to use or distribute this IP space, but those costs are not yet known.*

*The current estimated value of the block has a wide range, given the volatile dynamics of the IP address market, which would be consistent with other similar blocks currently on the open market.*

*Please do not hesitate to let us know if we can be of service in the future*

288A-SD-4318838

Continuation of FD-302 of  Interview with Rhonda Johnson of EDUCOM.        , On   02/24/2015   , Page   3 of 3


*Yours sincerely,*

*Jo*

*Jonathan E. Lang*
*Chief Technology Officer*

*EDUCAUSE*

The original email will be maintained in the 1A section of the file

EXHIBIT H

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry ___02/19/2021___

On February 18, 2021, Anne Gideon, telephone number, ▮▮▮▮▮▮▮, home address, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ email address, ▮▮▮▮▮▮▮▮▮▮, was telephonically interviewed by Special Agent Charles W Chabalko IV, Federal Bureau of Investigation (FBI). After being advised of the identity of the interviewing Agent and the nature of the interview, Gideon provided the following information:

Prior to the interview, Gideon reached out to SA Chabalko through email. Former CPS Communications employee, Michael Green, advised her that SA Chabalko was trying to locate her regarding her father's company, CPS Communications. SA Chabalko provided Gideon with the original email and Letter of Authorization (LOA) sent to her father on October 26, 2015. The email also contained the registration for IP Block 208.199.68.0 showing it is assigned to CPS. The emails between SA Chabalko and Gideon will be attached to this document.

Gideon is the daughter of David Gideon who is the former owner/founder of CPS Communications, Inc, a publishing company that was located in Florida. SA Chabalko told Gideon that he was aware of her father's passing and was very sorry for her loss. Gideon thanked SA Chabalko and stated that her father was the greatest dad ever.

When asked if she worked for her father at CPS Communication, Gideon stated yes and that she had been working for her father "since the day she was born". Gideon further stated that she did work full time at CPS Communication doing mostly data entry. CPS was sold to Haymarket Media and dissolved in 2003.

When asked if she recognized the IP Block, 208.199.68.0 contained in the email, Gideon stated no. Gideon stated that she primarily did data entry and was removed from the IT side of the business. Gideon did not know the

| Investigation on 02/18/2021 | at San Diego, California, United States (Phone) | |
|---|---|---|
| File # 288A-SD-4318838 | | Date drafted 02/18/2021 |
| by Charles W. Chabalko IV | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

288A-SD-4318838

Continuation of FD-302 of  (U) Interview of Anne Gideon _____ , On  02/18/2021  , Page  2 of 2

details of the sale of CPS to Haymarket and is not sure if the IP addresses
were transferred to Haymarket when sold.

When asked if she reviewed the LOA attached to the email, Gideon stated yes
and that the name on the LOA, "Robert Little Bear", never worked for CPS
Communications.  Gideon added that CPS was a very small company with only 15
to 20 employees.

At the end of the interview, SA Chabalko advised Gideon that she may be
called to be a witness in a trial scheduled for November 2021 in San Diego,
CA.  Gideon provided SA Chabalko with her home address, ███████████████ ,
████████████████████████████ where a trial subpoena could be served to her.