# EXHIBIT A

```
 1  SELTZER CAPLAN McMAHON & VITEK
       Gregory A. Vega (Bar No. 141477)
 2     Patrick Q. Hall (Bar No. 97019)
    750 B Street, Suite 2100
 3  San Diego, California 92101
    Telephone: (619) 685-3003
 4  Facsimile:  (619) 702-6814

 5  LATHAM & WATKINS LLP
       Robert M. Howard (Bar No. 145870)
 6     Patricia Guerrero (Bar No. 190834)
       Jason M. Ohta (Bar No. 211107)
 7     Valerie E. Torres (Bar No. 223011)
    600 West Broadway, Suite 1800
 8  San Diego, California 92101-3375
    Telephone: (619) 236-1234
 9  Facsimile:  (619) 696-7419

10  Attorneys for Defendant
    SAN DIEGO GAS & ELECTRIC COMPANY
11
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO GAS & ELECTRIC COMPANY, et al.,<br><br>Defendants. | Case No. 06-CR-0065-DMS<br>Consolidated with Case No. 07-CR-0484-DMS<br><br>**DEFENDANTS' JOINT ESTIMATE OF LENGTH OF TRIAL**<br><br>Trial Date: June 4, 2007<br>Courtroom: 10<br>Judge:     Honorable Dana M. Sabraw |

I.

ESTIMATE OF LENGTH OF TRIAL

Based upon the facts set forth below, Defendants estimate that the trial of this four-defendant, consolidated asbestos NESHAP work practices, conspiracy, and false statement case will require at least **7-9 weeks**.

This estimate includes recent April 6, 2007 Jencks information supplied thus far by the Government and excludes any consideration of severance, individual Defendant testimony (if any), and/or any forthcoming motions *in limine*.

On April 6, 2007, the Government provided Jencks statements for approximately 82 potential Government witnesses. General categories of potential Government and defense witnesses include the following: (1) federal, state, county regulators and officials; (2) former IT Corporation representatives; (3) Encanto abatement subcontractors (*e.g.*, Tri-State, DDB Demolition, Independent Pipe and Steel); (4) CRC Evans machine representatives; (5) Encanto project bidders; (6) City of Lemon Grove officials; (7) Encanto site buyer representatives; (8) California Public Utilities Commission officials; (9) Encanto residents; (10) laboratory technicians for bulk, 181 soil and 300 air samples; (11) Encanto project "certified asbestos consultants;" (12) California Department of Toxic Substances Control voluntary closure program project managers and investigators; (13) California OSHA "certified asbestos consultant" licensing officials; (14) project-related environmental consultants (*e.g.*, Ninyo & Moore and Shaw Environmental); and (15) Government and defense experts.

II.

FACTS

The 7-9 week trial estimate is based on the following facts currently known to Defendants:

1. On March 26, 2007, the Government <u>verbally</u> represented in a "meet and confer" that it has issued to date **45 trial subpoenas**, <u>excluding Government witnesses</u>.

2. On April 6, 2007, the Government provided to the defense a written list of **16 proposed experts**, which includes nine Government witnesses. The Government

|   |   |
|---|---|
| 1 | expert list includes all laboratory technicians who performed single-layered |
| 2 | testing. |

3. On April 10, 2006, the Government provided a list of **41 witnesses** (excluding previously designated Government witnesses Trotter (EPA), Forney (NEIC) and Bruehs (FBI photogrammetry).

4. On April 10, the Government also subpoenaed five employees from either SDG&E or Sempra Energy. Based upon available information, the defense estimates a total of **49 Government percipient and proposed expert witnesses**.

5. On April 6, 2007, the Government produced approximately **2800 pages of Jencks** material to the defense, including statements from approximately **82 potential Government witnesses**.

6. The Government has represented that it estimates a **three-week Government case**, based upon its own view of what the defense will require for the cross-examination of 49 Government witnesses.

7. The Government has identified **327 estimated trial exhibits** to date.

8. The number of **defense trial exhibits is currently unknown**.

9. The number of documents produced by SDG&E, the successor of IT Corporation, and third-party witnesses in discovery is estimated to exceed **30,000 pages**.

10. The number of potential Encanto witnesses identified by Defendants is approximately 200 for the five-count consolidated cases. The defense has reduced that list to approximately **60-75 priority defense percipient and expert witnesses**. The defense estimates **10-15 retained and non-retained defense experts**. Only 15 of the anticipated defense witnesses are already on the Government's list of 49 witnesses. Accordingly, the **defense anticipates approximately 40 defense witnesses** in addition to Government witnesses.

11. The Government has not agreed to stipulate to the <u>authenticity</u> and <u>foundation</u> of all Encanto-related laboratory business records relating to 181 soil and 300 air data only, while reserving all other evidentiary objections such as relevancy and

| | |
|---|---|
| 1 | admissibility. This translates into at least 10 additional defense witnesses and |
| 2 | several court days. |
| 3 | 12. The Government also anticipates the extensive use of non-binding test data at |
| 4 | trial, which appears to involve 5-10 of the 49 witnesses on the Government list. |
| 5 | 13. For planning purposes, the defense estimates **75 total witnesses**, assuming certain |
| 6 | stipulations can be reached. |

III.

ANALYSIS

The Government estimates a three-week case, or a total 12 court days for 49 Government witnesses. The Government estimates alone project to 4 witnesses per day, including direct and cross-examination. Reserving at least one day for opening and closing, respectively, the number of Government witnesses alone would jump to 5 per day using the Government's logic. The defense believes that the Government's estimate is grossly unrealistic.

The defense is agreeable to assigning lead counsel for direct and cross-examination (reserving of course the rights of respective Defendants to undertake whatever additional non-duplicative examination is constitutionally appropriate). Assuming four court days per week,[1] 75 total Government and defense witnesses, one day respectively for opening and closing, jury selection, and a far more realistic 2-3 daily witness schedule, basic math instructs that this is increasingly looking like, at a minimum, a 30-35 day trial. This translates into 7-9 weeks. If the Government agrees to stipulate to certain foundational issues, the defense estimates that schedule could be trimmed to approximately 7 weeks.

---

[1] The defense would also recommend a six-hour 8 a.m. to 2 p.m. court schedule Monday through Friday for the jury panel to allow afternoons for motions and related court business.

## IV.

## CONCLUSION

Based upon Defendants' understanding of the Government's current theory of the prosecution, number of witnesses, experts, and evidentiary objections regarding soil and air data, Defendants estimate 7-9 weeks of trial.

Dated: April 13, 2007      LATHAM & WATKINS LLP

By    s/Robert M. Howard
Robert M. Howard
Attorneys for Defendant
SAN DIEGO GAS & ELECTRIC COMPANY
robert.howard@lw.com

Dated: April 13, 2007      COUGHLAN, SEMMER & LIPMAN, LLP

By    s/Michael L. Lipman
Michael L. Lipman
Attorneys for Defendant
KYLE RHEUBOTTOM
lipman@csllaw.com

Dated: April 13, 2007      DAMIANI LAW GROUP

By    s/Lisa J. Damiani
Lisa J. Damiani
Attorneys for Defendant
JACQUELYN McHUGH
ljdamiani@damianilawgroup.com

Dated: April 13, 2007      LAW OFFICES OF DORN BISHOP

By    s/Dorn G. Bishop
Dorn G. Bishop
Attorneys for Defendant
DAVID WILLIAMSON
dorn@dornbishoplaw.com