**WIECHERT, MUNK &**
**GOLDSTEIN, PC**
David W. Wiechert, SBN 94607
Jessica C. Munk, SBN 238832
Jahnavi Goldstein, SBN 245084
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822
Email: dwiechert@aol.com
          jessica@wmgattorneys.com
          jahnavi@wmgattorneys.com

*Attorneys for Jacob Bychak*


**BIENERT KATZMAN**
**LITTRELL WILLIAMS LLP**
Thomas H. Bienert, Jr., SBN 135311
James D. Riddet, SBN 39826
Whitney Z. Bernstein, SBN 304917
Carlos A. Nevarez, SBN 324407
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Email: tbienert@bklwlaw.com
          jriddet@bklwlaw.com
          wbernstein@bklwlaw.com
          cnevarez@bklwlaw.com

*Attorneys for Mohammed Abdul Qayyum*


**MINTZ, LEVIN, COHN, FERRIS,**
**GLOVSKYAND POPEO, P.C.**
Randy K. Jones, SBN 141711
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1510
Email: rkjones@mintz.com

Daniel J. Goodrich, BBO 692624 (Pro Hac)
Ryan Dougherty, BBO 703380 (Pro Hac)
1 Financial Center
Boston, MA 02111
djgoodrich@mintz.com
rtdougherty@mintz.com

*Attorney for Mark Manoogian*


**BIRD MARELLA BOXER WOLPERT**
**NESSIM DROOKS LINCENBERG**
**RHOW P.C.**
Gary S. Lincenberg, SBN 123058
Alexis A. Wiseley, SBN 330100
Darren L. Patrick, SBN 310727
1875 Century Park East, Floor 23
Los Angeles, CA 90067
Telephone: (310) 201-2100
Email: glincenberg@birdmarella.com
          awiseley@birdmarella.com
          dpatrick@birdmarella.com

*Attorneys for Petr Pacas*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, et al.,<br><br>        Defendants. | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**DEFENDANTS' RESPONSE TO UNITED STATES' MOTIONS IN LIMINE (DKT. 351) FOR:**<br><br>(1) **RULINGS ON OBJECTIONS & EXHIBITS DURING DEPOSITION TESTIMONY OF LWT; AND**<br>(2) **RULINGS ON OBJECTIONS & EXHIBITS DURING DEPOSITION TESTIMONY OF SAD**<br><br>Hearing Date:  April 7, 2022<br>Hearing Time: 1:00 p.m.<br>Department:    Courtroom 2D |

## I.    INTRODUCTION

On June 23, 2021, the government moved for Rule 15(a) Depositions of two witnesses, LWT and SAD. Dkt. No. 242. Defendants agreed to the Rule 15 deposition of LWT given her serious medical condition and the government's representations that the defense was provided "all discovery (Rule 16, Jencks, Brady, Giglio) in the possession of the United States" for LWT. *See* <u>Under Seal</u> Response to Government's Motion for Rule 15 Depositions. However, Defendants initially objected to the Rule 15 deposition of SAD as the government had not met its burden that exceptional circumstances exist to take the Rule 15 deposition of SAD. *Id.* The Court agreed and denied the motion without prejudice, allowing the government to file a supplemental motion with medical documents for SAD. Dkt. No. 254. The government subsequently filed supplemental papers under seal in support of the deposition for SAD. On August 20, 2021, at a hearing on other

matters, the Defendants did not object to the Rule 15 deposition of SAD and the Court granted the government's request. Dkt. No. 275. After the depositions of LWT and SAD were taken, the parties stipulated that these two government witnesses were unable to appear and testify at trial due to medical infirmity. Dkt. No. 285. The government now moves this Court to admit the sworn deposition testimony at trial. The parties have met and conferred and agreed to a number of redactions. The Defendants respond herein to the outstanding objections addressed in the government's *motion in limine* at Dkt. No. 351.

## II.   RULE 15 DEPOSITIONS

Federal Rule of Criminal Procedure Rule 15(e) provides: "unless these rules or the court orders otherwise, a deposition must be taken and filed in the same manner as a deposition in a civil action" with certain exceptions, including that "[t]he scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial." Fed. R. Crim. P. 15(e)(2). Federal Rule of Civil Procedure Rule 32(d)(3)(A) provides:

> An objection to a deponent's competence—or to **the competence, relevance, or materiality of testimony—is not waived by a failure to make the objection before or during the deposition**, unless the ground for it might have been corrected at that time.

