RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACOB BYCHAK (1), <br> MARK MANOOGIAN (2), <br> ABDUL MOHAMMED QAYYUM (3), and <br> PETR PACAS (4), <br><br> Defendants. | Case No.: 18cr4683-GPC <br><br> **GOVERNMENT'S SUPPLEMENTAL NOTICE OF 404(b) EVIDENCE** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property Section Senior Counsel Candy Heath, and hereby files its above-referenced Supplemental Notice, based on the files and records in this case.

# I.
# PROCEDURAL BACKGROUND

On April 26, 2022, the Court directed the government to identify the exhibits relating to a block of IP addresses (196.193.0.0/16) registered on the African Registry of Internet Numbers ("AFRINIC") that it seeks to use at trial pursuant to Rule 404(b) of the Federal Rules of Evidence ("FRE") and to explain the theory under which these exhibits are relevant and admissible.

The Indictment in this case leads with a conspiracy charge (Count 1), which alleges that, between December 2010 and September 2014, the four defendants conspired with Daniel Dye and Vincent Tarney (both charged elsewhere) to violate the wire fraud and CAN-SPAM statutes by fraudulently acquiring blocks of Internet Protocol ("IP") addresses registered to others through the creation and use of letters, known as Letters of Authorization, or "LOAs," that falsely represented them to be the authorized users of those IP blocks. The Indictment also includes four substantive wire fraud counts (Counts 2-5) and five substantive CAN-SPAM counts (Counts 6-10) that each identify a specific block of IP addresses and, in the CAN-SPAM counts, a specific day on which each block was used to transmit commercial mail messages. Counts 2 through 10 of the Indictment specifically refer to IP blocks associated with the domains ect.net, telalink.net, moore-solutions.com, sierrasemi.com, and obs.net, and to specific dates between November 2013 and March 2014.

# II.
# FACTUAL BASIS

The charged conduct outlined in the Indictment involved eleven domain names, including the five listed above, that the defendants acquired from Dye's employer, GetAds. The defendants used these domain names, in conjunction with falsified LOAs, to take unauthorized control of, or "hijack," IP addresses that did not belong to them (hereafter, the "GetAds IPs"). Some of the falsified LOAs were prepared by Dye or Tarney, some

appear to have been prepared or modified by the defendants. An issue at trial will be whether the defendants knew or had reason to believe these LOAs were fraudulent.

The proposed Rule 404(b) conduct spans a seven-week period that began on March 22, 2013, when defendant Mark Manoogian and codefendants Jake Bychak and Abdul Mohammed Qayyum exchanged emails regarding a block of IP addresses registered on AFRINIC to AirSea Freight (196.193.0.0/16, hereafter the "AFRINIC IPs"), which were good for mailing and for which they wanted to try to pay $1.00/IP. The AFRINIC IPs were being offered by "Dave" at a company called Techvensys. The proposed Rule 404(b) conduct ends on or about May 14, 2013, when Manoogian emails Peter Holden, the owner of the hosting company Hostwinds, which announced many of the GetAds IPs, and cc's Qayyum, to ask Holden to stop announcing the AFRINIC IPs and notes this IP range "is the SBL'd range that we leased and must be returned." ("SBL" stands for "Spamhaus Block List.")

In between the defendants learning that the AFRINIC IPs were available and returning them, the following conduct occurred:

| Date | 404(b) Conduct[1] |
|---|---|
| 4/8/2013 | Manoogian advises Bychak and Qayyum that the AFRINIC IPs will cost $1.37 each for two months and asks Qayyum, "Abdul, is this something we would want to announce with Hostwinds if we want to pursue it?" |
| 4/10/2013 | Manoogian emails Mohammed and Bychak that they should have the LOA for the AFRINIC IPs by 8am the next morning. |
| | Manoogian emails himself a template LOA for the AFRINIC IPs in which "(COMPANY NAME)", represented by "NAME" authorizes Hostwinds, 9 E. 4th St., Ste: 1002, Tula [sic], Oklahoma 74105 to use and route the IP Block 196.193.0.0/16." |

