| | |
|---|---|
| **BIENERT KATZMAN LITTRELL WILLIAMS LLP**<br>Thomas H. Bienert, Jr., SBN 135311<br>James D. Riddet, SBN 39826<br>Whitney Z. Bernstein, SBN 304917<br>Carlos A. Nevarez, SBN 324407<br>903 Calle Amanecer, Suite 350<br>San Clemente, California 92673<br>Telephone:  (949) 369-3700<br>Email:  tbienert@bklwlaw.com<br>           jriddet@bklwlaw.com<br>           wbernstein@bklwlaw.com<br>           cnevarez@bklwlaw.com<br><br>*Attorneys For Mohammed Abdul Qayyum* | **WIECHERT, MUNK & GOLDSTEIN, PC**<br>David W. Wiechert, SBN 94607<br>Jessica C. Munk, SBN 238832<br>27136 Paseo Espada, Suite B1123<br>San Juan Capistrano, CA  92675<br>Telephone:  (949) 361-2822<br>Email:  dwiechert@aol.com<br>           jessica@wmgattorneys.com<br><br><br><br><br><br>*Attorneys For Jacob Bychak* |
| **BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG & RHOW, P.C.**<br>Gary S. Lincenberg, SBN 123058<br>Nicole Rodriguez Van Dyk, SBN 261646<br>Darren L. Patrick, SBN 310727<br>Alexis A. Wiseley, SBN 330100<br>1875 Century Park East, Floor 23<br>Los Angeles, CA 90067<br>Telephone:  (310) 201-2100<br>Email:  glincenberg@birdmarella.com<br>           nvandyk@birdmarella.com<br>           dpatrick@birdmarella.com<br>           awiseley@birdmarella.com<br><br>*Attorneys For Petr Pacas* | **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**<br>Randy K. Jones, SBN 141711<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, Ca 92130<br>Telephone:  (858) 314-1510<br>Email:  rkjones@mintz.com<br><br>Daniel J. Goodrich, BBO 692624 (Pro Hac)<br>Ryan Dougherty, BBO 703380 (Pro Hac)<br>1 Financial Center<br>Boston, MA 02111<br>Email:  djgoodrich@mintz.com<br>           rtdougherty@mintz.com<br><br>*Attorneys For Mark Manoogian* |

18-cr-04683-GPC

DEFENDANTS' RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL NOTICE OF 404(b) EVIDENCE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, et al.<br><br>    Defendants. | Case No. 3:18-cr-04683-GPC<br>Hon. Gonzalo P. Curiel<br><br>**DEFENDANTS' RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL NOTICE OF 404(b) EVIDENCE** |

## I.    INTRODUCTION.

Nearly ten years into its investigation of the case, nearly four years after Defendants' request for 404(b) notice, despite extensive litigation for the past four years to ascertain the evidence at issue in this case from the government's nearly three million pages of discovery, and despite the defense's reliance on the government's representations as to the scope of its case, on March 18, 2022, the government first noticed its intent to present evidence of African Registry of Internet Numbers ("AFRINIC") netblocks. Dkt. No. 347. On April 11, 2022, the Court seemed to appreciate the issues admission of this late-noticed evidence would cause to the currently set May 23, 2022 trial date. However, on April 26, 2022, the

Court indicated that it was considering admitting the purported AFRINIC evidence and directed the government to specify the evidence it wants to present.

As Defendants have explained, defending against the late-noticed AFRINIC evidence entails, at a minimum: (a) careful review of thousands of additional documents; (b) further investigation to find and contact the three brokers for those netblocks (one of whom is believed to reside in South Africa and another in India), the netblocks holders, and the AFRINIC president or another knowledgeable representative; and (c) substantial time commitment to schedule and prepare Rule 15 depositions for these potential defense witnesses. The government's supplemental filing (Dkt. No. 398, the "404(b) Supplement") does nothing to obviate these investigative needs. Further, the government's proposed evidence fails to demonstrate that Defendants engaged in any criminal acts or knew that anything was improper with the AFRINIC netblocks and thus offers little probative value as to the charges.

