RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>ABDUL MOHAMMED QAYYUM (3), and<br>PETR PACAS (4),<br><br>Defendants. | Case No.: 18cr4683-GPC<br><br>**GOVERNMENT'S REPLY TO DEFENDANTS' OPPOSION TO THE GOVERNMENT'S AMENDED NOTICE OF AUTHENTICTION PURSUANT TO FED. R. EVID. 902(11) & (13)** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property Section Senior Counsel Candy Heath, and hereby files its above-referenced Supplemental

Briefing Regarding Authentication Pursuant to Fed. R. Evid. 902(11) & (13), based on the files and records of the case.

## I.

## INTRODUCTION

We wish to make efficient use of the jury's time. The purpose of a Rule 902(11) and (13) certificate of authentication (COA) is to avoid "the expense and inconvenience of producing time-consuming foundation witnesses." *United States v. Kahre,*, 610 F.Supp.2d 1261, 1263 (D.Nev. 2009). Foundation witnesses testify only to a document's authenticity, typically as a custodian of records. The custodians who prepare Rule 902(11) and (13) COAs do not need to have personal knowledge of the documents' contents. *United States v. Siders*, 712 Fed.Appx 601, 603 (9th Cir. 2017). There "is no requirement that" the custodian "establish when and by whom the documents were prepared." *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990). A custodian just needs to be familiar with how the business "received, processed, or maintained" the records. *Siders*, 712 Fed.Appx. at 603. Objections to the records' contents are separate from whether the records themselves are authentic.

The courts have repeatedly held that email records are properly authenticated via a Rule 902(11) certification. In *United States v. Gal*, 606 Fed.Appx. 868, 874-75 (9th Cir. 2015), the Ninth Circuit upheld the authentication of Yahoo emails over a defendant's claim that the COA provided by Yahoo was insufficient because it did not attest to who sent the emails. Similarly, the Fifth Circuit has found that COAs from Google and Yahoo properly authenticated emails and the Fourth Circuit has ruled that COAs from Google, Time Warner Cable, and Facebook, which "did nothing more than authenticate the business records to which they pertain" were sufficient. *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019); *United States v. Denton*, 944 F.3d 170, 184 (4th Cir. 2019).

Defendants do not distinguish any of these Circuit Court opinions. The one Circuit Court case they cite, *Collins v Kibort*, 143 F.3d 331, 338 (7th Cir. 1998), did not involve a Rule 902(11) or (13) COA and does not support their argument. Rather, *Collins* confirmed

that the person who prepares a COA does not have to "be the person who prepared the record" or "have personal knowledge of the entries in the records." *Id*. A custodian of record just needs to "have knowledge of the procedure under which the records were created." *Id*. *Collins* ruled that the plaintiff, a public-school staff member who testified at trial in his own employment discrimination case, could not authenticate the medical bills generated by the hospital that treated him under Rule 803(6). *Id*. at 337-38. All the government's COAs, however, were prepared by employees of the company that maintained and produced the records. That these custodians may have obtained the documents from a predecessor or through a DBA does not matter. *Siders*, 712 Fed.Appx at 603. The state and district court decisions cited by the defense, which the government will address below, are similarly distinguishable.

Defendants remaining arguments fall into the following categories: (1) their belief that the government can or should authenticate the records at issue via Rule 901(b)(1) (testimony of a witness with knowledge); (2) questions about the documents themselves (e.g., "Documents prepared by the persons whose names appear on them? Documents with a connection to any of the defendants?"); (3) an attack on the Amobee custodian of record; (4) the corporate identity of the COA affiants; and (5) the records accompanying the COA not being attached or identified. For the reasons described below, each of these arguments fails.

## II

## ARGUMENT

### A. Authentication Is a Low Bar

Admissibility is a separate and distinct issue from authenticity. To authenticate a document, a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). To support such a finding, the proponent "need only make a *prima facie* showing of authenticity" and "establish a connection between the proffered evidence and the defendant." *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). Disputes over authentication should be about whether it is

Government's Reply Brief re Authentication under
FRE 902(11) & (13)

3

18cr4683-GPC

reasonably likely that the evidence is what the proponent says (e.g., a Company A email), not over the evidence's probative value. The courts can therefore properly "admit[] evidence that meets the minimum requirements for authentication under the Federal Rules of Evidence" and let opposing counsel "argue that the jury should give the evidence minimal weight." *United States v. Ortiz*, 776 F.3d 1042, 1045 (9th Cir. 2015).