(Emphasis added). Courts have routinely found that relevance objections cannot be waived during a deposition. *See Haiping Su v. United States*, No. C09-02838 EJD HRL, 2012 WL 1094642, at *1 (N.D. Cal. Mar. 29, 2012) ("Although defendants did not assert relevance objections during Waddell's deposition, that objection has not been waived.") (citing *In re Stratosphere Corp. Securities Litig.*, 182 F.R.D. 614, 618 (D. Nev.1998) ("It is usually not necessary to make an objection based upon irrelevancy.... It is difficult to conceive of the likelihood that a question which calls for irrelevant information can be 'cured' by restating the question, unless the question is changed to ask for relevant (i.e., different) information. … Thus, the objecting party may wait until trial (or just prior to trial) to make the objection when, and if, the deposition testimony is offered into

evidence."")); *see also United States v. Jefferson*, 594 F. Supp. 2d 655, 668 n.18 (E.D. Va. 2009) (Rule 15 is interpreted "so as not to infringe defendant's [constitutional rights] in any way.").

### A. The Deposition of LWT

#### 1. The Contested Proposed Redactions Have Not Been Waived

The government first disputes four proposed redactions to LWT's testimony by Defendants, arguing the Defendants waived any challenge to the testimony by not raising objections to it during the deposition of LWT. *See* Dkt. No. 351 at 3. However, even the government admits in a footnote that certain objections cannot be waived, such as relevance. Dkt. No. 351 at 3, n.1; *see also* Fed. R. Civ. P. Rule 32(d)(3)(A); *Haiping Su*, 2012 WL 1094642 at *1. Thus, the Defendants respectfully request that the Court redact the following testimony:

#### a. *ECT's Purpose/Mission Is Irrelevant – page 12:20-13:3*

During LWT's deposition, the government asked the witness: (1) "What was the purpose or mission of Educational & Corporate Technologies, Inc.["ETC"]?" (Dkt. 351-1 at 12:20-21); (2) "Did the company provide in-service workshops and training on how to use computers?" (*id.* at 12:23-24); and (3) "Was that training for educators?" *Id.* at 13:1. Defendants object to these questions and LWT's answers as this line of questioning is irrelevant. Under FRE 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence that is not relevant is not admissible. *See* Fed. R. Evid. 402.

Here, the purpose or mission of ECT and whether ECT provided computer training to schools and training for educators does not make any fact that is of consequence, *i.e.* the charges in the Indictment, more or less probable than it would be without the evidence. Instead, the government appears to want to garner sympathy for LWT and ECT by suggesting that they provided some invaluable service, *i.e.* "educational services." Under FRE 403, evidence, even if relevant, may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice. Not only is this testimony irrelevant, but the danger of invoking an emotional response in the jury for LWT because ECT provided educational services is prejudicial and outweighs any probative value. Accordingly, page 12, line 20 through page 13, line 3 should be redacted.

### b. LWT's Testimony regarding Research Conducted by Attorneys Is Nonresponsive and Confusing – page 35:8-12

During cross-examination, LWT was asked: "other than the act of acquiring the netblock for free, do you have personal knowledge regarding any other circumstances related to Mr. Lynn's effort to acquire the netblock?" Dkt. 351-1 at 35:4-7. LWT then responded: "I know that there was research conducted by attorneys who went to the State Department to research that." *Id.* at 35:8-10. LWT's response was nonresponsive and should be stricken. FRE 403 also provides that evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury. Here, LWT's testimony about research conducted by attorneys is not only nonresponsive but is also confusing and likely will mislead the jury because, as LWT subsequently explained, no attorney research was conducted at the time the netblock was acquired. Accordingly, the Court should redact this testimony at page 35, lines 8-10. Similarly, the follow-up question, "And this was in 1993?," and LWT's response of "no" (*id.* at 35:11-12) should similarly be redacted.

### c. Defendants Objected to Whether LWT Believed the Netblock was an Asset and that Testimony Should be Redacted – page 39:12-16

In addition, the Defendants properly objected to LWT's testimony whether she believed the IP addresses were assets. The government asked LWT:

Q: Do you consider the IP addresses that were the subject of Government Exhibits 303 and 304 to have been assets?