---

[1] The documents described herein, along with the March 22, 2013, and May 14, 2013, emails described directly above, are attached as Government Exhibit 1. Note that in these emails, Qayyum goes by the full name "Abdul Mohammed."

| 4/11/2013 | Manoogian emails "Dave" at Techvensys just before 10 am to ask where the AFRINIC LOA is and to remind him they were supposed to have it two hours ago. |
| --- | --- |
| | Manoogian emails the AFRINIC LOA to Bychak and Qayyum just before noon with the message, "TVS LOA attached. Looks official. In the hands of HostWinds [sic]." |
| | That night, "Dave" responds to Manoogian's morning email demanding the LOA with the message, "Is everything ok with announcement?" and Manoogian replies that he will know more in the morning. |
| 4/18/2013 | Spamhaus places the AFRINIC IPs on its Spamhaus Block list and notes the reason for blocking the IPs is for "spamming through hijacked netblocks." |
| 4/26/2013 | Manoogian emails Qayyum and other employees that the AFRINIC IPs are on the SBL and are nonetheless "ok for you to start using right away I think." |
| 5/2/2013 | Holden receives an email from his internet provider indicating that the AFRINIC IPs are hijacked. Holden responds, "I spoke to the client who rents that space, they say it was a mistake, and the space owner accidentally gave the LOA to another client as well." |
| 5/7/2013 | Manoogian emails Holden and asks him to keep the "sbl'd" AFRINIC IPs online until the end of the billing cycle. |

This proposed Rule 404(b) conduct is evidence of defendants' intent, preparation, plan, knowledge, and absence of mistake regarding their misuse of LOAs to acquire control and unauthorized use of IP addresses for the following reasons:

1) Manoogian's custody and control of a LOA template is evidence that he had the knowledge and tools needed to prepare LOAs himself and was not exclusively relying on his coconspirators to draft or prepare these documents.

2) Manoogian's question to Qayyum ("Abdul, is this something we would want to announce with Hostwinds if we want to pursue it?") is consistent with the conspirators' practice of using Holden and Tarney to announce the IP addresses that involved dubious LOAs.

3) The conspirators' blasé response to the AFRINIC IPs being placed on the SBL after being deemed "hijacked" and their continued use of these IPs despite this derogatory information is consistent with their willingness to engage in unauthorized use of the GetAds IPs and shows an absence of mistake.

4) The proposed Rule 404(b) conduct is intertwined and overlaps with the charged conduct.

This fourth reason requires some context. During the seven week-period that the defendants acquired and used the AFRINIC IPs, they were also involved in acquiring and using GetAds IPs. For example, during this seven-week period, the members of the conspiracy did the following:

| Date | GetAds Conduct |
| --- | --- |
| 3/28/2013 | Pacas discusses the GetAds Cdnair netblock with Dye and how use of these IPs requires "flying under the radar" until the rightful owner "claim[s] it back." |
| 5/2/2013 | Bychak, Manoogian, and Qayyum review documents for purchasing the Telalink domain from GetAds, which they then used to control the Telalink IP addresses. |
| 5/7/2013 | Manoogian emails Holden the GetAds Telalink IP LOAs. |
| | Manoogian, Bychak, and Qayyum discuss whether Holden or Tarney would be willing to announce the TrinityMicro IPs they had just acquired via GetAds. |
| 5/8/2013 | Manoogian emails Bychak and Qayyum that Hostwinds will use the same server that hosted the AFRINIC IPs to host the GetAds Telalink IPs, and that Holden will "try to announce" the GetAds TrinityMicro, but "can[']t guarantee it will go through." |