The 404(b) evidence concerns a seven-week period during which three of the Defendants and other Company A employees worked on a business deal to *lease* IP addresses registered on AFRINIC to a company called AirSea Freight ("AirSea"). Dkt. No. 398 at 3. These IP addresses (the "AFRINIC IPs") were offered to Company A by a broker named Dave Sales who worked at a company called Techvensys. *Id.* Based on a handful of ambiguous emails lacking meaningful detail and context, the government implies that Defendant Mark Manoogian had a hand in fabricating a letter of authorization ("LOA") from AirSea, which Company A then used to announce the AFRINIC IPs with Hostwinds. *See id.* at 4:20-24. Critically, however, **there are no emails or witness statements** indicating that Defendant Manoogian forged the signature on the AirSea LOA or transmitted any fabricated documents to Sales, any other Defendant, or Company A employee. ███

███

███

The government similarly makes much of the fact that Company A stopped announcing the AFRINIC IPs soon after they were "blocked" or placed on Spamhaus's "block list." Without any support, the government insinuates that when an IP address is placed on Spamhaus's block list, it conclusively means that such IP address was used without authorization. Nevertheless, however hard it tries, Spamhaus does not make the law – the block list is not an indication of illegality. Further, as explained on the Spamhaus website, this reading is plainly wrong. Moreover, the 404(b) Supplement *does not identify* any emails or documents showing that the Defendants (or any other Company A employee) were told or otherwise knew that the AFRINIC IPs had been used without authorization. Consequently, there was nothing nefarious about Company A returning the AFRINIC IPs once their *lease term* had expired.

Based alone on the absence of a solid evidentiary foundation or probative value, and the fact that unlike the GetAds transactions, these IP addresses were a *lease*, the Court should exclude the government's confusing, prejudicial 404(b) evidence. But this belatedly noticed evidence is additionally prejudicial because it essentially requires the defense to prepare for complicated new allegations regarding the AFRINIC IPs after the government's nearly ten-year-long investigation on the eve of trial. If the Court decides to admit this evidence, Defendants will be forced to file a motion to continue the May 23, 2022 trial date. Based upon the foregoing, and as further discussed below, Defendants ask that the Court exclude the proposed 404(b) evidence.

**II.   THE PROPOSED 404(b) EVIDENCE IS IRRELEVANT, CONFUSING, AND ITS PROBATIVE VALUE IS NEGLIBLE.**

The government claims that the Defendants' conduct relating to the AFRINIC IPs reveals their "intent, preparation, plan, knowledge, and absence of mistake" concerning their "misuse" of LOAs in the charged scheme. Dkt. No. 398 at 4. Accordingly, the government identifies various documents and email communications (*see* Exhibit 2 to the 404(b) Supplement) in an effort to show that:

1. Defendant Manoogian had knowledge and access to tools "needed to prepare LOAs himself";
2. the Defendants' decision to work with Peter Holden "is consistent" with the practice of using Holden and Tarney to announce the GetAds IPs;
3. Company A's decision to continue using the AFRINIC IPs after they were placed on Spamhaus' block list (or informally, "SBL'd") indicates Defendants' "willingness" to use the GetAds netblocks without authorization and their "absence of mistake"; and
4. The AFRINIC IPs transactions are somehow "intertwined and overlap[]" with the alleged scheme.

*See id.* at 4-5. Behind the government's 404(b) request, however, is an unfounded narrative that omits or befuddles critical details and concerns a series of *leases* that are materially distinguishable from the GetAds *purchases* charged in this case.

### A. The AFRINIC IPs were part of a lease agreement that was materially different from the GetAds purchases.

As an initial matter, the 404(b) notice marks the first time in this case that the government identifies an issue regarding Company A's IP address *leases*. This emerges out of the blue because the transactional backdrop of the AFRINIC IPs is materially different from the dealings between Company A and Daniel Dye and GetAds. Indeed, while the GetAds transactions concerned the *purchase* of IP addresses, the AFRINIC IPs were part of a short-term *lease agreement* – one of many that Company A routinely undertook to advance its business model of delivering commercial emails for major corporate clients like Olive Garden, Disney, and GEICO. Company A's lease transactions moreover involved materially different procedures, materially different due diligence checks, and materially different price considerations. Another reason for this is that leased IP addresses had a substantially shorter shelf life. *See* Bernstein Decl. ¶ 2, Ex. A (For example, the lease agreement for one of the AFRINIC netblocks had a duration term of only one month).