This low bar extends to the custodian's qualifications. "The Ninth Circuit has set a *low bar* for what constitutes 'another qualified witness'" in terms of who may fill out the declaration; indeed, "[t]he phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system." *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015) (quoting *Ray*, 930 F.2d at 1370); see also *United States v. Khatallah*, 278 F. Supp. 3d 1, 6 (D.D.C. 2017) (finding CEO of foreign telecommunications company "another qualified person" for purposes of 18 U.S.C. § 3505 because the CEO was among the founders of the company, had been involved with the company for many years, and had a role in the format of the company's records).

### B. Defendants' Last-Minute Challenges Should Be Denied

As a threshold matter, defendants' refusal to identify their challenges to the governments' COAs until May 19, 2022, undermines the fairness and legitimacy of their arguments. The government provided notice of its intent to authenticate business and electronic evidence pursuant to Rules 902(11) and 902 (13) on March 18, 2022. [ECF 347.] The records in questions were provided to the defense for inspection and copying, and were disclosed in electronic form, along with the certificates of authenticity. On April 29, 2022, the government filed its Amended Notice of Intent to Authenticate Evidence,[1] providing copies of the individual certificates of authenticity and identifying the exact trial exhibits sought to be authenticated. [ECF 397.] The government also repeatedly asked the defendants to identify or explain the challenges to the COAs verbally and in email, including emails sent on April 22, 2022, and May 12, 2022. The defense did not reply until late on May 17, 2022, when they indicated they would oppose all 902(11) COAs, but

---

[1] One supplemental document and accompanying Certificate of Authorization was filed on May 5, 2022.

agreed to a 902(13) COA for Telic and the Delaware and Louisiana public records (which are self-authenticating under Rule 902(2) and (4), as well as Rule 902(11), but likely not 902(13)). On May 19, 2022, the defendants agreed to an additional four COAs, including for Telic and ARIN, from whom they will also be seeking to authenticate evidence. Notably, the defendants do not agree that the COAs are appropriate, but only agree to stipulate that the records are authentic.

The notice requirement under Rule 902(11) is "intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Fed. R. Evid. 902(11) Advisory Committee's Note to the 2000 amendments; see also *United States v. Bledsoe*, 70 Fed. App'x. 370, 373 (7th Cir. 2003) ("The purpose of giving notice and an opportunity to review, under Rule 902(11) is for the adverse party to have the opportunity to verify, and challenge if necessary, the accuracy and reliability of the records and/or certifying affidavits."). "In other words, *the burden is put on the opponent* of the evidence, given enough time to do so, to show that the foundation provided by the affiant is so weak as to fail to meet the minimal standards of authenticity established by Article 9 of the Federal Rules." *DirecTV, Inc. v. Murray*, 307 F. Supp.2d 764, 773 (D.S.C. 2004).

**C. The COAs are Legally and Factually Sufficient**

Defendants' five arguments fail for the following reasons.

1. Rule 901(b)(1) vs. Rule 902(11)/(13)

Defendants' first argument is that the government should not be able to rely on Rule 902(11) and 902(13) because the government can also authenticate the records from Broadcloud, the Mata Group, Cogent, Hostwinds, GoDaddy, PayPal, Name.com, Enom, Enom/Tucows, and Amboee by causing a live witness to travel to San Diego to answer the basic business record custodian questions. Defendants' argument misses the mark legally and factually. First, as the party with the "burden of persuasion," the government is "entitled to prove its case" without being required to stipulate to evidentiary theories selected by the defendant. *Old Chief v. United States*, 519 U.S. 172, 189 (1997). There are

often multiple legal theories under which the government can introduce evidence. The availability of multiple theories does not mean the defense gets to choose which one the government can pursue. In *United States v. Safavian*, 435 F.Supp.2d 36, 38-42 (D.D.C. 2006), which the defense relies on, the district court examined the different ways an email could be authenticated, ultimately finding that the emails at issue could be authenticated under both Rule 901(b)(3) and 901(b)(4).[2] That the government can introduce records under either Rule 902(11)/(13) or Rule 901(b)(1), which permits a witness to authenticate records, is therefore legally irrelevant.