Ms. Munk: Object to vague.

Ms. Van Dyk: Lacks foundation.

The witness: I considered them assets.

Dkt. 351-1 at 23:24-24:4. The argument as to why the Court should sustain these objections is addressed below. During cross-examination, LWT was asked questions about her prior testimony regarding her belief that the IP addresses were assets. LWT was asked:

> Q: … I believe, ***you testified that you thought it was an asset***, but I just want to clarify: If you thought it was an asset, you still believed it didn't have value prior to 2016?

> The witness: I believe that is correct.

Dkt. 351-1 at 39:12-16 (emphasis added). Defense counsel had to ask this question in case the Court decided to overrule its prior objections that LWT could testify whether she believed the IP addresses were assets. However, if the Court sustains the objections to LWT testifying about her belief that the IP addresses were assets, then it should also redact this questioning at page 39, lines 12-16 because it would similarly be inadmissible.

### d. *LWT Abruptly Stating She Has Had a Stroke Is Irrelevant and Highly Prejudicial – page 51:15-20*

Finally, and quite surprisingly, the government wants to admit a nonresponsive outburst by LWT: "Are you aware of the fact that I've had a stroke and I'm doing the best I can?" This is not only irrelevant and inadmissible under FRE 402, but it appears the government wants the jurors to react more sympathetically to LWT because she has had a stroke. While there is no probative value to this testimony, it is very likely to cause unfair prejudice to the Defendants and should also be excluded under FRE 403. Accordingly, the testimony at page 51, lines 15-20 should be excluded under FRE 402 and 403.

### 2. <u>LWT's Testimony that She Has Not Spoken to the Defendants Is Not Vague or Confusing – page 49:4-11</u>

Next, the government argues that LWT cannot testify to the fact that she has "never met or spoken to [Defendant] Abdul Qayyum" (Dkt. 351-1 at 49:4-5) and this is somehow

vague or confusing because LWT says she has never "spoken to … any of those people in this book." *Id.* at 49:8-11. The government argues LWT's testimony to "'the book' has a strong potential to confuse or mislead the jury into assuming that it refers to "the book of all trial exhibits, rather than the book with a limited number of exhibits for the deposition that was presented to the witness." Dkt. 351 at 4. However, it was later clarified by defense counsel that when LWT testified she had "never spoken to any of the people 'in the book,'" she meant "the people in Government Exhibits 190 to 195." Dkt. 351-1 at 52:12-15. The people in Government Exhibits 190-193 were Defendants Mark Manoogian, Jacob Bychak, Mohammed Abdul Qayyum, and Petr Pacas, respectively.[1] LWT testified "I do not believe I have spoken to any of the people pictured on those exhibits." *Id.* at 52:19-20. Accordingly, LWT's testimony is clear that she had not spoken to any of the people shown in Government Exhibits 190-195 and the government's objection that LWT's testimony at page 49, lines 4-11 is vague and confusing should be overruled.

### 3. Defendants' Additional Objections Should Be Sustained

Finally, the Court should sustain the following defense objections:

#### a. *LWT's Belief Whether the IP Addresses are Assets is Inadmissible – pages 23:24-24:4*

The government attempted to solicit an expert opinion from LWT whether she considered the IP addresses "to have been corporate assets." Dkt. 351-1 at 23:24-24:1. Defendants objected that the question was vague and also lacked foundation. *Id.* at 24:2-3. A central issue in this case is whether IP addresses are property under the wire fraud statute. 18 U.S.C. § 1343. Here, the government is trying to improperly solicit an expert opinion that IP addresses are property because LWT considered it a "corporate asset." Accordingly, there is no foundation for LWT to testify to this belief. Further, the government's reference to "assets" is also vague. Thus, the Court should sustain

---

[1] Exhibits 194-195 were photographs of Daniel Dye and Vincent Tarney.