## III.

## INTRODUCTION OF EVIDENCE

At the April 26, 2022 hearing, the Court asked the government to identify which witnesses would be used to introduce the proffered Rule 404(b) evidence. For ease of

reference, the government has amended the chart summarizing the Rule 404(b) evidence to include which witness will authenticate or otherwise testify regarding the evidence:

| Date | 404(b) Conduct | Witness |
|---|---|---|
| 4/8/2013 | Manoogian advises Bychak and Qayyum that the AFRINIC IPs will cost $1.37 each for two months and asks Qayyum, "Abdul, is this something we would want to announce with Hostwinds if we want to pursue it?" | FBI SA Jordan Goettsche & FRE 902(11) COA |
| 4/10/2013 | Manoogian emails Mohammed and Bychak that they should have the LOA for the AFRINIC IPs by 8am the next morning. | Goettsche & FRE 902(11) COA |
| | Manoogian emails himself a template LOA for the AFRINIC IPs in which "(COMPANY NAME)", represented by "NAME" authorizes Hostwinds, 9 E. 4th St., Ste: 1002, Tula [sic], Oklahoma 74105 to use and route the IP Block 196.193.0.0/16." | Goettsche & FRE 902(11) COA |
| 4/11/2013 | Manoogian emails "Dave" at Techvensys just before 10 am to ask where the AFRINIC LOA is and to remind him they were supposed to have it two hours ago. | Goettsche & FRE 902(11) COA |
| | Manoogian emails the AFRINIC LOA to Bychak and Qayyum just before noon with the message, "TVS LOA attached. Looks official. In the hands of HostWinds [sic]." | Goettsche & FRE 902(11) COA |
| | That night, "Dave" responds to Manoogian's morning email demanding the LOA with the message, "Is everything ok with announcement?" and Manoogian replies that he will know more in the morning. | Goettsche & FRE 902(11) COA |
| 4/18/2013 | Spamhaus places the AFRINIC IPs on its Spamhaus Block list and notes the reason for blocking the IPs is for "spamming through hijacked netblocks." | Goettsche |
| 4/26/2013 | Manoogian emails Qayyum and other employees that the AFRINIC IPs are on the SBL and are nonetheless "ok for you to start using right away I think." | Goettsche & FRE 902(11) COA |
| 5/2/2013 | Holden receives an email from his internet provider indicating that the AFRINIC IPs are hijacked. Holden responds, "I spoke to the | Peter Holden |

|   |   |   |
|---|---|---|
|   | client who rents that space, they say it was a mistake, and the space owner accidentally gave the LOA to another client as well." |   |
| 5/7/2013 | Manoogian emails Holden and asks him to keep the "sbl'd" AFRINIC IPs online until the end of the billing cycle. | Holden |

## IV.
## CONCLUSION

To facilitate review of the Rule 404(b) conduct described herein, the FBI prepared a written memo in December 2019 describing this conduct, which was produced in January 2020 alongside the 33 pages of discovery upon which the memo relied. This re-production of documents previously put out in discovery alleviated the need for the defense to comb through the earlier discovery productions to find the documents described therein. A copy of the FBI memo is attached as Exhibit 2, along with the discovery index that accompanied the memo and underlying documentation.

The Rule 404(b) evidence at issue consists of approximately nine emails and one Spamhaus Block Listing. The witnesses who will speak to this evidence, Holden and FBI Special Agent Jordan Goettsche, are already testifying regarding the charged GetAds conduct. Holden is in fact already testifying regarding the May 7, 2013, AFRINIC IPs email because the email is part of a longer email chain that also discusses the GetAds Telalink IPs and Holden previously testified about this email before the grand jury, when it was presented to the grand jury as Exhibit 92. (*See* Holden G.J. Tr. 89:10 – 93:1; GJ Ex. 92.) The additional AFRINIC IP emails will provide relevant context for an existing exhibit that would foreseeably be presented to the jury, both because it was marked as a grand jury exhibit and involved the GetAds IPs, and because it expressly discussed the use of "SBL'd"

//

IP addresses. Because the Rule 404(b) evidence at issue is limited and fairly noticed, the government respectfully submits that it should be permitted to use this evidence at trial.

DATED: April 29, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/Melanie K. Pierson
Assistant United States Attorney

/s/Sabrina L. Fève
Assistant United States Attorney

/s/Candy Heath
Senior Counsel
Computer Crime and Intellectual Property Section
Department of Justice, Criminal Division