▮▮▮ The GetAds and AFRINIC transactions are completely different. The AFRINIC evidence has limited probative value and will only confuse the jury and prejudice the Defendants.

### B. The government failed to identify evidence demonstrating that the AirSea LOA was fraudulent or that Defendant Manoogian falsified it.

The government's proposed 404(b) evidence wholly fails to establish or suggest that the LOA at issue is falsified or that Defendant Manoogian did so. In fact, it paints a different picture. It shows that on April 10, 2013, Defendant Manoogian advised Defendant Abdul Mohammed Qayyum that Sales was expected to circulate the AirSea LOA by 8:00 a.m. the next day. *See* Bernstein Decl. ¶ 3, Ex. B. The very next morning on April 11, Defendant Manoogian sent an email to Sales inquiring about the LOA that the Company A team should have received two hours prior. *See* Bernstein Decl. ¶ 4, Ex. C. A few hours later, Defendant Manoogian noted in an email to Defendants Qayyum and Bychak that the AirSea LOA – which had already been executed and bore a stamp with AirSea's name and information – "look[ed] official." *Id.* at ¶ 5, Ex. D. ▮▮▮

Critically, the government's supplemental filing did not include a single email exchange or witness statement indicating that Defendant Manoogian ever created an LOA or ever emailed the template language in question to Sales or other Company A employees, including the other three Defendants. But, without a shred of proof, the government claims

this must be admitted to establish that Defendant Manoogian had the wherewithal to fabricate an LOA. While there is no evidence that he prepared the AirSea LOA, there is a real risk that the jury will be misled and confused by the proposed 404(b) evidence given the complexity and nuance of this case.

But most importantly, it is simply impossible to adequately investigate these allegations before a May 23 trial date. The discovery associated with just Sales and AFRINIC is more voluminous than the typical border bust prosecution in this district. As described further below in Section III, Defendants cannot proceed with trial on May 23, 2022 if this late-noticed evidence is admitted.

### C. The government failed to identify any evidence demonstrating that Defendants were aware the AFRINIC IPs were used without authorization.

The government does not identify a single document demonstrating that the Defendants – or any Company A employee – knew that the AFRINIC IPs had been purportedly used without authorization. The government instead cites to a handful of ambiguous records and simply assumes that fact without elaboration. Each of the cited documents supporting the government's claim, however, falls far short of establishing Defendants' purported knowledge.

First, the government largely relies on two emails addressed to Peter Holden, principal of Hostwinds, from May of 2013. *See* Dkt. No. 398 at 4. On May 2, 2013, a representative of CoreXchange – which provided upstream internet services to Hostwinds – emailed Holden about a potential use of the AFRINIC IPs without authorization. *See* Bernstein Decl. ¶ 6, Ex. E (email to Holden). In his follow-up email, Holden advised CoreXchange that he purportedly "spoke to the client who rent[ed] the space." *Id*. Based on Holden's recent interview with a government agent on April 19, 2022, Holden allegedly forwarded the CoreXchange email to Company A. *Id*. at ¶ 7, Ex. F. But this email to Company A is ***nowhere to be found*** in the 404(b) package, or any of the government's nearly three million pages of discovery, or on the government's 700+ exhibit list (Dkt. No.

395). Therefore, the government's representation that Defendants knew that the AFRINIC IPs were used without authorization relies entirely on Holden's unsupported statements allegedly first made two weeks ago.[1]

Second, the government makes much of the fact that Company A decided to continue using the AFRINIC IPs (which they paid to use) after they were SBL'd or placed on Spamhaus's block list. ▌

▌.[2] *See* Bernstein Decl. ¶ 8, Ex. G ▌ *see also id.* at ¶ 9, Ex. H ▌

---

[1] Further, Defendants are concerned that the government first noticed its 404(b) evidence on March 18, 2022 and suggested that it would be able to connect the notice Holden received to the Defendants. But, no such connection was ever provided in the next month. It was not until discovery production 64 on April 29 – the same day the government filed the 404(b) Supplement and 24 days before trial – that Defendants were ever provided with any notice or evidence of this alleged connection.