The argument that the government should call witnesses rather than rely on a COA misunderstands the facts. The government has only provided notice that it is many of these custodians of record because there has been no ruling on the Rule 902(11)/(13) COAs. If the COAs were accepted, the government would release five of these witnesses, which would make the trial shorter, less costly, and be a relief to these witnesses who otherwise need to travel from out of state. Similarly, for those individuals who will be testifying, it will make their testimony shorter if they do not also need to authenticate the records and can instead just testify as percipient witnesses. Moreover, the government may seek to use the records with other witnesses, prior to the testimony of the witness who was also acting as the records custodian. Those witnesses may provide a basis for the records' admissibility, but not its authenticity.

2. Defendant's Factual Questions

Defendants raise a series of questions they have about the documents, including, were the "[d]ocuments prepared by the persons whose names appear on them?" and do the documents have "a connection to any of the defendants?" These questions are like the

---

[2] *Safavian*, as the defense points out, also found that emails could not be authenticated under Rule 902(11). *Safavian* was issued in early 2006. Since then, email has become a much more pervasive part of life and work. The Ninth, Fifth, and Fourth Circuit decisions discussed above, which were decided in 2015 and 2019, are both more authoritative and more reflective of how widespread electronic business records have become since *Safavian* was written.

authentication challenges rejected by the Ninth Circuit in *Ray*, 930 F.2d at 1370, which held that there "is no requirement that the government establish when and by whom the documents were prepared" or how it "was compiled." The "content of a record does not impact the way in which it was received, processed, or maintained." *Siders*, 712 Fed.Appx. at 603. Defendants also speculate that a single custodian of record cannot authenticate 1.3 million records but provide no technical or legal explanation for why. The issue, under Rule 902(11), is not the content of the emails, or how many there are, but the process whereby the were made, stored, and kept, and whether the person making the certification had knowledge of that process. Fed. R. Evid. 902(11). Similarly, under Rule 902(13), the question is whether the company's electronic process or system generates accurate results, i.e., the records were copied from electronic devices, storage medium, or files in the company's custody and in a manner to ensure true duplicates, the company regularly verified that process or system, and the certified records were made during a period when that process or system was verified to be properly functioning. Fed. R. Evid. 902(13).

There is no reasonably consistent argument that can be made asserting the Telic emails are authentic, but the Amobee emails are not. They are both emails produced by a company that uses and maintains its employees' email in the course of the company's regularly-conducted business. The companies were managed and co-owned by the same person. Defendant Petr Pacas worked at both Amobee and Telic. Defendant Abdul Mohamed Qayyum spent time at both work sites. Despite this intimate knowledge of both Amobee and Telic's email practices, the defense has offered no explanation for why Telic's emails are properly authenticated, but Amobee's are not – and the COAs for the two companies are legally indistinguishable.

### 3. The Attack on Amobee's Custodian of Record

The defense singles out Mario Samonte, Amobee's custodian of record, and asserts that he, as a "develops engineer," would have no knowledge of how Amobee maintains its business records. The defense, however, has the transcript of Mr. Samonte's prior grand jury appearance. There, he testified that he began working at one of the predecessor

companies to Amobee in 2006 as the systems administrator. Samonte, who has a college degree in computers, held the position of system administrator through at least 2018. According to Samonte, as the systems administrator, he was responsible for helping people with their IT needs and keeping the servers up and running. Samonte said he "was in charge of all IT needs for all the employees." Samonte explained that as the company grew to have 100 employees, he eventually supervised a team of five people, but he remained "the main guy" for supporting the email platform. According to Samonte, he "would be the single person to support all of them [the employees], on top of the email platform that I'm supporting." When the firm became a global company after being acquired by Amobee, Samonte took "more of a systems and engineering role" while still maintaining the email platform needed for mailing. The defense's baseless attack on Mr. Samonte's qualification as a custodian of record pursuant to Rule 902(11) or 902(13) are therefore unavailing.

### 4. Corporate Identities

Defendants challenge the COAs for GetAds and CPH Resources because of alleged confusion over the corporate identity of the individual signing the COAs. GetAds successor-in-interest, Native Rank, certified the COA. The custodian of record for Native Rank testified before the grand jury regarding the record keeping practices at GetAds and regarding Native Rank's acquisition of GetAds. Similarly, the paralegal who managed CPH Resources and, at times, served as its custodian of record, also testified before the grand jury, including to establish that CPH Resources was a DBA set up by Company A. The defense points to nothing from either transcript to suggest these custodians were unqualified.