1  Defendants' objections.

### b. LWT's Testimony About What a Lawyer and Broker Told Her Is Inadmissible Hearsay/Lack Personal Knowledge – page 25:5-14

The government also asked LWT: "Do you know how the broker who represented you determined that you owned these IP addresses?" Dkt. 351-1 at 25:5-7. LWT responded with hearsay: "The broker hired an attorney or attorneys to go to the California Department, and he met with the Secretary of State's staff. He reviewed the files and did research and *assured me* that the ownership was indeed Educational & Corporate Technologies, Inc." *Id.* at 25:8-12 (emphasis added). Defendants objected "to hearsay as well as lack of personal knowledge." *Id.* at 25:13-14. The government acknowledges that the attorney's statement to LWT regarding ownership "is an out of court statement" but argues "it is not offered for the truth of the matter asserted (i.e., that LWT was the owner of the netblock)." Dkt. 351 at 5:19-20. However, that is exactly what the government is trying to show. Instead, the government argues that it is being offered "for the effect on the listener (i.e., [LWT] understood she was the rightful owner)" (*id.* at 5:20-21), but this shows the government's true purpose to admit inadmissible hearsay that she was the owner of the IP addresses. Fed. R. Evid. 802. The Court should sustain the objection as inadmissible hearsay and given that LWT does not have personal knowledge of what the attorney did, also sustain the objection for lack of knowledge. Accordingly, the testimony on page 25, lines 5-14 should be redacted as the testimony is inadmissible hearsay and the witness lacks personal knowledge.

### c. LWT's Testimony About Any Impact to ECT and Her Feelings Is Irrelevant and Inadmissible – pages 31:10-32:3

The government also asked LWT:

Q. What impact, if any, do you believe the use of Educational & Corporate Technology, Inc.'s name to send unsolicited commercial e-mail messages would have had on the company?

Ms. Munk: Object. Foundation.

The witness: The image of the company was that it was straightforward; it was true; it had a trust that people recognized, and anything less than that would have been harmful.

Q. How do you feel seeing Government Exhibit 41 bearing Educational & Corporate Technologies' name without your knowledge and consent?

Ms. Munk: Object. Irrelevant. Vague.

The witness: When this letter was presented to me, I was shocked. I felt that it was totally incorrect. I felt violated, and it was certainly not anything of trust.

Ms. Feve: Thank you, ma'am.

Dkt. 351-1 at 31:10-32:3.

This line of questioning by the government is inappropriate and inadmissible. The first question asked by the government about what impact, if any, does LWT believe the use of ECT's name to send unsolicited commercial email messages would have had on the company is improper – there is simply no foundation for this hypothetical and any answer is purely speculative. The government argues that "[v]ictims of fraud are permitted to testify at trial about how they were affected by the crime." Dkt. 351 at 6:2-3 (citing *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005). However, LWT herself testified that she had never met or spoken to Defendants. Dkt. 351-1 at 52:10-20. Accordingly, there were no misrepresentations made to LWT to influence her to part with her IP addresses – a necessary element of wire fraud. *Cf. United States v. Bergquist*, 91 F.3d 155 (9th Cir. 1996) (holding the admission of victims' testimony about the impact of defendants' behavior on their financial situation was not erroneous because it supported an element of wire fraud).

Further, LWT's testimony regarding her feelings about seeing government's Exhibit 41, an LOA with ECT's name on it, is irrelevant and inadmissible under FRE 402. There is no probative value in this line of questioning. Moreover, this

questioning is highly prejudicial and should also be excluded under FRE 403. Thus, the Court should sustain Defendants' objections and redact page 31, line 10 through page 32, line 3.

       4.  <u>The Government Concedes Page 49:12-18 Should Be Excluded</u>

Lastly, the government highlighted the testimony on page 49, lines 12-18 in red, but failed to address it in their papers, and appear to agree that that testimony should be excluded. During that portion of the deposition, defense counsel mentioned, "I have to ask the questions" and the government objected to "asked and answered" and LWT responded "I want to be sure I'm answering you correctly. If I don't know their names, no, I've not spoken with anybody in the book." Dkt. 351-1 at 49:12-18. Given that LWT's testimony was not responsive to a question and the government's objection, the Court should redact page 49, lines 12-18.

**B. The Deposition of SAD**

       1.  <u>The Totality of SAD's Evasive and Nonresponsive Testimony is Relevant and Admissible – Pages 109:14-22 and 174:8-22</u>

The government argues that defense counsel's objections and questions were argumentative and suggestive and therefore should be excluded. That argument fails. Defense counsel made proper objections in light of SAD's nonresponsive and evasive testimony. The full transcript of SAD's testimony is necessary in order for the jury to accurately consider the witness's testimony, demeanor, and credibility.