[2] *See* Spamhaus, https://www.spamhaus.org/faq/section/Spamhaus%20SBL#474 (last visited May 3, 2022).

[3] *See* Dkt. No. 334, *Government's Opposition to Motion to Dismiss for Outrageous Governmental Misconduct*, at 10 n. 8 (citing https://www.spamhaus.org/organization/statement/005/spamhaus-position-on-can-spam-act-of-2003).



1
2
3  Bernstein Decl. ¶ 10,
4 Ex. I
5
6
7
8
9
10
11  *See* Bernstein
12 Decl. ¶ 11, Ex. J
13
14
15
16
17
18  *See* Bernstein Decl., Ex. G.

19       Finally, the government's reference to a screenshot of the Spamhaus Law
20 Enforcement Portal is also not probative of any criminal knowledge by Defendants. These
21 screenshots appear to have been taken sometime in or about December 2019 – long after
22 Company A leased the AFRINIC IPs. *See*, *e.g.*, Bernstein Decl. ¶ 8, Ex. H. It is therefore
23 unknown whether Spamhaus identified the AFRINIC IPs as having been used without
24 authorization in the intervening years since Company A leased such netblocks.

25       The government thus presents an unfounded belief regarding Spamhaus' block list
26 and fails to identify any documentary evidence that Defendants actually knew the AFRINIC
27 IPs were stolen or used without authorization.
28

### III. THE 404(b) EVIDENCE REQUIRES THAT THE DEFENSE PREPARE FOR A TRIAL WITHIN A TRIAL AT THE ELEVENTH HOUR.

Leaving aside whether the late-noticed evidence complies with FRE 403 and 404, the Court must exclude this evidence because its admission would unduly curtail Defendants' due process rights and right to constitutionally effective representation. Extensive investigation is required to rebut this evidence, prepare adequate cross examination on the topic, and determine whether any defense witnesses need to be presented on the topic. Because defense counsel cannot adequately investigate and be prepared to rebut and defend against this late-noticed evidence with less than three weeks before trial, the Court must exclude the AFRINIC evidence.

Importantly, the 404(b) Supplement indicates that the government intends to double down on its assertion that the AFRINIC IPs were used without authorization and that Defendants knew about it. Dkt. No. 398 at 5-6. To rebut this argument, Defendants will have to show that Company A's lease agreements of the AFRINIC IPs were legitimate. To do this, Defendants will need to present percipient and expert testimony about LOAs in the context of an IP address lease arrangement and about standard business practices concerning a lease arrangement for AFRINIC IP addresses. Further, to establish that the LOA was not falsified, the defense will have to locate, interview, and preserve the testimony of a large cast of percipient witnesses located across the world on various continents including Dave Sales (the broker who interfaced with Defendants concerning the AFRINIC IPs and is believed to reside in India)[4]; Oyom Ojo (the individual who reported to CoreXchange that one of the AFRINIC IPs had been used without authorization); Brandon Stevenson (CoreXchange representative who interfaced with Ojo and Holden); Aboubakar Sidiki Yeo (AirSea POC whose signature appears on the AirSea LOA); an AirSea records custodian to authenticate the LOA and confirm that the accompanying stamp is accurate;

---

[4] Defense counsel has already taken steps to locate the broker for this netblock. Counsel's inability to reach him after a making a reasonable attempt is indicative of the additional time and effort that will need to go into the defense team's investigation.

and other individuals, including current and former employees of Company A, who worked closely on these AFRINIC IP lease transactions and appear on relevant emails related to the netblock and its LOA.  The government's anticipated witnesses—Jordan Goettsche (an FBI case agent) and Holden (a government cooperator)—simply cannot establish these facts.

The defense would additionally need to subpoena, obtain, and review relevant documents such as the brokers' records to determine whether the AFRINIC leases and LOA were consistent with their business practices, as well as transcripts of Skype communications between Holden, Sales, and Defendants to establish what authority was conveyed regarding the AirSea LOA.  To shed clarity on the netblock leases and related LOAs in the specific context of AFRINIC's policies and procedures, Defendants would also have to locate and interview AFRINIC's president or another knowledgeable representative[5].  Finally, on top of all this, the defense team must also review and analyze in short order an additional discovery tranche of thousands of documents of technical and esoteric content, many of which are multiple pages long.