Instead, they cite to two cases, *State v. Huggins*, 659 F.2d 613 (Alaska App. Ct. 1982) and *DirecTV v. Reyes*, 2006 WL 533364 at *5 (N.D. Ill. March 1, 2006). *Huggins* did not involve the Federal Rules of Evidence, but rather addressed Alaska state rules governing self-authentication of breathalyzer results. *DirecTV* involved a smaller error in the drafting of the COA, where the custodian certified the database that produced the

record, rather than the record itself, the court noted both the minor error and that "it is likely that DirecTV can fill this gap," and permitted DirecTV to submit a revised declaration.

Neither case suggests, let alone requires, that the government must provide a corporate genealogy with each Rule 902(11) COA or that the custodian needs to be the same corporate entity as the one who originally created, processed, or maintained the record. It is well established that one entity may receive and maintain documents in the regular course of business for purposes of Fed. R. Evid. 803(6), 902(11) and 902(13), even if the records were created by a third party. *United States v. Childs*, 5 F.3d 1328, 1333–34 (9th Cir. 1993); *Siders*, 712 Fed. Appx. at 603; *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir.1990) (holding "there is no requirement that the records be created by the business having custody of them").

In *Siders*, the defendants challenged a Rule 902(11) COA because mortgage loan documents used in the fraud case against her were originally issued by Washington Mutual, but the COA was signed by a representative of JPMorgan Chase. 712 Fed.Appx. at 603. The defendant also challenged the authentication of the mortgage documents because there was no evidence that she prepared them and the fact that they contained false statements undermined their reliability. *Id.* The Ninth Circuit rejected all of these arguments, ruling that what mattered was whether the documents "were received by those processing the mortgages in the regular course of business." *Id.*

5. <u>The COAs' Attachments</u>

Defendants argue that they cannot tell which documents were attached to the COAs from Broadcloud, Cogent, Hostwinds, GoDaddy, PayPal, Name.com, Enom, and Enom/Tucows. They have never raised this objection until now. The COAs were produced to the government by the provider along with the certified documents. The government, in turn, produced the COAs and documents together to the defense in the following productions:

| Ex No. | Provider | Beg. Bates No. | End Bates No.[3] |
|---|---|---|---|
| 207 | Broadcloud | ADCONION-BROADCLOUD-026-00001 | ADCONION-BROADCLOUD-026-00001 |
| 227 | Cogent | ADCONION-COGENT-14-10-00001 | ADCONION-COGENT-14-10-00001 |
| 232 | GoDaddy | ADCONION-GODADDY-032-00002 | ADCONION-GODADDY-032-00002 |
| 233 | PayPal | ADCONION-PAYPAL-14-003-00002 | ADCONION-PAYPAL-14-003-00002 |
| 234 | Name.com | ADCONION-NAME-058-00001 | ADCONION-NAME-058-00001 |
| 238 | Enom/Tucows | ADCONION-DISC59-00090 | ADCONION-DISC59-00090 |
| 239 | Enom | ADCONION-ENOM-15-06-00001 | ADCONION-ENOM-15-06-00001 |

The only exception is Hostwinds, for which the government provided detailed screenshots showing the electronic bates numbers of the records that, together, totaled 21,176.569 KB. The defendants therefore had the COAs with the attached records.

## III

## CONCLUSION

The emails and electronic transactional records at issue with these COAs (i.e., domain registration documents from GoDaddy, Name.com, Enom, and Enom/Tucows) are ordinary business documents that are legally indistinguishable from the mortgage loan documents at issue in *Siders*. Businesses send, receive, and store emails as a means of doing business. Employees use their email accounts every day to do their jobs. Like the banks in *Sider*, the companies at issue here maintained and stored these documents, even when they merged. The emails, like the mortgage documents, are a wrapper in which people put information. Sometimes that information is accurate and reliable, sometimes it includes fraudulent statements. The content of the email, like the content of the mortgage document, does not affect the analysis, which is whether the custodian properly stored and maintained

---

[3] Where there is only one page number, it is because the documents were produced together electronically in a format that did not enable bates pagination. The bates range further indicates which provider produced those records.

these records themselves. Defendants' challenges should therefore be denied and the COAs adopted for purposes of authentication.

DATED: May 20, 2022         Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/Melanie K. Pierson
Assistant United States Attorney

/s/Sabrina L. Fève
Assistant United States Attorney

/s/Candy Heath
Senior Counsel
Computer Crime and Intellectual Property Section