The government cites no pertinent case law to support its position that the referenced portions of the transcript should be excluded. SAD's deposition was conducted pursuant to Rule 15 of the Federal Rules of Criminal Procedure because of the witness's infirmity and inability to travel to California for trial. Rule 15(e) directs that "[t]he scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial." Fed. R. Crim. P. 15(e)(2). The totality of the transcript reflects that SAD was evasive and nonresponsive to the questions posed by defense counsel. SAD's inability to answer basic questions required defense counsel to lodge

several objections for the Court's consideration. These objections were concise and non-argumentative. *See* Rule 30(c)(2) ("An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—*must* be noted on the record.").

Moreover, the only equitable and constitutionally sound way for the jury to contemplate the totality of this witnesses' testimony is to simulate what they would have heard at trial. *See generally Jefferson*, 594 F. Supp. 2d at 688. Because the witness testified in a controlled environment, he was not subject to the pressures of testifying live at trial. If the edited deposition video is to be shown at trial, the jury must be able to view and consider SAD's demeanor when he was pressed on his evasive answers and rude conduct. *See United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 U.S. Dist. LEXIS 151950, at *20 (M.D. Ga. Aug. 21, 2020) ("Demeanor includes the language of the entire body … how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak … [how] witnesses blink or roll their eyes, make furtive glances, and tilt their heads.").

In addition, the "Doctrine of Completeness" requires that defense counsel's non-argumentative questions and objections be admissible to give context to SAD's testimony. Federal Rule of Evidence 106 is especially important when pertaining to the use of a deposition at trial. SAD's testimony is incomplete and out of context without defense counsel's questions and objections to the witness's testimony. *See Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (1999) (district court abused its discretion when admitting only limited portion of plaintiff's deposition testimony, without admitting enough of surrounding testimony to put admitted portion into context). If the jury is to view an edited video deposition of SAD, it must be permitted to see the whole picture, which includes the witness's refusal to answer defense counsel's questions, his evasiveness in testifying, and his demeanor during cross-examination. *See United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) ("The general rule is that if one party to litigation puts in evidence part of a document, or a correspondence or a conversation, which is detrimental

to the opposing party, the latter may introduce the balance of the document, correspondence or conversation in order to explain or rebut the adverse inferences which might arise from the incomplete character of the evidence introduced by his adversary"); *see also United States* v. *Wilson*, 36 F. Supp. 2d 1177, 1180 (N.D. Cal. 1999) (Rule 15 testimony "must also bear sufficient indicia of reliability" and "[i]ndicia of reliability are those aspects of the circumstances surrounding the proffered testimony that offer assurances that the jury will be able to determine the truthfulness of the witness and the weight to be accorded to his testimony"). The totality of SAD's testimony must be admitted to give context to his answers and so that the jury can accurately assess his credibility.

2.   <u>Testimony Regarding Email Communications Between SAD and the Government is Relevant and Admissible</u>

The government argues that portions of defense counsel's cross examination amounted to impermissible hearsay. This argument fails because SAD's statements are admissible as non-hearsay, or in the alternative, are admissible under FRE 803(3).

Throughout SAD's deposition, defense counsel cross-examined SAD regarding his email communications with the government. In those emails, SAD stated that: (1) he was not a victim; (2) he wanted to be removed from the Government's witness list [SAD Tr. 95:3-5; 106:3-5]; (3) he wanted the government to "feel the pain that they [were] putting [him] through" [*id.* 93:4-8]; (4) he did not "trust the prosecutor" because "[s]he comes across … as only wanting victories in her court cases" [*id.* 98:12-16]; and (5) he would "only testify under duress caused by the state's attorney" [*id.* 122:22-24].

The statements are not hearsay because they are not offered to prove the truth of the matter asserted, but rather the declarant's state of mind. *See United States v. Herrera*, 600 F.2d 502, 504 (5th Cir. 1979) (evidence which would otherwise be hearsay is admissible as bearing on state of mind of declarant if not offered for the truth of statement). In other words, SAD's testimony demonstrates that he believed that he was not a victim of any crime. SAD also made statements to the government that he did not want to be involved

with this case, and the government pressed on anyway – which supports the defense's argument that the government is overreaching with this prosecution. *See United States v. Simmons*, 11 F.4th 239, 263-64 (4th Cir. 2021) (there was no error in permitting the jury to hear a phone call because the call was not "hearsay," as the Government did not offer it for the truth of the matter asserted but to prove the effect that a caller's words had on their eventual listener); *United States v. Johnson*, 449 F. App'x 149, 152 (3d Cir. 2011) (law enforcement agent's testimony that non-testifying witnesses were angry toward husband and wife who had collected loan application fees but issued no loans was not hearsay because it concerned declarants' then-existing state of mind or emotion).