It is impossible to undertake and complete this necessary, expansive, and complicated investigation before a May 23, 2022 trial, and the Court must accordingly either exclude the AFRINIC evidence or substantially continue the trial date.[6]

## IV. IF THE 404(b) EVIDENCE IS ADMITTED, DEFENDANTS WILL BE FORCED TO MOVE TO CONTINUE THE TRIAL DATE TO ADEQUATELY PREPARE A DEFENSE.

Due process requires that Defendants are afforded a reasonable opportunity to prepare a trial defense.  The government's proposed 404(b) evidence deprives Defendants of an adequate defense by both forcing last minute tasks on a new and complicated case and

---

[5] For context, the government intends to present the testimony of a representative from the American Registry of Internet Numbers (ARIN), who is anticipated to explain ARIN's role in this case and its policies and procedures.

[6] Defendants will file detailed motions to continue the trial date with supporting affidavits if necessary.

impairing their ongoing trial preparation.[7]  While defense counsel have been diligently preparing to defend against the charged allegations regarding the five netblocks in the indictment and additional allegations regarding six uncharged netblocks, Defendants cannot receive a constitutionally effective representation if the AFRINIC IPs are admitted.  For that reason, if the Court elects to admit evidence of the AFRINIC IPs, Defendants will have no other recourse but to move for a substantial trial continuance.

## V.  CONCLUSION.

This case has been investigated for nine years and indicted for five.  There is no reason for the government to drop the entirely prejudicial and unnecessary 404(b) evidence on the Defendants mere days before trial.  For the reasons set forth above and in the interest of justice and fairness, the Court should maintain the May 23, 2022 trial date and exclude the government's proposed 404(b) evidence, in full, relating to the AFRINIC IPs.

Respectfully submitted,

Dated:  May 5, 2022

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By: */s/ Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
James D. Riddet
Whitney Z. Bernstein
Carlos A. Nevarez
*Attorneys for Mohammed Abdul Qayyum*

---

[7] Litigation of the admission of this late-noticed evidence has been consuming, requiring at least two supplemental defense briefs and an upcoming hearing. This detracts from counsel's other, extensive trial preparation-related tasks such as identifying and analyzing the government's 700+ exhibits, noticed on April 25, 2022, to be prepared to commence on May 23.

| | |
|---|---|
| Dated: May 5, 2022 | **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.** |
| | By: /s/ Randy K. Jones<br>Randy K. Jones<br>Daniel J. Goodrich (Pro Hac)<br>Ryan Dougherty (Pro Hac)<br>*Attorneys for Mark Manoogian* |
| Dated: May 5, 2022 | **WIECHERT, MUNK & GOLDSTEIN, PC** |
| | By: /s/ Jessica C. Munk<br>David W. Wiechert<br>Jessica C. Munk<br>*Attorneys for Jacob Bychak* |
| Dated: May 5, 2022 | **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.** |
| | By: /s/ Gary S. Lincenberg<br>Gary S. Lincenberg<br>Nicole Rodriguez Van Dyk<br>Darren L. Patrick<br>Alexis A. Wiseley<br>*Attorneys for Petr Pacas* |

**CERTIFICATION OF AUTHORIZATION TO SIGN SIGNATURE**

  The undersigned counsel of record for Defendant Mohammed Abdul Qayyum certifies that the content of this document is acceptable to each of the Defendants' counsel whose electronic signature appears thereon, and that I have obtained their authorization to sign this document on their behalf.

                */s/ Whitney Z. Bernstein*
                 Whitney Z. Bernstein

# CERTIFICATE OF SERVICE

Counsel for the Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

AUSA Melanie K. Pierson
AUSA Sabrina L. Fève
AUSA Ashley E. Goff
U.S. Attorney's Office
880 Front Street, Rm 6293
San Diego, CA 92101
melanie.pierson@usdoj.gov
sabrina.feve@usdoj.gov
ashley.goff@usdoj.gov

Candina S. Heath
U.S. Department of Justice
1301 New York Avenue NW, Suite 600
Washington, DC 20530
candina.heath2@usdoj.gov

Respectfully submitted,

Dated: May 5, 2022           By: */s/ Leah Thompson*
                                  Leah Thompson