SAD's statements are also admissible under FRE 803(3) because the emails show SAD's then-existing mental and emotional conditions – that he was upset, distrustful of the government, he did not feel like he had been victimized, and that the treatment by the government was causing a manifestation of anxiety. *See United States v. Sablan*, No. 00-cr-00531-WYD, 2008 U.S. Dist. LEXIS 23537, at *69 (D. Colo. Mar. 13, 2008) (portions of letter deemed admissible where declarant stated that he was scared); *United States v. Green*, 680 F.2d 520, 523 (7th Cir. 1982) (statement of kidnapping victim that the accused "is still bothering me" indicated she was nervous and upset, and thus fell within the exception to the hearsay rule.).

Therefore, the emails identified in Exhibits A and B, and the testimony regarding Exhibits A, B, and C are not hearsay and should be admitted into evidence.

3. <u>Evidence and Exhibits Related to SAD's Displeasure Regarding Travel to San Diego to Testify are Relevant and Admissible - Pages 92-100, 104-116, and 120-132</u>

The government seeks to "exclude from the jury's view any testimony elicited regarding SAD's personal travel plans and SAD's email communications with the government regarding his displeasure with the government in having to travel" to San Diego. The government's request should be denied. This evidence is highly relevant amd admissible because it goes to SAD's credibility and is probative of the government's

1    overreaching in this case.

2        All relevant evidence is admissible subject to specific exceptions. Fed. R. Evid.

3    402. Federal Rule of Evidence 401 states that evidence is relevant if it has any tendency to

4    make the existence of any fact that is of consequence to the determination of the action

5    more probable or less probable than it would be without the evidence. In his testimony,

6    SAD stated that he did not want to travel because he did not trust the government, the

7    prosecutor "comes across … as only wanting victories in her court cases," and that he was

8    not a victim. This testimony is relevant to prove that: the government has acted

9    improperly throughout this investigation and prosecution (the subject of pending motions

10   to dismiss and suppress (*see* ECF Nos. 329 & 330)); the government is overreaching with

11   this prosecution; and the charged conduct is a victimless crime. Had the witness been

12   forced to testify in person, these questions would certainly come up and the jury would be

13   able to judge his demeanor and credibility. Therefore, the testimony should not be

14   excluded.

15            4.   <u>The Remaining Defense Objections Should be Sustained</u>

16       The government argues that numerous defense objections should be denied and that

17   SAD's corresponding testimony and documents should be admitted. In particular, the

18   government contends that: (1) two business records pertaining to the assignment of the

19   netblocks should be admitted [24:7-29:6]; (2) testimony regarding Moore Products' use of

20   the netblocks should be admitted [37:38]; (3) SAD's testimony that the Moore Products

21   netblock transferred to Siemens should be admitted; and (4) SAD's statement that a letter

22   of authorization was "a complete forgery" should be admitted.

23       First, the purported business records (government exhibits 6 and 7) are not

24   admissible because SAD did not provide the proper foundation and the documents are

25   inadmissible hearsay. It is true that exhibits can be admitted as business records of an

26   entity, even when that entity was not the maker of those records, but only if "requirements

27   of Rule 803(6) are met and the circumstances indicate the records are trustworthy."

28   *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992). Here, the requirements of

Rule 803(6) were not met because SAD did not testify that it was his regular practice to make these records. Therefore, because the circumstances do not indicate the records are trustworthy, government exhibits 6 and 7 and any corresponding testimony are inadmissible.

Second, testimony regarding Moore Product's use of the netblocks lacks foundation and is irrelevant. SAD was a midlevel IT manager who was not in the position to testify about the netblocks' importance in order to grow the company. Furthermore, SAD testified that Moore Products did not have internet connectivity when it acquired the netblocks [17:16]. Therefore, his testimony that the netblocks were required to grow the company and "put our sales offices in remote locations online" is completely irrelevant and nonresponsive to the question asked.

Third, SAD also testified that Moore Products' netblock transferred to Siemens when Siemens acquired Moore Products in 2000 [41:7-12]:

Q.    And what became of the title of the company Moore Products?
A.     Due to the fact that Siemens purchased Moore Products, the name of Moore Products and all the assets thereof of Moore Products Company were purchased and assumed by Siemens.
MR. JONES:  Objection: lack of foundation, lack of personal knowledge, calls for speculation, and vague.
MS. VAN DYK:   And nonresponsive.

This testimony should be stricken because it is not responsive to the government's question. In addition, any related testimony regarding the transfer of the netblock from Moore to Siemens should be stricken because: (1) SAD did not have personal knowledge; and (2) his answers to any questions about Siemens' acquisition of the netblocks are riddled with speculation. The evidence in this case will unquestionably show that the netblock did not transfer to Siemens, the WhoIs registry was never updated, and Siemens did not know about the netblock until 15 years later when it was informed by the FBI. This is a prime example of why this witness should have been forced to testify in court where a jury would be able to see his clear fabrications. Nevertheless, in the event that the

Court does deem this testimony admissible, defense counsels' questions regarding the topic should also be admissible because Defendants must able to impeach this witness' credibility. Defense counsel's questions on pp. 160:20-161:6, where counsel asks if SAD is aware that the netblocks never actually transferred, are therefore proper.

Fourth, evidence pertaining to SAD's opinion that a letter of authorization was a forgery is completely inappropriate, prejudicial, and lacks foundation. SAD is a lay witness, not a handwriting expert. Forgery is a legal term involving the intent to defraud. Even a certified handwriting expert would not be permitted to use the term "forgery" as they examine and opine on material evidence. Whether or not something is a "forgery" is a question for the trier of fact, not a non-expert witness. *Langell v. Ideal Homes LLC*, No. 16-cv-00821-HRL, 2016 U.S. Dist. LEXIS 194623, at *14 (N.D. Cal. Nov. 18, 2016). This testimony is inadmissible, and the objection should be sustained.

Furthermore, SAD testified that Siemens (the company that purchased Moore) was a global company who could have employed another individual with his same name [71:10-14]. A non-expert witness cannot testify to the legal status of a signature, especially where the signature may belong to another individual with the same name.

## III.  CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant the requested relief.

Respectfully submitted:

Dated:  March 31, 2022          **WIECHERT, MUNK & GOLDSTEIN, PC**

By: *Jessica C. Munk*
David W. Wiechert
Jessica C. Munk
Jahnavi Goldstein
*Attorneys for Jacob Bychak*

Dated:  March 31, 2022

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By: *Randy K. Jones*
　　Randy K. Jones
　　Daniel J. Goodrich
　　Ryan Dougherty
　　*Attorneys for Mark Manoogian*

Dated:  March 31, 2022

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: *Whitney Z. Bernstein*
　　Thomas H. Bienert, Jr.
　　James D. Riddet
　　Whitney Z. Bernstein
　　Carlos A. Nevarez
　　*Attorneys for Mohammed Abdul Qayyum*

Dated:  March 31, 2022

**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

By: *Alexis A. Wiseley*
　　Gary S. Lincenberg
　　Alexis A. Wiseley
　　Darren L. Patrick
　　*Attorneys for Petr Pacas*

16
DEFENDANTS' RESPONSE TO UNITED STATES' MIL (DKT. NO. 351)

**CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE**

Pursuant to section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Randy K. Jones, Whitney Z. Bernstein, and Alexis A. Wiseley.

Dated: March 31, 2022              By: s/*Jessica C. Munk*
                                              Jessica C. Munk

## CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

AUSA Melanie K. Pierson
AUSA Sabrina L. Feve
AUSA Ashley E. Goff
U.S. Attorney's Office
880 Front Street, Rm 6293
San Diego, CA 92101
melanie.pierson@usdoj.gov
sabrina.feve@usdoj.gov
ashley.goff@usdoj.gov

Candina S. Heath
Department of Justice
1301 New York Avenue NW, Suite 600
Washington, DC 20530
candina.heath2@usdoj.gov

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 31, 2022, at San Juan Capistrano, California.

s/*Jessica C. Munk*
Jessica C. Munk